Monique D. Jewett-Brewster, State Bar No. 217792
mjb@lathropgpm.com
LATHROP GPM LLP
70 South First Street
San Jose, CA 95113
mailing address:
P.O. Box 1469
San Jose, CA 95109-1469
Telephone: 408.286.9800
Facsimile: 408.998.4790

Benjamin C. Struby, MO State Bar No. 56711
benjamin.struby@lathropgpm.com
LATHROP GPM LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108-2618
Telephone: 816.292.2000
(admitted pro hac vice)

Attorneys for Del Taco LLC, a California limited
liability company

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Newport Ventures LLC | Case No. 8:24-bk-12738-TA<br>Chapter 11<br><br>**APPLICATION FOR ORDER SHORTENING TIME FOR EMERGENCY HEARING ON RENEWED MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Date: TBD<br>Time: __:__ _.m.<br>Place: Via ZoomGov Video and Audio<br>Judge: Hon. Theodor Albert |

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

- 1 -                                                    8:24-bk-12738-TA
APPLICATION FOR ORDER SHORTENING TIME FOR EMERGENCY HEARING ON RENEWED MOTION FOR RELIEF FROM THE
AUTOMATIC STAY

Franchisor Del Taco LLC ("**Del Taco**") by and through its undersigned counsel, hereby filed this Application for Order Shortening Time for Emergency Hearing on Renewed Motion for Relief from the Automatic Stay, (this "**Application**").  As identified below, circumstances with Debtor Newport Venture, LLC (the "**Debtor**") have changed and the Chief Restructuring Officer appointed by the Court has closed all eighteen (18) restaurants (the "**Restaurants**") effective February 27, 2025.  Granting relief from the automatic stay will allow Del Taco to exercise its rights to take possession of and operate the Restaurants to preserve its brand and image.  Furthermore, granting relief from the automatic stay will allow Del Taco or one of its franchisees to step in immediately to work to retain and pay employees at the locations at a cost to someone other than the bankruptcy estate, which will in turn result in less hardship on those frontline employees who suddenly find themselves jobless.

## I.      STATEMENT OF FACTS

### A.      Background

On December 11, 2024 Del Taco filed its Motion for Relief and papers in support (the "**Motion for Relief**") [ECF. 160].  A true and correct copy of the Motion for Relief and its exhibits are attached hereto and incorporated by this reference as Exhibit A.  On December 23, 2024, Debtor filed its Response to the Motion for Relief (the "**Response**")[ECF. 171].  On December 31, 2024, Del Taco filed it Reply to Debtor's Response to the Motion for Relief (the "**Reply**")  [ECF. 177].  The Court heard argument on the Motion for Relief, the Response, and the Reply on January 7, 2025.  The Court denied the Motion without prejudice to renewal and reset the hearing for March 26, 2025. *See* ECF. 191.  That hearing date was later continued by the Court *sua sponte* to April 9, 2025.

After arguments on the Motion for Relief, on February 10, 2025 Debtor filed an Emergency Consensual Motion for Entry of Agreed Order Appointing Chief Restructuring Officer [ECF. 243], which was granted by order dated February 12, 2025 (the "**CRO Order**") [ECF. 244].  The CRO Order appointed Allen Soong (the "**CRO**") of Paladin Management Group, LLC as the chief restructuring officer.  The CRO took control of the Restaurants shortly thereafter.

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

- 2 -                                                                8:24-bk-12738-TA
APPLICATION FOR ORDER SHORTENING TIME FOR EMERGENCY HEARING ON RENEWED MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**B.**     **Cause Exists for Shortening Time for an Emergency Hearing on the Motion for Relief**

As a preliminary matter, the cause for relief identified in the Motion for Relief and Reply still exists.  This Application is supported by the Declaration of Jack Tang, Vice President and In-House Counsel for Del Taco and the Application of Benjamin Struby, counsel of Del Taco in this proceedings, attached hereto and incorporated by this reference as <u>Exhibit B</u> and <u>Exhibit C</u>, respectively.  Unfortunately, the situation with the Debtor has become dire such that the Court should consider the Motion for Relief now, versus waiting until the continued hearing date of April 9, 2025.   On February 27, 2025 at 1:01 a.m. PST, the CRO informed Del Taco via email that he was closing the Restaurants effective that day:

---

**Struby, Benjamin C.**

| | |
|---|---|
| **From:** | Allen Soong <asoong@paladinmgmt.com> |
| **Sent:** | Thursday, February 27, 2025 3:01 AM |
| **To:** | Jack Tang; Mark Bixler; bdrewitz@deltaco.com; Won Kwak |
| **Cc:** | Struby, Benjamin C.; mark.lichtenstein@akerman.com; Parham, David (Ptnr-Dal) |
| **Subject:** | Newport Ventures: cessation of operations |
| **Importance:** | High |

**CAUTION:** This email asoong@paladinmgmt.com <asoong@paladinmgmt.com> originated from outside of the organization. Do not click links, open attachments or reply, unless you recognize the sender's email address and know the content is safe.

I regret to report that we received word late Wednesday from the lender that they will not fund the company any further. As such, without any financial support available to the company, I am left with no choice but to cease operations immediately. The stores will not be opened to the public on Thursday and the crew will report to their normal shifts to assist with preparing the stores for indefinite closure, after which all crew positions will be eliminated. Managers, District Managers, and the Director of Operations will be paid through Sunday to finish the closure, after which all management positions will be eliminated as well. The entire team will receive their normal payroll checks on Friday as usual, with final wages to follow sometime next week.

Further updates to come during the day Thursday.


Allen Soong
Paladin
310.720.1326 mobile
asoong@paladinmgmt.com

---

As set forth in the email, the Debtor's secured lender informed the CRO that it would not fund the Debtor's operations any further and that without such funding the CRO had to cease operations.

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

APPLICATION FOR ORDER SHORTENING TIME FOR EMERGENCY HEARING ON RENEWED MOTION FOR RELIEF FROM THE AUTOMATIC STAY

1   Consistent with that message, the CRO and/or the Debtor caused the following

2   communication to be distributed to employees at the Restaurants, advising them that their position

3   are eliminated as of the end of the work day on February 27, 2025:



**Newport Ventures, LLC**

February 27, 2025

Dear Team Member,

It is with our deepest regret that we must inform you that the Company's continued financial challenges
have forced us to make the difficult decision to close the stores immediately. Your position will be
eliminated at the end of the workday on February 27, 2025. Please report to your normal shift unless
otherwise instructed by your manager.

We are deeply sorry for any hardship this decision may cause you. You will receive your normal paycheck
on Friday and a second check with your final wages within the next several days. We ask that you return
any Company property (particularly keys) to your manager.

For your convenience, please browse to https://cdle.colorado.gov/unemployment for information on
unemployment benefits that may be available to you.

Thank you for your contributions to the Newport Ventures Del Taco team.

Sincerely,

Newport Ventures, LLC

17   Additionally, notices were, or will be, posted at the Restaurants with the following message

18   to customers:

February 27, 2025

Dear Valued Customers:

This location is closed until further notice.

Thank you for your patronage. We look forward to
serving you again soon.

24   Finally, it has been reported to Del Taco, and confirmed by the CRO, that the CRO has

25   instructed employees to dispose of food which was just delivered to the Restaurants yesterday,

26   February 26, 2025.  Relatedly, the food vendor has informed Del Taco's counsel that it is ceasing

27   deliveries. In short, the closures are actually happening – this is not posturing.

28

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

- 4 -                                                          8:24-bk-12738-TA
APPLICATION FOR ORDER SHORTENING TIME FOR EMERGENCY HEARING ON RENEWED MOTION FOR RELIEF FROM THE
AUTOMATIC STAY

The closure of the Restaurants constitutes cause to hear the Motion for Relief on an expedited basis, as does the fact that the Debtor no longer has the financial support necessary to fund the Restaurants' operations.  Closure of the Restaurants and delay in replacing Debtor/the CRO as operator will cause harm to Del Taco and its brand and image. However if the Motion for Relief is heard on an emergency basis and granted, Del Taco can work to mitigate that harm, and at the same time minimize the hardship that employees at the Restaurants will experience. Although Del Taco has requested that Debtor consent to relief via an agreed order granting the Motion for Relief so that Del Taco can take the steps identified above, as of this filing it did not have such consent.

## II.    CONCLUSION

WHEREFORE, Del Taco requests this Court grant this Application for an expedited hearing on Del Taco's renewed Motion for Relief from the Automatic Stay, that the Court hear the Motion for Relief as soon as possible, that the relief requested in the Motion for Relief be granted and for such other and further relief as this Court deems just and proper.

Dated: February 27, 2025                    LATHROP GPM LLP


By: /s/ *Monique D. Jewett-Brewster*
Monique D. Jewett-Brewster, State Bar No. 217792
mjb@lathropgpm.com
LATHROP GPM LLP
70 South First Street
San Jose, CA 95113
Telephone: 408.286.9800

And

By:/s/ *Benjamin C. Struby*
Benjamin C. Struby, MO State Bar No. 56711
benjamin.struby@lathropgpm.com
LATHROP GPM LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108-2618
Telephone: 816.292.2000
Admitted pro hac vice

Attorneys for Del Taco LLC,
a California limited liability company

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY
- 5 -                                    8:24-bk-12738-TA
APPLICATION FOR ORDER SHORTENING TIME FOR EMERGENCY HEARING ON RENEWED MOTION FOR RELIEF FROM THE
AUTOMATIC STAY

# Exhibit A

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Monique D. Jewett-Brewster, State Bar No. 217792<br>mjb@lathropgpm.com<br>LATHROP GPM LLP<br>70 South First Street<br>San Jose, CA 95113<br>mailing address:<br>P.O. Box 1469<br>San Jose, CA 95109-1469<br>Telephone: 408.286.9800<br>Facsimile: 408.998.4790<br><br>Benjamin C. Struby, MO State Bar No. 56711<br>benjamin.struby@lathropgpm.com<br>LATHROP GPM LLP<br>2345 Grand Blvd., Suite 2200<br>Kansas City, MO 64108-2618<br>Telephone: 816.292.2000<br>(admitted pro hac vice) | |
| ☐ *Individual appearing without attorney*<br>☒ *Attorney for:*  Del Taco LLC, a California Limited Liability Company | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -** SANTA ANA DIVISION

| In re:<br>Newport Ventures LLC | CASE NO.: 8:24-bk-12738-TA<br>CHAPTER: 11 |
|---|---|
| | **AMENDED NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br><br>**(ACTION IN NONBANKRUPTCY FORUM)** |
| Debtor(s). | DATE:  January 7. 2025<br>TIME: 10:30 a.m.<br>COURTROOM: Via ZoomGov Video and Audio<br>    411 West Fourth Street<br>    Suite 5085 / Courtroom 5B |

**Movant**: Del Taco LLC, a California Limited Liability Company

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                            Page 2                                            **F 4001-1.RFS.NONBK.MOTION**

1. **Hearing Location**:

☐ 255 East Temple Street, Los Angeles, CA 90012        ☒ 411 West Fourth Street, Santa Ana, CA 92701
☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367     ☐ 1415 State Street, Santa Barbara, CA 93101
☐ 3420 Twelfth Street, Riverside, CA 92501

2.  Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3.  To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

4.   When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice was filed and remains pending. After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: __December 12, 2024_____

Lathrop GPM LLP _____
Printed name of law firm (if applicable)

Monique D. Jewett-Brewster _____
Printed name of individual Movant or attorney for Movant


*/s/ Monique D. Jewett-Brewster* _____
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 2                    **F 4001-1.RFS.NONBK.MOTION**

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO NONBANKRUPTCY ACTION

1. **In the Nonbankruptcy Action, Movant is:**

   a. ☐ Plaintiff

   b. ☐ Defendant

   c. ☐ Other (*specify*):

2. **The Nonbankruptcy Action:** There is a pending lawsuit or administrative proceeding (Nonbankruptcy Action) involving the Debtor or the Debtor's bankruptcy estate:

   a. *Name of Nonbankruptcy Action*:

   b. *Docket number*:

   c. *Nonbankruptcy forum where Nonbankruptcy Action is pending:*

   d. Causes of action or claims for relief (Claims):

3. **Bankruptcy Case History:**

   a. ☒ A voluntary   ☐ An involuntary   petition under chapter   ☐ 7  ☒ 11  ☐ 12  ☐ 13
   was filed on (*date*) October 26, 2024____.

   b. ☐ An order to convert this case to chapter   ☐ 7  ☐ 11  ☐ 12  ☐ 13
   was entered on (*date*) _____.

   c. ☐ A plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**  Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Nonbankruptcy Action to final judgment in the nonbankruptcy forum for the following reasons:

   a. ☐ Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

   b. ☐ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c. ☐ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   d. ☐ The Claims are nondischargeable in nature and can be most expeditiously resolved in the nonbankruptcy forum.

   e. ☒ The Claims arise under nonbankruptcy law and can be most expeditiously resolved in the nonbankruptcy forum.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                Page 3                        **F 4001-1.RFS.NONBK.MOTION**

f. ☐ The bankruptcy case was filed in bad faith.

   (1) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (2) ☐ The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action.

   (3) ☐ Multiple bankruptcy cases affect the Nonbankruptcy Action.

   (4) ☐ The Debtor filed only a few case commencement documents. No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

g. ☒ Other (*specify*): Movant seeks relief from the automatic stay to permit enforcement of its post-termination rights under Franchise Agreements with the Debtor, including, without limitation, enjoining the Debtor from using or infringing Del Taco's Proprietary Marks, compelling assignment of any real-estate leases for the restaurants that Del Taco requests assignment of and the surrender of the restaurants' premises to Del Taco so it can take control over assignment of the franchise locations and protect its brand.

5. **Grounds for Annulment of Stay.**

a. ☐ The actions were taken before Movant knew that the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed in the Nonbankruptcy Action in prior bankruptcy cases affecting the Nonbankruptcy Action as set forth in Exhibit. _____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion: *(Important Note: declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.)***

a. ☐ The DECLARATION RE ACTION IN NONBANKRUPTCY FORUM on page 6.

b. ☒ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the Debtor's case commencement documents are attached as Exhibit. _____.

d. ☐ Other evidence (*specify*):

7. ☒ **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1. Relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2. ☐ Movant may proceed under applicable nonbankruptcy law to enforce its remedies to proceed to final judgment in the nonbankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

3. ☐ The stay is annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant in the Nonbankruptcy Action shall not constitute a violation of the stay.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 4                          **F 4001-1.RFS.NONBK.MOTION**

4. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8. ☒ Other relief requested.

Date: <u>December 12, 2024</u>

<u>Lathrop GPM LLP</u>
Printed name of law firm (*if applicable*)

<u>Monique D. Jewett-Brewster</u>
Printed name of individual Movant or attorney for Movant

*/s/ Monique D. Jewett-Brewster*
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## DECLARATION RE ACTION IN NONBANKRUPTCY FORUM

I, (*name of Declarant*) _____, declare as follows:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding (Nonbankruptcy Action) because:

   ☐ I am the Movant.
   ☐ I am Movant's attorney of record in the Nonbankruptcy Action.
   ☐ I am employed by Movant as (*title and capacity*):
   ☐ Other (*specify*):

2. I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Nonbankruptcy Action. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

3. In the Nonbankruptcy Action, Movant is:

   ☐ Plaintiff
   ☐ Defendant
   ☐ Other (*specify*):

4. The Nonbankruptcy Action is pending as:

   a. *Name of Nonbankruptcy Action:*

   b. *Docket number:*

   c. *Nonbankruptcy court or agency where Nonbankruptcy Action is pending:*

5. **Procedural Status of Nonbankruptcy Action**:

   a. The Claims are:

   b. True and correct copies of the documents filed in the Nonbankruptcy

   c. The Nonbankruptcy Action was filed on (*date*) _____.

   d. Trial or hearing began/is scheduled to begin on (*date*) N/A_____.

   e. The trial or hearing is estimated to require N/A days (*specify*).

   f. Other plaintiffs in the Nonbankruptcy Action are (*specify*):
   None.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 6                         **F 4001-1.RFS.NONBK.MOTION**

g.  Other defendants in the Nonbankruptcy Action are (*specify*):
    None.

6.  **Grounds for relief from stay:**

    a.  ☐  Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

    b.  ☐  Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

    c.  ☐  Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate. The insurance carrier and policy number are (*specify*):

    d.  ☐  The Nonbankruptcy Action can be tried more expeditiously in the nonbankruptcy forum.
        (1)  ☐  It is currently set for trial on (*date*) _____.
        (2)  ☐  It is in advanced stages of discovery and Movant believes that it will be set for trial by (*date*) _____. The basis for this belief is (*specify*):

        (3)  ☐  The Nonbankruptcy Action involves non-debtor parties and a single trial in the nonbankruptcy forum is the most efficient use of judicial resources.

    e.  ☐  The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Nonbankruptcy Action.

        (1)  ☐  Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

        (2)  ☐  The timing of the filing of the bankruptcy petition indicates it was intended to delay or interfere with the Nonbankruptcy Action based upon the following facts (*specify*):

        (3)  ☐  Multiple bankruptcy cases affecting the Property include:

            (A) Case name:
                Case number:                              Chapter:
                Date filed:              Date discharged:              Date dismissed:
                Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not granted.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 7                    **F 4001-1.RFS.NONBK.MOTION**

    (B) Case name:

        Case number:                      Chapter:

        Date filed:             Date discharged:          Date dismissed:

        Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

    (C) Case name:

        Case number:                      Chapter:

        Date filed:             Date discharged:          Date dismissed:

        Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

        ☐ See attached continuation page for information about other bankruptcy cases affecting the Nonbankruptcy Action.

        ☐ See attached continuation page for additional facts establishing that this case was filed in bad faith.

    f.  ☐ See attached continuation page for other facts justifying relief from stay.

7.  ☐ Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

    a.  ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

    b.  ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____

    c.  ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____    _____    _____
*Date*               *Printed name*                       *Signature*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                  Page 8                 **F 4001-1.RFS.NONBK.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Lathrop GPM LLP, 70 W. 1st Street, San Jose, CA 95113

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (ACTION IN NONBANKRUPTCY FORUM)**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 12, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Donald H Cram    dhc@severson.com, cas@severson.com
- Evelina Gentry    evelina.gentry@akerman.com, rob.diwa@akerman.com;reyko.delpino@akerman.com
- Monique D Jewett-Brewster    mjb@lathropgpm.com, natalie.gonzalez@lathropgpm.com
- Steven M Kries    skries@acc.capital
- Leib M Lerner    leib.lerner@alston.com, autodockettest-lax@alston.com;Melanie.mizrahie@alston.com
- Mark S Lichtenstein    mark.lichtenstein@akerman.com, reyko.delpino@akerman.com
- Kenneth Misken    Kenneth.M.Misken@usdoj.gov
- David W Parham    david.parham@akerman.com, teresa.barrera@akerman.com;cindy.ferguson@akerman.com
- Lisa M Peters    lisa.peters@kutakrock.com, marybeth.brukner@kutakrock.com
- Laura Taveras    laura.taveras@akerman.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Brian J Wagner    brian.wagner@kutakrock.com, mary.clark@kutakrock.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On December 12, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ___, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 12, 2024 | Natalie D. Gonzalez | |
|---|---|---|
| _Date_ | _Printed Name_ | _Signature_ |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

8:24-bk-12738-TA
Newport Ventures, LLC

*PARTIES SERVED BY*
*UNITED STATES MAIL*

### DEBTOR

Newport Ventures, LLC
Attn: Managing Agent
1442 E Lincoln Ave Ste 363
Orange, CA 92865

Evelina Gentry
633 West Fifth Street
Suite 6400
Los Angeles, CA 90071

Mark S Lichtenstein
1251 Avenue of the Americas 37th
Fl
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
New York, NY 10020

David W Parham
2001 Ross Avenue, Suite 3600
Dallas, TX 75201

Leah S Siaontz
Three Brickell City Centre
98 Southeast Seventh St Ste 1100
Miami, FL 33131

Steven M Kries
American Colonial Capital
8059 S. Elk Way
Aurora, CO 80016

Laura Taveras
2001 Ross Avenue, Suite 3600
Dallas, TX 75201

### 20 LARGEST UNSECURED CREDITORS

Colorado Comfort Air
Attn: Managing Officer/Agent
P.O. Box 1962
Commerce City, CO 80037

Envysion Inc.
Attn: Managing Officer/Agent
PO BOX 669142
Dallas, TX 75266-9142

Heritage Advisors LLC
Attn: Managing Officer/Agent
1500 East Bethany Home Rd
Suite 250
Phoenix, AZ 85014

NCR Voyix Corporation
Attn: Managing Officer/Agent
P.O. Box 198775
Atlanta, GA 30384-8755

New Horizon Communications
Attn: Managing Officer/Agent
P.O. Box 981073
Boston, MA 02298-1073

Scape Sol Landscaping
Attn: Managing Officer/Agent
4331 W. Wagon Trail Dr.
Denver, CA 80123-1674

### OTHER PARTIES

Auxilior Capital Partners, Inc
Atten: Managing Officer/Agent
620 W Germantown Pk Ste 450
Plymouth Meeting, IL 60674-0520

Shahvand Aryana
1442 Lincoln Ave., Suite 363
Orange, CA 92865

Kathy Aryana
14507 W. Christy Dr.
Surprise, AZ 85379

Ernie Abarro
1442 E. Lincoln Ave., Suite 363
Orange, CA 92865

Leah S Siaontz
Three Brickell City Centre
98 Southeast Seventh St Ste 1100
Miami, FL 33131

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Monique D. Jewett-Brewster, State Bar No. 217792<br>mjb@lathropgpm.com<br>LATHROP GPM LLP<br>70 South First Street<br>San Jose, CA 95113<br>mailing address:<br>P.O. Box 1469<br>San Jose, CA 95109-1469<br>Telephone: 408.286.9800<br>Facsimile: 408.998.4790<br><br>Benjamin C. Struby, MO State Bar No. 56711<br>benjamin.struby@lathropgpm.com<br>LATHROP GPM LLP<br>2345 Grand Blvd., Suite 2200<br>Kansas City, MO 64108-2618<br>Telephone: 816.292.2000<br>(admitted pro hac vice) | |
| ☐ _Individual appearing without attorney_<br>☒ _Attorney for:_  Del Taco LLC, a California Limited Liability Company | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA -** SANTA ANA DIVISION

| In re:<br>Newport Ventures LLC | CASE NO.: 8:24-bk-12738-TA |
|---|---|
| | CHAPTER: 11 |
| | **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br><br>**(ACTION IN NONBANKRUPTCY FORUM)** |
| | DATE:  January 7. 2024 |
| Debtor(s). | TIME: 10:30 a.m.<br>COURTROOM: Via ZoomGov Video and Audio<br> 411 West Fourth Street<br> Suite 5085 / Courtroom 5B |

**Movant**: Del Taco LLC, a California Limited Liability Company

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                   Page 2                        **F 4001-1.RFS.NONBK.MOTION**

1. **Hearing Location**:

☐ 255 East Temple Street, Los Angeles, CA 90012          ☒ 411 West Fourth Street, Santa Ana, CA 92701
☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367    ☐ 1415 State Street, Santa Barbara, CA 93101
☐ 3420 Twelfth Street, Riverside, CA 92501

2.   Notice is given to the Debtor and trustee *(if any)*(Responding Parties), their attorneys *(if any),* and other interested
parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order
granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the
attached Motion.

3.   To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in
preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using
the format required by LBR 9004-1 and the Court Manual.

4.   When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion
was filed by an unrepresented individual) at the address set forth above.

5.   If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem
such failure as consent to granting of the motion.

6. ☒  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d). If you wish to oppose this motion,
you must file and serve a written response to this motion no later than 14 days before the hearing and appear at
the hearing.

7. ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b). If you wish to oppose this
motion, you must file and serve a response no later than *(date)* _____ and *(time)* _____; and, you
may appear at the hearing.

   a. ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring
procedures of the assigned judge).

   b. ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such
motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐  An application for order setting hearing on shortened notice was filed and remains pending. After the court
rules on that application, you will be served with another notice or an order that specifies the date, time and
place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the
motion.

Date:  December 11, 2024 _____                    Lathrop GPM LLP _____
                                                         Printed name of law firm (if applicable)

                                                         Monique D. Jewett-Brewster _____
                                                         Printed name of individual Movant or attorney for Movant


                                                         */s/ Monique D. Jewett-Brewster* _____
                                                         Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO NONBANKRUPTCY ACTION

1. **In the Nonbankruptcy Action, Movant is:**

   a. ☐ Plaintiff

   b. ☐ Defendant

   c. ☐ Other (*specify*):

2. **The Nonbankruptcy Action:** There is a pending lawsuit or administrative proceeding (Nonbankruptcy Action) involving the Debtor or the Debtor's bankruptcy estate:

   a. *Name of Nonbankruptcy Action*:

   b. *Docket number*:

   c. *Nonbankruptcy forum where Nonbankruptcy Action is pending:*

   d. Causes of action or claims for relief (Claims):

3. **Bankruptcy Case History:**

   a. ☒ A voluntary   ☐ An involuntary   petition under chapter   ☐ 7  ☒ 11  ☐ 12  ☐ 13
   was filed on (*date*) October 26, 2024_____ .

   b. ☐ An order to convert this case to chapter   ☐ 7  ☐ 11  ☐ 12  ☐ 13
   was entered on (*date*) _____.

   c. ☐ A plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**  Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay to proceed with the Nonbankruptcy Action to final judgment in the nonbankruptcy forum for the following reasons:

   a. ☐ Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate.

   b. ☐ Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   c. ☐ Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

   d. ☐ The Claims are nondischargeable in nature and can be most expeditiously resolved in the nonbankruptcy forum.

   e. ☒ The Claims arise under nonbankruptcy law and can be most expeditiously resolved in the nonbankruptcy forum.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 3                          **F 4001-1.RFS.NONBK.MOTION**

f.  ☐  The bankruptcy case was filed in bad faith.

    (1)  ☐  Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

    (2)  ☐  The timing of the filing of the bankruptcy petition indicates that it was intended to delay or interfere with the Nonbankruptcy Action.

    (3)  ☐  Multiple bankruptcy cases affect the Nonbankruptcy Action.

    (4)  ☐  The Debtor filed only a few case commencement documents. No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

g.  ☒  Other (*specify*): Movant seeks relief from the automatic stay to permit enforcement of its post-termination rights under Franchise Agreements with the Debtor, including, without limitation, enjoining the Debtor from using or infringing Del Taco's Proprietary Marks, compelling assignment of any real-estate leases for the restaurants that Del Taco requests assignment of and the surrender of the restaurants' premises to Del Taco so it can take control over assignment of the franchise locations and protect its brand.

5.  **Grounds for Annulment of Stay.**

a.  ☐  The actions were taken before Movant knew that the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b.  ☐  Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed in the Nonbankruptcy Action in prior bankruptcy cases affecting the Nonbankruptcy Action as set forth in Exhibit. _____.

c.  ☐  Other (*specify*):

6.  **Evidence in Support of Motion: (Important Note: declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.)**

a.  ☐  The DECLARATION RE ACTION IN NONBANKRUPTCY FORUM on page 6.

b.  ☒  Supplemental declaration(s).

c.  ☐  The statements made by Debtor under penalty of perjury concerning Movant's claims as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the Debtor's case commencement documents are attached as Exhibit. _____.

d.  ☐  Other evidence (*specify*):

7.  ☒  **An optional Memorandum of Points and Authorities is attached to this Motion.**

**Movant requests the following relief:**

1.  Relief from the stay pursuant to 11 U.S.C. § 362(d)(1).

2.  ☐  Movant may proceed under applicable nonbankruptcy law to enforce its remedies to proceed to final judgment in the nonbankruptcy forum, provided that the stay remains in effect with respect to enforcement of any judgment against the Debtor or property of the Debtor's bankruptcy estate.

3.  ☐  The stay is annulled retroactively to the bankruptcy petition date. Any postpetition acts taken by Movant in the Nonbankruptcy Action shall not constitute a violation of the stay.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                                    Page 4                                    **F 4001-1.RFS.NONBK.MOTION**

4. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified, or annulled as to the co-debtor, on the same terms and condition as to the Debtor.

5. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

6. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Nonbankruptcy Action.

7. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be, without further notice

8. ☒ Other relief requested.


Date: <u>December 11, 2024</u>

<u>Lathrop GPM LLP</u>
     Printed name of law firm (*if applicable*)

<u>Monique D. Jewett-Brewster</u>
Printed name of individual Movant or attorney for Movant

*/s/ Monique D. Jewett-Brewster*
Signature of individual Movant or attorney for Movant

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                     Page 5                     **F 4001-1.RFS.NONBK.MOTION**

## DECLARATION RE ACTION IN NONBANKRUPTCY FORUM

I, (name of Declarant) _____, declare as follows:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto.  I am over 18 years of age. I have knowledge regarding (Nonbankruptcy Action) because:

   ☐ I am the Movant.
   ☐ I am Movant's attorney of record in the Nonbankruptcy Action.
   ☐ I am employed by Movant as (title and capacity):
   ☐ Other (specify):

2. I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the Nonbankruptcy Action. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

3. In the Nonbankruptcy Action, Movant is:

   ☐ Plaintiff
   ☐ Defendant
   ☐ Other (specify):

4. The Nonbankruptcy Action is pending as:

   a. *Name of Nonbankruptcy Action:*

   b. *Docket number:*

   c. *Nonbankruptcy court or agency where Nonbankruptcy Action is pending:*

5. **Procedural Status of Nonbankruptcy Action**:

   a. The Claims are:

   b. True and correct copies of the documents filed in the Nonbankruptcy

   c. The Nonbankruptcy Action was filed on (date) _____.

   d. Trial or hearing began/is scheduled to begin on (date) N/A_____.

   e. The trial or hearing is estimated to require N/A days (specify).

   f. Other plaintiffs in the Nonbankruptcy Action are (specify):
      None.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

g.   Other defendants in the Nonbankruptcy Action are (*specify*):
     None.

6.   **Grounds for relief from stay:**

a.   ☐   Movant seeks recovery primarily from third parties and agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

b.   ☐   Mandatory abstention applies under 28 U.S.C. § 1334(c)(2), and Movant agrees that the stay will remain in effect as to enforcement of any resulting judgment against the Debtor or the Debtor's bankruptcy estate, except that Movant will retain the right to file a proof of claim under 11 U.S.C. § 501 and/or an adversary complaint under 11 U.S.C. § 523 or § 727 in this bankruptcy case.

c.   ☐   Movant seeks recovery only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor or property of the Debtor's bankruptcy estate. The insurance carrier and policy number are (*specify*):

d.   ☐   The Nonbankruptcy Action can be tried more expeditiously in the nonbankruptcy forum.

   (1)   ☐   It is currently set for trial on (*date*) _____.

   (2)   ☐   It is in advanced stages of discovery and Movant believes that it will be set for trial by (*date*) _____. The basis for this belief is (*specify*):

   (3)   ☐   The Nonbankruptcy Action involves non-debtor parties and a single trial in the nonbankruptcy forum is the most efficient use of judicial resources.

e.   ☐   The bankruptcy case was filed in bad faith specifically to delay or interfere with the prosecution of the Nonbankruptcy Action.

   (1)   ☐   Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

   (2)   ☐   The timing of the filing of the bankruptcy petition indicates it was intended to delay or interfere with the Nonbankruptcy Action based upon the following facts (*specify*):

   (3)   ☐   Multiple bankruptcy cases affecting the Property include:

     (A)  Case name:
       Case number:                 Chapter:
       Date filed:          Date discharged:       Date dismissed:
       Relief from stay regarding this Nonbankruptcy Action  ☐ was  ☐ was not granted.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                   Page 7               **F 4001-1.RFS.NONBK.MOTION**

(B) Case name:

    Case number:                       Chapter:

    Date filed:            Date discharged:         Date dismissed:

    Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

(C) Case name:

    Case number:                       Chapter:

    Date filed:            Date discharged:         Date dismissed:

    Relief from stay regarding this Nonbankruptcy Action ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Nonbankruptcy Action.

    ☐ See attached continuation page for additional facts establishing that this case was filed in bad faith.

f. ☐ See attached continuation page for other facts justifying relief from stay.

7. ☐ Actions taken in the Nonbankruptcy Action after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with the Nonbankruptcy Action enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____

c. ☐ For other facts justifying annulment, see attached continuation page.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


_____    _____    _____

*Date*                     *Printed name*                                *Signature*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                  Page 8                         **F 4001-1.RFS.NONBK.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Lathrop GPM LLP, 70 S. 1st Street, San Jose, CA 95113

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (ACTION IN NONBANKRUPTCY FORUM); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; DECLARATION OF JACK TANG SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362; SUPPLEMENTAL NOTICE OF HEARING TO BE HELD REMOTELY USING ZOOMGOV AUDIO AND VIDEO**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On December 11, 2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Donald H Cram    dhc@severson.com, cas@severson.com
- Evelina Gentry    evelina.gentry@akerman.com, rob.diwa@akerman.com;reyko.delpino@akerman.com
- Monique D Jewett-Brewster    mjb@lathropgpm.com, natalie.gonzalez@lathropgpm.com
- Steven M Kries    skries@acc.capital
- Leib M Lerner    leib.lerner@alston.com, autodockettest-lax@alston.com;Melanie.mizrahie@alston.com
- Mark S Lichtenstein    mark.lichtenstein@akerman.com, reyko.delpino@akerman.com
- Kenneth Misken    Kenneth.M.Misken@usdoj.gov
- David W Parham    david.parham@akerman.com, teresa.barrera@akerman.com;cindy.ferguson@akerman.com
- Lisa M Peters    lisa.peters@kutakrock.com, marybeth.brukner@kutakrock.com
- Laura Taveras    laura.taveras@akerman.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Brian J Wagner    brian.wagner@kutakrock.com, mary.clark@kutakrock.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On December 11, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on December 11, 2024, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 11, 2024 | Natalie D. Gonzalez | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014    Page 9    F 4001-1.RFS.NONBK.MOTION

8:24-bk-12738-TA
Newport Ventures, LLC

**PARTIES SERVED BY**
**UNITED STATES MAIL**

**DEBTOR**

Newport Ventures, LLC
Attn: Managing Agent
1442 E Lincoln Ave Ste 363
Orange, CA 92865

Evelina Gentry
633 West Fifth Street
Suite 6400
Los Angeles, CA 90071

Mark S Lichtenstein
1251 Avenue of the Americas 37th
Fl
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
New York, NY 10020

David W Parham
2001 Ross Avenue, Suite 3600
Dallas, TX 75201

Leah S Siaontz
Three Brickell City Centre
98 Southeast Seventh St Ste 1100
Miami, FL 33131

Steven M Kries
American Colonial Capital
8059 S. Elk Way
Aurora, CO 80016

Laura Taveras
2001 Ross Avenue, Suite 3600
Dallas, TX 75201

**20 LARGEST UNSECURED**
**CREDITORS**

Colorado Comfort Air
Attn: Managing Officer/Agent
P.O. Box 1962
Commerce City, CO 80037

Envysion Inc.
Attn: Managing Officer/Agent
PO BOX 669142
Dallas, TX 75266-9142

Heritage Advisors LLC
Attn: Managing Officer/Agent
1500 East Bethany Home Rd
Suite 250
Phoenix, AZ 85014

NCR Voyix Corporation
Attn: Managing Officer/Agent
P.O. Box 198775
Atlanta, GA 30384-8755

New Horizon Communications
Attn: Managing Officer/Agent
P.O. Box 981073
Boston, MA 02298-1073

Scape Sol Landscaping
Attn: Managing Officer/Agent
4331 W. Wagon Trail Dr.
Denver, CA 80123-1674

**OTHER PARTIES**

Auxilior Capital Partners, Inc
Atten: Managing Officer/Agent
620 W Germantown Pk Ste 450
Plymouth Meeting, IL 60674-0520

Shahvand Aryana
1442 Lincoln Ave., Suite 363
Orange, CA 92865

Kathy Aryana
14507 W. Christy Dr.
Surprise, AZ 85379

Ernie Abarro
1442 E. Lincoln Ave., Suite 363
Orange, CA 92865

Leah S Siaontz
Three Brickell City Centre
98 Southeast Seventh St Ste 1100
Miami, FL 33131

1    Monique D. Jewett-Brewster, State Bar No. 217792
     mjb@lathropgpm.com
2    LATHROP GPM LLP
     70 South First Street
3    San Jose, CA 95113
     mailing address:
4    P.O. Box 1469
     San Jose, CA 95109-1469
5    Telephone: 408.286.9800
     Facsimile: 408.998.4790
6
     Benjamin C. Struby, MO State Bar No. 56711
7    benjamin.struby@lathropgpm.com
     LATHROP GPM LLP
8    2345 Grand Blvd., Suite 2200
     Kansas City, MO 64108-2618
9    Telephone: 816.292.2000
     (admitted pro hac vice)
10
     Attorneys for Del Taco LLC, a California limited
11   liability company

12

13                    UNITED STATES BANKRUPTCY COURT

14                    CENTRAL DISTRICT OF CALIFORNIA

15

16   In re:                              Case No. 8:24-bk-12738-TA

17   Newport Ventures LLC                MEMORANDUM OF POINTS AND
                                         AUTHORITIES IN SUPPORT OF DEL
18                                       TACO'S MOTION FOR RELIEF FROM
                                         THE AUTOMATIC STAY
19
                                         Chapter 11
20
                                         Date:   January 7, 2025
21                                       Time:   10:30 a.m.
                                         Place:  Via ZoomGov Video and Audio
22                                       Judge:  Hon. Theodor Albert

23

24

25

26

27

28

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

                                                                    8:24-bk-12738-TA
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEL TACO'S MOTION FOR RELIEF FROM THE AUTOMATIC
STAY

1

**TABLE OF CONTENTS**

2

**Page**

3

I.      INTRODUCTION ..................................................................................................... 1

4

II.     STATEMENT OF FACTS ....................................................................................... 1

5

    A.      Background ................................................................................................... 1

6

    B.      The Franchise Agreements .......................................................................... 3

7

    C.      The Debtor's Defaults under the franchise agreements: ............................. 4

8

    D.      Pre-petition Termination of the Franchise Agreements and Grant of
    Temporary License ...................................................................................... 6

9

III.    APPLICABLE LAW AND ARGUMENT ............................................................. 8

10

    A.      The Franchise Agreements Have Been Terminated and There is Not

11

    a Post-Petition Cure Period ......................................................................... 8

12

    B.      The Automatic Stay Should Be Lifted ...................................................... 10

13

    C.      Applicable Standards for Relief From the Automatic Stay ...................... 11

14

    D.      "Cause" Exists to Grant Del Taco Relief from the Automatic Stay
    Pursuant to 11 U.S.C. § 362(d)(1) Because the Franchise

15

    Agreements Terminated Pre-Petition ........................................................ 12

16

    E.      The Court is bound by the Ninth Circuit's Hypothetical Test. ................. 13

17

    F.      The 14-Day Stay Provision of Bankruptcy Rule 4001(a)(3) Should
    Be Waived .................................................................................................. 14

18

IV.     CONCLUSION ...................................................................................................... 14

19

20

21

22

23

24

25

26

27

28

- i -                                                                                        8:24-bk-12738-TA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re B-K of Kansas, Inc.*,
  69 B.R. 812 (Bankr. D. Kan. 1987) .................................................................. 8

*In re Beguelin*,
  220 B.R. 94 (B.A.P. 9th Cir. 1998) ................................................................ 12

*California Sun Tanning USA, Inc. v. Elec. Beach, Inc.*,
  369 Fed. Appx. 340 (3rd Cir. Mar. 11, 2010) ............................................... 10

*In re Castlerock Properties*,
  781 F.2d 159 (9th Cir. 1986) ......................................................................... 12

*Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*,
  No. 2:10-2751, 2011 WL 4594910 (C.D. Cal. Feb. 23, 2011) ...................... 10

*Christensen v. Tucson Estates, Inc.*,
  912 F.2d 1162 (9th Cir. 1990) ....................................................................... 11

*In re Indian River Estates, Inc.*,
  293 B.R. 429 (Bankr. N.D. Ohio 2003) ......................................................... 12

*In re Iriss*,
  630 F.2d 1370 (10th Cir. 1980) ....................................................................... 8

*Knights Franchise Sys., Inc. v. P.C.P.S. Corp.*,
  No. 06- 5243, 2009 WL 3526229 (D.N.J. Oct. 21, 2009) ............................. 10

*Kopelman v. Halvagjian (In re Triangle Lab.)*,
  663 F.2d 463 (3d Cir. 1981) ............................................................................ 8

*McDonald's Corp. v. Robertson*,
  147 F.3d 1301 (11th Cir. 1998) ..................................................................... 10

*Moody v. Amoco Oil Co.*,
  734 F.2d (7th Cir. 1984) .................................................................................. 8

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
  469 U.S. 189, 105 S. Ct. 658 (1985) ............................................................. 13

*In re Pinnacle Foods of California LLC*,
  No. 24-11015-B-11, 2024 WL 4481070 (Bankr. E.D. Cal. Oct. 10, 2024) ...... 13, 14

*Rich v. Maryland Nat'l Bank*,
  42 B.R. 350 (Bankr. D. Md. 1984) ................................................................ 12

*In re Rincon E., Inc.*,
  24 F.3d 248 (9th Cir. 1994) ............................................................................. 8

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*S&R Corp. v. Jiffy Lube Int'l, Inc.,*
    968 F.2d 371 (3rd Cir. 1992) ............................................................ 10

4

5

*In re Thompson,*
    186 B.R. 301 (Bankr. N.D. Ga. 1995) ................................................ 8

6

*In re Tornado Pizza, LLC,*
    431 B.R. 503 (Bankr. D. Kan. 2010) ................................................. 8

7

**Statutes**

8

11 U.S.C. § 362 ............................................................................................ 1

9

11 U.S.C. § 362(d) ......................................................................... 11, 12, 14

10

11 U.S.C. § 362(d)(1) .......................................................................... 11, 12

11

11 U.S.C. § 362(g) ................................................................................... 11

12

11 U.S.C. § 365(c)(1) ........................................................................... 13, 14

13

California Franchise Relations Act ........................................................... 14

14

Lanham Act ......................................................................................... 13, 14

15

**Rules**

16

Fed. R. Bankr. Proc. 4001(a)(3) .......................................................... 14, 15

17

18

19

20

21

22

23

24

25

26

27

28

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

8:24-bk-12738-TA

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEL TACO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

## I.    INTRODUCTION

Franchisor Del Taco LLC ("**Del Taco**") files this Memorandum of Points and Authorities in Support of its Motion for Relief from the Automatic Stay (the "**Motion**") to move the Court to modify the automatic stay pursuant to Section 362 of the United States Bankruptcy Code, and states as follows:

## II.    STATEMENT OF FACTS

### A.    Background

Del Taco LLC ("Del Taco") is a nationally recognized chain of restaurants and Del Taco's brand and image are key to the overall value and success of the Del Taco franchise system. (*See* Tang Declaration, ¶ 3). Del Taco offers its franchisees the opportunity to operate Del Taco franchised businesses ("**Del Taco Restaurants**" or "**Franchised Restaurants**") in specific geographic areas. Del Taco Restaurants offer quick service, fast casual dining to the general public serving Del Taco food and beverage products through a uniform menu featuring primarily Mexican-American foods like tacos and burritos, along with burgers, shakes, French fries, breakfast items, soft drinks, and similar food and beverage items. (*See* Tang Declaration, ¶ 4). Del Taco's brand and image are based principally on the use of certain trademarks (the "**Proprietary Marks**") and proprietary system for establishing and operating restaurant businesses **(**the "**System**") that Del Taco owns and licenses to authorized franchisees. (*See* Tang Declaration, ¶ 5). Del Taco spends substantial sums for advertising and promotion of the Proprietary Marks, which are widely recognized and contain a substantial amount of goodwill and consumer association. (*See* Tang Declaration, ¶ 5).

On September 29, 2023, Newport Ventures, LLC (the "**Debtor**" or "**Franchisee**") entered into a franchise agreement with Del Taco for operation of one (1) Del Taco Restaurant located in Colorado (the "**First Franchise Agreement**").  On September 29, 2023, the Debtor and Del Taco entered into an additional seventeen (17) franchise agreements (the "**Second Franchise Agreements**") for operation of seventeen (17) Del Taco Restaurants located in Colorado.  The First Franchise Agreement and the Second Franchise Agreements were amended by the parties pursuant to an October 4, 2023 First Amended Franchise Agreement (together with the First Franchise

LATHROP GPM LLP
ATTORNEYS AT LAW
San Jose • Redwood City

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEL TACO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

8:24-bk-12738-TA

Agreement and the Second Franchise Agreements, the "**Franchise Agreements**").  On May 22, 2024, the Debtor entered into a Franchise Renewal Agreement for Store Number 738. The Franchise Agreements contain all of the same terms, with different attachments identifying the specific location of each franchise and the expiration date of each particular franchise agreement. Attached as **Exhibits A – S** are copies of the Franchise Agreements, which are incorporated by this reference. (*See* Tang Declaration, ¶ 7).

On October 4, 2023, in conjunction with the Franchise Agreements, the Debtor executed a promissory note in favor of Del Taco in the amount of $125,000 (the "**Promissory Note**"). The Promissory Note was personally guaranteed by Shahvand Aryana, Katayoun Aryana and Ernesto Abarro. Attached as **Exhibit T**, is a copy of the Promissory Note, which is incorporated by this reference.  The due date of the Promissory Note was October 4, 2024. (*See* Tang Declaration, ¶ 8).

The Franchise Agreements were terminated pre-petition pursuant to Del Taco's Notice of Termination and Grant of Conditional Temporary License provided to the Debtors on October 21, 2024 (the "**Termination Notice**").  Attached as **Exhibit U** is a copy of the Termination Notice, which is incorporated by this reference.  As a result of the termination, the Franchise Agreements are not property of the Debtor's bankruptcy estate.

As set forth in the Termination Notice, the temporary license (the "**Temporary License**") will expire by the terms of the Termination Notice on December 20, 2024. (*See* Tang Declaration, ¶ 9).  The Debtor then filed the instant Bankruptcy on October 26, 2024 (the "**Petition Date**").

Del Taco files this Motion to confirm the automatic stay does not apply to the terminated Franchise Agreements. Del Taco also requests that this Court modify the stay to permit enforcement (through, if necessary, litigation in any appropriate forum) of its: 1) post-termination rights under the Franchise Agreements, including, without limitation, enforcement of the post-termination noncompetition and confidentiality covenants, enjoining the Debtor from using or infringing Del Taco's Proprietary Marks, compelling assignment of any real-estate leases for the restaurants that Del Taco requests assignment of and the surrender compelling assignment of, and to otherwise allow Del Taco to transition the Franchised Restaurants away from Debtor and protect its brand; and 2) the right to terminate the Temporary License.

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

## B. The Franchise Agreements

The Debtor's right to use the Proprietary Marks and to operate the Del Taco Restaurants was governed by the individual Franchisee Agreements. The Debtor's right to use the Proprietary Marks and to operate the Del Taco Restaurants is now governed by the Termination Notice.

The Franchise Agreements afford Del Taco with near absolute discretion to act in a unilateral manner to ensure the Proprietary Marks, System, and brand image remain intact. The Franchise Agreements provide:

- Business Judgment: "Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, <u>Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network</u>.";

- This right is without regard to whether: "Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests."; and

- "the terms of [] [the][Franchise] Agreement[s] . . . grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations."

(*See* Tang Declaration, ¶ 10, Exhibit A Section 30 (emphasis added).

In the event of Default, the Franchise Agreements authorize termination of the Franchise Agreements:

- <u>Termination Upon Notice Without Opportunity to Cure</u>: Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

  o "13.2.18 If Franchisee fails to make any payments when due to Del Taco"; or

  o "13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement."

(*See* Tang Declaration, ¶ 11, Exhibit A Section 13.2).

In the event of termination of the Franchise Agreements, Del Taco maintains important rights which survive termination, including, at its option, the right to step into the shoes of its terminated franchisees (such as the Debtor) on leases and requiring its franchisees to cease using

proprietary marks. Specifically, the Franchise Agreements identify:

- <u>Requirement that the Franchisee Cease Operations</u>: Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

- <u>Requirement that leases be assignable to Del Taco and right to assign leases</u>: Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises. Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises.

- <u>Damages and Costs</u>: Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

- <u>Cease Use of Proprietary Marks</u>: Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.

(*See* Tang Declaration, ¶ 12, Exhibit A Section 14).

## C.    The Debtor's Defaults under the franchise agreements:

Prior to the Termination Notice, on October 2, 2024, Del Taco provided written Notice of Debtor's Default and Demand for Verification of Payments to Third Parties ("**First Default Letter**"). A copy of the First Default Letter is attached and incorporated by this reference as **Exhibit V**. The First Default Letter identified numerous defaults, including:

- The Debtor was in default of Section 13.2.19 of the Franchise Agreements which provides that "the Franchisee shall be deemed to be in default...if Franchisee fails to submit to Del Taco any financial or other information required under this Agreement." Section 7.3 requires "Franchisee to submit to Del Taco a copy of their Profit and Loss Statement for each restaurant...on a quarterly basis as requested by Del Taco." Del Taco had requested quarterly Profit and Loss Statements for the Debtor's franchise locations, and the Debtor failed to provide the requested information. The Debtor was given five business days to provide the Profit and Loss Statements.

- Del Taco was in receipt of correspondence dated September 24, 2024 from Shahvand Aryana in which Mr. Aryana claimed all sales taxes, property taxes and 3rd party obligations are paid current or are subject to legitimate dispute as to the balance due. However, Del Taco subsequently received correspondence dated October 1, 2024, from Auxilior Capital Partners, Inc ("ACP") directed to Debtor, indicating that Debtor continued to be in default of its obligations to ACP and

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

- 4 -                                                                        8:24-bk-12738-TA
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEL TACO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

requesting written and documented evidence satisfactory to ACP that, among other things, all of Debtor's taxes, assessments, governmental charges and levies are paid current. Pursuant to Sections 7.3 and 7.4 of the Franchise Agreements, Del Taco demanded that the Debtor verify to Del Taco that all outstanding bills for sales taxes, property taxes and 3rd party obligations have been satisfied.

Thereafter, on October 14, 2024, Del Taco provided written notice of Debtor's Defaults under the Franchise Agreement. ("**Second Default Letter**") A copy of the Second Default Letter is attached and incorporated by this reference as **Exhibit W**. The Second Default Letter also identified numerous defaults, including:

- Del Taco and Debtor were parties to the Promissory Note, pursuant to which Debtor agreed to pay to Del Taco One Hundred and Twenty-Five Thousand Dollars ($125,000) by October 4, 2024. As of the date of the letter, Debtor had not paid any amounts due to Del Taco under the Promissory Note. Paragraph 13.2.18 of the Franchise Agreements provides that "the Franchisee shall be deemed to be in default...If Franchisee fails to make any payments when due to Del Taco." In order to cure this default, Del Taco demanded that Debtor pay $125,000 to Del Taco on or before Thursday, October 17, 2024.

- Paragraph 5.4.5 of the Franchise Agreements require the Debtor to "at all times maintain at least one certified general manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the restaurant." As of the date of the Second Default Letter, the Debtor did not maintain a certified general manager or maintain the required number of certified assistant general managers or certified shift managers in certain of the restaurants as identified on Exhibit A of Second Default Letter. In order to cure this under the Franchise Agreements, the Debtor was instructed that it must take the following actions: Enroll a sufficient number of candidates approved by Del Taco to begin training to satisfy the requirements of the Franchise Agreements by Wednesday, November 13, 2024.

- Paragraph 5.12.4 required the Debtor "to purchase and install, at Franchisee's expense...equipment...as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any...equipment...or other items not previously approved as meeting Del Taco's standards and specifications. Newport Ventures has installed unapproved Kratos clamshell grills in each of its Restaurants . . . [t]he clamshell grill that has been approved by Del Taco is manufactured by Proluxe." In order to cure those defaults, Debtor was instructed that it must purchase and install Proluxe clamshell grills in its Restaurants by Wednesday, November 13, 2024.

The Debtor failed to cure the defaults noted in the First Default Letter and the Second Default Letter. Any one of the identified defaults was sufficient to terminate the Franchise Agreements.

///

///

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

- 5 -                                                                    8:24-bk-12738-TA
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEL TACO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**D.    Pre-petition Termination of the Franchise Agreements and Grant of Temporary License**

On October 21, 2024 Del Taco delivered the Termination Notice, which terminated the Franchise Agreements and which granted the Temporary License to the Debtor that is set to expire on December 20, 2024. (*See* **Exhibit U**).

The Termination Notice referenced the Second Default Letter, specifically the Debtor's default of the Franchise Agreements (Paragraph 13.2.18) for, among other things, failure to make payments to Del Taco when due by not paying any amounts due to Del Taco under the Promissory Note because the Debtor failed to pay the full amount of $125,000 by October 17, 2024. Accordingly, the Franchise Agreements were terminated as of the date of the Termination Notice, October 21, 2024 (the "**Termination Date**").

The Termination Notice instructed the Debtor as follows:

For the parties to assess the next steps regarding the Franchised Restaurants, and to permit an orderly turnover of those Del Taco Restaurants and the assets of those Franchised Restaurants to Del Taco or a third party, Del Taco granted the Debtor the Temporary License, on the following terms ("**Temporary License Terms**"):

///

///

///

///

///

///

///

///

///

///

///

///

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

- 6 -                                                                          8:24-bk-12738-TA
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEL TACO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

1.  The term of the Temporary License begins on the day after the Termination Date and expires on December 20, 2024 ("Term"). Del Taco reserves the right to earlier terminate the Temporary License, for any reason with or without cause, by providing Franchisee written notice at any point during the Term. Del Taco also reserves the right to unilaterally extend the Term upon written notice to Franchisee. Any extension of the Term will be subject to the additional terms and conditions specified by Del Taco. Franchisee has no right to unilaterally extend or renew the Term.

2.  During the Term, Franchisee shall comply with all terms set forth in the terminated Franchise Agreements as modified by these Temporary License Terms. Specifically, Franchisee will continue to be responsible for, among other things, all amounts that are or would (but for the termination) become owed to Del Taco and its affiliates under the terms of the terminated Franchise Agreements (including, without limitation, royalty and advertising fees). In addition, Franchisee must operate the Franchised Restaurants in compliance with Del Taco's standards of operation, maintain the assets in the usual and ordinary course of business, maintain all required insurance, and maintain the premises of the Franchised Restaurants in accordance with Del Taco's standards.

3.  During the Term, to the extent that an approved third party is identified by Del Taco, Franchisee must work with and assist Del Taco in good faith to facilitate turnover of the Franchised Restaurants to that third party, including negotiations with all lienholders on the assets of the Franchised Restaurants, transition of employees and staff, provision of information regarding vendors and outstanding amounts owed to those vendors, and execution of any documentation necessary to transfer accounts to that third party, among other things.

4.  If the Term expires or is terminated, Franchisee must undertake all post-termination actions required by the terminated Franchise Agreements, including immediately paying Del Taco and its affiliates all amounts due pursuant to the terminated Franchise Agreements and all other agreements between any Franchisee and Del Taco (including leases); promptly returning to Del Taco the Manuals and any other confidential or proprietary information; and complying with the post-termination noncompetition and confidentiality covenants. The time frames for compliance with and enforcement of the post-termination rights and obligations of the parties under the terminated Franchise Agreements (such as the post-termination noncompetition covenants) will not begin to run until the Term of the Temporary License expires or has been terminated.

5.  Del Taco's grant of the Temporary License does not constitute a waiver of any claims Del Taco may have against Franchisee, its owners or guarantors, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of the terminated Franchise Agreements (including the guarantees) or any other agreements (including any leases for the Franchised Restaurants), nor a waiver of Del Taco's rights to enforce its rights relative to termination as stated in those Franchise Agreements. Neither the termination of the Franchise Agreements nor the grant of the Temporary License relieves Franchisee, or their owners or guarantors, from, or waives any liabilities or obligations under, those Agreements, except as may be otherwise specified in those Agreements.

6.  Franchisee acknowledges that Del Taco validly terminated the Franchise Agreements.

By continuing to operate after the Termination Date, Franchisee acknowledges their

Newport Ventures, LLC
October 21, 2024
Attn: Kathy Aryana and Ernie Abarro
Page 3

agreement to the terms noted above.

Finally, pursuant to various guarantees, the Guarantors agreed to guarantee and be bound by Franchisee's obligations under the Franchise Agreements. By copy of this Notice of Termination, Del Taco is providing notice to each guarantor and reminding the guarantors that they are jointly and severally responsible for all amounts that Franchisee owes to Del Taco.

(*See* Tang Declaration, ¶¶ 13-17, Exhibit U).

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

III.    **APPLICABLE LAW AND ARGUMENT**

    A.    **The Franchise Agreements Have Been Terminated and There is Not a Post-Petition Cure Period**

    The automatic stay only protects property of the estate and a contract validly terminated pre-petition is "not resurrected by the filing of the petition in bankruptcy, and cannot therefore be included among the debtor's assets." *Kopelman v. Halvagjian (In re Triangle Lab.),* 663 F.2d 463, 467-68 (3d Cir. 1981); *see also In re Rincon E., Inc.*, 24 F.3d 248 (9th Cir. 1994) ("A franchise agreement that has been validly terminated pre-petition is not an assumable executory contract.") (internal citation omitted); *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1212-13 (7th Cir. 1984) (franchise agreement not property of the estate where right to cure franchise agreement terminated pre-petition and termination was automatically effective pre-petition; notice of termination sent post-petition did not extend debtor's time to cure default); *In re Iriss,* 630 F.2d 1370 (10th Cir. 1980) (contract terminated before filing cannot be assumed or rejected); *In re Tornado Pizza, LLC,* 431 B.R. 503, 510-11 (Bankr. D. Kan. 2010) ("when a franchise agreement has been terminated for cause prepetition and the termination process is complete with no right to cure when the petition is filed, the debtor does not have a property interest in the franchise on the date of filing and there is no executory contract to assume, even if on the date of filing the debtor remains in possession of the franchised business and continues to use the franchisor's trademark property. The bankruptcy filing does not resuscitate the terminated rights."); *In re Thompson,* 186 B.R. 301, 307 (Bankr. N.D. Ga. 1995) (contract terminated pre-petition "cannot be revived solely by virtue of a bankruptcy petition. Filing for bankruptcy relief does not confer new rights on a debtor in regard to [] terminated agreements and a debtor is not permitted to cure his defaults and/or assume such agreements."); *In re B-K of Kansas, Inc.,* 69 B.R. 812, 816 (Bankr. D. Kan. 1987) (holding that franchise agreements that terminated pre-petition are not property of the bankruptcy estate).

    Here, the Franchise Agreements were terminated with no opportunity to cure on October 21, 2024, which was prior to the Petition Date. Therefore, the Court should determine that the automatic stay does not apply to the Franchise Agreements and that the Franchise Agreements are not part of the estate.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEL TACO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

The Debtor could have cured, but chose not to cure, the defaults identified in the First

Default Letter and Second Default Letter – rather than curing, the Debtor did not address its defaults

and instead and filed this Bankruptcy.

In multiple filings, the Debtor alleges that Del Taco is a bad actor, in what appears to be an

effort to claw back the Franchise Agreements. For example, in the Declaration of Shahvand Aryana,

filed as part of Debtor's first day motions ("**First Day Declaration**"), Aryana states that the

"Debtor disputes that the Franchise Agreements were properly terminated and believes they remain

in full force and effect." ECF No. 26, at ¶ 9. The First Day Declaration alleges that Del Taco

attempted to terminate the Debtor's Franchise Agreements "unilaterally" and issued the Temporary

License where the Temporary License Terms allow Del Taco to terminate the Temporary License

for any reason with or without cause. *Id.*

As set forth in the Franchise Agreements, Del Taco was authorized to terminate the

Franchise Agreements without opportunity to cure defaults, effective immediately upon the

delivery of written notice to the Debtor if the Debtor failed to make any payments when due to Del

Taco. *See* Franchise Agreements ¶ 13.2.18. The Debtor failed to make payment in accordance with

the Promissory Note, thereby defaulting on the Franchise Agreement, and cannot attempt to revisit

that choice by filing their Chapter 11 petition. (*See* Exhibits T, V). Del Taco provided the Debtor a

cure period in the Second Default Letter and the Debtor failed to comply. As such, Del Taco had

the right to unilaterally terminate the Franchise Agreements upon written notice, which it did.  Del

Taco provided the Temporary License to ensure proper transition of the Franchised Restaurants

away from Debtor and to protect its brand image and Proprietary Marks.

Del Taco's allowance of the Temporary License was to safeguard an orderly transition of

the Franchised Restaurants, to ensure customers have access to the Del Taco locations, and protect

its brand image. The Temporary License does not provide an extended cure period for the Debtor

to revive the Franchise Agreements. The Debtor also has no right to unilaterally extend or renew

the Term on the Temporary License. *See* Exhibit U.

In the First Day Declaration, the Debtor complains that "Franchisor's oppressive

administrative requirements . . . created several significant issues that had a critical impact on the

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEL TACO'S MOTION FOR RELIEF FROM THE AUTOMATIC
STAY

8:24-bk-12738-TA

1    Debtor's ability to operate efficiently and more profitably." ECF No. 26, at ¶ 11. Specifically, the

2    Debtor complains about: an incompatibility of the POS and payroll systems; very restrictive control

3    over pricing and promotions; Franchisor mandated menu and pricing updates; and Franchisor

4    mandated third-party delivery partnerships. ECF No. 26, at ¶ 11.

5         Debtor's claims simply are not valid. The Debtor agreed to specific obligations when it

6    signed the Franchise Agreements to operate the Del Taco Restaurants, including: installation and

7    use of software as specified by Del Taco and mandated maximum prices on menu items. (*See*

8    Exhibit A, Section 5 generally). In any event, those complaints are not relevant for purposes of

9    granting this Motion and the Franchise Agreements provided no excuse for the Debtor's failure to

10    comply with the terms of the Franchise Agreements or the failure to pay amounts owed when due.

11    *See California Sun Tanning USA, Inc. v. Elec. Beach, Inc.,* 369 Fed. Appx. 340, 348 (3rd Cir. Mar.

12    11, 2010) (rejecting a franchisee's argument that the franchisor's alleged breach of contract barred

13    specific performance); *S&R Corp. v. Jiffy Lube Int'l, Inc.,* 968 F.2d 371, 375 (3rd Cir. 1992) ("a

14    franchisor's right to terminate a franchisee exists independently of any claims the franchisee might

15    have against the franchisor."); *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1308-09 (11th Cir.

16    1998) (holding that "a franchisor's right to terminate a franchisee exists independently of any

17    claims the franchisee might have against the franchisor. The franchisor has the power to terminate

18    the relationship where the terms of the franchise agreement are violated"); *Century 21 Real Estate*

19    *LLC v. All Prof'l Realty, Inc.,* No. 2:10-2751, 2011 WL 4594910, at *1-2 (C.D. Cal. Feb. 23, 2011)

20    ("The validity of a franchisor's termination depends on whether the franchisee breached the

21    franchise agreement, and a franchisor's breach does not excuse a franchisee's breach."); *Knights*

22    *Franchise Sys., Inc. v. P.C.P.S. Corp.,* No. 06- 5243, 2009 WL 3526229, at *3-4 (D.N.J. Oct. 21,

23    2009) (holding that a franchisee is not excused from paying franchise fees based on a claim the

24    franchisor breached the franchise agreement).

25        **B.    The Automatic Stay Should Be Lifted**

26         To the extent the Court believes that the grant of the Temporary License is an executory

27    contract that the Debtors can assume and/or that the Franchise Agreements have not been

28    terminated, Del Taco seeks to modify the stay and permit Del Taco to terminate the Temporary

1  License and/or terminate the Franchise Agreements. Del Taco also seeks to modify the stay to

2  permit Del Taco to enforce its post-termination rights under the Franchise Agreements, including,

3  but not limited to enforcement of the post-termination noncompetition and confidentiality

4  covenants, enjoining the Debtor from using or infringing on Del Taco's Proprietary Marks,

5  compelling assignment of leases for any Franchised Restaurant that Del Taco requests assignment

6  of, and to otherwise allow Del Taco to transition the Franchised Restaurants away from Debtor and

7  protect its brand.

8       **C.    Applicable Standards for Relief From the Automatic Stay**

9       The Bankruptcy Code permits relief from the automatic stay in recognition of the fact that

10  the automatic stay may impose an unfair burden on creditors.  Specifically, section 362(d) provides,

11  in relevant part, as follows:

12           (d)    On request of a party in interest and after notice and a hearing,
13  the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

14

15           (1)    for cause, including the lack of adequate protection of an interest in property of such party in interest; ...."

16  11 U.S.C. § 362(d).

17       The Bankruptcy Code places the principal burden on the debtor of demonstrating that there

18  is no cause for relief from the automatic stay when a party in interest seeks relief on such ground.

19  Specifically, 11 U.S.C. section 362(g) provides, in relevant part:

20           (g)    In any hearing under subsection (d) ... of this section
21  concerning relief from the stay of any act under subsection (a) of this section—

22           ....

23           (2)    the party opposing such relief has the burden of proof on all
24  other issues [than the issue of the debtor's equity in property].

25  11 U.S.C. § 362(g).

26       "Cause" as used in Bankruptcy Code § 362(d)(1), "has no clear definition and is determined

27  on a case-by-case basis." *Christensen v. Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990);

28  accord *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir. 1986); *In re Beguelin*, 220 B.R. 94,

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

8:24-bk-12738-TA

97-98 (B.A.P. 9th Cir. 1998). The "cause" standard contained in Bankruptcy Code section 362(d)(1) is "broad and extends beyond the concept of a lack of adequate protection mentioned in the statutes." *Rich v. Maryland Nat'l Bank*, 42 B.R. 350, 354 (Bankr. D. Md. 1984); *see also In re Indian River Estates, Inc.*, 293 B.R. 429, 433 (Bankr. N.D. Ohio 2003) ("As used in [section] 362(d)(1), the term 'cause' is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situation.") (internal citations omitted).

### D. "Cause" Exists to Grant Del Taco Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) Because the Franchise Agreements Terminated Pre-Petition

The Franchise Agreements Terminated pre-petition and are not assets of the bankruptcy estate and Del Taco has rights under the Franchise Agreements upon termination that survive termination, such as to require the Debtor to cease operations, discontinue the use of Proprietary Marks, and to compel assignment of leases. The Temporary License, which is set to expire without automatic renewal within a matter of weeks from the filing of Del Taco's Motion for Relief from the Automatic Stay, granted very specific rights to the Debtors to allow the successful turnover of operations to Del Taco or a third party of Del Taco's choosing and did not grant the full rights of the Franchise Agreements.

There is little prejudice to the Debtors or their estate if the stay is lifted because the Franchise Agreements were terminated pre-petition. Even under the Temporary License Del Taco has the right to terminate for any reason and without cause, and the Temporary License is set to expire without automatic renewal. Cause exists in that, if the stay remains in place, Del Taco will suffer harm due to, among other things, the Debtor's failure to make required payments, the Debtor's use of the Proprietary Marks without permission, and the Debtor operating Del Taco Restaurants in contravention of the authorizations or requirements set forth in the Franchise Agreements. Cause further exists because Del Taco will also be in danger of negative brand goodwill and reputation, should the Debtor continue to operate outside of the requirements of the Franchise Agreements and Temporary License. The Debtor's continued use of the Proprietary

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

- 12 -                                          8:24-bk-12738-TA
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEL TACO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

1    Marks puts the reputation of Del Taco's brand and its reputation at stake.[1] *See Park 'N Fly, Inc. v.*

2    *Dollar Park and Fly, Inc.,* 469 U.S. 189, 198, 105 S. Ct. 658, 663 (1985) ("The Lanham Act

3    provides national protection of trademarks in order to secure to the owner of the mark the goodwill

4    of his business and to protect the ability of consumers to distinguish among competing producers.").

5         **E.    The Court is bound by the Ninth Circuit's Hypothetical Test.**

6         The Debtor cannot assume the Temporary License and/or the Franchise Agreements

7    (assuming, *arguendo*, that they were not terminated) without the consent of Del Taco, which it will

8    not give.  This issue was recently vetted in the United States Bankruptcy Court for the Eastern

9    District of California.  The court in *In re Pinnacle Foods of California LLC*, No. 24-11015-B-11,

10    2024 WL 4481070 (Bankr. E.D. Cal. Oct. 10, 2024) recognized that it was bound by the Ninth

11    Circuit "hypothetical test" when interpreting 11 U.S.C. § 365(c)(1). Section 365(c)(1) provides that

12    "a debtor may neither assume nor assign a contract if applicable law excuses a counterparty to the

13    contract from accepting performance from or rendering performance to any entity other than the

14    debtor unless the counterparty consents to such assumption and/or assignment." *Id*. at *2. In

15    *Pinnacle*, the bankrupt debtor operated six Popeyes fast food restaurants under franchise

16    agreements with franchisor Popeyes Louisiana Kitchen Inc. ("**Popeyes**"), and attempted to assume

17    such franchise agreements as part of their chapter 11, subchapter V case. Relying on Section

18    365(c)(1) Popeyes opposed the motion, and argued it was "excused from accepting performance or

19    rendering performance to a hypothetical third party" under the Ninth Circuit test. *Id*. at *1.  That

20    court explained:

21            Under the "hypothetical test," even if the debtor merely wishes to
        assume an executory contract or an unexpired lease and not assign
22            its contract rights to a third party, the counterparty may still withhold
        its consent and block assumption if there is a hypothetical third party
23            to whom the debtor might assign its contract rights but as to whom
        the counterparty would be excused from performing for under
24            applicable law.

25    _____

26    [1]  *See* <u>Exhibit X</u>, which is a letter Del Taco and accompanying enclosures received from an
anonymous employee at one of the Debtor's Colorado Del Taco Restaurants, the letter complaining

27    that the Debtor's owners encouraged the use of expired food and created an unsafe work
environment and, the enclosures including two Colorado Public Health Inspection Reports.

28    Although the letter is dated before bankruptcy filing, Del Taco did not receive this letter until after
the Petition Date.

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEL TACO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

1   *Id*. at \*2. The court found that the Lanham Act and the California Franchise Relations Act both

2   provided "applicable law" pursuant to Section 365(c)(1) to allow Popeyes to withhold its consent

3   and block the debtor's assumption of the franchise agreements. Id. at \*6-9. The court reasoned that

4   pursuant to the Latham Act, the "owner of the trademark has an interest in the party to whom the

5   trademark is assigned so that it can maintain the good will, quality, and value of its products and

6   thereby its trademark, trademark rights are personal to the assignee and not freely assignable to a

7   third party." *Id*. at 6. The court also found that the California Franchise Relations Act provided

8   alternative grounds for Popeyes to withhold consent, as there may be a hypothetical third party

9   whom the debtor could assign the franchise agreements to, who did not qualify for Popeyes

10  standards of approval. *Id*. at \*9. The court recognized "the application of the hypothetical test, in

11  many situations, may give veto power over the possibility of effective reorganization to the

12  franchisor, who may also be a hostile creditor. Unfortunately, *dura lex sed lex* -- The law is hard,

13  but it is the law." *Id*. at 9.

14      The foregoing demonstrates that the Debtor cannot assume the Temporary License or

15  Franchisee Agreements without the consent of Del Taco, which, like Popeye's, can withhold

16  consent and block assumption.

17      **F.      The 14-Day Stay Provision of Bankruptcy Rule 4001(a)(3) Should Be Waived**

18      Bankruptcy Rule 4001(a)(3) provides that any order granting Del Taco's motion is stayed

19  until the expiration of 14 days after the entry of the stay relief order, unless the Court orders

20  otherwise.  Here, there is no just cause for delaying the effectiveness of any order granting Del

21  Taco's request for stay relief.

22  **IV.   CONCLUSION**

23      For the foregoing reasons, Del Taco respectfully requests that the Court enter an order:

24  (i) granting immediate relief from the automatic stay under Bankruptcy Code section 362(d) to

25  permit Del Taco to exercise its termination rights under its Franchise Agreements, including

26  without limitation, enforcement of the post-termination noncompetition and confidentiality

27  covenants, enjoining the Debtor from using or infringing Del Taco's Proprietary Marks, compelling

28  assignment of any real-estate leases for the restaurants that Del Taco requests assignment, and to

otherwise allow Del Taco to transition the Franchised Restaurants away from Debtor and protect

its brand; (ii) the right to terminate the Temporary License granted in the Termination Notice;

(iii) waiving the 14-day stay provided under Bankruptcy Rule 4001(a)(3); and (iv) for any other

relief the Court deems necessary and proper under the circumstances.

Dated: December 11, 2024          LATHROP GPM LLP

By: /s/ *Monique D. Jewett-Brewster*
Monique D. Jewett-Brewster, State Bar No. 217792
mjb@lathropgpm.com
LATHROP GPM LLP
70 South First Street
San Jose, CA 95113
mailing address:
P.O. Box 1469
San Jose, CA 95109-1469
Telephone: 408.286.9800
Facsimile: 408.998.4790

and

By:/s/ *Benjamin C. Struby*
Benjamin C. Struby, MO State Bar No. 56711
benjamin.struby@lathropgpm.com
LATHROP GPM LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108-2618
Telephone: 816.292.2000
Admitted pro hac vice
Attorneys for Del Taco LLC,
a California limited liability company

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEL TACO'S MOTION FOR RELIEF FROM THE AUTOMATIC
STAY

# Exhibit A

DocuSign Envelope ID: 87A6EDD2-542F-42CD-BE6A-D6E637B698F5

Case 8:24-bk-12788-TA    Doc 156-1    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities in Support of    Page 47 of 1415    Page 21 of 1376

STORE 748



**FRANCHISE AGREEMENT**

# Table of Contents

**Page**

1. Grant. .........................................................................................................1
2. Term and Renewal. .....................................................................................3
3. Fees and Payments. .....................................................................................4
4. Services By Del Taco. .................................................................................6
5. Obligations of Franchisee; Operational Standards. ...................................7
6. Advertising and Marketing. ........................................................................19
7. Records and Reports. ..................................................................................20
8. Proprietary Marks. ......................................................................................22
9. Manuals. ......................................................................................................24
10. Confidentiality and Covenants Not To Compete. .......................................25
11. Insurance. ....................................................................................................27
12. Transfer of Interest. ....................................................................................29
13. Default and Termination. ............................................................................35
14. Obligations Upon Termination or Expiration. ............................................38
15. Taxes, Permits and Indebtedness. ...............................................................40
16. Independent Contractor and Indemnification. .............................................41
17. Governing Law and Dispute Resolution. ....................................................42
18. Time is of the Essence ................................................................................46
19. Approvals, Waivers and Binding Effects. ...................................................46
20. Notices. .......................................................................................................46
21. Force Majeure. ............................................................................................47
22. Immunity for Certain Limited Disclosures. ................................................47
23. Entire Agreement and Amendment. ............................................................47
24. Severability; Enforcement of Covenants; Construction. .............................48
25. Joint and Several Obligation. ......................................................................48
26. Incorporation of Exhibits. ...........................................................................48
27. Counterparts. ...............................................................................................48
28. Survival of Provisions. ...............................................................................49
29. Representations, Warranties and Acknowledgments. ..................................49
30. Business Judgment. .....................................................................................50

Exhibits:

A    Identification of Franchisee
B    Site Selection Addendum
C    Authorization Agreement for Prearranged Payments (Direct Debits)
D    Statement of Ownership Interests
E    Guarantee, Indemnification, and Acknowledgment
F    Non-Disclosure and Non-Competition Agreement
G    Addendum to Lease

i

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the ⎯29⎯ day of ⎯September⎯, 2023 (the "**Effective Date**").

## RECITALS

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.      Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.      Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.      Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.      Grant.

1.1      <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

DocuSign Envelope ID: 87A65DD2-542F-48GD-BE6A-D6E627B668F5

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

      1.2    <u>Protected Area</u>. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

      1.2.1    Advertise and promote the System within and outside of the Protected Area;

      1.2.2    Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

      1.2.2.1    Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

      1.2.3    Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

2

DocuSign Envelope ID: 87A36DD2-542F-43CD-BE6A-D5F537B669F5

Case 23-24ak1 222 8387 FA  Doc 1267 1  Filed 02/27/125 4  Entered 02/27/125 4108/152436  Desc
Memorandum of Points and Authorities  Main Document  Page 50 of 1415 of  Page 25 of 1376

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

**3.    Fees and Payments.**

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

3.8     Payments on Behalf of Franchisee.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9     Other Payments.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    No Refunds.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.     Services By Del Taco.**

4.1     Development of the Restaurant. Deleted As Not Applicable.

4.2     Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     Opening Assistance. Deleted As Not Applicable.

4.4     Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     Bulletins and Reports. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6F637B668F5

     4.9    <u>Inspection</u>. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

     4.10    <u>Delegation of Duties.</u> Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

**5.     Obligations of Franchisee; Operational Standards.**

     5.1    <u>System Standards and Development of Restaurant</u>.  Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

     5.2    <u>Pre-Opening Obligations</u>.  Deleted:

         5.2.1    Deleted As Not Applicable.

         5.2.2    Deleted As Not Applicable.

         5.2.3    Deleted As Not Applicable.

         5.2.4    Deleted As Not Applicable.

         5.2.5    Deleted As Not Applicable.

         5.2.6    Deleted As Not Applicable.

     5.3    <u>Restaurant Opening</u>.  Deleted As Not Applicable:

         5.3.1    Deleted As Not Applicable.

         5.3.2    Deleted As Not Applicable.

         5.3.3    Deleted As Not Applicable.

     5.3.4    Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

         5.3.5    Deleted As Not Applicable.

     5.4    <u>Training</u>. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

5.4.1 <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

5.4.2 <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

5.4.3 <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

5.4.4 <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

5.4.5 <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E237B669F5

Case 8:24-bk-12737-TA  Doc 1367-1  Filed 02/27/24  Entered 02/27/24 08:32:36  Desc
Memorandum of Points and Authorities  Page 57 of 1415    Page 31 of 1376

managers and employees are adequately trained and supervised.  Del Taco shall make classroom training available to all future management employees of Franchisee.  Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco.  If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

      5.4.6   [Reserved]

      5.4.7   Training costs.  The cost of all initial training instruction and required materials shall be borne by Del Taco.  All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

      5.4.8   Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

     5.5   Restaurant Premises.  Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time.  As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant.  Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

     5.6   Personnel.  Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe.  Franchisee shall comply with all applicable employment and wage and hour laws and regulations.  Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects.  Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco.  Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

     5.7   Health Standards.  Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant.  Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant.  Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

5.8    Restaurant Maintenance.  Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

5.9    Remodeling.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public.  The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

5.10    Franchisee Advisory Council.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

5.11    Equipment Upgrades.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

5.12    Standards and Specifications.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A05DD2-542F-43CD-BE6A-D5E637B669F5

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   <u>Suppliers</u>.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

11

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

5.13.1   If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

5.13.2   Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

5.13.3   Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

5.13.4   Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

5.13.5   Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

all suppliers in accordance with the agreed-upon terms. In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

5.13.6   Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

5.14    Inspections.   Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals. Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection. Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection. Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs. Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

5.15    Technology and Computer System.   At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

5.15.1   Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable. In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications. To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

5.15.2   Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following: (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CB-BE6A-B6F637B669F5

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   <u>Customer Data</u>.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   <u>Privacy Laws</u>.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.18    <u>Website</u>.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    <u>POS or Cash Register Systems</u>.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20    <u>Gift Cards</u>.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    <u>E-Mail, Internet and Other Media; E-Mail and Fax Communications</u>.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

    5.21.1    Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

    5.21.2    Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

       5.21.3   Franchisee agrees that: (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

       5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

      5.22   <u>Credit Cards and Other Methods of Payment</u>.    At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

      5.23   <u>Uniforms</u>.    To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

      5.24   <u>Incentive Programs</u>.    Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

      5.25   <u>Prices</u>.    With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

DocuSign Envelope ID: 87A65DD2-542E-43CB-BE6A-D5E627B669F5

5.26    Compliance with Laws and Good Business Practices.    Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.    All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.    Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    Franchisee Structure; Operating Principal and Owners.

5.27.1    Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2    If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3    If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4    Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

5.27.4.1    <u>Operating Principal</u>.  An Operating Principal shall participate personally in the direct operation of the Restaurant.  If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant.  Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2    <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee.  All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3    <u>General Manager</u>: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager").  The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4    <u>General Manager</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28    <u>Personal Guarantee</u>.  Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29    <u>System Modifications</u>.  Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants.  Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials.  Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense.  Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30 <u>No Third-Party Management</u>. The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco. Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

# 6. Advertising and Marketing.

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1 <u>Marketing Fee Expenditure</u>. Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above. Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2 <u>Local Advertising and Promotion.</u> All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws. Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B669F5

Case 23-22484-RAM Doc 1367-1 Filed 02/27/24 Entered 02/27/24 18:52:36 Desc
Memorandum of Points and Authorities In Support of Page 42 of 1376

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3     Costs of Local Advertising and Promotion.  As used in this Agreement, the term "**Local Advertising and Promotio**n" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1     Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2     Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3     The value of discounts provided to customers;

6.3.4     The cost of food items.

6.4     Approvals.  For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee).  If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them.  Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5     Promotional Materials. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials.  Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.     Records and Reports.

7.1     Records. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

20

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2    Periodic Reports. Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3    Reporting Requirements. In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4    Audit. Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5    Data. All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

21

DocuSign Envelope ID: 87A6FDD2-542F-43CD-BE6A-D6F837B669F5

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

      7.6    <u>Accounting and Bookkeeping Services</u>.  Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

      8.1    <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

      8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

      8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

      8.2    <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

      8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

      8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

      8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

      8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    Franchisee Acknowledgements. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B669F5

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

9.4    Revisions to the Manuals. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

## 10.    Confidentiality and Covenants Not To Compete.

10.1    Confidential Information. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2    Irreparable Injury. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3    Information Exchange. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4    Full Time and Best Efforts. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5    In-Term Covenants. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

          10.5.1  Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

          10.5.2  Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

      10.6   Post-Term Covenants.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

      10.7   Publicly-Held Corporations.  Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation. As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

      10.8   Individual Covenants.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal. The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement. Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request. Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

      10.9   Severability.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement. If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

      10.10  Scope of Covenants. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

DocuSign Envelope ID: 87A65DD2-542F-43CP-BE6A-D6E637B699F5

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

       10.11   <u>Enforcement of Claims</u>.  The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

       10.12   <u>Irreparable Injury</u>.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

       10.13   <u>Remedies Not Exclusive</u>.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

## 11.   Insurance.

       11.1   Franchisee shall comply with the following indemnification and insurance provisions:

       11.1.1   <u>Insurance Requirements</u>.  Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

       11.1.1.1   <u>Liability</u>.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

       11.1.1.2   <u>Fire</u>.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

DocuSign Envelope ID: 87A6EDD2-542F-48CD-BE6A-D6E827B698F5

11.1.1.3    <u>Business Interruption</u>.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4    <u>Business Automobile Liability Insurance</u>.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5    <u>Statutory Workers' Compensation Insurance</u>.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6    <u>Commercial Umbrella Liability Insurance</u>.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7    <u>Property Insurance</u>. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8    <u>Products Liability Insurance</u>. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9    <u>Cyber Liability Insurance</u>. Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10    <u>Other Insurance</u>. Any other insurance coverage that is required by federal, state, or municipal law.

11.2    <u>Referenced in Manuals</u>.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3    <u>Policy Cancellation</u>.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4    <u>Construction and Remodeling Insurance</u>.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E827B669F5

Case 8:24-bk-12674-TA Doc 1671 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Memorandum of Points and Authorities In Support Page 51 of 1376

11.5     No Waiver of Obligations.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6     Del Taco to be Additional Named Insured.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7     Evidence of Insurance.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8     Proof of Insurance.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9     Policy Limit Changes.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10     Del Taco's Insurance.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.     Transfer of Interest.**

12.1     Del Taco Transfers.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

29

DocuSign Envelope ID: 87A96DD2-542E-43CD-BE6A-D6E327B669F5

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

12.2   Owners. If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

12.3   Franchisee Transfers. Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

12.3.1   Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

12.3.2   If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

12.3.3   If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

12.3.4   Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

12.3.5   Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

12.4   Conditions for Approval. Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

12.4.8 The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9 At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000). The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training. The transfer fee is non-refundable. In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5 <u>Transfers to Entities for the Convenience of Ownership</u>. If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1 Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2 Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6     Right of First Refusal.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require. Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party. If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer. Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash. If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination. If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee. The cost of any such appraisal shall be shared equally by Del Taco and Franchisee. If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7     Transfer Upon Death.  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco. If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

12.8   Transfer Upon Permanent Disability.   Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.  If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.  Del Taco shall pay the cost of the required examination.

12.9   Notification Upon Death or Permanent Disability.  Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.  Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10   No Waiver of Claims.  Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11   Insolvency. If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12   Securities Offerings.  All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.  Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use. No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.  Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.  Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.  For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.  Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.  Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

**13.     Default and Termination.**

13.1     <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2     <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1   If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2   If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3   If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4   If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5   If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

13.2.6   If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7   If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8   If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9   If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

        13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

        13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

        13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

        13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

        13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

        13.3   <u>Termination With Opportunity to Cure</u>.  Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.  If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

        13.4   <u>Extended Notice of Termination</u>. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

        13.5   <u>Assignment Upon Bankruptcy</u>.  If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options

37

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6    Other Remedies.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1   Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2   Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

13.6.3   Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4   Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.    Obligations Upon Termination or Expiration.

14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1   Cease Operations.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2   Cease Use of Proprietary Marks.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3   Cancellation of Assumed Names.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4  <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%. The payments called for in this Section 14.1.4 are not a penalty. A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined. Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event. Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5  <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6  <u>No Confusion</u>.  Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7  <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises. Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises. If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose. In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco. If Franchisee fails or refuses to comply with the

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

       14.1.8  <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

       14.1.9  <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

       14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.    Taxes, Permits and Indebtedness

    15.1  <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

    15.2  <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BF6A-D6E637B668F5

15.3   Compliance With Laws.   Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.   Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.   To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4   Notification of Claims.   Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16.   Independent Contractor and Indemnification.

16.1   It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1   Identification as Independent Contractor.   At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2   No Agency.   Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3   Indemnification.   Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

41

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17.     Governing Law and Dispute Resolution.

17.1     <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions. However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement. Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2     <u>Venue.</u>  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California. The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above. Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision. Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3     <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1     <u>Demand to Arbitrate</u>. The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute. The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought. A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2     <u>Appointment of Arbitrators</u>. Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration. If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association. Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect. If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3     <u>Conduct of Arbitration</u>. Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

17.3.3.1 <u>Power of Chairman</u>. The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2 <u>Response to Demand</u>. Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration. The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure. If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3 <u>Amendment of Claim</u>. If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim. The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4 <u>Time for Arbitration Hearing</u>. The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5 <u>List of Witnesses and Documents</u>. Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand. The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party. The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time. The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing. The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6 <u>Record</u>. The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party. The cost of the stenographic record should be borne by the parties equally.

17.3.3.7 <u>Attendance at Hearings</u>. Any person who is a party to the arbitration may attend the hearings. The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness. The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8 <u>Adjournments</u>. Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

17.3.3.9   <u>Production of Witnesses and Records</u>.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10   <u>Absence of a Party</u>.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11   <u>Authority to Administer Oaths</u>.  The chairman may administer oaths.

17.3.3.12   <u>Evidence</u>.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13   <u>Evidence by Affidavit and Filing of Documents</u>.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14   <u>Discovery</u>.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15   <u>Reopening of Hearings</u>.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16   <u>Extensions</u>.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

DocuSign Envelope ID: 87A65DD2-562F-48CD-BE6A-D6E637B669F5

Case 8:24-bk-12827-TA Doc 1367-5 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities In Supp Page 67 of 1376

        17.3.3.17   <u>Time for Award</u>.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

        17.3.3.18   <u>Confidentiality</u>.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

        17.3.4   <u>Application of Federal Rules of Civil Procedure</u>.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

        17.3.5   <u>Finality; Enforcement; Venue</u>.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

        17.3.6   <u>Arbitration Costs, Attorneys' Fees and Costs</u>.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

        17.3.7   <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

    17.4   <u>Injunctive Relief</u>.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

    17.5   <u>Limitation of Actions</u>**. EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

    17.6   <u>Waiver of Damages</u>. **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

45

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

18.     **Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

19.     **Approvals, Waivers and Binding Effects.**

19.1     Approvals.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2     No Warranties. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3     Waivers. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4     Binding Effect; No Other Rights. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

20.     **Notices.**

20.1     Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B669F5

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party.  Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

| | |
|---|---|
| Del Taco: | 25521 Commercentre Drive, Suite 200 |
| | Lake Forest, California 92630 |
| | Fax Number: (949) 616-5002 |
| | |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

**21.     Force Majeure.**

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party.  Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof;  compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event.  The notice shall describe the nature of the event and an estimate as to its duration.

**22.     Immunity for Certain Limited Disclosures.**

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

**23.     Entire Agreement and Amendment.**

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement.  There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

24. **Severability; Enforcement of Covenants; Construction.**

24.1    <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2    <u>Enforceability of Covenants</u>.  Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3    <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision.  Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

25. **Joint and Several Obligation.**

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

26. **Incorporation of Exhibits.**

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

27. **Counterparts.**

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

**28.    Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

**29.    Representations, Warranties and Acknowledgments.**

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    <u>Receipt of Documents</u>.    Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    <u>No Other Obligations.</u>    Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

      29.1.8  <u>Restaurant Location.</u> Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

      29.1.9  <u>Compliance with Anti-Terrorism Laws and Other Laws</u>. Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of **"Specially Designated Nationals"** or **"Blocked Persons"** maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx  /); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.    Business Judgment.

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

DocuSign Envelope ID: 87A6FDD2-5425-42CD-BE6A-D6E327B669F5

Case 23-24585-CMB Doc 156-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities In Support of Page 73 of 1376

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

**[SIGNATURE PAGE FILLOWS]**

51

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D5E637B668F5

Executed as of the day and year first set forth above.

FRANCHISOR:                          **DEL TACO LLC**

By: _Jack Tang_

Jack Tang
Vice President & General Counsel

FRANCHISEE:                          **NEWPORT VENTURES, LLC**

By: Techno Industries Inc
Its President & CEO

_Ernesto Abarro_

Ernesto Abarro

By: _[signature]_

Katayoun Aryana

Date: 9/6/2023

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-642F-42CD-BE6A-D6F627B669F5

Case 23-24488-nlik 12-788-1-FA Doc 1567-1 Filed 02/27/23 Entered 02/27/23 16:13:24:36 Desc
Memorandum of Points and Authorities Page 101 of 1415    Page 75 of 1376

<u>**Exhibit A**</u>

**Identification of Franchisee**

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |

2.      Notice Address of Franchisee:      1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014
E-Mail: ernieabarro@gmail.com
Fax Number: (949) 534-7000

3.      Location of Restaurant:      1645 Space Center Drive
Colorado Springs, CO 80915

4.      Protected Area:      A circular area within a one-mile radius
from the front door of the Restaurant, subject to Section
1.2. of the Franchise Agreement.

5.      Date of Takeover:       October 4, 2023

6.      Date of Expiration:      November 16, 2024

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-5425-42CD-BE6A-D5E527B668F5

## **EXHIBIT B**

## **Deleted As Not Applicable**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## EXHIBIT C

### Authorization Agreement for Prearranged Payments
### (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank                                    Mission Viejo, CA

_____            _____
Depository                                               Branch

26042 Marguerite Pkwy, Mission Viejo, CA 92692
_____
Street Address, City, State, Zip Code

122000247                                                7429826410
_____            _____
Bank Transit/ABA Number                          Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

_Ernesto Albarro_
_____
Depositor

By: _____

Title: _____

Date: _9/6/2023_____

Exhibit C

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## EXHIBIT D

### Statement of Ownership Interests

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| Individual/Entity Name | Percentage of Ownership/Nature of Interest* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6E537B668F5

## EXHIBIT E

## Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated ___September 29___, 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts.  Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S):

(Seal)    Signed: _____
*Ernesto Abarro*
33C81300BA31471...
(In his individual capacity)

Ernesto Abarro
120 S. Lovekin Blvd.
Blythe, CA 92225

(Seal)    Signed: _____
B05A39E60Z2D40E...
(In his individual capacity)

Katayoun Aryana
1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014

## EXHIBIT F

### Non-Disclosure and Non-Competition Agreement

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this __29__ day of _September_ 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

BACKGROUND:

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.      <u>Confidential Information</u>. Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.      <u>Covenants Not to Compete</u>.

(a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

(b)     Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)     Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)     Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)     Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any  Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)     As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of:  (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.     _Injunctive Relief._ Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.     _Severability._  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.     _Delay._  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.     _Jurisdiction, Venue and Choice of Law._  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D5E527B669F5

Case 8:24-bk-12738-TA   Doc 1567   Filed 02/27/25   Entered 02/27/25 16:15:36   Desc
Memorandum of Points and Authorities   Page 109 of 1415   Page 83 of 1376

7.     <u>Third-Party Beneficiary.</u>  Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this <u>29</u> day of <u>September</u> _____, 2023.

**FRANCHISEE:**                                    **OBLIGEE:**

**NEWPORT VENTURES, LLC**                **ERNESTO ABARRO**

By: _Ernesto Abarro_                          By: _Ernesto Abarro_
DocuSigned by:                                     DocuSigned by:
33C61360BA31471...                                 33C61360BA31471...
Ernesto Abarro

By: _(signature)_                            **KATAYOUN ARYANA**
DocuSigned by:
B05A39E6022040F...
Katayoun Aryana                              By: _(signature)_
                                             DocuSigned by:
                                             B05A39E6022040F...

DocuSign Envelope ID: 87A65DD2-542F-48CD-BF6A-D6E837B668F5

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.  In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

    Del Taco LLC
    25521 Commercentre Drive
    Lake Forest, California 92630
    Attn:  Jack Tang, Vice President, General Counsel

2.  In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.  The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.  Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.  All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be.  Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant.  Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D5E327B699F5

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.      Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.      Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.      Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.      Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.     The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.     The Lease is contingent upon Franchisor's written approval of the site.

12.     Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                    **Tenant**

By:_____            By:_____


Its:_____            Its:_____


Date:_____            Date:_____

Exhibit F-6

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

# DocuSign

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5 | | Status: Completed |
| Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE... | | |
| Source Envelope: | | |
| Document Pages: 1213 | Signatures: 177 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Jack Tang |
| AutoNav: Enabled | | 25521 Commercentre drive Suite 200 |
| EnvelopeId Stamping: Enabled | | Lake Forest, CA  92630 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | mhernandez@deltaco.com |
| | | IP Address: 209.234.159.82 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Jack Tang | Location: DocuSign |
| 9/5/2023 5:36:27 PM | mhernandez@deltaco.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication (None) | *Ernesto Abarro*<br>33C61360BA31471... | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 9/6/2023 10:33:13 AM<br>ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Jack Tang*<br>AD28CBFCF34348A... | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 9/29/2023 9:27:32 AM<br>ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication (None) | B05A39E6022040F... | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| | Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 7/28/2023 8:56:42 AM<br>ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/19/2021 12:45:45 PM
Parties agreed to: Ernesto Abarca, Jack Tabor (Ontario, CA)

Case 8:24-bk-12788-TA    Doc 1071    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities    Page 115 of 1415    Page 89 of 1376

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit B

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D9E327B689F5



## FRANCHISE AGREEMENT

DocuSign Envelope ID: 87A6FDD2-542F-48CD-BE6A-D6F637B669F5

Case 23-24δ4FkR122-888TFA  Doc 1567-5  Filed 02/27/24  Entered 02/27/24 08:52:36  Desc
Memorandum of Points and Authorities Page 120 of 1415    Page 94 of 1376

## Table of Contents

1.   Grant. ................................................................................................................. 1
2.   Term and Renewal. ............................................................................................. 3
3.   Fees and Payments. ............................................................................................ 4
4.   Services By Del Taco. ........................................................................................ 6
5.   Obligations of Franchisee; Operational Standards. ........................................... 7
6.   Advertising and Marketing. ............................................................................... 19
7.   Records and Reports. ......................................................................................... 20
8.   Proprietary Marks. ............................................................................................. 22
9.   Manuals. ............................................................................................................. 24
10.  Confidentiality and Covenants Not To Compete. .............................................. 25
11.  Insurance. ........................................................................................................... 27
12.  Transfer of Interest. ........................................................................................... 29
13.  Default and Termination. ................................................................................... 35
14.  Obligations Upon Termination or Expiration. ................................................... 38
15.  Taxes, Permits and Indebtedness. ..................................................................... 40
16.  Independent Contractor and Indemnification. ................................................... 41
17.  Governing Law and Dispute Resolution. ........................................................... 42
18.  Time is of the Essence ....................................................................................... 46
19.  Approvals, Waivers and Binding Effects. .......................................................... 46
20.  Notices. .............................................................................................................. 46
21.  Force Majeure. ................................................................................................... 47
22.  Immunity for Certain Limited Disclosures. ....................................................... 47
23.  Entire Agreement and Amendment. ................................................................... 47
24.  Severability; Enforcement of Covenants; Construction. ................................... 48
25.  Joint and Several Obligation. ............................................................................. 48
26.  Incorporation of Exhibits. .................................................................................. 48
27.  Counterparts. ...................................................................................................... 48
28.  Survival of Provisions. ....................................................................................... 49
29.  Representations, Warranties and Acknowledgments. ......................................... 49
30.  Business Judgment. ............................................................................................ 50

Exhibits:

A    Identification of Franchisee
B    Site Selection Addendum
C    Authorization Agreement for Prearranged Payments (Direct Debits)
D    Statement of Ownership Interests
E    Guarantee, Indemnification, and Acknowledgment
F    Non-Disclosure and Non-Competition Agreement
G    Addendum to Lease

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E327B669F5

Case 23-24841 Doc 1507 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities Page 121 of 1415 Page 95 of 1376

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the ___29___ day of __September__, 2023 (the "**Effective Date**").

## RECITALS

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.      Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.      Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.      Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.      Grant.

1.1      Grant of Rights. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to: (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A.  If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**").  Franchisee shall not relocate the Restaurant without Del Taco's prior written consent.  Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1.  In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G.  Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

      1.2    <u>Protected Area</u>.  Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area.  "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof.  "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement.  Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

      1.2.1    Advertise and promote the System within and outside of the Protected Area;

      1.2.2    Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

      1.2.2.1    Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area.  If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

      1.2.3    Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D5F537B669F5

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

## 3.    Fees and Payments.

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B668F5

Memorandum of Points and Authorities in Support of the...

3.8     Payments on Behalf of Franchisee.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9     Other Payments.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    No Refunds.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

## 4.     Services By Del Taco.

4.1     Development of the Restaurant. Deleted As Not Applicable.

4.2     Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     Opening Assistance. Deleted As Not Applicable.

4.4     Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     Bulletins and Reports.  Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

4.9 <u>Inspection</u>. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10 <u>Delegation of Duties.</u> Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

## 5. **Obligations of Franchisee; Operational Standards.**

5.1 <u>System Standards and Development of Restaurant</u>.    Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2 <u>Pre-Opening Obligations</u>.  Deleted:

5.2.1   Deleted As Not Applicable.

5.2.2   Deleted As Not Applicable.

5.2.3   Deleted As Not Applicable.

5.2.4   Deleted As Not Applicable.

5.2.5   Deleted As Not Applicable.

5.2.6   Deleted As Not Applicable.

5.3 <u>Restaurant Opening</u>.  Deleted As Not Applicable:

5.3.1   Deleted As Not Applicable.

5.3.2   Deleted As Not Applicable.

5.3.3   Deleted As Not Applicable.

5.3.4   Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5   Deleted As Not Applicable.

5.4 <u>Training</u>. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

      5.4.1   Initial Training. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

      5.4.2   Operating Principal and General Manager. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

      5.4.3   Refresher Training. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

      5.4.4   Pre-Opening Crew Training. Deleted As Not Applicable.

      5.4.5   Continuing Management and Crew Training. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

      5.4.6   [Reserved]

      5.4.7   <u>Training costs</u>. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

      5.4.8   <u>Additional Training.</u> If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

      5.5   <u>Restaurant Premises</u>. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

      5.6   <u>Personnel</u>. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

      5.7   <u>Health Standards</u>. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

5.8 <u>Restaurant Maintenance</u>. Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

5.9 <u>Remodeling</u>. Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement"). Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public. The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement. If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement. Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above. If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications. The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

5.10 <u>Franchisee Advisory Council</u>. Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants. Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate. Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

5.11 <u>Equipment Upgrades</u>. In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**"). Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

5.12 <u>Standards and Specifications</u>. To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

DocuSign Envelope ID: 87A65DD2-542F-43CD-BF6A-D6F527B669F5

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   <u>Suppliers</u>.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

11

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

5.13.1   If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

5.13.2   Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

5.13.3   Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

5.13.4   Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

5.13.5   Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

DocuSign Envelope ID: 87A65DD2-642E-42GD-BE6A-D6E327B668F5

all suppliers in accordance with the agreed-upon terms.  In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

      5.13.6   Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

      5.14   <u>Inspections</u>.  Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals.  Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection.  Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection.  Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs.  Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

      5.15   <u>Technology and Computer System</u>.  At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

      5.15.1   Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable.  In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications.  To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

      5.15.2   Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following:  (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   Customer Data.   Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   Privacy Laws.   Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

DocuSign Envelope ID: 87A6FDD2-542E-43CD-BE6A-B5E237B69F5

5.18    Website.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    POS or Cash Register Systems.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20    Gift Cards.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    E-Mail, Internet and Other Media; E-Mail and Fax Communications.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

5.21.2   Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

       5.21.3  Franchisee agrees that:  (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

       5.21.4  The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

       5.22  <u>Credit Cards and Other Methods of Payment</u>.  At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval.  Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider.  Franchisee must comply with all credit-card policies as prescribed in the Manuals.  Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA").  Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

       5.23  <u>Uniforms</u>.  To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals.  Franchisee shall purchase such attire only from approved suppliers.

       5.24  <u>Incentive Programs</u>.  Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

       5.25  <u>Prices</u>.  With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws.  If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

5.26    Compliance with Laws and Good Business Practices.    Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.    All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.    Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    Franchisee Structure; Operating Principal and Owners.

5.27.1    Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2    If Franchisee is a partnership or limited liability partnership it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3    If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4    Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

17

      **5.27.4.1**   <u>Operating Principal</u>.  An Operating Principal shall participate personally in the direct operation of the Restaurant.  If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant.  Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

      **5.27.4.2**   <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee. All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

      **5.27.4.3**   <u>General Manager</u>: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager").  The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

      **5.27.4.4**   <u>General Manager</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

    **5.28**   <u>Personal Guarantee</u>.  Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

    **5.29**   <u>System Modifications</u>.  Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants.  Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials.  Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense.  Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

    5.30    <u>No Third-Party Management</u>. The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco. Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

## 6.    Advertising and Marketing.

    Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

    6.1    <u>Marketing Fee Expenditure</u>. Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above. Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

    6.2    <u>Local Advertising and Promotion.</u> All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws. Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3    <u>Costs of Local Advertising and Promotion</u>.  As used in this Agreement, the term "**Local Advertising and Promotio**n" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1    Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2    Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3    The value of discounts provided to customers;

6.3.4    The cost of food items.

6.4    <u>Approvals</u>.  For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee).  If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them.  Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5    <u>Promotional Materials</u>. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials.  Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

# 7.    **Records and Reports.**

7.1    <u>Records</u>. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2     Periodic Reports.   Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3     Reporting Requirements.   In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4     Audit.   Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5     Data.   All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B699F5

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

7.6    Accounting and Bookkeeping Services.    Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

8.1    Ownership of the Proprietary Marks. Del Taco represents with respect to the Proprietary Marks that:

8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

8.2    Use of the Proprietary Marks. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

9.4 Revisions to the Manuals. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

## 10. Confidentiality and Covenants Not To Compete.

10.1 Confidential Information. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2 Irreparable Injury. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3 Information Exchange. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4 Full Time and Best Efforts. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5 In-Term Covenants. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

          10.5.1 Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

          10.5.2 Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

     10.6   Post-Term Covenants. Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

     10.7   Publicly-Held Corporations. Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation. As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

     10.8   Individual Covenants. Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal. The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement. Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request. Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

     10.9   Severability. The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement. If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

     10.10   Scope of Covenants. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11    Enforcement of Claims.  The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12    Irreparable Injury.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13    Remedies Not Exclusive.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

**11.    Insurance.**

11.1    Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1    Insurance Requirements.    Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1    Liability.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2    Fire.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

    11.1.1.3 <u>Business Interruption</u>.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

    11.1.1.4 <u>Business Automobile Liability Insurance</u>.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

    11.1.1.5 <u>Statutory Workers' Compensation Insurance</u>.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

    11.1.1.6 <u>Commercial Umbrella Liability Insurance</u>.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

    11.1.1.7 <u>Property Insurance</u>.  Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

    11.1.1.8 <u>Products Liability Insurance</u>.  Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

    11.1.1.9 <u>Cyber Liability Insurance</u>.  Cyber liability insurance in an amount that Del Taco designates.

    11.1.1.10 <u>Other Insurance</u>.  Any other insurance coverage that is required by federal, state, or municipal law.

  11.2 <u>Referenced in Manuals</u>.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

  11.3 <u>Policy Cancellation</u>.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

  11.4 <u>Construction and Remodeling Insurance</u>.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

11.5   <u>No Waiver of Obligations</u>. Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6   <u>Del Taco to be Additional Named Insured</u>. All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees. Additional insured status shall include coverage for ongoing and completed operations. The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage. Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds. Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7   <u>Evidence of Insurance</u>. At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder. All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates. Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage. In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8   <u>Proof of Insurance</u>. In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9   <u>Policy Limit Changes</u>. Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10   <u>Del Taco's Insurance</u>. Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

## 12.   Transfer of Interest.

12.1   <u>Del Taco Transfers</u>. Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

29

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

12.2    Owners.  If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

12.3    Franchisee Transfers.  Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

12.3.1    Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

12.3.2    If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

12.3.3    If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

12.3.4    Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

12.3.5    Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

12.4    Conditions for Approval.  Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1    Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2    The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3    The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4    Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5    If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6    If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7    All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

12.4.8  The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9  At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5    Transfers to Entities for the Convenience of Ownership.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1   Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2   Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6   <u>Right of First Refusal</u>.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7   <u>Transfer Upon Death.</u>  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.8    Transfer Upon Permanent Disability.    Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely. If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal. Del Taco shall pay the cost of the required examination.

12.9    Notification Upon Death or Permanent Disability.    Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing. Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10    No Waiver of Claims.    Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11    Insolvency.    If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12    Securities Offerings.    All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency. Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use. No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement. Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence. Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification. For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering. Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences. Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

**13.     Default and Termination.**

13.1     <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2     <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1   If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2   If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3   If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4   If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5   If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-48CD-BE6A-D6E637B669F5

13.2.6   If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7   If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8   If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9   If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A66DD2-542F-43CD-BE6A-D6E637B669F5

Case 8:24-bk-12827-TA    Doc 1367    Filed 02/27/25    Entered 02/27/25 08:52:36    Desc
Memorandum of Points and Authorities    Page 157 of 1415    Page 131 of 1376

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3    Termination With Opportunity to Cure. Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period. If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4    Extended Notice of Termination. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5    Assignment Upon Bankruptcy. If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth: (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement. In the event Del Taco does not elect to exercise the options

Case 8:24-bk-12827-TA    Doc 1607    Filed 02/27/25    Entered 02/27/25 16:32:36    Desc
Main Document    Page 158 of 1415    Page 132 of 1376

Memorandum of Points and Authorities in Support of the

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

      13.6   <u>Other Remedies</u>.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

      13.6.1   Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

      13.6.2   Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

      13.6.3   Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

      13.6.4   Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14. Obligations Upon Termination or Expiration.

      14.1   Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

      14.1.1   <u>Cease Operations</u>.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

      14.1.2   <u>Cease Use of Proprietary Marks</u>.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

      14.1.3   <u>Cancellation of Assumed Names</u>.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

        14.1.4   <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%. The payments called for in this Section 14.1.4 are not a penalty. A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined. Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event. Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

        14.1.5   <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

        14.1.6   <u>No Confusion</u>. Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

        14.1.7   <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises. Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises. If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose. In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco. If Franchisee fails or refuses to comply with the

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

        14.1.8  <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

        14.1.9  <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

        14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.      Taxes, Permits and Indebtedness

     15.1  <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

     15.2  <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

15.3   <u>Compliance With Laws</u>.  Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.  Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.  To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4   <u>Notification of Claims</u>.  Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16.   **Independent Contractor and Indemnification.**

16.1   It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1   <u>Identification as Independent Contractor</u>.  At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2   <u>No Agency</u>.  Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3   <u>Indemnification</u>. Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17.    Governing Law and Dispute Resolution.

17.1    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2    <u>Venue.</u>  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3    <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1    <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2    <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3    <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

17.3.3.1    <u>Power of Chairman</u>.  The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2    <u>Response to Demand</u>.  Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration.  The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure.  If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3    <u>Amendment of Claim</u>.  If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim.  The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4    <u>Time for Arbitration Hearing</u>.  The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5    <u>List of Witnesses and Documents</u>.  Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand.  The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party.  The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time.  The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing.  The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6    <u>Record</u>.  The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party.  The cost of the stenographic record should be borne by the parties equally.

17.3.3.7    <u>Attendance at Hearings</u>.  Any person who is a party to the arbitration may attend the hearings.  The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness.  The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8    <u>Adjournments</u>.  Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

17.3.3.9   <u>Production of Witnesses and Records</u>.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10   <u>Absence of a Party</u>.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11   <u>Authority to Administer Oaths</u>.  The chairman may administer oaths.

17.3.3.12   <u>Evidence</u>.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13   <u>Evidence by Affidavit and Filing of Documents</u>.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14   <u>Discovery</u>.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15   <u>Reopening of Hearings</u>.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16   <u>Extensions</u>.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

DocuSign Envelope ID: 87A95DD2-542F-48CD-BF6A-D6F337B668F5

        17.3.3.17  <u>Time for Award</u>.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

        17.3.3.18  <u>Confidentiality</u>.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

        17.3.4  <u>Application of Federal Rules of Civil Procedure</u>.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

        17.3.5  <u>Finality; Enforcement; Venue</u>.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

        17.3.6  <u>Arbitration Costs, Attorneys' Fees and Costs</u>.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

        17.3.7  <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

    17.4  <u>Injunctive Relief</u>.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

    17.5  <u>Limitation of Actions</u>.  **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

    17.6  <u>Waiver of Damages</u>.  **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

**18.      Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.      Approvals, Waivers and Binding Effects.**

19.1      <u>Approvals</u>.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2      <u>No Warranties</u>. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3      <u>Waivers</u>. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4      <u>Binding Effect; No Other Rights</u>. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.      Notices.**

20.1      Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B669F5

Case 8:24-bk-12829-TA Doc 667-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities In Support of the Page 141 of 1376

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party. Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

| Del Taco: | 25521 Commercentre Drive, Suite 200 |
| | Lake Forest, California 92630 |
| | Fax Number: (949) 616-5002 |

| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

## 21.    Force Majeure.

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party. Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof; compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event. The notice shall describe the nature of the event and an estimate as to its duration.

## 22.    Immunity for Certain Limited Disclosures.

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

## 23.    Entire Agreement and Amendment.

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement. There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6E637B669F5

Case 8:24-bk-12829-TA    Doc 1071    Filed 02/27/25    Entered 02/27/25 16:18:36    Desc
Memorandum of Points and Authorities    Page 168 of 1415    Page 142 of 1376

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

**24.      Severability; Enforcement of Covenants; Construction.**

24.1      <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2      <u>Enforceability of Covenants</u>. Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3      <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

**25.      Joint and Several Obligation.**

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

**26.      Incorporation of Exhibits.**

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

**27.      Counterparts.**

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

48

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

**28.**     **Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

**29.**     **Representations, Warranties and Acknowledgments.**

29.1     Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1     <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.   Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2     <u>Receipt of Documents</u>.   Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.   Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3     <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4     Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5     <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.   Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6     <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7     <u>No Other Obligations.</u>   Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

29.1.8  <u>Restaurant Location.</u> Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

29.1.9  <u>Compliance with Anti-Terrorism Laws and Other Laws.</u> Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of "**Specially Designated Nationals**" or "**Blocked Persons**" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx /); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.  **Business Judgment.**

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6F827B668F5

Case 23-45814-mxm11 Doc 1571 Filed 02/27/24 Entered 02/27/24 16:15:26 Desc
Memorandum of Points and Authorities in Support of The    Page 145 of 1376

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

**[SIGNATURE PAGE FILLOWS]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6F327B668F5

Case 8:24-bk-12711-TA Doc 150-1 Filed 02/27/25 Entered 02/27/25 16:13:36 Desc
Memorandum of Points and Authorities In Support of the Mot Page 146 of 1376

Executed as of the day and year first set forth above.

FRANCHISOR:                          DEL TACO LLC

                                     By: _Jack Tang_____

                                     Jack Tang
                                     Vice President & General Counsel


FRANCHISEE:                          NEWPORT VENTURES, LLC


                                     By: Techno Industries Inc
                                     Its President & CEO

                                     _Ernesto Abarro_____
                                     Ernesto Abarro

                                     By: _____
                                     Katayoun Aryana


                                     Date: _9/6/2023_____

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D5E637B669F5

## Exhibit A

### Identification of Franchisee

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |
| 2. | Notice Address of Franchisee: | 1500 E. Bethany Home Road<br>Suite 250<br>Phoenix, AZ 85014<br>E-Mail: ernieabarro@gmail.com<br>Fax Number: (949) 534-7000 |
| 3. | Location of Restaurant: | 24023 East Prospect Avenue<br>Aurora, CO 80016 |
| 4. | Protected Area: | A circular area within a one-mile radius<br>from the front door of the Restaurant, subject to Section<br>1.2. of the Franchise Agreement. |
| 5. | Date of Takeover: | October 4, 2023 |
| 6. | Date of Expiration: | June 2, 2025 |

DocuSign Envelope ID: 87A65DD2-5425-42CD-BE6A-D5E637B669F5

## EXHIBIT B

## Deleted As Not Applicable

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-8E6A-D6E637B668F5

## EXHIBIT C

**Authorization Agreement for Prearranged Payments
(Direct Debits)**

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank

Mission Viejo, CA

_____
Depository

_____
Branch

26042 Marguerite Pkwy, Mission Viejo, CA 92692
_____
Street Address, City, State, Zip Code

122000247
_____
Bank Transit/ABA Number

7429826410
_____
Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*
_____
Depository

By: _____

Title: _____

Date: 9/6/2023
_____

Exhibit C

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D5E527B668F5

Case 8:24-bk-12783-TA   Doc 1567-1   Filed 02/27/24   Entered 02/27/24 08:13:36   Desc
Memorandum of Points and Authorities In Support   Page 176 of 1415   Page 150 of 1376

## EXHIBIT D

### Statement of Ownership Interests

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| Individual/Entity Name | Percentage of Ownership/Nature of Interest* |
| --- | --- |
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Exhibit D

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B669F5

Case 8:24-bk-12744-TA Doc 1671 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities in Support of the ... Page 151 of 1376

# EXHIBIT E

## Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated September 29 , 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Exhibit E-1

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B669F5

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts.  Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S)

(Seal)                          Signed: _Ernesto Abarro_____
                                         33C61360BA31471
                                         (In his individual capacity)

                                Ernesto Abarro
                                120 S. Lovekin Blvd.
                                Blythe, CA 92225


(Seal)                          Signed: _____
                                         B05A39EB0Z2040F
                                         (In his individual capacity)

                                Katayoun Aryana
                                1500 E. Bethany Home Road
                                Suite 250
                                Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-B6E637B668F5

## EXHIBIT F

### Non-Disclosure and Non-Competition Agreement

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this ___29___ day of ___September___, 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

### BACKGROUND:

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.      Confidential Information. Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.      Covenants Not to Compete.

(a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Case 8:24-bk-12827-TA   Doc 671   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Main Document   Page 180 of 1415   Page 154 of 1376
Memorandum of Points and Authorities in Support of   Page 154 of 1376

   (b) Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

    (i) Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

    (ii) Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

   (c) Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

   (d) As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

  3. <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

  4. <u>Severability.</u> All agreements and covenants contained herein are severable. If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy. In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

  5. <u>Delay.</u> No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

  6. <u>Jurisdiction, Venue and Choice of Law.</u> This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

7.  <u>Third-Party Beneficiary.</u>  Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this __29__ day of __September__ _____, 2023.

**FRANCHISEE:**

**NEWPORT VENTURES, LLC**

By: _Ernesto Abarro_____
        33C61360BA31471...
Ernesto Abarro

By: _____
        B05A39E6022040F...
Katayoun Aryana

**OBLIGEE:**

**ERNESTO ABARRO**

By: _Ernesto Abarro_____
        33C61360BA31471...

**KATAYOUN ARYANA**

By: _____
        B05A39E6022040F...

Exhibit F-3

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E527B669F5

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.  In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

    Del Taco LLC
    25521 Commercentre Drive
    Lake Forest, California 92630
    Attn:  Jack Tang, Vice President, General Counsel

2.  In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.  The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.  Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.  All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be.  Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant.  Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D5E637B659F5

Case 8:24-bk-12137-TA   Doc 1667   Filed 02/27/25   Entered 02/27/25 16:13:36   Desc
Memorandum of Points and Authorities   Page 183 of 1415   Page 157 of 1376

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.      Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.      Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.      Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.      Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.     The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.     The Lease is contingent upon Franchisor's written approval of the site.

12.     Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.


**[Signature Page Follows]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                      **Tenant**

By:_____          By:_____


Its:_____         Its:_____


Date:_____          Date:_____

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

# DocuSign

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5     Status: Completed

Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 1213 | Signatures: 177 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Jack Tang |
| AutoNav: Enabled | | 25521 Commercentre drive Suite 200 |
| EnvelopeId Stamping: Enabled | | Lake Forest, CA 92630 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | mhernandez@deltaco.com |
| | | IP Address: 209.234.159.82 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Jack Tang | Location: DocuSign |
|    9/5/2023 5:36:27 PM |    mhernandez@deltaco.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication (None) | *Ernesto Abarro*<br>33C61360BA31471...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 9/6/2023 10:33:13 AM<br>   ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Jack Tang*<br>AD28CBFCF34348A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 9/29/2023 9:27:32 AM<br>   ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication (None) | (Drawn signature)<br>B05A39E6022040F...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 7/28/2023 8:56:42 AM<br>   ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/19/2021 12:45:45 PM
Parties agreed to: Ernesto Abarca, Jack Tang, Schlomo ABRECH

Case 8:24-bk-12778-TA   Doc 1571   Filed 02/27/25   Entered 02/27/25 16:52:36   Desc
Memorandum of Points and Authorities   Page 187 of 1415   Page 161 of 1376

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

## Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

## Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit C

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D9F327B6S9F5

Case 8:24-bk-12778-TA    Doc 100-1    Filed 02/27/24    Entered 02/27/24 08:32:36    Desc
Memorandum of Points and Authorities    Page 191 of 1415    Page 165 of 1376

STORE 787



# FRANCHISE AGREEMENT

DocuSign Envelope ID: 87A6FDD2-542E-48CD-BE6A-D6E637B669F5

Case 8:24-bk-12737-TA    Doc 1567    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities    Page 192 of 1415    Page 166 of 1376

# Table of Contents

**Page**

1. Grant. ........................................................................................................................ 1
2. Term and Renewal. ................................................................................................... 3
3. Fees and Payments. .................................................................................................. 4
4. Services By Del Taco. ............................................................................................... 6
5. Obligations of Franchisee; Operational Standards. ............................................. 7
6. Advertising and Marketing. .................................................................................. 19
7. Records and Reports. ............................................................................................. 20
8. Proprietary Marks. ................................................................................................ 22
9. Manuals. .................................................................................................................. 24
10. Confidentiality and Covenants Not To Compete. .............................................. 25
11. Insurance. ................................................................................................................ 27
12. Transfer of Interest. ............................................................................................... 29
13. Default and Termination. ....................................................................................... 35
14. Obligations Upon Termination or Expiration. ................................................... 38
15. Taxes, Permits and Indebtedness. ......................................................................... 40
16. Independent Contractor and Indemnification. ................................................... 41
17. Governing Law and Dispute Resolution. ............................................................. 42
18. Time is of the Essence ............................................................................................ 46
19. Approvals, Waivers and Binding Effects. ............................................................ 46
20. Notices. .................................................................................................................... 46
21. Force Majeure. ........................................................................................................ 47
22. Immunity for Certain Limited Disclosures. ........................................................ 47
23. Entire Agreement and Amendment. ..................................................................... 47
24. Severability; Enforcement of Covenants; Construction. ................................... 48
25. Joint and Several Obligation. ................................................................................ 48
26. Incorporation of Exhibits. .................................................................................... 48
27. Counterparts. .......................................................................................................... 48
28. Survival of Provisions. ........................................................................................... 49
29. Representations, Warranties and Acknowledgments. ........................................ 49
30. Business Judgment. ................................................................................................ 50

Exhibits:

A    Identification of Franchisee
B    Site Selection Addendum
C    Authorization Agreement for Prearranged Payments (Direct Debits)
D    Statement of Ownership Interests
E    Guarantee, Indemnification, and Acknowledgment
F    Non-Disclosure and Non-Competition Agreement
G    Addendum to Lease

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B669F5

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the __29__ day of __September__, 2023 (the "**Effective Date**").

## RECITALS

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.      Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.      Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.      Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

**1.      Grant.**

1.1      Grant of Rights. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B699F5

Case 8:24-bk-12674-SC Doc 1667 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Main Document Page 194 of 1415 Page 168 of 1376

Memorandum of Points and Authorities In Support of Theref

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

1.2     Protected Area. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

1.2.1     Advertise and promote the System within and outside of the Protected Area;

1.2.2     Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

1.2.2.1     Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

1.2.3     Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

DocuSign Envelope ID: 87A65DD2-542F-43CB-BE6A-D6E637B669F5

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6F637B669F5

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2, and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

## 3.    Fees and Payments.

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F337B699F5

3.8     Payments on Behalf of Franchisee.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9     Other Payments.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    No Refunds.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.      Services By Del Taco.**

4.1     Development of the Restaurant. Deleted As Not Applicable.

4.2     Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     Opening Assistance. Deleted As Not Applicable.

4.4     Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     Bulletins and Reports. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

4.9     <u>Inspection</u>. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10    <u>Delegation of Duties.</u> Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

**5.      Obligations of Franchisee; Operational Standards.**

5.1     <u>System Standards and Development of Restaurant</u>.     Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2     <u>Pre-Opening Obligations</u>.  Deleted:

5.2.1    Deleted As Not Applicable.

5.2.2    Deleted As Not Applicable.

5.2.3    Deleted As Not Applicable.

5.2.4    Deleted As Not Applicable.

5.2.5    Deleted As Not Applicable.

5.2.6    Deleted As Not Applicable.

5.3     <u>Restaurant Opening</u>.  Deleted As Not Applicable:

5.3.1    Deleted As Not Applicable.

5.3.2    Deleted As Not Applicable.

5.3.3    Deleted As Not Applicable.

5.3.4    Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5    Deleted As Not Applicable.

5.4     <u>Training</u>. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time.  Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant.  Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training.  Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training.  Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco.  With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs:  the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

      5.4.1   <u>Initial Training</u>.  Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco.  All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal.  In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

      5.4.2   <u>Operating Principal and General Manager</u>.  If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities.  The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so.  Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

      5.4.3   <u>Refresher Training</u>.  If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement.  In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

      5.4.4   <u>Pre-Opening Crew Training</u>.  Deleted As Not Applicable.

      5.4.5   <u>Continuing Management and Crew Training</u>.  After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System.  Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant.  If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant.  Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling.  Franchisee is solely responsible for ensuring its

8

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

     5.4.6   [Reserved]

     5.4.7   <u>Training costs</u>. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

     5.4.8   <u>Additional Training.</u> If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

     5.5   <u>Restaurant Premises</u>. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

     5.6   <u>Personnel</u>. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

     5.7   <u>Health Standards</u>. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

9

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

5.8 <u>Restaurant Maintenance</u>. Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

5.9 <u>Remodeling</u>. Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement"). Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public. The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement. If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement. Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above. If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications. The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

5.10 <u>Franchisee Advisory Council</u>. Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants. Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate. Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

5.11 <u>Equipment Upgrades</u>. In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**"). Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

5.12 <u>Standards and Specifications</u>. To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

DocuSign Envelope ID: 87A66DD2-542F-43CD-BE6A-D6E637B669F5

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   <u>Suppliers</u>.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

     5.13.1   If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

     5.13.2   Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

     5.13.3   Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

     5.13.4   Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

     5.13.5   Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-B6E637B698F5

all suppliers in accordance with the agreed-upon terms.  In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

       5.13.6  Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

       5.14   Inspections.  Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals.  Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection.  Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection.  Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs.  Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

       5.15   Technology and Computer System.  At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

       5.15.1  Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable.  In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications.  To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

       5.15.2  Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following:  (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   Customer Data.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   Privacy Laws.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.18   <u>Website</u>.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19   <u>POS or Cash Register Systems</u>.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20   <u>Gift Cards</u>.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21   <u>E-Mail, Internet and Other Media; E-Mail and Fax Communications</u>.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

5.21.2   Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

       5.21.3   Franchisee agrees that:  (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

       5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

      5.22   <u>Credit Cards and Other Methods of Payment</u>.   At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

      5.23   <u>Uniforms</u>.   To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

      5.24   <u>Incentive Programs</u>.   Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

      5.25   <u>Prices</u>.   With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.26   Compliance with Laws and Good Business Practices.   Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.   All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.   Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27   Franchisee Structure; Operating Principal and Owners.

5.27.1   Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2   If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3   If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4   Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.27.4.1    <u>Operating Principal</u>. An Operating Principal shall participate personally in the direct operation of the Restaurant. If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant. Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2    <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee. All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3    <u>General Manager</u>: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager"). The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4    <u>General Manager</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28    <u>Personal Guarantee</u>. Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29    <u>System Modifications</u>. Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants. Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials. Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense. Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30   <u>No Third-Party Management</u>. The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco. Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

**6.     Advertising and Marketing.**

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1   <u>Marketing Fee Expenditure</u>. Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above. Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2   <u>Local Advertising and Promotion.</u> All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws. Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

     6.3    <u>Costs of Local Advertising and Promotion</u>. As used in this Agreement, the term "**Local Advertising and Promotion**" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

     6.3.1    Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

     6.3.2    Charitable, political, or other contributions or donations, whether in cash, food, or services;

     6.3.3    The value of discounts provided to customers;

     6.3.4    The cost of food items.

     6.4    <u>Approvals</u>. For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee). If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them. Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

     6.5    <u>Promotional Materials</u>. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials. Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.    Records and Reports.

     7.1    <u>Records</u>. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

DocuSign Envelope ID: 87A65DD2-542F-43GD-BE6A-D6F237B669F5

Case 8:24-bk-12827-TA Doc 1367-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities Page 208 of 445    Page 187 of 1376

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

     7.2    <u>Periodic Reports</u>. Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

     7.3    <u>Reporting Requirements</u>. In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

     7.4    <u>Audit</u>. Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

     7.5    <u>Data</u>. All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

21

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D5F637B69BF5

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

7.6    Accounting and Bookkeeping Services.    Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

8.1    Ownership of the Proprietary Marks. Del Taco represents with respect to the Proprietary Marks that:

8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

8.2    Use of the Proprietary Marks. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E237B66BF5

Case 8:24-bk-12337-TA   Doc 1667-1   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Memorandum of Points and Authorities   Page 217 of 1415   Page 191 of 1376

9.4   <u>Revisions to the Manuals</u>. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

## 10.   Confidentiality and Covenants Not To Compete.

10.1   <u>Confidential Information</u>. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2   <u>Irreparable Injury</u>. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3   <u>Information Exchange</u>. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4   <u>Full Time and Best Efforts</u>. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5   <u>In-Term Covenants</u>. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

10.5.1 Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

10.5.2 Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

10.6 <u>Post-Term Covenants</u>. Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

10.7 <u>Publicly-Held Corporations</u>. Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation. As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

10.8 <u>Individual Covenants</u>. Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal. The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement. Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request. Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

10.9 <u>Severability</u>. The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement. If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

10.10 <u>Scope of Covenants</u>. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

26

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11   Enforcement of Claims.  The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12   Irreparable Injury.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13   Remedies Not Exclusive.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

## 11.   Insurance.

11.1   Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1   Insurance Requirements.   Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1   Liability.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2   Fire.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

11.1.1.3     Business Interruption.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4     Business Automobile Liability Insurance.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5     Statutory Workers' Compensation Insurance.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6     Commercial Umbrella Liability Insurance.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7     Property Insurance.  Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8     Products Liability Insurance.  Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9     Cyber Liability Insurance.  Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10     Other Insurance.  Any other insurance coverage that is required by federal, state, or municipal law.

11.2     Referenced in Manuals.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3     Policy Cancellation.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4     Construction and Remodeling Insurance.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

     11.5   <u>No Waiver of Obligations</u>.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

     11.6   <u>Del Taco to be Additional Named Insured</u>.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

     11.7   <u>Evidence of Insurance</u>.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

     11.8   <u>Proof of Insurance</u>.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

     11.9   <u>Policy Limit Changes</u>.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

     11.10   <u>Del Taco's Insurance</u>.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.**    **Transfer of Interest.**

     12.1   <u>Del Taco Transfers</u>.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

12.2   <u>Owners</u>. If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

12.3   <u>Franchisee Transfers</u>. Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

12.3.1   Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

12.3.2   If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

12.3.3   If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

12.3.4   Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

12.3.5   Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

12.4   <u>Conditions for Approval</u>. Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E537B669F5

Case 23-22840-RK12 Doc 1671 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities in Support of the Page 198 of 1376

12.4.8  The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9  At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5    Transfers to Entities for the Convenience of Ownership.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1  Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2  Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6   <u>Right of First Refusal</u>.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7   <u>Transfer Upon Death.</u>   Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

12.8    <u>Transfer Upon Permanent Disability</u>.  Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.  If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.  Del Taco shall pay the cost of the required examination.

12.9    <u>Notification Upon Death or Permanent Disability</u>.  Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.  Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10    <u>No Waiver of Claims</u>.  Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11    <u>Insolvency</u>. If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12    <u>Securities Offerings</u>.  All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.  Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use.  No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.  Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.  Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.  For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.  Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.  Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A66DD2-542F-42CD-BE6A-D6E637B668F5

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

**13.    Default and Termination.**

13.1    <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2    <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1    If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2    If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3    If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4    If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5    If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

13.2.6    If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7    If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8    If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9    If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10  If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11  If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12  If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13  If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14  If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15  If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16  If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17  If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18  If Franchisee fails to make any payments when due to Del Taco;

13.2.19  If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20  If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3    <u>Termination With Opportunity to Cure</u>.  Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.  If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4    <u>Extended Notice of Termination</u>. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5    <u>Assignment Upon Bankruptcy</u>.  If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6    Other Remedies.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1    Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2    Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

13.6.3    Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4    Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

**14.    Obligations Upon Termination or Expiration.**

14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1    Cease Operations.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2    Cease Use of Proprietary Marks.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3    Cancellation of Assumed Names.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4  <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%.  The payments called for in this Section 14.1.4 are not a penalty.  A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined.  Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event.  Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5  <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6  <u>No Confusion</u>.  Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7  <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises.  Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises.  If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose.  In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco.  If Franchisee fails or refuses to comply with the

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

14.1.8   <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

14.1.9   <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

**15.     Taxes, Permits and Indebtedness**

15.1   <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

15.2   <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

15.3    Compliance With Laws.  Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.  Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.  To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4    Notification of Claims.  Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16.    Independent Contractor and Indemnification.

16.1    It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1    Identification as Independent Contractor.  At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2    No Agency.  Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3    Indemnification.  Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

**17.      Governing Law and Dispute Resolution.**

17.1      <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2      <u>Venue.</u>  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3      <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1      <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2      <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3      <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B669F5

17.3.3.1   <u>Power of Chairman</u>.   The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2   <u>Response to Demand</u>.   Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration.   The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure.   If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3   <u>Amendment of Claim</u>.   If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim.   The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4   <u>Time for Arbitration Hearing</u>.   The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5   <u>List of Witnesses and Documents</u>.   Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand. The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party.   The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time.   The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing.   The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6   <u>Record</u>.   The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party.   The cost of the stenographic record should be borne by the parties equally.

17.3.3.7   <u>Attendance at Hearings</u>.   Any person who is a party to the arbitration may attend the hearings.   The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness.   The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8   <u>Adjournments</u>.   Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

17.3.3.9   <u>Production of Witnesses and Records</u>.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10   <u>Absence of a Party</u>.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11   <u>Authority to Administer Oaths</u>.  The chairman may administer oaths.

17.3.3.12   <u>Evidence</u>.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13   <u>Evidence by Affidavit and Filing of Documents</u>.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14   <u>Discovery</u>.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15   <u>Reopening of Hearings</u>.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16   <u>Extensions</u>.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

44

17.3.3.17   Time for Award.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

17.3.3.18   Confidentiality.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

17.3.4   Application of Federal Rules of Civil Procedure.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

17.3.5   Finality; Enforcement; Venue.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

17.3.6   Arbitration Costs, Attorneys' Fees and Costs.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.7   Survival. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

17.4   Injunctive Relief.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5   Limitation of Actions.  **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6   Waiver of Damages.  **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

**LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.**

**18.        Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.        Approvals, Waivers and Binding Effects.**

19.1        <u>Approvals</u>.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2        <u>No Warranties</u>. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

> DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3        <u>Waivers</u>. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4        <u>Binding Effect; No Other Rights</u>. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.        Notices.**

20.1        Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

DocuSign Envelope ID: 87A65DD2-562E-48CD-BE6A-D6E637B669F5

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party. Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

|  |  |
|---|---|
| Del Taco: | 25521 Commercentre Drive, Suite 200<br>Lake Forest, California 92630<br>Fax Number: (949) 616-5002 |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

### 21. Force Majeure.

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party. Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof; compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event. The notice shall describe the nature of the event and an estimate as to its duration.

### 22. Immunity for Certain Limited Disclosures.

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

### 23. Entire Agreement and Amendment.

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement. There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

47

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

## 24. Severability; Enforcement of Covenants; Construction.

24.1    <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2    <u>Enforceability of Covenants</u>.  Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3    <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

## 25. Joint and Several Obligation.

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

## 26. Incorporation of Exhibits.

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

## 27. Counterparts.

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-642F-42CD-BE6A-B6F637B668F5

**28.      Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

**29.      Representations, Warranties and Acknowledgments.**

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    <u>Receipt of Documents</u>.    Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    <u>No Other Obligations.</u>    Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

29.1.8 <u>Restaurant Location.</u> Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

29.1.9 <u>Compliance with Anti-Terrorism Laws and Other Laws.</u> Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of "**Specially Designated Nationals**" or "**Blocked Persons**" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at  https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx__/); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

# 30.    **Business Judgment.**

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D9F527B669F5

Case 23-24811-JK11 Doc 156-1 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities in Support The Page 217 of 1376

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

[**SIGNATURE PAGE FILLOWS**]

DocuSign Envelope ID: 87A6FDD2-542F-42CD-8E6A-D6F637B669F5

Case 8:24-bk-12137-TA    Doc 156-1    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities In Support of    Page 218 of 1376
Page 244 of 1415

Executed as of the day and year first set forth above.

FRANCHISOR:                          **DEL TACO LLC**

By: _Jack Tang_

Jack Tang
Vice President & General Counsel

FRANCHISEE:                          **NEWPORT VENTURES, LLC**

By: Techno Industries Inc
Its President & CEO

_Ernesto Abarro_

Ernesto Abarro

By _[signature]_

Katayoun Aryana

Date: 9/6/2023

DocuSign Envelope ID: 87A6FDD2-642F-43CD-BE6A-D6F637B669F5

Case 23-24881-FA Doc 1571 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities in Support of The Page 219 of 1376

**Exhibit A**

**Identification of Franchisee**

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |
| 2. | Notice Address of Franchisee: | 1500 E. Bethany Home Road<br>Suite 250<br>Phoenix, AZ 85014<br>E-Mail: ernieabarro@gmail.com<br>Fax Number: (949) 534-7000 |
| 3. | Location of Restaurant: | 50 West Belleview Avenue<br>Englewood, CO 80110 |
| 4. | Protected Area: | A circular area within a one-mile radius<br>from the front door of the Restaurant, subject to Section<br>1.2. of the Franchise Agreement. |
| 5. | Date of Takeover: | October 4, 2023 |
| 6. | Date of Expiration: | August 13, 2025 |

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6F637B669F5

**EXHIBIT B**

**Deleted As Not Applicable**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

<u>**EXHIBIT C**</u>

**Authorization Agreement for Prearranged Payments**
**(Direct Debits)**

   The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank

Mission Viejo, CA

_____  _____
Depository               Branch

26042 Marguerite Pkwy, Mission Viejo, CA 92692
_____
Street Address, City, State, Zip Code

122000247

7429826410
_____  _____
Bank Transit/ABA Number          Account Number

   This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it.  Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority.  If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account.  These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*
_____
Depositor

By: _____

Title: _____

Date:   9/6/2023
_____

Exhibit C

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D5E327B659F5

Case 8:24-bk-12738-TA Doc 150-1 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities in Support of the Mot Page 222 of 1376

<u>**EXHIBIT D**</u>

**Statement of Ownership Interests**

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| <u>Individual/Entity Name</u> | <u>Percentage of Ownership/Nature of Interest</u>* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A96DD2-542E-43CD-BE6A-D6F837B669F5

Case 8:24-bk-12377-TA Doc 1567-1 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Memorandum of Points and Authorities Page 249 of 1415 Page 223 of 1376

## EXHIBIT E

### Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated ___September 29___ , 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Exhibit E-1

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-8E6A-D5E527B669F5

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts.  Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S):

(Seal)            Signed: *Ernesto Abarro*
                         DocuSigned by:
                         33C61966BA31471...
                         (In his individual capacity)

Ernesto Abarro
120 S. Lovekin Blvd.
Blythe, CA 92225

(Seal)            Signed: _____
                         DocuSigned by:
                         B05A39E5022040F...
                         (In his individual capacity)

Katayoun Aryana
1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014

Exhibit E-2

<u>**EXHIBIT F**</u>

**Non-Disclosure and Non-Competition Agreement**

      **THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this 29 day of September, 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

BACKGROUND:

      A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

      B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

      C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

      IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

      1.      <u>Confidential Information</u>.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

      2.      <u>Covenants Not to Compete</u>.

      (a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-48CP-BE6A-B6E637B668F5

Case 8:24-bk-12827-TA Doc 1671 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Main Document Page 252 of 1415 Page 226 of 1376

Memorandum of Points and Authorities in Support of the...

(b)     Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)     Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)     Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)     Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)     As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.     <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.     <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.     <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.     <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Exhibit F-2

DocuSign Envelope ID: 87A6FDD2-642F-48CD-BE6A-D6E637B669F5

7. <u>Third-Party Beneficiary.</u>  Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this ___29__ day of __September__ _____, 2023.

**FRANCHISEE:**                                              **OBLIGEE:**

**NEWPORT VENTURES, LLC**                      **ERNESTO ABARRO**

By: _Ernesto Abarro_____                        By: _Ernesto Abarro_____
      33C61360BA31471...                                               33C61360BA31471...
    Ernesto Abarro

By: _____                        **KATAYOUN ARYANA**
     B05A39E6022040F...
    Katayoun Aryana                                       By: _____
              B05A39E6022040F...

Exhibit F-3

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6F237B668F5

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1. In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

   Del Taco LLC
   25521 Commercentre Drive
   Lake Forest, California 92630
   Attn: Jack Tang, Vice President, General Counsel

2. In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3. The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4. Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5. All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be. Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant. Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D6E637B698F5

Case 8:24-bk-12771-TA    Doc 1567    Filed 02/27/24    Entered 02/27/24 08:32:36    Desc
Memorandum of Points and Authorities    Page 255 of 1415    Page 229 of 1376

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.  Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.  Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.  Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.  Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10. The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11. The Lease is contingent upon Franchisor's written approval of the site.

12. Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                         **Tenant**

By:_____                  By:_____

Its:_____                  Its:_____

Date:_____                  Date:_____

Exhibit F-6

**DocuSign**

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5

Status: Completed

Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 1213 | Signatures: 177 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Jack Tang |
| AutoNav: Enabled | | 25521 Commercentre drive Suite 200 |
| EnvelopeId Stamping: Enabled | | Lake Forest, CA  92630 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | mhernandez@deltaco.com |
| | | IP Address: 209.234.159.82 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Jack Tang | Location: DocuSign |
|     9/5/2023 5:36:27 PM |     mhernandez@deltaco.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication (None) | *Ernesto Abarro*<br>33C61360BA31471... | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 9/6/2023 10:33:13 AM<br>    ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Jack Tang*<br>AD28CBFCF34348A... | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 9/29/2023 9:27:32 AM<br>    ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication (None) | B05A39E6022040F... | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| | Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 7/28/2023 8:56:42 AM<br>    ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/19/2021 12:05:45 PM
Parties agreed to: Ernesto Abarca, Jack Tang, Rohnald APPVS
Case 8:24-bk-12289-TA    Doc 1571    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities    Page 259 of 1415    Page 233 of 1376

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit D

DocuSign Envelope ID: 87A6FDD2-5426-42CD-BE6A-D6E327B659F5

Case 8:24-bk-12137-TA    Doc 1507-1    Filed 02/27/24    Entered 02/27/24 08:13:36    Desc
Memorandum of Points and Authorities    Page 263 of 1415    Page 237 of 1376

STORE 793



# FRANCHISE AGREEMENT

DocuSign Envelope ID: 87A65DD2-542F-49CD-BE6A-D6E637B669F5

Case 8:24-bk-12771-TA Doc 156-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities in Support of the 1 Page 238 of 1376

# Table of Contents

**Page**

1.     Grant. ......................................................................................................................... 1
2.     Term and Renewal. ................................................................................................... 3
3.     Fees and Payments. .................................................................................................. 4
4.     Services By Del Taco. ............................................................................................... 6
5.     Obligations of Franchisee; Operational Standards. .............................................. 7
6.     Advertising and Marketing. ................................................................................... 19
7.     Records and Reports. .............................................................................................. 20
8.     Proprietary Marks. .................................................................................................. 22
9.     Manuals. ................................................................................................................... 24
10.   Confidentiality and Covenants Not To Compete. ............................................... 25
11.   Insurance. ................................................................................................................. 27
12.   Transfer of Interest. ................................................................................................ 29
13.   Default and Termination. ....................................................................................... 35
14.   Obligations Upon Termination or Expiration. ..................................................... 38
15.   Taxes, Permits and Indebtedness. ......................................................................... 40
16.   Independent Contractor and Indemnification. ..................................................... 41
17.   Governing Law and Dispute Resolution. .............................................................. 42
18.   Time is of the Essence .......................................................................................... 46
19.   Approvals, Waivers and Binding Effects. ............................................................ 46
20.   Notices. .................................................................................................................... 46
21.   Force Majeure. ........................................................................................................ 47
22.   Immunity for Certain Limited Disclosures. ......................................................... 47
23.   Entire Agreement and Amendment. ...................................................................... 47
24.   Severability; Enforcement of Covenants; Construction. ..................................... 48
25.   Joint and Several Obligation. ................................................................................ 48
26.   Incorporation of Exhibits. ...................................................................................... 48
27.   Counterparts. ........................................................................................................... 48
28.   Survival of Provisions. ........................................................................................... 49
29.   Representations, Warranties and Acknowledgments. .......................................... 49
30.   Business Judgment. ................................................................................................. 50

Exhibits:

A     Identification of Franchisee
B     Site Selection Addendum
C     Authorization Agreement for Prearranged Payments (Direct Debits)
D     Statement of Ownership Interests
E     Guarantee, Indemnification, and Acknowledgment
F     Non-Disclosure and Non-Competition Agreement
G     Addendum to Lease

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-5425-43CD-BE6A-D6E527B668F5

Case 8:24-bk-12837-TA   Doc 1567   Filed 02/27/25   Entered 02/27/25 16:52:36   Desc
Memorandum of Points and Authorities   Page 265 of 1415   Page 239 of 1376

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the ___29___ day of __September__, 2023 (the "**Effective Date**").

## RECITALS

A.       Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.       The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.       Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.       Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.       Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.       Grant.

1.1       <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A.  If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**").  Franchisee shall not relocate the Restaurant without Del Taco's prior written consent.  Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1.  In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G.  Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

1.2    Protected Area.  Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area.  "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof.  "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement.  Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

1.2.1    Advertise and promote the System within and outside of the Protected Area;

1.2.2    Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

1.2.2.1    Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area.  If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

1.2.3    Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E837B668F5

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

## 3.    Fees and Payments.

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

DocuSign Envelope ID: 87A65DD2-562E-48CD-BE6A-D6F637B668F5

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

       3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

       3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

       3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

       3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

       3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

3.8     Payments on Behalf of Franchisee.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9     Other Payments.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    No Refunds.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.     Services By Del Taco.**

4.1     Development of the Restaurant. Deleted As Not Applicable.

4.2     Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     Opening Assistance. Deleted As Not Applicable.

4.4     Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     Bulletins and Reports. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-642F-48CD-BE6A-D6E637B669F5

    4.9    <u>Inspection</u>. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

    4.10    <u>Delegation of Duties.</u> Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

**5.    Obligations of Franchisee; Operational Standards.**

    5.1    <u>System Standards and Development of Restaurant</u>.  Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

    5.2    <u>Pre-Opening Obligations</u>.  Deleted:

        5.2.1    Deleted As Not Applicable.

        5.2.2    Deleted As Not Applicable.

        5.2.3    Deleted As Not Applicable.

        5.2.4    Deleted As Not Applicable.

        5.2.5    Deleted As Not Applicable.

        5.2.6    Deleted As Not Applicable.

    5.3    <u>Restaurant Opening</u>.  Deleted As Not Applicable:

        5.3.1    Deleted As Not Applicable.

        5.3.2    Deleted As Not Applicable.

        5.3.3    Deleted As Not Applicable.

    5.3.4    Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

        5.3.5    Deleted As Not Applicable.

    5.4    <u>Training</u>. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

       5.4.1   <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

       5.4.2   <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

       5.4.3   <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

       5.4.4   <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

       5.4.5   <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

     5.4.6   [Reserved]

     5.4.7   Training costs. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

     5.4.8   Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

     5.5   Restaurant Premises. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

     5.6   Personnel. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

     5.7   Health Standards. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E537B669F5

Case 8:24-bk-12245-SC    Doc 1067-1    Filed 02/27/25    Entered 02/27/25 16:52:36    Desc
Memorandum of Points and Authorities    Page 274 of 1415    Page 248 of 1376

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

5.8    <u>Restaurant Maintenance</u>. Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

5.9    <u>Remodeling</u>. Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement"). Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public. The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement. If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement. Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above. If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications. The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

5.10    <u>Franchisee Advisory Council</u>. Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants. Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate. Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

5.11    <u>Equipment Upgrades</u>. In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**"). Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

5.12    <u>Standards and Specifications</u>. To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B668F5

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   Suppliers.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

11

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

5.13.1   If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

5.13.2   Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

5.13.3   Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

5.13.4   Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

5.13.5   Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

all suppliers in accordance with the agreed-upon terms. In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

5.13.6  Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

5.14    Inspections.  Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals.  Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection.  Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection.  Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs.  Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

5.15    Technology and Computer System.  At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

5.15.1  Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable.  In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications.  To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

5.15.2  Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following:  (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   <u>Customer Data</u>.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   <u>Privacy Laws</u>.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

5.18   <u>Website</u>.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19   <u>POS or Cash Register Systems</u>.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20   <u>Gift Cards</u>.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21   <u>E-Mail, Internet and Other Media; E-Mail and Fax Communications</u>.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

5.21.2   Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

for transmitting such advertisements or solicitations.  Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications.  Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

5.21.3   Franchisee agrees that:  (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

5.22   <u>Credit Cards and Other Methods of Payment</u>.  At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval.  Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider.  Franchisee must comply with all credit-card policies as prescribed in the Manuals.  Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA").  Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

5.23   <u>Uniforms</u>.  To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals.  Franchisee shall purchase such attire only from approved suppliers.

5.24   <u>Incentive Programs</u>.  Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

5.25   <u>Prices</u>.  With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws.  If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.26    Compliance with Laws and Good Business Practices.    Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.    All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.    Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    Franchisee Structure; Operating Principal and Owners.

5.27.1    Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2    If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3    If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4    Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

5.27.4.1   <u>Operating Principal</u>. An Operating Principal shall participate personally in the direct operation of the Restaurant. If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant. Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2   <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee. All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3   <u>General Manager</u>: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager"). The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4   <u>General Manager</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28   <u>Personal Guarantee</u>. Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29   <u>System Modifications</u>. Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants. Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials. Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense. Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30    <u>No Third-Party Management</u>. The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco. Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

**6.      Advertising and Marketing.**

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1    <u>Marketing Fee Expenditure</u>. Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above. Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2    <u>Local Advertising and Promotion.</u> All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws. Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below.  Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3    <u>Costs of Local Advertising and Promotion</u>.  As used in this Agreement, the term "**Local Advertising and Promotio**n" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1    Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2    Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3    The value of discounts provided to customers;

6.3.4    The cost of food items.

6.4    <u>Approvals</u>.  For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee).  If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them.  Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5    <u>Promotional Materials</u>. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials.  Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.    **Records and Reports.**

7.1    <u>Records</u>. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2 <u>Periodic Reports</u>. Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3 <u>Reporting Requirements</u>. In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4 <u>Audit</u>. Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5 <u>Data</u>. All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

7.6 <u>Accounting and Bookkeeping Services</u>. Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business. Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual. In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years. Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8. Proprietary Marks.

8.1 <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

8.1.1 Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

8.1.2 Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

8.2 <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

8.2.1 Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

8.2.2 Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

8.2.3 Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

8.2.4 During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof.  Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

DocuSign Envelope ID: 87A65DD2-542F-43CP-BE6A-B6F637B669F5

Case 8:24-bk-12237-TA   Doc 1367-1   Filed 02/27/24   Entered 02/27/24 16:15:24   Desc
Memorandum of Points and Authorities   Page 288 of 1415   Page 262 of 1376

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

24

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6E637B668F5

Case 8:24-bk-12827-TA Doc 1567-1 Filed 02/17/24 Entered 02/17/24 08:52:36 Desc
Memorandum of Points and Authorities in Sup Page 263 of 1376 Page 263 of 1376

9.4    Revisions to the Manuals. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

## 10.    Confidentiality and Covenants Not To Compete.

10.1    Confidential Information. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2    Irreparable Injury. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3    Information Exchange. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4    Full Time and Best Efforts. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5    In-Term Covenants. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

          10.5.1   Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

          10.5.2   Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

     10.6   <u>Post-Term Covenants</u>.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of:  (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

     10.7   <u>Publicly-Held Corporations</u>.   Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

     10.8   <u>Individual Covenants</u>.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

     10.9   <u>Severability</u>.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

     10.10   <u>Scope of Covenants</u>. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11   <u>Enforcement of Claims</u>.  The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12   <u>Irreparable Injury</u>.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13   <u>Remedies Not Exclusive</u>.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

## 11.   Insurance.

11.1   Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1   <u>Insurance Requirements</u>.   Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1   <u>Liability</u>.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2   <u>Fire</u>.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

11.1.1.3    <u>Business Interruption</u>.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4    <u>Business Automobile Liability Insurance</u>.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5    <u>Statutory Workers' Compensation Insurance</u>. Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6    <u>Commercial Umbrella Liability Insurance</u>.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7    <u>Property Insurance</u>. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8    <u>Products Liability Insurance</u>. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9    <u>Cyber Liability Insurance</u>. Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10    <u>Other Insurance</u>. Any other insurance coverage that is required by federal, state, or municipal law.

11.2    <u>Referenced in Manuals</u>.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3    <u>Policy Cancellation</u>.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4    <u>Construction and Remodeling Insurance</u>.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

11.5     No Waiver of Obligations.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6     Del Taco to be Additional Named Insured.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7     Evidence of Insurance.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8     Proof of Insurance.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9     Policy Limit Changes.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10     Del Taco's Insurance.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.     Transfer of Interest.**

12.1     Del Taco Transfers.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

12.2 <u>Owners</u>. If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

12.3 <u>Franchisee Transfers</u>. Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

12.3.1 Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

12.3.2 If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

12.3.3 If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

12.3.4 Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

12.3.5 Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

12.4 <u>Conditions for Approval</u>. Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6E537B669F5

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies. Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant. The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

DocuSign Envelope ID: 87A65DD2-542F-42CP-BE6A-D6F327B659F5

12.4.8   The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9   At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10  If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11  The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12  The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5   <u>Transfers to Entities for the Convenience of Ownership</u>.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1   Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2   Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.5.3    Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4    Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5    Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6    Right of First Refusal.

12.6.1    If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2    Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3    In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7    Transfer Upon Death.  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.8    Transfer Upon Permanent Disability.    Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.  If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.  Del Taco shall pay the cost of the required examination.

12.9    Notification Upon Death or Permanent Disability.    Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.  Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10    No Waiver of Claims.    Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11    Insolvency.    If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12    Securities Offerings.    All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.  Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use.  No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.  Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.  Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.  For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.  Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.  Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D6E637B668F5

Case 8:24-bk-12827-TA   Doc 1671   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Memorandum of Points and Authorities   Page 299 of 1445   Page 273 of 1376

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

**13.      Default and Termination.**

13.1      <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2      <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1   If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2   If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3   If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4   If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5   If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

DocuSign Envelope ID: 87A65DD2-642F-42CD-BE6A-D6F637B669F5

13.2.6   If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7   If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8   If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9   If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10  If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11  If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12  If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13  If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14  If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15  If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16  If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17  If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18  If Franchisee fails to make any payments when due to Del Taco;

13.2.19  If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20  If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3    Termination With Opportunity to Cure.  Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.  If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4    Extended Notice of Termination. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5    Assignment Upon Bankruptcy.  If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options

37

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D5E337B669F5

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

    13.6   <u>Other Remedies</u>.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

    13.6.1   Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

    13.6.2   Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

    13.6.3   Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

    13.6.4   Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.    Obligations Upon Termination or Expiration.

    14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

    14.1.1   <u>Cease Operations</u>.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

    14.1.2   <u>Cease Use of Proprietary Marks</u>.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

    14.1.3   <u>Cancellation of Assumed Names</u>.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

38

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4   <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%.   The payments called for in this Section 14.1.4 are not a penalty.   A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined.   Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event.   Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5   <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6   <u>No Confusion</u>.   Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7   <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises.   Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises.   If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose.   In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco.   If Franchisee fails or refuses to comply with the

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

        14.1.8  <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

        14.1.9  <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

        14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.     Taxes, Permits and Indebtedness

     15.1  <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

     15.2  <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

15.3    Compliance With Laws. Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations. Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances. To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall: (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4    Notification of Claims. Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

16.    **Independent Contractor and Indemnification.**

16.1    It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1    Identification as Independent Contractor. At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2    No Agency. Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco. Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3    Indemnification. Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant, Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction. In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices. Franchisee acknowledges and agrees that Franchisee's

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B668F5

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17.     Governing Law and Dispute Resolution.

17.1     <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2     <u>Venue.</u>  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3     <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1     <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2     <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3     <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E237B669F5

17.3.3.1 <u>Power of Chairman</u>. The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2 <u>Response to Demand</u>. Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration. The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure. If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3 <u>Amendment of Claim</u>. If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim. The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4 <u>Time for Arbitration Hearing</u>. The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5 <u>List of Witnesses and Documents</u>. Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand. The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party. The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time. The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing. The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6 <u>Record</u>. The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party. The cost of the stenographic record should be borne by the parties equally.

17.3.3.7 <u>Attendance at Hearings</u>. Any person who is a party to the arbitration may attend the hearings. The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness. The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8 <u>Adjournments</u>. Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

17.3.3.9    <u>Production of Witnesses and Records</u>.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10    <u>Absence of a Party</u>.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11    <u>Authority to Administer Oaths</u>.  The chairman may administer oaths.

17.3.3.12    <u>Evidence</u>.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13    <u>Evidence by Affidavit and Filing of Documents</u>.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14    <u>Discovery</u>.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15    <u>Reopening of Hearings</u>.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16    <u>Extensions</u>.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

17.3.3.17    <u>Time for Award</u>.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

17.3.3.18    <u>Confidentiality</u>.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

17.3.4    <u>Application of Federal Rules of Civil Procedure</u>.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

17.3.5    <u>Finality; Enforcement; Venue</u>.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

17.3.6    <u>Arbitration Costs, Attorneys' Fees and Costs</u>.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.7    <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

17.4    <u>Injunctive Relief</u>.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5    <u>Limitation of Actions</u>.  **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6    <u>Waiver of Damages</u>.  **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

18.    **Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

19.    **Approvals, Waivers and Binding Effects.**

19.1    <u>Approvals</u>.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2    <u>No Warranties</u>. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3    <u>Waivers</u>. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4    <u>Binding Effect; No Other Rights</u>. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

20.    **Notices.**

20.1    Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

46

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party.  Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

| | |
|---|---|
| Del Taco: | 25521 Commercentre Drive, Suite 200 |
| | Lake Forest, California 92630 |
| | Fax Number: (949) 616-5002 |
| | |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

## 21.   Force Majeure.

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party.  Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof;   compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event.  The notice shall describe the nature of the event and an estimate as to its duration.

## 22.   Immunity for Certain Limited Disclosures.

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

## 23.   Entire Agreement and Amendment.

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement.  There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement).  However, and

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

**24.**    **Severability; Enforcement of Covenants; Construction.**

24.1    <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2    <u>Enforceability of Covenants</u>.  Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3    <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision.  Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

**25.**    **Joint and Several Obligation.**

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

**26.**    **Incorporation of Exhibits.**

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

**27.**    **Counterparts.**

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

### 28. Survival of Provisions.

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

### 29. Representations, Warranties and Acknowledgments.

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    Independent Investigation. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    Receipt of Documents.   Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    No Other Representations. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    Modification of Offers. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    Development Agreement Terms. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    No Other Obligations.   Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

29.1.8  <u>Restaurant Location.</u> Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

29.1.9  <u>Compliance with Anti-Terrorism Laws and Other Laws.</u> Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of "**Specially Designated Nationals**" or "**Blocked Persons**" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx__/); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available  at  [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)),  U.S.  Executive  Order  13244  (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.  **Business Judgment.**

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

**[SIGNATURE PAGE FILLOWS]**

51

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D5F337B669F5

Case 8:24-bk-12771-TA Doc 156-1 Filed 02/27/25 Entered 02/27/25 16:32:36 Desc
Memorandum of Points and Authorities In Supp Doc The 445 Page 290 of 1376

Executed as of the day and year first set forth above.

FRANCHISOR:                              DEL TACO LLC

                                         By: *Jack Tang*
                                              Jack Tang
                                              Vice President & General Counsel



FRANCHISEE:                              NEWPORT VENTURES, LLC


                                         By: Techno Industries Inc
                                         Its President & CEO

                                         *Ernesto Abarro*
                                         Ernesto Abarro

                                         By: [signature]
                                              Katayoun Aryana


                                         Date: ___9/6/2023___

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E637B669F5

Case 23-24381-TPA Doc 1571 Filed 02/27/23 Entered 02/27/23 16:13:36 Desc
Memorandum of Points and Authorities in Support of the Page 291 of 1376

## Exhibit A

### Identification of Franchisee

1.     Name of Franchisee:      Newport Ventures, LLC

    1.     Notice Address of Franchisee:      1500 E. Bethany Home Road
    Suite 250
    Phoenix, AZ 85014
    E-Mail: ernieabarro@gmail.com
    Fax Number: (949) 534-7000

2.     Location of Restaurant:      5240 South Wadsworth Blvd.
    Lakewood, CO 80123

3.     Protected Area:      A circular area within a one-mile radius
    from the front door of the Restaurant, subject to Section
    1.2. of the Franchise Agreement.

4.     Date of Takeover:      October 4, 2023

5.     Date of Expiration:      September 22, 2025

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6F637B669F5

## EXHBIT B


**Deleted As Not Applicable**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E537B669F5

## EXHIBIT C

### Authorization Agreement for Prearranged Payments
### (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank                                  Mission Viejo, CA
_____      _____
Depository                                                              Branch

26042 Marguerite Pkwy, Mission Viejo, CA 92692
_____
Street Address, City, State, Zip Code

122000247                                            7429826410
_____      _____
Bank Transit/ABA Number                                  Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*
_____
33C61360BA31471...
Depositor

By: _____

Title: _____

Date: _____9/6/2023_____

Exhibit C

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## EXHIBIT D

### Statement of Ownership Interests

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| Individual/Entity Name | Percentage of Ownership/Nature of Interest* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Exhibit D

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B668F5

## EXHIBIT E

### Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated ___September 29___, 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S)

(Seal)         Signed: *Ernesto Abarro*
                       33C61360DA31471
                       (In his individual capacity)

               Ernesto Abarro
               120 S. Lovekin Blvd.
               Blythe, CA 92225

(Seal)         Signed: _____
                       B05A3956022040F
                       (In his individual capacity)

               Katayoun Aryana
               1500 E. Bethany Home Road
               Suite 250
               Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

**EXHIBIT F**

**Non-Disclosure and Non-Competition Agreement**

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this 29 day of September, 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

BACKGROUND:

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.      <u>Confidential Information</u>.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.      <u>Covenants Not to Compete</u>.

        (a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

(b)     Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)     Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)     Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)     Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)     As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.     <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.     <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.     <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.     <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-642F-42CD-BE6A-D6E527B669F5

7.    <u>Third-Party Beneficiary.</u>  Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this __29__ day of __September__ _____, 2023.

**FRANCHISEE:**                                          **OBLIGEE:**

**NEWPORT VENTURES, LLC**                      **ERNESTO ABARRO**

By: _Ernesto Abarro_____          By: _Ernesto Abarro_____
       33C61360BA31471...                                    33C61360BA31471...
    Ernesto Abarro

By: _____          **KATAYOUN ARYANA**
       B05A39E6022040F...
    Katayoun Aryana                                    By: _____
                                                                          B05A39E6022040F...

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BF6A-D6F637B669F5

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.  In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

    Del Taco LLC
    25521 Commercentre Drive
    Lake Forest, California 92630
    Attn: Jack Tang, Vice President, General Counsel

2.  In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.  The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.  Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.  All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be. Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant. Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.   Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.   Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.   Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.   Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.  The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.  The Lease is contingent upon Franchisor's written approval of the site.

12.  Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                                    **Tenant**

By:_____           By:_____

Its:_____           Its:_____

Date:_____          Date:_____

Exhibit F-6

**DocuSign**

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5    Status: Completed
Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...
Source Envelope:
Document Pages: 1213                     Signatures: 177              Envelope Originator:
Certificate Pages: 5                     Initials: 0                 Jack Tang
AutoNav: Enabled                                                     25521 Commercentre drive Suite 200
EnvelopeId Stamping: Enabled                                         Lake Forest, CA  92630
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                    mhernandez@deltaco.com
                                                                     IP Address: 209.234.159.82

## Record Tracking

Status: Original                 Holder: Jack Tang                  Location: DocuSign
        9/5/2023 5:36:27 PM              mhernandez@deltaco.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication (None) | *Ernesto Abarro*<br>33C61360BA31471...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 9/6/2023 10:33:13 AM<br>    ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Jack Tang*<br>AD28CBFCF34348A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 9/29/2023 9:27:32 AM<br>    ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication (None) | B05A39E6022040F...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 7/28/2023 8:56:42 AM<br>    ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/19/2021 12:45:15 PM
Parties agreed to: Ernesto Abarca, Jack Tang, Salvador ABASOLO
Case 8:24-bk-12738-TA    Doc 1507    Filed 02/27/25    Entered 02/27/25 16:52:36    Desc
Memorandum of Points and Authorities    Page 305 of 1415    Page 305 of 1376

# ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

## Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

## Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit E

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E327B669F5

Case 8:24-bk-12748-TA    Doc 156-1    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities    Page 309 of 1376

STORE 863



**FRANCHISE AGREEMENT**

## Table of Contents

**Page**

1.  Grant. ......................................................................................................................... 1
2.  Term and Renewal. ...................................................................................................... 3
3.  Fees and Payments. ...................................................................................................... 4
4.  Services By Del Taco. .................................................................................................. 6
5.  Obligations of Franchisee; Operational Standards. ..................................................... 7
6.  Advertising and Marketing. ........................................................................................ 19
7.  Records and Reports. .................................................................................................. 20
8.  Proprietary Marks. ...................................................................................................... 22
9.  Manuals. ...................................................................................................................... 24
10. Confidentiality and Covenants Not To Compete. ....................................................... 25
11. Insurance. .................................................................................................................... 27
12. Transfer of Interest. .................................................................................................... 29
13. Default and Termination. ............................................................................................ 35
14. Obligations Upon Termination or Expiration. ............................................................ 38
15. Taxes, Permits and Indebtedness. ............................................................................... 40
16. Independent Contractor and Indemnification. ............................................................. 41
17. Governing Law and Dispute Resolution. .................................................................... 42
18. Time is of the Essence ................................................................................................ 46
19. Approvals, Waivers and Binding Effects. ................................................................... 46
20. Notices. ........................................................................................................................ 46
21. Force Majeure. ............................................................................................................ 47
22. Immunity for Certain Limited Disclosures. ................................................................ 47
23. Entire Agreement and Amendment ............................................................................. 47
24. Severability; Enforcement of Covenants; Construction. ............................................ 48
25. Joint and Several Obligation. ...................................................................................... 48
26. Incorporation of Exhibits. ........................................................................................... 48
27. Counterparts. ............................................................................................................... 48
28. Survival of Provisions. ................................................................................................ 49
29. Representations, Warranties and Acknowledgments. .................................................. 49
30. Business Judgment. ..................................................................................................... 50

Exhibits:

A   Identification of Franchisee
B   Site Selection Addendum
C   Authorization Agreement for Prearranged Payments (Direct Debits)
D   Statement of Ownership Interests
E   Guarantee, Indemnification, and Acknowledgment
F   Non-Disclosure and Non-Competition Agreement
G   Addendum to Lease

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the _29_ day of ____September____, 2023 (the "**Effective Date**").

## RECITALS

A.    Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.    The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.    Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.    Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.    Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.    Grant.

1.1    <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E527B668F5

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A.  If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**").  Franchisee shall not relocate the Restaurant without Del Taco's prior written consent.  Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G.  Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

1.2    Protected Area.  Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof.  "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement.  Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

1.2.1    Advertise and promote the System within and outside of the Protected Area;

1.2.2    Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

1.2.2.1    Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area.  If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

1.2.3    Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B689F5

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10   Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

## 3.    Fees and Payments.

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

3.8     <u>Payments on Behalf of Franchisee</u>.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9     <u>Other Payments</u>.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    <u>No Refunds</u>.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.     Services By Del Taco.**

4.1     <u>Development of the Restaurant</u>. Deleted As Not Applicable.

4.2     <u>Initial and Ongoing Assistance</u>. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     <u>Opening Assistance</u>. Deleted As Not Applicable.

4.4     <u>Manuals</u>.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     <u>Merchandising and Marketing Advice</u>.  Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     <u>Ongoing Assistance</u>.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     <u>Bulletins and Reports</u>.  Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     <u>Computer System</u>. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

6

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B669F5

4.9    Inspection. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10    Delegation of Duties. Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

## 5.    Obligations of Franchisee; Operational Standards.

5.1    System Standards and Development of Restaurant.    Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2    Pre-Opening Obligations.  Deleted:

5.2.1    Deleted As Not Applicable.

5.2.2    Deleted As Not Applicable.

5.2.3    Deleted As Not Applicable.

5.2.4    Deleted As Not Applicable.

5.2.5    Deleted As Not Applicable.

5.2.6    Deleted As Not Applicable.

5.3    Restaurant Opening.  Deleted As Not Applicable:

5.3.1    Deleted As Not Applicable.

5.3.2    Deleted As Not Applicable.

5.3.3    Deleted As Not Applicable.

5.3.4    Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5    Deleted As Not Applicable.

5.4    Training. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

      5.4.1   <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

      5.4.2   <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

      5.4.3   <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

      5.4.4   <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

      5.4.5   <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

     5.4.6    [Reserved]

     5.4.7    Training costs. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

     5.4.8    Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

     5.5    Restaurant Premises. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

     5.6    Personnel. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

     5.7    Health Standards. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

    5.8    <u>Restaurant Maintenance</u>.  Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

    5.9    <u>Remodeling</u>.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public.  The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

    5.10    <u>Franchisee Advisory Council</u>.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

    5.11    <u>Equipment Upgrades</u>.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

    5.12    <u>Standards and Specifications</u>.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6F637B668F5

5.12.1    To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2    To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3    To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4    To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5    To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6    To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13    Suppliers.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E237B669F5

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

5.13.1   If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

5.13.2   Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

5.13.3   Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

5.13.4   Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

5.13.5   Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

all suppliers in accordance with the agreed-upon terms. In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

   5.13.6 Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

   5.14 <u>Inspections</u>. Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals. Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection. Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection. Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs. Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

   5.15 <u>Technology and Computer System</u>. At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

   5.15.1 Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable. In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications. To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

   5.15.2 Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following: (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

13

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6E637B669F5

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3    Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4    Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5    Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6    Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7    Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16    Customer Data.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17    Privacy Laws.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1    Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2    Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

5.18    Website.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    POS or Cash Register Systems.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20    Gift Cards.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    E-Mail, Internet and Other Media; E-Mail and Fax Communications.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

5.21.2   Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

      5.21.3  Franchisee agrees that: (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

      5.21.4  The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

      5.22  <u>Credit Cards and Other Methods of Payment</u>.  At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

      5.23  <u>Uniforms</u>.  To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

      5.24  <u>Incentive Programs</u>.  Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

      5.25  <u>Prices</u>.  With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6E327B699F5

5.26    Compliance with Laws and Good Business Practices.   Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.   All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.   Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    Franchisee Structure; Operating Principal and Owners.

5.27.1   Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2   If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3   If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4   Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.27.4.1 <u>Operating Principal</u>. An Operating Principal shall participate personally in the direct operation of the Restaurant. If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant. Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2 <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee. All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3 <u>General Manager</u>: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager"). The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4 <u>General Manager</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28 <u>Personal Guarantee</u>. Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29 <u>System Modifications</u>. Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants. Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials. Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense. Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F337B669F5

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30    No Third-Party Management. The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco. Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

**6.    Advertising and Marketing.**

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1    Marketing Fee Expenditure. Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above. Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2    Local Advertising and Promotion. All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws. Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3     <u>Costs of Local Advertising and Promotion</u>.  As used in this Agreement, the term "**Local Advertising and Promotio**n" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1     Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2     Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3     The value of discounts provided to customers;

6.3.4     The cost of food items.

6.4     <u>Approvals</u>.  For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee).  If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them.  Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5     <u>Promotional Materials</u>. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials.  Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

**7.     Records and Reports.**

7.1     <u>Records</u>. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E537B669F5

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing.  Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year.  To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2     Periodic Reports.  Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3     Reporting Requirements.  In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco.  Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4     Audit.  Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee.  Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees.  Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee.  If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs).  The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5     Data.  All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee.  In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement.  Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request.  Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement.  Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

       7.6    <u>Accounting and Bookkeeping Services</u>.  Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

       8.1    <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

       8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

       8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

       8.2    <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

       8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

       8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

       8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

       8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B699F5

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

9.4    <u>Revisions to the Manuals</u>. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

## 10.    Confidentiality and Covenants Not To Compete.

10.1    <u>Confidential Information</u>. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2    <u>Irreparable Injury</u>. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3    <u>Information Exchange</u>. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4    <u>Full Time and Best Efforts</u>. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5    <u>In-Term Covenants</u>. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

        10.5.1  Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

        10.5.2  Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

        10.6   <u>Post-Term Covenants</u>.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of:  (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

        10.7   <u>Publicly-Held Corporations</u>.  Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

        10.8   <u>Individual Covenants</u>.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

        10.9   <u>Severability</u>.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

        10.10  <u>Scope of Covenants</u>. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F237B68F5

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11    <u>Enforcement of Claims</u>. The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10. Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12    <u>Irreparable Injury</u>. Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13    <u>Remedies Not Exclusive</u>. The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

**11.    Insurance.**

11.1    Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1    <u>Insurance Requirements</u>. Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located. Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1    <u>Liability</u>. A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2    <u>Fire</u>. Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment. The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

DocuSign Envelope ID: 87A6EDD2-542F-48CD-BE6A-D6E637B669F5

11.1.1.3  <u>Business Interruption</u>.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4  <u>Business Automobile Liability Insurance</u>.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5  <u>Statutory Workers' Compensation Insurance</u>.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6  <u>Commercial Umbrella Liability Insurance</u>.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7  <u>Property Insurance</u>. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8  <u>Products Liability Insurance</u>. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9  <u>Cyber Liability Insurance</u>. Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10  <u>Other Insurance</u>. Any other insurance coverage that is required by federal, state, or municipal law.

11.2  <u>Referenced in Manuals</u>.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3  <u>Policy Cancellation</u>.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4  <u>Construction and Remodeling Insurance</u>.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6F237B668F5

11.5    <u>No Waiver of Obligations</u>.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6    <u>Del Taco to be Additional Named Insured</u>.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7    <u>Evidence of Insurance</u>.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8    <u>Proof of Insurance</u>.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9    <u>Policy Limit Changes</u>.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10    <u>Del Taco's Insurance</u>.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.    Transfer of Interest.**

12.1    <u>Del Taco Transfers</u>.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

12.2    Owners.  If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto.  Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

12.3    Franchisee Transfers.  Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

12.3.1   Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

12.3.2   If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

12.3.3   If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

12.3.4   Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

12.3.5   Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

12.4    Conditions for Approval.  Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

DocuSign Envelope ID: 87A6DD2-542F-43CD-BE6A-D6E237B669F5

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

12.4.8 The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9 At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000). The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training. The transfer fee is non-refundable. In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5    Transfers to Entities for the Convenience of Ownership. If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1   Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2   Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6   Right of First Refusal.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7   Transfer Upon Death.   Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.8   Transfer Upon Permanent Disability.   Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.   If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.   Del Taco shall pay the cost of the required examination.

12.9   Notification Upon Death or Permanent Disability.   Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.   Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10   No Waiver of Claims.   Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11   Insolvency.   If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12   Securities Offerings.   All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.   Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use.   No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.   Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.   Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.   For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.   Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.   Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

## 13.    Default and Termination.

13.1    <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2    <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1   If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2   If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3   If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4   If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5   If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

13.2.6   If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7   If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8   If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9   If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10  If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11  If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12  If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13  If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14  If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15  If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16  If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17  If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18  If Franchisee fails to make any payments when due to Del Taco;

13.2.19  If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20  If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3     Termination With Opportunity to Cure.  Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.  If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4     Extended Notice of Termination. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5     Assignment Upon Bankruptcy.  If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6    <u>Other Remedies</u>.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1    Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2    Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

13.6.3    Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4    Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.    Obligations Upon Termination or Expiration.

14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1    <u>Cease Operations</u>.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2    <u>Cease Use of Proprietary Marks</u>.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3    <u>Cancellation of Assumed Names</u>.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4 <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%. The payments called for in this Section 14.1.4 are not a penalty. A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined. Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event. Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5 <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6 <u>No Confusion</u>. Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7 <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises. Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises. If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose. In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco. If Franchisee fails or refuses to comply with the

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

14.1.8   <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

14.1.9   <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.    Taxes, Permits and Indebtedness

15.1   <u>Taxes</u>.  Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

15.2   <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

15.3   <u>Compliance With Laws</u>.  Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.  Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.  To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4   <u>Notification of Claims</u>.  Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16.   Independent Contractor and Indemnification.

16.1   It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1   <u>Identification as Independent Contractor</u>.  At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2   <u>No Agency</u>.  Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3   <u>Indemnification</u>.  Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-B6E637B698F5

Case 8:24-bk-12827-TA Doc 1567-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities Page 378 of 1415    Page 352 of 1376

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17.    Governing Law and Dispute Resolution.

17.1    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2    <u>Venue</u>.  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3    <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1    <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2    <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3    <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

17.3.3.1   Power of Chairman.  The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2   Response to Demand.  Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration.  The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure.  If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3   Amendment of Claim.  If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim.  The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4   Time for Arbitration Hearing.  The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5   List of Witnesses and Documents.  Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand.  The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party.  The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time.  The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing.  The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6   Record.  The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party.  The cost of the stenographic record should be borne by the parties equally.

17.3.3.7   Attendance at Hearings.  Any person who is a party to the arbitration may attend the hearings.  The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness.  The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8   Adjournments.  Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

17.3.3.9 <u>Production of Witnesses and Records</u>. Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence. The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10 <u>Absence of a Party</u>. The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend. The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11 <u>Authority to Administer Oaths</u>. The chairman may administer oaths.

17.3.3.12 <u>Evidence</u>. The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute. The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence. The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13 <u>Evidence by Affidavit and Filing of Documents</u>. The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission. Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators. All parties shall have the opportunity to examine those documents.

17.3.3.14 <u>Discovery</u>. The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose. Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt. In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person. The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15 <u>Reopening of Hearings</u>. The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16 <u>Extensions</u>. The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

44

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E837B669F5

       17.3.3.17  <u>Time for Award</u>.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

       17.3.3.18  <u>Confidentiality</u>.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

       17.3.4  <u>Application of Federal Rules of Civil Procedure</u>.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

       17.3.5  <u>Finality; Enforcement; Venue</u>.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

       17.3.6  <u>Arbitration Costs, Attorneys' Fees and Costs</u>.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

       17.3.7  <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

    17.4  <u>Injunctive Relief</u>.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

    17.5  <u>Limitation of Actions</u>. **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

    17.6  <u>Waiver of Damages</u>. **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

45

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE
DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE
AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT
DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

**18.     Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del
Taco under Section 5.14, time shall be of the essence.

**19.     Approvals, Waivers and Binding Effects.**

19.1     <u>Approvals</u>.  Whenever this Agreement requires Del Taco's prior approval or consent,
Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco
shall grant, if at all, only in writing.

19.2     <u>No Warranties</u>. Del Taco makes no warranties or guarantees upon which Franchisee may
rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or
suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of
any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR
IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR
PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL
NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE
GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF
WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND
REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER
ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO
EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE
PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3     <u>Waivers</u>. Except as set forth in this Agreement, no rights or remedies set forth in this
Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of
any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver
of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or
condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a
waiver by Del Taco of any prior breach.

19.4     <u>Binding Effect; No Other Rights</u>. This Agreement shall bind the parties and their respective
executors, administrators, successors and assigns. Except as expressly provided to the contrary herein,
nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other
than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be
contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by
reason of this Agreement.

**20.     Notices.**

20.1     Any and all notices required or permitted under this Agreement shall be in writing and shall
be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx,
etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party. Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

|         |         |
|---------|---------|
| Del Taco: | 25521 Commercentre Drive, Suite 200<br>Lake Forest, California 92630<br>Fax Number: (949) 616-5002 |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

**21.    Force Majeure.**

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party. Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof; compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event. The notice shall describe the nature of the event and an estimate as to its duration.

**22.    Immunity for Certain Limited Disclosures.**

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

**23.    Entire Agreement and Amendment.**

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement. There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

DocuSign Envelope ID: 87A6DD2-542F-43CD-BE6A-D6E637B669F5

Case 8:24-bk-12827-TA   Doc 1567-1   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Memorandum of Points and Authorities   Page 384 of 1415   Page 358 of 1376

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any. Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing. The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

## 24. Severability; Enforcement of Covenants; Construction.

24.1    Severability.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2    Enforceability of Covenants. Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3    Construction.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

## 25. Joint and Several Obligation.

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

## 26. Incorporation of Exhibits.

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

## 27. Counterparts.

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

**28.    Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

**29.    Representations, Warranties and Acknowledgments.**

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    <u>Receipt of Documents</u>.    Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    <u>No Other Obligations.</u>    Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

29.1.8  <u>Restaurant Location.</u>  Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

29.1.9  <u>Compliance with Anti-Terrorism Laws and Other Laws.</u>  Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of "**Specially Designated Nationals**" or "**Blocked Persons**" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx  /); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.    Business Judgment.

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

**[SIGNATURE PAGE FILLOWS]**

Executed as of the day and year first set forth above.

FRANCHISOR:                              DEL TACO LLC

By: *Jack Tang*
    AD28CBFCF34346A...
Jack Tang
Vice President & General Counsel


FRANCHISEE:                              NEWPORT VENTURES, LLC


By: Techno Industries Inc
Its President & CEO

*Ernesto Abarro*
33C6136DBA31471...
Ernesto Abarro

By: _____
    B05A39E6022040F...
Katayoun Aryana

Date: 9/6/2023
_____

DocuSign Envelope ID: 87A6FDD2-642E-42CD-BE6A-D6E637B669F5

Case 23-04188-FA Doc 1507 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities In Support The Page 363 of 1376

### Exhibit A

**Identification of Franchisee**

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |

2.      Notice Address of Franchisee:

1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014
E-Mail: ernieabarro@gmail.com
Fax Number: (949) 534-7000

3.      Location of Restaurant:

570 East Bromley Lane
Brighton, CO 80601

4.      Protected Area:

A circular area within a one-mile radius
from the front door of the Restaurant, subject to Section
1.2. of the Franchise Agreement.

5.      Date of Takeover:

October 4, 2023

6.      Date of Expiration:

March 3, 2041

**<u>EXHBIT B</u>**

**Deleted As Not Applicable**

**EXHIBIT C**

**Authorization Agreement for Prearranged Payments**
**(Direct Debits)**

      The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank

Mission Viejo, CA

Depository                                   Branch
26042 Marguerite Pkwy, Mission Viejo, CA 92692

Street Address, City, State, Zip Code
 122000247                       7429826410

Bank Transit/ABA Number                     Account Number

      This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

_Ernesto Albarro_
Depositor

By: _____

Title: _____

Date:  9/6/2023

Exhibit C

DocuSign Envelope ID: 87A6EDD2-542F-48CD-BE6A-D6F237B668F5

## EXHIBIT D

### Statement of Ownership Interests

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| <u>Individual/Entity Name</u> | <u>Percentage of Ownership/Nature of Interest</u>* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6F637B66BF5

## EXHIBIT E

### Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated ___September 29___ , 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to:  (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee.  Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms.  Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding.  If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Exhibit E-1

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S)

(Seal)       Signed: _Ernesto Abarro_____
33C6136DBA21871...
(In his individual capacity)

Ernesto Abarro
120 S. Lovekin Blvd.
Blythe, CA 92225

(Seal)       Signed: _____
B05A39EB02208DF...
(In his individual capacity)

Katayoun Aryana
1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B669F5

<u>**EXHIBIT F**</u>

**Non-Disclosure and Non-Competition Agreement**

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this __29__ day of <u>September</u>, 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

BACKGROUND:

A.        Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.        Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.        The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.        <u>Confidential Information</u>.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.        <u>Covenants Not to Compete</u>.

(a)        Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

(b)     Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)     Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)     Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)     Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)     As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.     <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.     <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.     <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.     <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

Exhibit F-2

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

      7.    <u>Third-Party Beneficiary.</u>  Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

      **IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this  29  day of  September        , 2023.

**FRANCHISEE:**

**NEWPORT VENTURES, LLC**

By: Ernesto Abarro
     33C61360BA31471...
Ernesto Abarro

By: _____
     B05A39E6022040F...
Katayoun Aryana

**OBLIGEE:**

**ERNESTO ABARRO**

By: Ernesto Abarro
     33C61360BA31471...

**KATAYOUN ARYANA**

By: _____
     B05A39E6022040F...

## EXHIBIT G

### ADDENDUM TO LEASE

      This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

      WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

      WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

      NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.     In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

> Del Taco LLC
> 25521 Commercentre Drive
> Lake Forest, California 92630
> Attn:  Jack Tang, Vice President, General Counsel

2.     In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.     The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.     Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.     All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be.  Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant.  Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D5E637B669F5

Case 8:24-bk-12377-TA Doc 150-1 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities Supp Doc The 415 Page 373 of 1376

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.    Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.    Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.    Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.    Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.   The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.   The Lease is contingent upon Franchisor's written approval of the site.

12.   Landlord consents to the operation of the Restaurant on a 24-hour basis.

      The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E827B669F5

Case 8:24-bk-12737-TA Doc 156-1 Filed 02/27/24 Entered 02/27/24 08:12:36 Desc
Memorandum of Points and Authorities in Support of Mot Page 400 of 1415 Page 374 of 1376

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                    **Tenant**

By:_____           By:_____


Its:_____           Its:_____


Date:_____          Date:_____

Exhibit F-6

DocuSign

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5                                          Status: Completed
Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...
Source Envelope:
Document Pages: 1213                      Signatures: 177                      Envelope Originator:
Certificate Pages: 5                      Initials: 0                         Jack Tang
AutoNav: Enabled                                                              25521 Commercentre drive Suite 200
EnvelopeId Stamping: Enabled                                                  Lake Forest, CA  92630
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                             mhernandez@deltaco.com
                                                                             IP Address: 209.234.159.82

## Record Tracking

Status: Original                          Holder: Jack Tang                  Location: DocuSign
        9/5/2023 5:36:27 PM                       mhernandez@deltaco.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication<br>(None) | *Ernesto Abarro*<br>33C61360BA31471...<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 9/6/2023 10:33:13 AM<br>ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication<br>(None) | *Jack Tang*<br>AD28CBFCF34348A...<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 9/29/2023 9:27:32 AM<br>ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication<br>(None) | *[signature]*<br>B05A39E6022040F...<br>Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 7/28/2023 8:56:42 AM<br>ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/19/2021 12:45:45 PM
Parties agreed to: Ernesto Abarca, Jack Tang, Perimeter ABS Propco 41 LLC

Case 23-90085 Doc 1571 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities Page 403 of 1415    Page 377 of 1376

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit F

DocuSign Envelope ID: 87A65DD2-5426-42CD-BE6A-D6E327B689F5

STORE 864



# FRANCHISE AGREEMENT

DocuSign Envelope ID: 87A6FDD2-542F-42CP-BE6A-D6E637B669F5

Case 8:24-bk-12771-TA Doc 156-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities in Support of the ir Page 382 of 1376

## Table of Contents

**Page**

1. Grant. .................................................................................................... 1
2. Term and Renewal. ............................................................................... 3
3. Fees and Payments. .............................................................................. 4
4. Services By Del Taco. ........................................................................... 6
5. Obligations of Franchisee; Operational Standards. .......................... 7
6. Advertising and Marketing. ................................................................. 19
7. Records and Reports. ........................................................................... 20
8. Proprietary Marks. ............................................................................... 22
9. Manuals. ................................................................................................. 24
10. Confidentiality and Covenants Not To Compete. ............................. 25
11. Insurance. ............................................................................................... 27
12. Transfer of Interest. ............................................................................. 29
13. Default and Termination. ..................................................................... 35
14. Obligations Upon Termination or Expiration. .................................. 38
15. Taxes, Permits and Indebtedness. ....................................................... 40
16. Independent Contractor and Indemnification. .................................. 41
17. Governing Law and Dispute Resolution. ........................................... 42
18. Time is of the Essence ......................................................................... 46
19. Approvals, Waivers and Binding Effects. .......................................... 46
20. Notices. ................................................................................................... 46
21. Force Majeure. ...................................................................................... 47
22. Immunity for Certain Limited Disclosures. ....................................... 47
23. Entire Agreement and Amendment. .................................................... 47
24. Severability; Enforcement of Covenants; Construction. .................. 48
25. Joint and Several Obligation. .............................................................. 48
26. Incorporation of Exhibits. ................................................................... 48
27. Counterparts. ......................................................................................... 48
28. Survival of Provisions. ......................................................................... 49
29. Representations, Warranties and Acknowledgments. ....................... 49
30. Business Judgment. ............................................................................... 50

Exhibits:

A     Identification of Franchisee
B     Site Selection Addendum
C     Authorization Agreement for Prearranged Payments (Direct Debits)
D     Statement of Ownership Interests
E     Guarantee, Indemnification, and Acknowledgment
F     Non-Disclosure and Non-Competition Agreement
G     Addendum to Lease

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CP-BE6A-D5F637B669F5

Case 22-11258-KBO Doc 1567 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Memorandum of Points and Authorities In Support Thereof    Page 383 of 1376

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the 29___ day of _September_, 2023 (the "**Effective Date**").

## RECITALS

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.      Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.      Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.      Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.      Grant.

1.1      <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

    1.2    <u>Protected Area</u>. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

    1.2.1    Advertise and promote the System within and outside of the Protected Area;

    1.2.2    Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

    1.2.2.1    Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

    1.2.3    Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

## 3.    Fees and Payments.

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CP-BE6A-D6E237B69DF5

Case 8:24-bk-12827-TA   Doc 1667   Filed 02/27/25   Entered 02/27/25 10:52:36   Desc
Memorandum of Points and Authorities   Page 404 of 1415   Page 388 of 1376

3.8     Payments on Behalf of Franchisee.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9     Other Payments.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    No Refunds.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.     Services By Del Taco.**

4.1     Development of the Restaurant. Deleted As Not Applicable.

4.2     Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     Opening Assistance. Deleted As Not Applicable.

4.4     Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     Bulletins and Reports. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

4.9 <u>Inspection</u>. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10 <u>Delegation of Duties.</u> Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

**5. Obligations of Franchisee; Operational Standards.**

5.1 <u>System Standards and Development of Restaurant</u>. Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2 <u>Pre-Opening Obligations</u>. Deleted:

5.2.1 Deleted As Not Applicable.

5.2.2 Deleted As Not Applicable.

5.2.3 Deleted As Not Applicable.

5.2.4 Deleted As Not Applicable.

5.2.5 Deleted As Not Applicable.

5.2.6 Deleted As Not Applicable.

5.3 <u>Restaurant Opening</u>. Deleted As Not Applicable:

5.3.1 Deleted As Not Applicable.

5.3.2 Deleted As Not Applicable.

5.3.3 Deleted As Not Applicable.

5.3.4 Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5 Deleted As Not Applicable.

5.4 <u>Training</u>. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

7

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

      5.4.1   <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

      5.4.2   <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

      5.4.3   <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

      5.4.4   <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

      5.4.5   <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

       5.4.6   [Reserved]

       5.4.7   Training costs. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

       5.4.8   Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

       5.5   Restaurant Premises. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

       5.6   Personnel. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

       5.7   Health Standards. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

5.8     Restaurant Maintenance.  Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

5.9     Remodeling.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public.  The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

5.10    Franchisee Advisory Council.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

5.11    Equipment Upgrades.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

5.12    Standards and Specifications.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   <u>Suppliers</u>.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F237B669F5

Case 8:24-bk-12827-TA Doc 1567-1 Filed 02/27/24 Entered 02/27/24 16:35:36 Desc
Memorandum of Points and Authorities IP Sup400 Page 394 of 1376

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

      5.13.1  If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

      5.13.2  Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

      5.13.3  Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

      5.13.4  Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

      5.13.5  Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

all suppliers in accordance with the agreed-upon terms. In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

5.13.6   Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

5.14   Inspections.   Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals. Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection. Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection. Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs. Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

5.15   Technology and Computer System.   At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

5.15.1   Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable. In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications. To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

5.15.2   Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following:  (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

       5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

       5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

       5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

       5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

       5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

     5.16   <u>Customer Data</u>.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

     5.17   <u>Privacy Laws</u>.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

       5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

       5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

5.18    <u>Website</u>.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees.  Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    <u>POS or Cash Register Systems</u>.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20    <u>Gift Cards</u>.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    <u>E-Mail, Internet and Other Media; E-Mail and Fax Communications</u>.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

        5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

        5.21.2   Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

        5.21.3   Franchisee agrees that: (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

        5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

        5.22   <u>Credit Cards and Other Methods of Payment</u>.   At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

        5.23   <u>Uniforms</u>.   To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

        5.24   <u>Incentive Programs</u>.   Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

        5.25   <u>Prices</u>.   With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

5.26     <u>Compliance with Laws and Good Business Practices</u>.  Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.  All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.  Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27     <u>Franchisee Structure; Operating Principal and Owners</u>.

5.27.1     Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2     If Franchisee is a partnership or limited liability partnership it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3     If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4     Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

5.27.4.1    Operating Principal. An Operating Principal shall participate personally in the direct operation of the Restaurant. If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant. Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2    Owners: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee. All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3    General Manager: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager"). The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4    General Manager: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28    Personal Guarantee. Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29    System Modifications. Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants. Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials. Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense. Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

18

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

     5.30   <u>No Third-Party Management</u>. The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco. Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

## 6.    Advertising and Marketing.

     Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

     6.1   <u>Marketing Fee Expenditure</u>. Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above. Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

     6.2   <u>Local Advertising and Promotion.</u> All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws. Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

      6.3    <u>Costs of Local Advertising and Promotion</u>. As used in this Agreement, the term "**Local Advertising and Promotion**" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

      6.3.1    Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

      6.3.2    Charitable, political, or other contributions or donations, whether in cash, food, or services;

      6.3.3    The value of discounts provided to customers;

      6.3.4    The cost of food items.

      6.4    <u>Approvals</u>. For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee). If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them. Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

      6.5    <u>Promotional Materials</u>. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials. Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

# 7.    Records and Reports.

      7.1    <u>Records</u>. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2     Periodic Reports.  Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3     Reporting Requirements.  In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4     Audit.  Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee.  Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees.  Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee.  If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs).  The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5     Data.  All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee.  In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement.  Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request.  Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement.  Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B669F5

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

7.6    <u>Accounting and Bookkeeping Services</u>.    Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

8.1    <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

8.2    <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

9.4     Revisions to the Manuals. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

**10.     Confidentiality and Covenants Not To Compete.**

10.1     Confidential Information. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2     Irreparable Injury. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3     Information Exchange. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4     Full Time and Best Efforts. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5     In-Term Covenants. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

        10.5.1   Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

        10.5.2   Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

        10.6   <u>Post-Term Covenants</u>.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of:  (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

        10.7   <u>Publicly-Held Corporations</u>.   Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

        10.8   <u>Individual Covenants</u>.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

        10.9   <u>Severability</u>.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

        10.10   <u>Scope of Covenants</u>. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11 <u>Enforcement of Claims</u>. The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10. Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12 <u>Irreparable Injury</u>. Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13 <u>Remedies Not Exclusive</u>. The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

**11.    Insurance.**

11.1 Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1 <u>Insurance Requirements</u>. Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located. Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1 <u>Liability</u>. A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2 <u>Fire</u>. Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment. The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

11.1.1.3    <u>Business Interruption</u>.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4    <u>Business Automobile Liability Insurance</u>.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5    <u>Statutory Workers' Compensation Insurance</u>.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6    <u>Commercial Umbrella Liability Insurance</u>.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7    <u>Property Insurance</u>.  Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8    <u>Products Liability Insurance</u>. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9    <u>Cyber Liability Insurance</u>. Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10    <u>Other Insurance</u>. Any other insurance coverage that is required by federal, state, or municipal law.

11.2    <u>Referenced in Manuals</u>.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3    <u>Policy Cancellation</u>.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4    <u>Construction and Remodeling Insurance</u>.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

11.5    No Waiver of Obligations.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6    Del Taco to be Additional Named Insured.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7    Evidence of Insurance.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8    Proof of Insurance.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9    Policy Limit Changes.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10    Del Taco's Insurance.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.    Transfer of Interest.**

12.1    Del Taco Transfers.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

29

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

      12.2   <u>Owners</u>. If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

      12.3   <u>Franchisee Transfers</u>. Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

      12.3.1   Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

      12.3.2   If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

      12.3.3   If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

      12.3.4   Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

      12.3.5   Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

      12.4   <u>Conditions for Approval</u>. Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1 Franchisee shall comply with Del Taco's then-current transfer policies. Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2 The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3 The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4 Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant. The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5 If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6 If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7 All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

12.4.8  The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9  At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5    Transfers to Entities for the Convenience of Ownership.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1   Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2   Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

12.5.3    Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4    Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5    Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6    Right of First Refusal.

12.6.1    If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require. Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party. If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2    Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer. Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3    In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash. If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination. If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee. The cost of any such appraisal shall be shared equally by Del Taco and Franchisee. If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7    Transfer Upon Death.    Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco. If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.8    Transfer Upon Permanent Disability.  Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.  If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.  Del Taco shall pay the cost of the required examination.

12.9    Notification Upon Death or Permanent Disability.  Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.  Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10    No Waiver of Claims.  Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11    Insolvency.  If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12    Securities Offerings.  All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.  Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use.  No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.  Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.  Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.  For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.  Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.  Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

**13.     Default and Termination.**

    13.1     <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

    13.2     <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

        13.2.1   If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

        13.2.2   If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

        13.2.3   If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

        13.2.4   If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

        13.2.5   If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

13.2.6   If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7   If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8   If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9   If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3    Termination With Opportunity to Cure.  Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.  If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4    Extended Notice of Termination. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5    Assignment Upon Bankruptcy.  If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6    Other Remedies.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1   Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2   Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

13.6.3   Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4   Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.    Obligations Upon Termination or Expiration.

14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1   Cease Operations.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2   Cease Use of Proprietary Marks.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3   Cancellation of Assumed Names.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4    <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%.  The payments called for in this Section 14.1.4 are not a penalty.  A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined.  Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event.  Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5    <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6    <u>No Confusion</u>.  Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7    <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises.  Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises.  If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose.  In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco.  If Franchisee fails or refuses to comply with the

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

        14.1.8  <u>Option to Purchase Equipment and Furnishings</u>. Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value. The book value shall be determined based upon a five (5) year straight line depreciation of original costs. For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost. If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

        14.1.9  <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

        14.1.10 <u>Other Rights of Franchisee</u>. The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.     Taxes, Permits and Indebtedness

    15.1  <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant. If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

    15.2  <u>Tax Disputes</u>. In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

15.3   <u>Compliance With Laws</u>.  Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.  Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.  To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4   <u>Notification of Claims</u>.  Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16.    Independent Contractor and Indemnification.

16.1   It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1   <u>Identification as Independent Contractor</u>.  At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2   <u>No Agency</u>.  Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3   <u>Indemnification</u>. Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

41

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17.    Governing Law and Dispute Resolution.

17.1    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2    <u>Venue.</u>  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3    <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1    <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2    <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3    <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

17.3.3.1   <u>Power of Chairman</u>.   The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2   <u>Response to Demand</u>.   Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration.   The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure.   If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3   <u>Amendment of Claim</u>.   If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim.   The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4   <u>Time for Arbitration Hearing</u>.   The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5   <u>List of Witnesses and Documents</u>.   Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand.   The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party.   The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time.   The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing.   The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6   <u>Record</u>.   The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party.   The cost of the stenographic record should be borne by the parties equally.

17.3.3.7   <u>Attendance at Hearings</u>.   Any person who is a party to the arbitration may attend the hearings.   The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness.   The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8   <u>Adjournments</u>.   Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

17.3.3.9    <u>Production of Witnesses and Records</u>.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10    <u>Absence of a Party</u>.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11    <u>Authority to Administer Oaths</u>.  The chairman may administer oaths.

17.3.3.12    <u>Evidence</u>.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13    <u>Evidence by Affidavit and Filing of Documents</u>.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14    <u>Discovery</u>.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15    <u>Reopening of Hearings</u>.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16    <u>Extensions</u>.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

44

   17.3.3.17 <u>Time for Award</u>.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

   17.3.3.18 <u>Confidentiality</u>.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

   17.3.4 <u>Application of Federal Rules of Civil Procedure</u>.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

   17.3.5 <u>Finality; Enforcement; Venue</u>.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

   17.3.6 <u>Arbitration Costs, Attorneys' Fees and Costs</u>.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

   17.3.7 <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

  17.4 <u>Injunctive Relief</u>.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

  17.5 <u>Limitation of Actions</u>**. EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

  17.6 <u>Waiver of Damages</u>. **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

45

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

## 18.      Time is of the Essence

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

## 19.      Approvals, Waivers and Binding Effects.

19.1      Approvals.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2      No Warranties. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3      Waivers. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4      Binding Effect; No Other Rights. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

## 20.      Notices.

20.1      Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party. Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

| | |
|---|---|
| Del Taco: | 25521 Commercentre Drive, Suite 200 |
| | Lake Forest, California 92630 |
| | Fax Number: (949) 616-5002 |
| | |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

## 21.    Force Majeure.

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party. Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof; compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event. The notice shall describe the nature of the event and an estimate as to its duration.

## 22.    Immunity for Certain Limited Disclosures.

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

## 23.    Entire Agreement and Amendment.

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement. There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

47

DocuSign Envelope ID: 87A6DD2-542F-43CD-BE6A-D6E637B669F5

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

## 24.    Severability; Enforcement of Covenants; Construction.

24.1    <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2    <u>Enforceability of Covenants</u>. Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3    <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

## 25.    Joint and Several Obligation.

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

## 26.    Incorporation of Exhibits.

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

## 27.    Counterparts.

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

28.    **Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

29.    **Representations, Warranties and Acknowledgments.**

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    <u>Receipt of Documents</u>.   Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    <u>No Other Obligations.</u>    Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

      29.1.8  <u>Restaurant Location.</u>  Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

      29.1.9  <u>Compliance with Anti-Terrorism Laws and Other Laws</u>. Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of **"Specially Designated Nationals"** or **"Blocked Persons"** maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx\_/); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at  <u>http://www.epic.org/privacy/terrorism/hr3162.html</u>), U.S. Executive Order 13244 (text currently available at <u>http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html</u>), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.    **Business Judgment.**

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BF6A-D6E637B669F5

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E627B669F5

Case 8:24-bk-12881-TA    Doc 1567    Filed 02/27/24    Entered 02/27/24 08:13:36    Desc
Memorandum of Points and Authorities    Page 459 of 1415    Page 433 of 1376

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

### [SIGNATURE PAGE FILLOWS]

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E327B669F5

Case 8:24-bk-12771-TA  Doc 156-1  Filed 02/27/24  Entered 02/27/24 08:52:36  Desc
Memorandum of Points and Authorities In Supp of  Page 434 of 1376

Executed as of the day and year first set forth above.

FRANCHISOR:                                DEL TACO LLC

                                           By: _Jack Tang_____
                                               Jack Tang
                                               Vice President & General Counsel


FRANCHISEE:                                NEWPORT VENTURES, LLC


                                           By: Techno Industries Inc
                                           Its President & CEO

                                           _Ernesto Abarro_____
                                           Ernesto Abarro

                                           By: _[signature]_____
                                               Katayoun Aryana


                                           Date: _9/6/2023_____

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-642F-42CD-BE6A-D6E637B669F5

## Exhibit A

### Identification of Franchisee

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |
| 2. | Notice Address of Franchisee: | 1500 E Bethany Home Road Suite 250 Phoenix, AZ 85014 E-Mail: ernieabarro@gmail.com Fax Number: (949) 534-7000 |
| 3. | Location of Restaurant: | 14400 East Colfax Avenue Aurora, CO 80011 |
| 4. | Protected Area: | A circular area within a one-mile radius from the front door of the Restaurant, subject to Section 1.2. of the Franchise Agreement. |
| 5. | Date of Takeover: | October 4, 2023 |
| 6. | Date of Expiration: | June 28, 2041 |

Exhibit A

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B659F5

Case 8:24-bk-12738-TA    Doc 156-1    Filed 02/27/24    Entered 02/27/24 08:32:36    Desc
Memorandum of Points and Authorities in Support of The 45    Page 436 of 1376

## EXHIBIT B

## Deleted As Not Applicable

Exhibit B-1

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E237B669F5

Case 8:24-bk-12738-TA    Doc 1507-1    Filed 02/27/25    Entered 02/27/25 16:52:36    Desc
Memorandum of Points and Authorities    Page 463 of 1415    Page 437 of 1376

## EXHIBIT C

### Authorization Agreement for Prearranged Payments
### (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank                          Mission Viejo, CA

_____     _____
Depository                                              Branch
26042 Marguerite Pkwy, Mission Viejo, CA 92692

_____
Street Address, City, State, Zip Code
122000247                                   7429826410

_____     _____
Bank Transit/ABA Number                        Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*
_____
33C6136DBA31471...
Depositor

By: _____

Title: _____

Date: 9/6/2023
_____

Exhibit C

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## **EXHIBIT D**

### **Statement of Ownership Interests**

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| Individual/Entity Name | Percentage of Ownership/Nature of Interest* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B669F5

## EXHIBIT E

### Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated   September 29   , 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to:  (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee.  Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms.  Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding.  If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Exhibit E-1

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D6E627B668F5

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S)

(Seal)                  Signed: _Ernesto Abarro_____
                                33C61360BA3147...
                                (In his individual capacity)

                        Ernesto Abarro
                        120 S. Lovekin Blvd.
                        Blythe, CA 92225


(Seal)                  Signed: _____
                                B05A39E6022D40F...
                                (In his individual capacity)

                        Katayoun Aryana
                        1500 E. Bethany Home Road
                        Suite 250
                        Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B669F5

## EXHIBIT F

### Non-Disclosure and Non-Competition Agreement

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this <u>29</u> day of <u>September</u>, 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

BACKGROUND:

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.      <u>Confidential Information</u>.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.      <u>Covenants Not to Compete</u>.

(a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B698F5

(b)    Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)    Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)    Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)    Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)    As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.    <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.    <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.    <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.    <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

7. <u>Third-Party Beneficiary.</u> Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this 29 day of September _____, 2023.

**FRANCHISEE:**

**NEWPORT VENTURES, LLC**

By: _Ernesto Abarro_
      33C61360BA31471...
      Ernesto Abarro

By: _____
      B05A39E6022040F...
      Katayoun Aryana

**OBLIGEE:**

**ERNESTO ABARRO**

By: _Ernesto Abarro_
      33C61360BA31471...

**KATAYOUN ARYANA**

By: _____
      B05A39E6022040F...

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E337B669F5

## EXHIBIT G

## ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.  In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

    Del Taco LLC
    25521 Commercentre Drive
    Lake Forest, California 92630
    Attn: Jack Tang, Vice President, General Counsel

2.  In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.  The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.  Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.  All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be. Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant. Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

DocuSign Envelope ID: 87A6FDD2-542F-48CD-BE6A-D6F637B669F5

Case 8:24-bk-12527-TA Doc 1507-1 Filed 02/27/25 Entered 02/27/25 16:18:24 Desc
Memorandum of Points and Authorities In Support of Mtn Page 471 of 1415    Page 445 of 1376

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.      Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.      Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.      Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.      Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.     The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.     The Lease is contingent upon Franchisor's written approval of the site.

12.     Landlord consents to the operation of the Restaurant on a 24-hour basis.

        The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**

By:_____

Its:_____

Date:_____

**Tenant**

By:_____

Its:_____

Date:_____

Exhibit F-6

**DocuSign**

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5                    Status: Completed
Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...
Source Envelope:
Document Pages: 1213                    Signatures: 177                    Envelope Originator:
Certificate Pages: 5                    Initials: 0                    Jack Tang
AutoNav: Enabled                                         25521 Commercentre drive Suite 200
EnvelopeId Stamping: Enabled                              Lake Forest, CA  92630
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                mhernandez@deltaco.com
                                                         IP Address: 209.234.159.82

## Record Tracking

Status: Original                    Holder: Jack Tang                    Location: DocuSign
        9/5/2023 5:36:27 PM                 mhernandez@deltaco.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication (None) | *Ernesto Abarro*<br>33C61360BA31471...<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| Electronic Record and Signature Disclosure:<br>    Accepted: 9/6/2023 10:33:13 AM<br>    ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Jack Tang*<br>AD28CBFCF34348A...<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| Electronic Record and Signature Disclosure:<br>    Accepted: 9/29/2023 9:27:32 AM<br>    ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication (None) | *signature*<br>B05A39E6022040F...<br>Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| Electronic Record and Signature Disclosure:<br>    Accepted: 7/28/2023 8:56:42 AM<br>    ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

# ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

### Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

### Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit G

DocuSign Envelope ID: 87A6FDD2-542E-42CD-BE6A-D6E327B698F5

STORE 1001



**FRANCHISE AGREEMENT**

# Table of Contents

<strong>Page</strong>

1.  Grant. ........................................................................................................... 1
2.  Term and Renewal. ........................................................................................ 3
3.  Fees and Payments. ....................................................................................... 4
4.  Services By Del Taco. .................................................................................... 6
5.  Obligations of Franchisee; Operational Standards. ...................................... 7
6.  Advertising and Marketing. .......................................................................... 19
7.  Records and Reports. ..................................................................................... 20
8.  Proprietary Marks. ......................................................................................... 22
9.  Manuals. ......................................................................................................... 24
10. Confidentiality and Covenants Not To Compete. .......................................... 25
11. Insurance. ....................................................................................................... 27
12. Transfer of Interest. ....................................................................................... 29
13. Default and Termination. ............................................................................... 35
14. Obligations Upon Termination or Expiration. ............................................... 38
15. Taxes, Permits and Indebtedness. .................................................................. 40
16. Independent Contractor and Indemnification. ............................................... 41
17. Governing Law and Dispute Resolution. ....................................................... 42
18. Time is of the Essence ................................................................................... 46
19. Approvals, Waivers and Binding Effects. ...................................................... 46
20. Notices. .......................................................................................................... 46
21. Force Majeure. ............................................................................................... 47
22. Immunity for Certain Limited Disclosures. ................................................... 47
23. Entire Agreement and Amendment. ............................................................... 47
24. Severability; Enforcement of Covenants; Construction. ............................... 48
25. Joint and Several Obligation. ......................................................................... 48
26. Incorporation of Exhibits. .............................................................................. 48
27. Counterparts. .................................................................................................. 48
28. Survival of Provisions. ................................................................................... 49
29. Representations, Warranties and Acknowledgments. ..................................... 49
30. Business Judgment. ........................................................................................ 50

Exhibits:

A    Identification of Franchisee
B    Site Selection Addendum
C    Authorization Agreement for Prearranged Payments (Direct Debits)
D    Statement of Ownership Interests
E    Guarantee, Indemnification, and Acknowledgment
F    Non-Disclosure and Non-Competition Agreement
G    Addendum to Lease

i

DocuSign Envelope ID: 87A6FDD2-542F-48CD-BE6A-D6F637B669F5

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B669F5

Case 8:24-bk-12738-TA   Doc 1007-1   Filed 02/27/25   Entered 02/27/25 16:13:36   Desc
Memorandum of Points and Authorities   Page 481 of 1415   Page 455 of 1376

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the 29 day of September , 2023 (the "**Effective Date**").

## RECITALS

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.      Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.      Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.      Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.      Grant.

1.1      Grant of Rights. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

      1.2    <u>Protected Area</u>. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

      1.2.1    Advertise and promote the System within and outside of the Protected Area;

      1.2.2    Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

      1.2.2.1    Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

      1.2.3    Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System. Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System. Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System. Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>. Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

**3.    Fees and Payments.**

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

> 3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

> 3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

> 3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

> 3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

> 3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

3.8     Payments on Behalf of Franchisee.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9     Other Payments.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    No Refunds.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

## 4.     Services By Del Taco.

4.1     Development of the Restaurant. Deleted As Not Applicable.

4.2     Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     Opening Assistance. Deleted As Not Applicable.

4.4     Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     Bulletins and Reports. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F637B668F5

4.9     Inspection. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10     Delegation of Duties. Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

## 5.     Obligations of Franchisee; Operational Standards.

5.1     System Standards and Development of Restaurant.     Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2     Pre-Opening Obligations.  Deleted:

5.2.1     Deleted As Not Applicable.

5.2.2     Deleted As Not Applicable.

5.2.3     Deleted As Not Applicable.

5.2.4     Deleted As Not Applicable.

5.2.5     Deleted As Not Applicable.

5.2.6     Deleted As Not Applicable.

5.3     Restaurant Opening.  Deleted As Not Applicable:

5.3.1     Deleted As Not Applicable.

5.3.2     Deleted As Not Applicable.

5.3.3     Deleted As Not Applicable.

5.3.4     Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5     Deleted As Not Applicable.

5.4     Training. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

      5.4.1   <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

      5.4.2   <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

      5.4.3   <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

      5.4.4   <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

      5.4.5   <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

8

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F637B659F5

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

     5.4.6   [Reserved]

     5.4.7   Training costs. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

     5.4.8   Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

     5.5   Restaurant Premises. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

     5.6   Personnel. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

     5.7   Health Standards. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

5.8     Restaurant Maintenance.  Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

5.9     Remodeling.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public.  The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

5.10     Franchisee Advisory Council.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

5.11     Equipment Upgrades.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

5.12     Standards and Specifications.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.   In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   Suppliers.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

  5.13.1 If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

  5.13.2 Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

  5.13.3 Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

  5.13.4 Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

  5.13.5 Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

all suppliers in accordance with the agreed-upon terms. In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

5.13.6   Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

5.14   <u>Inspections</u>.   Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals. Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection. Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection. Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs. Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

5.15   <u>Technology and Computer System</u>.   At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

5.15.1   Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable. In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications. To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

5.15.2   Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following: (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

       5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

       5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

       5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

       5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

       5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

    5.16   <u>Customer Data</u>.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

    5.17   <u>Privacy Laws</u>.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

       5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

       5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

5.18    <u>Website</u>.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    <u>POS or Cash Register Systems</u>.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20    <u>Gift Cards</u>.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    <u>E-Mail, Internet and Other Media; E-Mail and Fax Communications</u>.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

5.21.1    Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

5.21.2    Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

        5.21.3   Franchisee agrees that: (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

        5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

        5.22   <u>Credit Cards and Other Methods of Payment</u>.  At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

        5.23   <u>Uniforms</u>.  To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

        5.24   <u>Incentive Programs</u>.  Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

        5.25   <u>Prices</u>.  With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

5.26    Compliance with Laws and Good Business Practices.    Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.    All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.    Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    Franchisee Structure; Operating Principal and Owners.

5.27.1    Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2    If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3    If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4    Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F637B669F5

5.27.4.1    _Operating Principal_.  An Operating Principal shall participate personally in the direct operation of the Restaurant.  If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant.  Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2    _Owners_: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee.  All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3    _General Manager_: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager").  The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4    _General Manager_: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28    _Personal Guarantee_.  Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29    _System Modifications_.  Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants.  Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials.  Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense.  Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30    No Third-Party Management.  The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco.  Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

**6.    Advertising and Marketing.**

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1    Marketing Fee Expenditure.  Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above.  Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof.  Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2    Local Advertising and Promotion.  All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws.  Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

      6.3    <u>Costs of Local Advertising and Promotion</u>. As used in this Agreement, the term "**Local Advertising and Promotio**n" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

      6.3.1    Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

      6.3.2    Charitable, political, or other contributions or donations, whether in cash, food, or services;

      6.3.3    The value of discounts provided to customers;

      6.3.4    The cost of food items.

      6.4    <u>Approvals</u>. For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee). If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them. Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

      6.5    <u>Promotional Materials</u>. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials. Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.    Records and Reports.

      7.1    <u>Records</u>. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2     Periodic Reports.    Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3     Reporting Requirements.    In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4     Audit.    Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5     Data.    All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B699F5

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

      7.6    <u>Accounting and Bookkeeping Services</u>.  Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

      8.1    <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

          8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

          8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

      8.2    <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

          8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

          8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

          8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

          8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-48CD-9E6A-D6E537B669F5

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

9.4   Revisions to the Manuals. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

**10.    Confidentiality and Covenants Not To Compete.**

10.1   Confidential Information. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2   Irreparable Injury.   Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3   Information Exchange.   Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4   Full Time and Best Efforts.   During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5   In-Term Covenants.   Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

10.5.1 Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

10.5.2 Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

10.6    Post-Term Covenants.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of:  (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

10.7    Publicly-Held Corporations.    Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

10.8    Individual Covenants.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

10.9    Severability.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

10.10    Scope of Covenants. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

        10.11   <u>Enforcement of Claims</u>. The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

        10.12   <u>Irreparable Injury</u>.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

        10.13   <u>Remedies Not Exclusive</u>.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

**11.    Insurance.**

        11.1   Franchisee shall comply with the following indemnification and insurance provisions:

        11.1.1   <u>Insurance Requirements</u>.  Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

        11.1.1.1   <u>Liability</u>.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

        11.1.1.2   <u>Fire</u>.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D5F537B668F5

11.1.1.3    Business Interruption.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4    Business Automobile Liability Insurance.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5    Statutory Workers' Compensation Insurance.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6    Commercial Umbrella Liability Insurance.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7    Property Insurance. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8    Products Liability Insurance. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9    Cyber Liability Insurance. Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10    Other Insurance.  Any other insurance coverage that is required by federal, state, or municipal law.

11.2    Referenced in Manuals.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3    Policy Cancellation.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4    Construction and Remodeling Insurance.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

11.5   <u>No Waiver of Obligations</u>.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6   <u>Del Taco to be Additional Named Insured</u>.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7   <u>Evidence of Insurance</u>.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8   <u>Proof of Insurance</u>.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9   <u>Policy Limit Changes</u>.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10   <u>Del Taco's Insurance</u>.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.   Transfer of Interest.**

12.1   <u>Del Taco Transfers</u>.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

       12.2   <u>Owners</u>. If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

       12.3   <u>Franchisee Transfers</u>. Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

       12.3.1   Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

       12.3.2   If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

       12.3.3   If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

       12.3.4   Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

       12.3.5   Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

       12.4   <u>Conditions for Approval</u>. Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1    Franchisee shall comply with Del Taco's then-current transfer policies. Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2    The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3    The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4    Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant. The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5    If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6    If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7    All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

12.4.8   The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9   At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5   <u>Transfers to Entities for the Convenience of Ownership</u>.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1   Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2   Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6   Right of First Refusal.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7   Transfer Upon Death.  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco.  If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.8   Transfer Upon Permanent Disability.   Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee.  "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.  If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.  Del Taco shall pay the cost of the required examination.

12.9   Notification Upon Death or Permanent Disability.   Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.  Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10   No Waiver of Claims.   Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11   Insolvency.   If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12   Securities Offerings.   All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.  Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use.  No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.  Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.  Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.  For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.  Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.  Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

**13.     Default and Termination.**

13.1     <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2     <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1   If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2   If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3   If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4   If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5   If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

13.2.6    If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7    If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8    If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9    If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3    Termination With Opportunity to Cure.  Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.  If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4    Extended Notice of Termination. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5    Assignment Upon Bankruptcy.  If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6    Other Remedies.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1    Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2    Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

13.6.3    Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4    Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.    Obligations Upon Termination or Expiration.

14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1    Cease Operations.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2    Cease Use of Proprietary Marks.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3    Cancellation of Assumed Names.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4   <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%.   The payments called for in this Section 14.1.4 are not a penalty.   A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined.   Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event.   Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5   <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6   <u>No Confusion</u>.   Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7   <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises.   Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises.   If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose.   In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco.   If Franchisee fails or refuses to comply with the

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

14.1.8  <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

14.1.9  <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.     Taxes, Permits and Indebtedness

15.1    <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

15.2    <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

15.3    <u>Compliance With Laws</u>.  Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.  Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.  To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4    <u>Notification of Claims</u>.  Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16.    Independent Contractor and Indemnification.

16.1    It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1    <u>Identification as Independent Contractor</u>.  At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2    <u>No Agency</u>.  Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3    <u>Indemnification</u>.  Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17. Governing Law and Dispute Resolution.

17.1    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions. However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement. Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2    <u>Venue</u>. Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California. The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above. Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision. Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3    <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1    <u>Demand to Arbitrate</u>. The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute. The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought. A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2    <u>Appointment of Arbitrators</u>. Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration. If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association. Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect. If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3    <u>Conduct of Arbitration</u>. Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B66BF5

Case 8:24-bk-12827-TA Doc 1671 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Memorandum of Points and Authorities in Suppo Page 523 of 1415    Page 497 of 1376

17.3.3.1    Power of Chairman.  The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2    Response to Demand.  Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration.  The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure.  If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3    Amendment of Claim.  If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim.  The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4    Time for Arbitration Hearing.  The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5    List of Witnesses and Documents.  Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand.  The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party.  The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time.  The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing.  The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6    Record.  The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party.  The cost of the stenographic record should be borne by the parties equally.

17.3.3.7    Attendance at Hearings.  Any person who is a party to the arbitration may attend the hearings.  The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness.  The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8    Adjournments.  Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

17.3.3.9    <u>Production of Witnesses and Records</u>.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10    <u>Absence of a Party</u>.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11    <u>Authority to Administer Oaths</u>.  The chairman may administer oaths.

17.3.3.12    <u>Evidence</u>.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13    <u>Evidence by Affidavit and Filing of Documents</u>.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14    <u>Discovery</u>.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15    <u>Reopening of Hearings</u>.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16    <u>Extensions</u>.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B669F5

Case 8:24-bk-12237-TA Doc 1367-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities Page 525 of 1415   Page 499 of 1376

17.3.3.17   Time for Award.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

17.3.3.18   Confidentiality.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

17.3.4   Application of Federal Rules of Civil Procedure.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

17.3.5   Finality; Enforcement; Venue.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

17.3.6   Arbitration Costs, Attorneys' Fees and Costs.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.7   Survival. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

17.4   Injunctive Relief.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5   Limitation of Actions. **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6   Waiver of Damages. **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

**18.** **Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.** **Approvals, Waivers and Binding Effects.**

19.1    Approvals.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2    No Warranties. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

> DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3    Waivers. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4    Binding Effect; No Other Rights. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.** **Notices.**

20.1    Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party. Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

| | |
|---|---|
| Del Taco: | 25521 Commercentre Drive, Suite 200 |
| | Lake Forest, California 92630 |
| | Fax Number: (949) 616-5002 |
| | |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

## 21. Force Majeure.

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party. Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof; compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event. The notice shall describe the nature of the event and an estimate as to its duration.

## 22. Immunity for Certain Limited Disclosures.

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

## 23. Entire Agreement and Amendment.

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement. There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B669F5

Case 8:24-bk-12827-TA Doc 1671 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities IR Supp Pg Page 502 of 1376    Page 502 of 1376

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any. Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing. The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

**24.    Severability; Enforcement of Covenants; Construction.**

24.1    <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2    <u>Enforceability of Covenants</u>. Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3    <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

**25.    Joint and Several Obligation.**

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

**26.    Incorporation of Exhibits.**

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

**27.    Counterparts.**

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

Case 8:24-bk-12371-TA   Doc 1567-1   Filed 02/27/25   Entered 02/27/25 16:15:36   Desc
Memorandum of Points and Authorities   Page 503 of 1415   Page 503 of 1376

**28.     Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

**29.     Representations, Warranties and Acknowledgments.**

29.1     Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1     <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2     <u>Receipt of Documents</u>.  Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3     <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4     Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5     <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6     <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7     <u>No Other Obligations.</u>  Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

      29.1.8  <u>Restaurant Location.</u> Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

      29.1.9  <u>Compliance with Anti-Terrorism Laws and Other Laws.</u> Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of **"Specially Designated Nationals"** or **"Blocked Persons"** maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx   /); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.    **Business Judgment.**

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

DocuSign Envelope ID: 87A6FDD2-542F-48CD-BE6A-D6F637B698F5

Case 23-24581-FA Doc 1507 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities in Support of The Page 505 of 1376

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

**[SIGNATURE PAGE FILLOWS]**

51

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-8E6A-D5E327B669F5

Case 8:24-bk-12738-TA    Doc 1567    Filed 02/27/25    Entered 02/27/25 08:32:36    Desc
Memorandum of Points and Authorities In Support of The    Page 506 of 1376

Executed as of the day and year first set forth above.

**FRANCHISOR:**                              **DEL TACO LLC**

By: _Jack Tang_

Jack Tang
Vice President & General Counsel

**FRANCHISEE:**                              **NEWPORT VENTURES, LLC**

By: Techno Industries Inc
Its President & CEO

_Ernesto Abarro_

Ernesto Abarro

By: _[signature]_

Katayoun Aryana

Date: 9/6/2023

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F637B669F5

Case 23-24445-MBK Doc 1071 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities in Support of Main Document Page 507 of 1376

**<u>Exhibit A</u>**

**Identification of Franchisee**

1.  Name of Franchisee:           Newport Ventures, LLC

2.  Notice Address of Franchisee:   1500 E. Bethany Home Road
    Suite 250
    Phoenix, AZ 85014
    E-Mail: ernieabarro@gmail.com
    Fax Number: (949) 534-7000

3.  Location of Restaurant:        11053 I-25 Frontage Road
    Firestone, CO 80504

4.  Protected Area:                A circular area within a one-mile radius
    from the front door of the Restaurant, subject to Section
    1.2. of the Franchise Agreement.

5.  Date of Takeover:              October 4, 2023

6.  Date of Expiration:             March 15, 2026

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## **EXHIBIT B**

## **Deleted As Not Applicable**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B699F5

Case 8:24-bk-12771-TA Doc 1567 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities in Support of the ... Page 509 of 1376

## EXHIBIT C

### Authorization Agreement for Prearranged Payments
### (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank

Mission Viejo, CA

Depository _____ Branch

26042 Marguerite Pkwy, Mission Viejo, CA 92692

Street Address, City, State, Zip Code

122000247

7429826410

Bank Transit/ABA Number

Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*
DocuSigned by:
33C6136DBA31471...

Depositor

By: _____

Title: _____

Date: 9/6/2023 _____

Exhibit C

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## **EXHIBIT D**

### **Statement of Ownership Interests**

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| <u>Individual/Entity Name</u> | <u>Percentage of Ownership/Nature of Interest</u>* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A96DD2-542F-48CD-BE6A-D6E637B669F5

## EXHIBIT E

### Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated September 29 , 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S):

(Seal)                    Signed: _Ernesto Abarro_____
                                   33C61360BA31471
                                   (In his individual capacity)

Ernesto Abarro
120 S. Lovekin Blvd.
Blythe, CA 92225

(Seal)                    Signed: _____
                                   B05A30E6022040F
                                   (In his individual capacity)

Katayoun Aryana
1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B669F5

**EXHIBIT F**

**Non-Disclosure and Non-Competition Agreement**

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this 29 day of September 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

BACKGROUND:

A. Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B. Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C. The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1. <u>Confidential Information</u>. Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2. <u>Covenants Not to Compete</u>.

(a) Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

Exhibit F-1

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

(b)      Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)      Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)      Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)      Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)      As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.      <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.      <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.      <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.      <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

Exhibit F-2

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E527B669F5

Case 8:24-bk-12738-TA   Doc 156-1   Filed 02/27/24   Entered 02/27/24 08:32:36   Desc
Memorandum of Points and Authorities in Support of The   Page 515 of 1376

7.    Third-Party Beneficiary.    Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this 29   day of _____ September _____, 2023.

**FRANCHISEE:**

**NEWPORT VENTURES, LLC**

By: _____
    Ernesto Abarro

By: _____
    Katayoun Aryana

**OBLIGEE:**

**ERNESTO ABARRO**

By: _____

**KATAYOUN ARYANA**

By: _____

Exhibit F-3

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E537B669F5

Case 8:24-bk-12837-TA Doc 1067-5 Filed 02/27/25 Entered 02/27/25 16:31:39 Desc
Memorandum of Points and Authorities in Supp Part 5 Page 516 of 1376

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.  In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

    Del Taco LLC
    25521 Commercentre Drive
    Lake Forest, California 92630
    Attn: Jack Tang, Vice President, General Counsel

2.  In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.  The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.  Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.  All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be. Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant. Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

Exhibit F-4

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F837B669F5

Case 8:24-bk-12137-TA    Doc 1507-1    Filed 02/27/24    Entered 02/27/24 16:13:24    Desc
Memorandum of Points and Authorities    Page 543 of 1415    Page 517 of 1376

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.    Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.    Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.    Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.    Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.    The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.    The Lease is contingent upon Franchisor's written approval of the site.

12.    Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E527B669F5

Case 8:24-bk-12779-TA   Doc 1607   Filed 02/27/25   Entered 02/27/25 08:32:36   Desc
Memorandum of Points and Authorities in Support Thereof   Page 544 of 1415   Page 518 of 1376

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**

By:_____

Its:_____

Date:_____

**Tenant**

By:_____

Its:_____

Date:_____

**DocuSign**

| | |
|---|---|
| **Certificate Of Completion** | |

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5                                                        Status: Completed
Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...
Source Envelope:
Document Pages: 1213                     Signatures: 177                      Envelope Originator:
Certificate Pages: 5                     Initials: 0                          Jack Tang
AutoNav: Enabled                                                              25521 Commercentre drive Suite 200
EnvelopeId Stamping: Enabled                                                  Lake Forest, CA  92630
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                             mhernandez@deltaco.com
                                                                             IP Address: 209.234.159.82

| | |
|---|---|
| **Record Tracking** | |

Status: Original                    Holder: Jack Tang                    Location: DocuSign
          9/5/2023 5:36:27 PM                 mhernandez@deltaco.com

| **Signer Events** | **Signature** | **Timestamp** |
|---|---|---|
| Ernesto Abarro | *Ernesto Abarro* | Sent: 9/5/2023 6:35:09 PM |
| ernieabarro@gmail.com | 33C61360BA31471... | Viewed: 9/6/2023 10:33:13 AM |
| Security Level: Email, Account Authentication (None) | | Signed: 9/6/2023 10:42:42 AM |
| | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 50.225.0.130 | |
| **Electronic Record and Signature Disclosure:** | | |
| Accepted: 9/6/2023 10:33:13 AM | | |
| ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang | *Jack Tang* | Sent: 9/5/2023 6:35:11 PM |
| jtang@deltaco.com | AD28CBFCF34348A... | Resent: 9/6/2023 10:48:07 AM |
| General Counsel | | Resent: 9/29/2023 9:26:01 AM |
| Del Taco LLC | | Viewed: 9/29/2023 9:27:32 AM |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | Signed: 9/29/2023 9:28:28 AM |
| | Using IP Address: 209.234.159.82 | |
| **Electronic Record and Signature Disclosure:** | | |
| Accepted: 9/29/2023 9:27:32 AM | | |
| ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana | | Sent: 9/5/2023 6:35:10 PM |
| karyana@acc.capital | B05A39E6022040F... | Viewed: 9/6/2023 10:34:06 AM |
| Security Level: Email, Account Authentication (None) | | Signed: 9/6/2023 10:36:22 AM |
| | Signature Adoption: Drawn on Device | |
| | Using IP Address: 50.235.38.2 | |
| | Signed using mobile | |
| **Electronic Record and Signature Disclosure:** | | |
| Accepted: 7/28/2023 8:56:42 AM | | |
| ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| **In Person Signer Events** | **Signature** | **Timestamp** |
|---|---|---|

| **Editor Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Agent Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Intermediary Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| **Certified Delivery Events** | **Status** | **Timestamp** |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/19/2021 12:45:45 PM
Parties agreed to: Enrieta Abazaj, Jack Tang, Schumacher APN4506

Case 8:24-bk-12883-TA   Doc 1507   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Memorandum of Points and Authorities   Page 547 of 1415   Page 521 of 1376

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

## Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

## Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit H

DocuSign Envelope ID: 87A6EDD2-542E-42CD-BE6A-D6E327B688F5

Case 8:24-bk-12781-TA    Doc 156-1    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities Page 551 of 1415    Page 525 of 1376

STORE 1002



**FRANCHISE AGREEMENT**

# Table of Contents

**Page**

1.  Grant. ...................................................................................................................... 1
2.  Term and Renewal. ................................................................................................. 3
3.  Fees and Payments. ................................................................................................ 4
4.  Services By Del Taco. ............................................................................................ 6
5.  Obligations of Franchisee; Operational Standards. ............................................... 7
6.  Advertising and Marketing. .................................................................................. 19
7.  Records and Reports. ............................................................................................ 20
8.  Proprietary Marks. ................................................................................................ 22
9.  Manuals. ............................................................................................................... 24
10. Confidentiality and Covenants Not To Compete. ................................................ 25
11. Insurance. ............................................................................................................. 27
12. Transfer of Interest. .............................................................................................. 29
13. Default and Termination. ...................................................................................... 35
14. Obligations Upon Termination or Expiration. ..................................................... 38
15. Taxes, Permits and Indebtedness. ........................................................................ 40
16. Independent Contractor and Indemnification. ..................................................... 41
17. Governing Law and Dispute Resolution. ............................................................. 42
18. Time is of the Essence ......................................................................................... 46
19. Approvals, Waivers and Binding Effects. ............................................................ 46
20. Notices. ................................................................................................................. 46
21. Force Majeure. ...................................................................................................... 47
22. Immunity for Certain Limited Disclosures. ......................................................... 47
23. Entire Agreement and Amendment....................................................................... 47
24. Severability; Enforcement of Covenants; Construction. ...................................... 48
25. Joint and Several Obligation. ............................................................................... 48
26. Incorporation of Exhibits. .................................................................................... 48
27. Counterparts. ........................................................................................................ 48
28. Survival of Provisions. ......................................................................................... 49
29. Representations, Warranties and Acknowledgments. ........................................... 49
30. Business Judgment................................................................................................ 50

Exhibits:

A   Identification of Franchisee
B   Site Selection Addendum
C   Authorization Agreement for Prearranged Payments (Direct Debits)
D   Statement of Ownership Interests
E   Guarantee, Indemnification, and Acknowledgment
F   Non-Disclosure and Non-Competition Agreement
G   Addendum to Lease

DocuSign Envelope ID: 87A65DD2-642F-48CD-BE6A-D6E537B669F5

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the 29 day of September, 2023 (the "**Effective Date**").

## RECITALS

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.      Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.      Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.      Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.      Grant.

1.1      <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B668F5

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

 1.2 <u>Protected Area</u>. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

 1.2.1 Advertise and promote the System within and outside of the Protected Area;

 1.2.2 Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

 1.2.2.1 Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

 1.2.3 Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2, and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    No assurances of a renewal franchise agreement.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

3.    **Fees and Payments.**

3.1    Franchise Fee.  Deleted As Not Applicable.

3.2    Promotional Fee.  Deleted As Not Applicable.

3.3    Royalty Fees.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

3.4    <u>Marketing Fee</u>.    Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").    Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.    Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.    Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>    All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.    Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.    Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.    To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.    Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.    Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.    Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.    Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6    <u>No Subordination</u>.    Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7    <u>Overdue Payments and Reports; Interest</u>.    Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.    If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.    Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

3.8    <u>Payments on Behalf of Franchisee</u>.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9    <u>Other Payments</u>.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    <u>No Refunds</u>.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.    Services By Del Taco.**

4.1    <u>Development of the Restaurant</u>. Deleted As Not Applicable.

4.2    <u>Initial and Ongoing Assistance</u>. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3    <u>Opening Assistance</u>. Deleted As Not Applicable.

4.4    <u>Manuals</u>.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5    <u>Merchandising and Marketing Advice</u>. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6    <u>Ongoing Assistance</u>.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7    <u>Bulletins and Reports</u>. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8    <u>Computer System</u>. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

4.9    <u>Inspection</u>. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10    <u>Delegation of Duties.</u> Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

**5.    Obligations of Franchisee; Operational Standards.**

5.1    <u>System Standards and Development of Restaurant</u>.    Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2    <u>Pre-Opening Obligations</u>.  Deleted:

    5.2.1    Deleted As Not Applicable.

    5.2.2    Deleted As Not Applicable.

    5.2.3    Deleted As Not Applicable.

    5.2.4    Deleted As Not Applicable.

    5.2.5    Deleted As Not Applicable.

    5.2.6    Deleted As Not Applicable.

5.3    <u>Restaurant Opening</u>.  Deleted As Not Applicable:

    5.3.1    Deleted As Not Applicable.

    5.3.2    Deleted As Not Applicable.

    5.3.3    Deleted As Not Applicable.

5.3.4    Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

    5.3.5    Deleted As Not Applicable.

5.4    <u>Training</u>. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

7

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-642E-42CD-BE6A-D6E637B669F5

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time.  Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant.  Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training.  Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training.   Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco.  With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs:  the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

        5.4.1   <u>Initial Training</u>.  Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco.  All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal.  In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

        5.4.2   <u>Operating Principal and General Manager</u>.  If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities.  The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so.  Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

        5.4.3   <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement.  In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

        5.4.4   <u>Pre-Opening Crew Training</u>.  Deleted As Not Applicable.

        5.4.5   <u>Continuing Management and Crew Training</u>.  After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System.  Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant.  If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling.  Franchisee is solely responsible for ensuring its

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

managers and employees are adequately trained and supervised.  Del Taco shall make classroom training available to all future management employees of Franchisee.  Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco.  If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

     5.4.6   [Reserved]

     5.4.7   Training costs.  The cost of all initial training instruction and required materials shall be borne by Del Taco.  All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

     5.4.8   Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

     5.5   Restaurant Premises.  Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time.  As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant.  Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

     5.6   Personnel.  Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe.  Franchisee shall comply with all applicable employment and wage and hour laws and regulations.  Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects.  Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco.  Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

     5.7   Health Standards.  Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant.  Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant.  Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

5.8     <u>Restaurant Maintenance</u>.  Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

5.9     <u>Remodeling</u>.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public.  The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

5.10    <u>Franchisee Advisory Council</u>.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

5.11    <u>Equipment Upgrades</u>.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

5.12    <u>Standards and Specifications</u>.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing.  Franchisee agrees:

5.12.1  To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2  To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3  To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4  To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5  To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6  To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13  Suppliers.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

11

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E837B669F5

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

5.13.1   If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

5.13.2   Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

5.13.3   Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

5.13.4   Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

5.13.5   Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

all suppliers in accordance with the agreed-upon terms.  In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

       5.13.6   Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

      5.14    <u>Inspections</u>.   Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals.  Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection.  Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection.  Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs.  Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

      5.15    <u>Technology and Computer System</u>.   At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

      5.15.1   Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable.  In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications.  To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

      5.15.2   Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following:  (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

13

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   Customer Data.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   Privacy Laws.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Case 8:24-bk-12837-TA   Doc 1671   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Memorandum of Points and Authorities In Supp of The...   Page 541 of 1376

5.18     Website.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees.  Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19     POS or Cash Register Systems.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20     Gift Cards.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21     E-Mail, Internet and Other Media; E-Mail and Fax Communications.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

5.21.2   Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

5.21.3   Franchisee agrees that: (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

5.22   <u>Credit Cards and Other Methods of Payment</u>.   At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

5.23   <u>Uniforms</u>.   To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

5.24   <u>Incentive Programs</u>.   Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

5.25   <u>Prices</u>.   With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

5.26    <u>Compliance with Laws and Good Business Practices</u>.    Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.    All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.    Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    <u>Franchisee Structure; Operating Principal and Owners</u>.

5.27.1    Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2    If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3    If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4    Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

5.27.4.1   <u>Operating Principal</u>. An Operating Principal shall participate personally in the direct operation of the Restaurant. If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant. Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2   <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee. All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3   <u>General Manager</u>: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager"). The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4   <u>General Manager</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28   <u>Personal Guarantee</u>. Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29   <u>System Modifications</u>. Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants. Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials. Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense. Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E627B669F5

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

      5.30   <u>No Third-Party Management</u>. The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco. Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

**6.    Advertising and Marketing.**

      Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

      6.1   <u>Marketing Fee Expenditure</u>. Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above. Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

      6.2   <u>Local Advertising and Promotion.</u> All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws. Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3    Costs of Local Advertising and Promotion. As used in this Agreement, the term "**Local Advertising and Promotion**" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1    Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2    Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3    The value of discounts provided to customers;

6.3.4    The cost of food items.

6.4    Approvals. For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee). If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them. Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5    Promotional Materials. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials. Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.    Records and Reports.

7.1    Records. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D6E637B669F5

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2     Periodic Reports.  Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3     Reporting Requirements.  In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4     Audit.  Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5     Data.  All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

      7.6    <u>Accounting and Bookkeeping Services</u>.  Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

      8.1    <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

      8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

      8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

      8.2    <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

      8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

      8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

      8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

      8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D9F637B668F5

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

23

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6DD2-542F-48CD-BE6A-D6E337B669F5

9.4    Revisions to the Manuals. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

**10.    Confidentiality and Covenants Not To Compete.**

10.1    Confidential Information. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2    Irreparable Injury. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3    Information Exchange. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4    Full Time and Best Efforts. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5    In-Term Covenants. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F837B669F5

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

          10.5.1  Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

          10.5.2  Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

      10.6   Post-Term Covenants.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

      10.7   Publicly-Held Corporations.  Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation. As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

      10.8   Individual Covenants.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal. The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement. Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request. Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

      10.9   Severability.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement. If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

      10.10  Scope of Covenants. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11    <u>Enforcement of Claims</u>.  The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12    <u>Irreparable Injury</u>.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13    <u>Remedies Not Exclusive</u>.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

**11.    Insurance.**

11.1    Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1    <u>Insurance Requirements</u>.    Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1    <u>Liability</u>.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2    <u>Fire</u>.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

11.1.1.3    Business Interruption.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4    Business Automobile Liability Insurance.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5    Statutory Workers' Compensation Insurance.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6    Commercial Umbrella Liability Insurance.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7    Property Insurance. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8    Products Liability Insurance. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9    Cyber Liability Insurance. Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10    Other Insurance. Any other insurance coverage that is required by federal, state, or municipal law.

11.2    Referenced in Manuals.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3    Policy Cancellation.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4    Construction and Remodeling Insurance.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-642E-48CD-BE6A-D6E637B669F5

11.5 <u>No Waiver of Obligations</u>. Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6 <u>Del Taco to be Additional Named Insured</u>. All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees. Additional insured status shall include coverage for ongoing and completed operations. The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage. Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds. Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7 <u>Evidence of Insurance</u>. At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder. All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates. Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage. In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8 <u>Proof of Insurance</u>. In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9 <u>Policy Limit Changes</u>. Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10 <u>Del Taco's Insurance</u>. Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.     Transfer of Interest.**

12.1 <u>Del Taco Transfers</u>. Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

12.2    <u>Owners</u>.  If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

12.3    <u>Franchisee Transfers</u>.  Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

12.3.1   Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

12.3.2   If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

12.3.3   If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

12.3.4   Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

12.3.5   Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

12.4    <u>Conditions for Approval</u>.  Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

30

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.4.8    The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9    At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10  If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11  The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12  The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5    Transfers to Entities for the Convenience of Ownership.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1   Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2   Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6DD2-542F-43CD-BE6A-D6F637B669F5

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6   Right of First Refusal.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7   Transfer Upon Death.  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

DocuSign Envelope ID: 87A66DD2-642F-48CD-BE6A-D6E637B668F5

12.8    <u>Transfer Upon Permanent Disability</u>.    Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee.  "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.  If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.  Del Taco shall pay the cost of the required examination.

12.9    <u>Notification Upon Death or Permanent Disability</u>.  Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.  Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10    <u>No Waiver of Claims</u>.  Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11    <u>Insolvency</u>. If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12    <u>Securities Offerings</u>.  All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.  Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use. No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.  Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.  Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.  For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.  Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.  Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

**13.     Default and Termination.**

13.1     <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2     <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1   If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2   If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3   If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4   If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5   If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

13.2.6  If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7  If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8  If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9  If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3    <u>Termination With Opportunity to Cure</u>.  Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.  If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4    <u>Extended Notice of Termination</u>. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5    <u>Assignment Upon Bankruptcy</u>.  If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options

37

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6 <u>Other Remedies</u>. Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1 Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement. Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2 Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2 above;

13.6.3 Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver. Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4 Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14. Obligations Upon Termination or Expiration.

14.1 Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1 <u>Cease Operations</u>. Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2 <u>Cease Use of Proprietary Marks</u>. Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System. In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3 <u>Cancellation of Assumed Names</u>. Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4  <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%. The payments called for in this Section 14.1.4 are not a penalty. A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined. Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event. Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5  <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6  <u>No Confusion</u>. Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7  <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises. Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises. If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose. In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco. If Franchisee fails or refuses to comply with the

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

14.1.8   <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

14.1.9   <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.    Taxes, Permits and Indebtedness

15.1   <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

15.2   <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

15.3    Compliance With Laws. Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations. Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances. To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall: (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4    Notification of Claims. Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16.    Independent Contractor and Indemnification.

16.1    It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1    Identification as Independent Contractor. At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2    No Agency. Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco. Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3    Indemnification. Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction. In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices. Franchisee acknowledges and agrees that Franchisee's

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B699F5

Case 8:24-bk-12827-TA   Doc 1567-1   Filed 02/27/24   Entered 02/27/24 16:15:36   Desc
Memorandum of Points and Authorities   Page 594 of 1415   Page 568 of 1376

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17. Governing Law and Dispute Resolution.

17.1 <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions. However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement. Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2 <u>Venue.</u> Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California. The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above. Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision. Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3 <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1 <u>Demand to Arbitrate</u>. The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute. The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought. A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2 <u>Appointment of Arbitrators</u>. Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration. If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association. Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect. If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3 <u>Conduct of Arbitration</u>. Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

17.3.3.1    <u>Power of Chairman</u>.  The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2    <u>Response to Demand</u>.  Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration.  The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure.  If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3    <u>Amendment of Claim</u>.  If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim.  The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4    <u>Time for Arbitration Hearing</u>.  The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5    <u>List of Witnesses and Documents</u>.  Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand. The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party.  The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time.  The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing.  The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6    <u>Record</u>.  The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party.  The cost of the stenographic record should be borne by the parties equally.

17.3.3.7    <u>Attendance at Hearings</u>.  Any person who is a party to the arbitration may attend the hearings.  The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness.  The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8    <u>Adjournments</u>.  Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

DocuSign Envelope ID: 87A6DD2-542F-43CD-BE6A-D6E637B689F5

17.3.3.9    <u>Production of Witnesses and Records</u>.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10    <u>Absence of a Party</u>.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11    <u>Authority to Administer Oaths</u>.  The chairman may administer oaths.

17.3.3.12    <u>Evidence</u>.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13    <u>Evidence by Affidavit and Filing of Documents</u>.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14    <u>Discovery</u>.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15    <u>Reopening of Hearings</u>.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16    <u>Extensions</u>.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

17.3.3.17 <u>Time for Award</u>. The arbitrators shall render the award no later than 20 days after the completion of the hearing.

17.3.3.18 <u>Confidentiality</u>. The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

17.3.4 <u>Application of Federal Rules of Civil Procedure</u>. Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

17.3.5 <u>Finality; Enforcement; Venue</u>. The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction. All arbitrations shall take place in Orange County, California.

17.3.6 <u>Arbitration Costs, Attorneys' Fees and Costs</u>. Each party shall bear their share of the costs of the arbitration proceeding. The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.7 <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

17.4 <u>Injunctive Relief</u>. Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5 <u>Limitation of Actions</u>. **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6 <u>Waiver of Damages</u>. **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

45

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

**18.     Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.     Approvals, Waivers and Binding Effects.**

19.1     <u>Approvals</u>.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2     <u>No Warranties</u>. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3     <u>Waivers</u>. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4     <u>Binding Effect; No Other Rights</u>. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.     Notices.**

20.1     Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party.  Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

|  |  |
|---|---|
| Del Taco: | 25521 Commercentre Drive, Suite 200<br>Lake Forest, California 92630<br>Fax Number: (949) 616-5002 |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

**21.    Force Majeure.**

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party.  Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof;  compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event.  The notice shall describe the nature of the event and an estimate as to its duration.

**22.    Immunity for Certain Limited Disclosures.**

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

**23.    Entire Agreement and Amendment.**

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement.  There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any. Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing. The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

## 24. Severability; Enforcement of Covenants; Construction.

24.1 <u>Severability</u>. If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable. The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party. In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect. If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2 <u>Enforceability of Covenants</u>. Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3 <u>Construction</u>. All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

## 25. Joint and Several Obligation.

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

## 26. Incorporation of Exhibits.

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

## 27. Counterparts.

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6DDD2-542F-43CD-BE6A-D6E637B668F5

**28.    Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

**29.    Representations, Warranties and Acknowledgments.**

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    <u>Receipt of Documents</u>.  Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    <u>No Other Obligations.</u>  Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

       29.1.8 <u>Restaurant Location.</u> Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

       29.1.9 <u>Compliance with Anti-Terrorism Laws and Other Laws.</u> Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of **"Specially Designated Nationals"** or **"Blocked Persons"** maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx  /); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.    **Business Judgment.**

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

[**SIGNATURE PAGE FILLOWS**]

Executed as of the day and year first set forth above.

FRANCHISOR:                    DEL TACO LLC

                               By: _Jack Tang_____
                                   Jack Tang
                                   Vice President & General Counsel


FRANCHISEE:                    NEWPORT VENTURES, LLC


                               By: Techno Industries Inc
                               Its President & CEO

                               _Ernesto Abarro_____
                               Ernesto Abarro

                               By: _____
                                   Katayoun Aryana

                               Date: ___9/6/2023_____

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B669F5

Case 23-24111-TPA Doc 1507-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities In Support of the Page 579 of 1376

**Exhibit A**

**Identification of Franchisee**

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |

2.  Notice Address of Franchisee:

1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014
E-Mail: ernieabarro@gmail.com
Fax Number: (949) 534-7000

3.  Location of Restaurant:

3465 North Salida Street
Aurora, CO 80011

4.  Protected Area:

A circular area within a one-mile radius
from the front door of the Restaurant, subject to Section
1.2. of the Franchise Agreement.

5.  Date of Takeover:

October 4, 2023

6.  Date of Expiration:

February 6, 2026

DocuSign Envelope ID: 87A6FDD2-642F-42CD-BE6A-D6E637B669F5

## EXHIBIT B

## Deleted As Not Applicable

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F237B669F5

## EXHIBIT C

**Authorization Agreement for Prearranged Payments**
**(Direct Debits)**

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank

Mission Viejo, CA

Depository

Branch

26042 Marguerite Pkwy, Mission Viejo, CA 92692

Street Address, City, State, Zip Code

122000247

7429826410

Bank Transit/ABA Number

Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

Ernesto Albarro

Depositor

By: _____

Title: _____

Date: 9/6/2023

Exhibit C

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

<u>**EXHIBIT D**</u>

**Statement of Ownership Interests**

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| <u>Individual/Entity Name</u> | <u>Percentage of Ownership/Nature of Interest</u>* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D6E637B669F5

## EXHIBIT E

### Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated  September 29 , 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to:  (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee.  Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms.  Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding.  If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S):

(Seal)                    Signed: _Ernesto Abarro_____
                                  33C01300BA31471...
                                  (In his individual capacity)

                          Ernesto Abarro
                          120 S. Lovekin Blvd.
                          Blythe, CA 92225


(Seal)                    Signed: _____
                                  B05A39E602204DF...
                                  (In his individual capacity)

                          Katayoun Aryana
                          1500 E. Bethany Home Road
                          Suite 250
                          Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B699F5

Case 8:24-bk-12137-TA   Doc 1667-1   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Memorandum of Points and Authorities In Support of the   Page 585 of 1376

## EXHIBIT F

### Non-Disclosure and Non-Competition Agreement

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this __29__ day of September, 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

BACKGROUND:

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.      <u>Confidential Information</u>.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.      <u>Covenants Not to Compete</u>.

(a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

Case 8:24-bk-12827-TA  Doc 671  Filed 02/27/24  Entered 02/27/24 08:52:36  Desc
Main Document  Page 612 of 1415  Page 586 of 1376

Memorandum of Points and Authorities in Support Thereof

(b)     Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)     Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)    Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)     Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)     As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.     <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.     <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.     <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.     <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

Exhibit F-2

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E537B669F5

7.    <u>Third-Party Beneficiary.</u>    Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this __29__ day of __September__ _____, 2023.

**FRANCHISEE:**

**OBLIGEE:**

**NEWPORT VENTURES, LLC**

**ERNESTO ABARRO**

By: _Ernesto Abarro_
     33C61360BA31471...
     Ernesto Abarro

By: _Ernesto Abarro_
     33C61360BA31471...

By: _____
     B05A39E6022040F...
     Katayoun Aryana

**KATAYOUN ARYANA**

By: _____
     B05A39E6022040F...

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.    In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

> Del Taco LLC
> 25521 Commercentre Drive
> Lake Forest, California 92630
> Attn: Jack Tang, Vice President, General Counsel

2.    In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.    The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.    Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.    All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be. Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant. Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B668F5

Case 8:24-bk-12137-TA    Doc 1567    Filed 02/27/25    Entered 02/27/25 16:52:36    Desc
Memorandum of Points and Authorities    Page 615 of 1415    Page 589 of 1376

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.    Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.    Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.    Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.    Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.    The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.    The Lease is contingent upon Franchisor's written approval of the site.

12.    Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Exhibit F-5

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                                  **Tenant**

By:_____                  By:_____

Its:_____                  Its:_____

Date:_____                  Date:_____

DocuSign

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5        Status: Completed

Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 1213 | Signatures: 177 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Jack Tang |
| AutoNav: Enabled | | 25521 Commercentre drive Suite 200 |
| EnvelopeId Stamping: Enabled | | Lake Forest, CA  92630 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | mhernandez@deltaco.com |
| | | IP Address: 209.234.159.82 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Jack Tang | Location: DocuSign |
|     9/5/2023 5:36:27 PM |     mhernandez@deltaco.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro | *Ernesto Abarro* | Sent: 9/5/2023 6:35:09 PM |
| ernieabarro@gmail.com | —33C61360BA31471... | Viewed: 9/6/2023 10:33:13 AM |
| Security Level: Email, Account Authentication (None) | | Signed: 9/6/2023 10:42:42 AM |
| | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 50.225.0.130 | |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 9/6/2023 10:33:13 AM<br>   ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang | *Jack Tang* | Sent: 9/5/2023 6:35:11 PM |
| jtang@deltaco.com | —AD28CBFCF34346A... | Resent: 9/6/2023 10:48:07 AM |
| General Counsel | | Resent: 9/29/2023 9:26:01 AM |
| Del Taco LLC | | Viewed: 9/29/2023 9:27:32 AM |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Signed: 9/29/2023 9:28:28 AM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 9/29/2023 9:27:32 AM<br>   ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana | | Sent: 9/5/2023 6:35:10 PM |
| karyana@acc.capital | —B05A39E6022040F... | Viewed: 9/6/2023 10:34:06 AM |
| Security Level: Email, Account Authentication (None) | | Signed: 9/6/2023 10:36:22 AM |
| | Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 7/28/2023 8:56:42 AM<br>   ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |

| Witness Events | Signature | Timestamp |
| --- | --- | --- |

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/19/2021 12:45:15 PM
Parties agreed to: Ernesto Aberin, Jack Tang, Salvador Aberin
Case 8:24-bk-12138-TA    Doc 1507    Filed 02/27/25    Entered 02/27/25 16:52:36    Desc
Memorandum of Points and Authorities    Page 619 of 1415    Page 593 of 1376

# ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

## Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

## Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit I

DocuSign Envelope ID: 87A6FDD2-5426-42CD-BE6A-D6E327B689F5



**FRANCHISE AGREEMENT**

# Table of Contents

**Page**

1. Grant. ............................................................................................................... 1
2. Term and Renewal. ......................................................................................... 3
3. Fees and Payments. ......................................................................................... 4
4. Services By Del Taco. ..................................................................................... 6
5. Obligations of Franchisee; Operational Standards. ..................................... 7
6. Advertising and Marketing. ........................................................................ 19
7. Records and Reports. .................................................................................... 20
8. Proprietary Marks. ....................................................................................... 22
9. Manuals. ........................................................................................................ 24
10. Confidentiality and Covenants Not To Compete. ...................................... 25
11. Insurance. ...................................................................................................... 27
12. Transfer of Interest. ..................................................................................... 29
13. Default and Termination. ............................................................................. 35
14. Obligations Upon Termination or Expiration. ........................................... 38
15. Taxes, Permits and Indebtedness. ............................................................... 40
16. Independent Contractor and Indemnification. ............................................ 41
17. Governing Law and Dispute Resolution. .................................................... 42
18. Time is of the Essence ................................................................................. 46
19. Approvals, Waivers and Binding Effects. ................................................... 46
20. Notices. .......................................................................................................... 46
21. Force Majeure. .............................................................................................. 47
22. Immunity for Certain Limited Disclosures. ................................................ 47
23. Entire Agreement and Amendment ............................................................. 47
24. Severability; Enforcement of Covenants; Construction. ............................ 48
25. Joint and Several Obligation. ...................................................................... 48
26. Incorporation of Exhibits. ............................................................................ 48
27. Counterparts. ................................................................................................. 48
28. Survival of Provisions. ................................................................................. 49
29. Representations, Warranties and Acknowledgments. ................................. 49
30. Business Judgment. ...................................................................................... 50

Exhibits:

A     Identification of Franchisee
B     Site Selection Addendum
C     Authorization Agreement for Prearranged Payments (Direct Debits)
D     Statement of Ownership Interests
E     Guarantee, Indemnification, and Acknowledgment
F     Non-Disclosure and Non-Competition Agreement
G     Addendum to Lease

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B699F5

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the ___29___ day of __September__, 2023 (the "**Effective Date**").

## RECITALS

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.      Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.      Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.      Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1. Grant.

1.1    <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to: (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B669F5

Case 8:24-bk-12811-TA   Doc 1567   Filed 02/27/25   Entered 02/27/25 16:52:36   Desc
Memorandum of Points and Authorities   Page 626 of 1415   Page 600 of 1376

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

      1.2   <u>Protected Area</u>. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

      1.2.1   Advertise and promote the System within and outside of the Protected Area;

      1.2.2   Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

      1.2.2.1   Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

      1.2.3   Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

2

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2, and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10   Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

## 3.    Fees and Payments.

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

       3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

       3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

       3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

       3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

       3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D5E527B669F5

3.8     Payments on Behalf of Franchisee.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9     Other Payments.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10     No Refunds.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.     Services By Del Taco.**

4.1     Development of the Restaurant. Deleted As Not Applicable.

4.2     Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     Opening Assistance. Deleted As Not Applicable.

4.4     Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     Bulletins and Reports.  Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

4.9     Inspection. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10     Delegation of Duties. Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

## 5.     Obligations of Franchisee; Operational Standards.

5.1     System Standards and Development of Restaurant.    Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2     Pre-Opening Obligations.  Deleted:

5.2.1    Deleted As Not Applicable.

5.2.2    Deleted As Not Applicable.

5.2.3    Deleted As Not Applicable.

5.2.4    Deleted As Not Applicable.

5.2.5    Deleted As Not Applicable.

5.2.6    Deleted As Not Applicable.

5.3     Restaurant Opening.  Deleted As Not Applicable:

5.3.1    Deleted As Not Applicable.

5.3.2    Deleted As Not Applicable.

5.3.3    Deleted As Not Applicable.

5.3.4    Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5    Deleted As Not Applicable.

5.4     Training. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

 5.4.1 <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

 5.4.2 <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

 5.4.3 <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

 5.4.4 <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

 5.4.5 <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

5.4.6    [Reserved]

5.4.7    Training costs. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

5.4.8    Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

5.5    Restaurant Premises. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

5.6    Personnel. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

5.7    Health Standards. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

9

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

    5.8    <u>Restaurant Maintenance</u>.  Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

    5.9    <u>Remodeling</u>.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public.  The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

    5.10    <u>Franchisee Advisory Council</u>.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

    5.11    <u>Equipment Upgrades</u>.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

    5.12    <u>Standards and Specifications</u>.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   Suppliers.   Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

11

thereafter been disapproved.  For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors.  Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

     5.13.1   If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval.  Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco.  Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing.  A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier.  Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers.  Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

     5.13.2   Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

     5.13.3   Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants.  In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants.  Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

     5.13.4   Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services.  These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items.  Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

     5.13.5   Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers.  Franchisee shall promptly pay

all suppliers in accordance with the agreed-upon terms. In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

   5.13.6  Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

  5.14 Inspections.  Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals.  Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection.  Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection.  Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs.  Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

  5.15 Technology and Computer System.  At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

   5.15.1  Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable.  In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications.  To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

   5.15.2  Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following:  (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   <u>Customer Data</u>.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   <u>Privacy Laws</u>.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

5.18    Website.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    POS or Cash Register Systems.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20    Gift Cards.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    E-Mail, Internet and Other Media; E-Mail and Fax Communications.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

    5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

    5.21.2   Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

5.21.3   Franchisee agrees that:  (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

5.22   <u>Credit Cards and Other Methods of Payment</u>.   At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

5.23   <u>Uniforms</u>.   To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

5.24   <u>Incentive Programs</u>.   Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

5.25   <u>Prices</u>.   With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

5.26    Compliance with Laws and Good Business Practices.    Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.    All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.    Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    Franchisee Structure; Operating Principal and Owners.

5.27.1    Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2    If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3    If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4    Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.27.4.1 <u>Operating Principal</u>. An Operating Principal shall participate personally in the direct operation of the Restaurant. If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant. Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2 <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee. All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3 <u>General Manager</u>: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager"). The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4 <u>General Manager</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28 <u>Personal Guarantee</u>. Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29 <u>System Modifications</u>. Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants. Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials. Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense. Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

DocuSign Envelope ID: 87A65DD2-542F-48CB-BE6A-D6E637B669F5

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30    No Third-Party Management.  The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco.  Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

## 6.    Advertising and Marketing.

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1    Marketing Fee Expenditure.  Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above.  Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof.  Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2    Local Advertising and Promotion.  All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws.  Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

      6.3    <u>Costs of Local Advertising and Promotion</u>. As used in this Agreement, the term "**Local Advertising and Promotion**" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

      6.3.1    Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

      6.3.2    Charitable, political, or other contributions or donations, whether in cash, food, or services;

      6.3.3    The value of discounts provided to customers;

      6.3.4    The cost of food items.

      6.4    <u>Approvals</u>. For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee). If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them. Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

      6.5    <u>Promotional Materials</u>. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials. Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.    **Records and Reports.**

      7.1    <u>Records</u>. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

      7.2    Periodic Reports. Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

      7.3    Reporting Requirements. In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

      7.4    Audit. Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

      7.5    Data. All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D5E637B699F5

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

     7.6    <u>Accounting and Bookkeeping Services</u>.  Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

     8.1    <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

     8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

     8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

     8.2    <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

     8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

     8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

     8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

     8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

8.3.3     Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4     The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1     To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2     To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3     To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.     Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.     Manuals.

9.1     <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2     <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3     <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

9.4    <u>Revisions to the Manuals</u>. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

**10.    Confidentiality and Covenants Not To Compete.**

10.1    <u>Confidential Information</u>. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2    <u>Irreparable Injury</u>. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3    <u>Information Exchange</u>. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4    <u>Full Time and Best Efforts</u>. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5    <u>In-Term Covenants</u>. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

25

of Del Taco,  either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

10.5.1   Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

10.5.2   Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

10.6    Post-Term Covenants.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of:  (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

10.7    Publicly-Held Corporations.    Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

10.8    Individual Covenants.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14  (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

10.9    Severability.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

10.10    Scope of Covenants. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11   <u>Enforcement of Claims</u>. The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12   <u>Irreparable Injury</u>.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13   <u>Remedies Not Exclusive</u>.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

**11.    Insurance.**

11.1   Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1   <u>Insurance Requirements</u>.   Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1   <u>Liability</u>.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2   <u>Fire</u>.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

11.1.1.3    <u>Business Interruption</u>. Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4    <u>Business Automobile Liability Insurance</u>. Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5    <u>Statutory Workers' Compensation Insurance</u>. Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located. Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco. Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6    <u>Commercial Umbrella Liability Insurance</u>. Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7    <u>Property Insurance</u>. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8    <u>Products Liability Insurance</u>. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9    <u>Cyber Liability Insurance</u>. Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10    <u>Other Insurance</u>. Any other insurance coverage that is required by federal, state, or municipal law.

11.2    <u>Referenced in Manuals</u>. All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3    <u>Policy Cancellation</u>. In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below. Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4    <u>Construction and Remodeling Insurance</u>. In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

11.5     <u>No Waiver of Obligations</u>.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6     <u>Del Taco to be Additional Named Insured</u>.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7     <u>Evidence of Insurance</u>.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8     <u>Proof of Insurance</u>.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9     <u>Policy Limit Changes</u>.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10    <u>Del Taco's Insurance</u>.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.     Transfer of Interest.**

12.1     <u>Del Taco Transfers</u>.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

DocuSign Envelope ID: 87A6EDD2-542F-436D-BE6A-D6E637B660F5

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

12.2 <u>Owners</u>. If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

12.3 <u>Franchisee Transfers</u>. Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

12.3.1 Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

12.3.2 If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

12.3.3 If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

12.3.4 Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

12.3.5 Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

12.4 <u>Conditions for Approval</u>. Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

12.4.8  The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9  At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5    Transfers to Entities for the Convenience of Ownership.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1  Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2  Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6   Right of First Refusal.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7   Transfer Upon Death.  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.8   <u>Transfer Upon Permanent Disability</u>.   Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.   If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.   Del Taco shall pay the cost of the required examination.

12.9   <u>Notification Upon Death or Permanent Disability</u>.   Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.   Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10   <u>No Waiver of Claims</u>.   Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11   <u>Insolvency</u>.   If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12   <u>Securities Offerings</u>.   All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.   Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use.   No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.   Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.   Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.   For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.   Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.   Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

## 13.    Default and Termination.

13.1    <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2    <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1    If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2    If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3    If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4    If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5    If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E337B668F5

13.2.6    If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7    If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8    If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9    If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10  If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11  If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12  If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13  If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14  If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15  If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16  If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17  If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18  If Franchisee fails to make any payments when due to Del Taco;

13.2.19  If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20  If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3   Termination With Opportunity to Cure.   Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.   If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4   Extended Notice of Termination.   If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5   Assignment Upon Bankruptcy.   If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

    13.6   <u>Other Remedies</u>.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

    13.6.1   Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

    13.6.2   Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

    13.6.3   Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

    13.6.4   Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.    Obligations Upon Termination or Expiration.

    14.1   Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

    14.1.1   <u>Cease Operations</u>.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

    14.1.2   <u>Cease Use of Proprietary Marks</u>.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

    14.1.3   <u>Cancellation of Assumed Names</u>.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

      14.1.4    <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%.   The payments called for in this Section 14.1.4 are not a penalty.   A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined.   Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event.   Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

      14.1.5    <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

      14.1.6    <u>No Confusion</u>.   Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

      14.1.7    <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises.   Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises.   If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose.   In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco.   If Franchisee fails or refuses to comply with the

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

14.1.8    <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

14.1.9    <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.    Taxes, Permits and Indebtedness

15.1    <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

15.2    <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

15.3     Compliance With Laws.  Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.  Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.  To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4     Notification of Claims.  Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16.     Independent Contractor and Indemnification.

16.1     It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1     Identification as Independent Contractor.  At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2     No Agency.  Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3     Indemnification.  Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

**17.     Governing Law and Dispute Resolution.**

17.1     <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2     <u>Venue.</u>  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3     <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1     <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2     <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3     <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

DocuSign Envelope ID: 87A95DD2-642F-42CD-BE6A-D6E327B669F5

17.3.3.1    <u>Power of Chairman</u>.  The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2    <u>Response to Demand</u>.  Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration.  The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure.  If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3    <u>Amendment of Claim</u>.  If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim.  The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4    <u>Time for Arbitration Hearing</u>.  The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5    <u>List of Witnesses and Documents</u>.  Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand. The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party.  The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time.  The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing.  The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6    <u>Record</u>.  The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party.  The cost of the stenographic record should be borne by the parties equally.

17.3.3.7    <u>Attendance at Hearings</u>.  Any person who is a party to the arbitration may attend the hearings.  The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness.  The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8    <u>Adjournments</u>.  Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

DocuSign Envelope ID: 87A6DDD2-542F-48CD-BE6A-D6F637B669F5

Case 8:24-bk-12674-TA Doc 1671 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities in Support of the... Page 642 of 1376

    17.3.3.9   <u>Production of Witnesses and Records</u>. Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence. The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

    17.3.3.10   <u>Absence of a Party</u>. The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend. The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

    17.3.3.11   <u>Authority to Administer Oaths</u>. The chairman may administer oaths.

    17.3.3.12   <u>Evidence</u>. The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute. The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence. The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

    17.3.3.13   <u>Evidence by Affidavit and Filing of Documents</u>. The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission. Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators. All parties shall have the opportunity to examine those documents.

    17.3.3.14   <u>Discovery</u>. The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose. Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt. In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person. The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

    17.3.3.15   <u>Reopening of Hearings</u>. The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

    17.3.3.16   <u>Extensions</u>. The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

44

17.3.3.17    <u>Time for Award</u>.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

17.3.3.18    <u>Confidentiality</u>.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

17.3.4    <u>Application of Federal Rules of Civil Procedure</u>.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

17.3.5    <u>Finality; Enforcement; Venue</u>.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

17.3.6    <u>Arbitration Costs, Attorneys' Fees and Costs</u>.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.7    <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

17.4    <u>Injunctive Relief</u>.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5    <u>Limitation of Actions</u>.  **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6    <u>Waiver of Damages</u>.  **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

**18.    Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.    Approvals, Waivers and Binding Effects.**

19.1    <u>Approvals</u>.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2    <u>No Warranties</u>. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3    <u>Waivers</u>. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4    <u>Binding Effect; No Other Rights</u>. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.    Notices.**

20.1    Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party. Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

| Del Taco: | 25521 Commercentre Drive, Suite 200 |
|---|---|
| | Lake Forest, California 92630 |
| | Fax Number: (949) 616-5002 |
| | |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

### 21. Force Majeure.

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party. Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof; compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event. The notice shall describe the nature of the event and an estimate as to its duration.

### 22. Immunity for Certain Limited Disclosures.

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

### 23. Entire Agreement and Amendment.

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement. There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

47

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B669F5

Case 8:24-bk-12829-TA   Doc 1567-1   Filed 02/27/24   Entered 02/27/24 08:32:36   Desc
Memorandum of Points and Authorities   Page 672 of 1415   Page 646 of 1376

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

**24.**      **Severability; Enforcement of Covenants; Construction.**

24.1      <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2      <u>Enforceability of Covenants</u>. Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3      <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

**25.**      **Joint and Several Obligation.**

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

**26.**      **Incorporation of Exhibits.**

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

**27.**      **Counterparts.**

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-642F-48CD-BF6A-D5F537B669F5

**28.    Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

**29.    Representations, Warranties and Acknowledgments.**

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    <u>Receipt of Documents</u>.  Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    <u>No Other Obligations.</u>  Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

29.1.8  <u>Restaurant Location.</u> Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

29.1.9  <u>Compliance with Anti-Terrorism Laws and Other Laws</u>. Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of **"Specially Designated Nationals"** or **"Blocked Persons"** maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx  /); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at <u>http://www.epic.org/privacy/terrorism/hr3162.html</u>), U.S. Executive Order 13244 (text currently available at <u>http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html</u>), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.    **Business Judgment.**

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

### [SIGNATURE PAGE FILLOWS]

51

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E637B668F5

Case 8:24-bk-12391-TA  Doc 1671  Filed 02/27/25  Entered 02/27/25 08:52:36  Desc
Memorandum of Points and Authorities In Support  Page 650 of 1376

Executed as of the day and year first set forth above.

**FRANCHISOR:**                    **DEL TACO LLC**

By: _Jack Tang_
    AD20CBFCF34346A...
    Jack Tang
    Vice President & General Counsel


**FRANCHISEE:**                    **NEWPORT VENTURES, LLC**


By: Techno Industries Inc
Its President & CEO

_Ernesto Abarro_
33C6Y380BA31471...
Ernesto Abarro

By: _[signature]_
    B05A39E6022040F...
    Katayoun Aryana


Date: _9/6/2023_

DocuSign Envelope ID: 87A6FDD2-642F-42CD-BE6A-D6F637B669F5

Case 23-04248-TA Doc 10671 Filed 02/27/24 Entered 02/27/24 16:52:36 Desc
Memorandum of Points and Authorities in Support of the... Page 651 of 1376

## Exhibit A

### Identification of Franchisee

1. Name of Franchisee:        Newport Ventures, LLC

2. Notice Address of Franchisee:   1500 E. Bethany Home Road
                              Suite 250
                              Phoenix, AZ 85014
                              E-Mail: ernieabarro@gmail.com
                              Fax Number: (949) 534-7000

3. Location of Restaurant:       8100 East 49th Avenue Parkway
                              Denver, CO 80239

4. Protected Area:            A circular area within a one-mile radius
                              from the front door of the Restaurant, subject to Section
                              1.2. of the Franchise Agreement.

5. Date of Takeover:           October 4, 2023

6. Date of Expiration:          December 5, 2026

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B668F5

Case 23-24481-ta Doc 156-1 Filed 02/27/23 Entered 02/27/23 16:13:36 Desc
Memorandum of Points and Authorities In Support Thereof Page 652 of 1376

**EXHIBIT B**

**Deleted As Not Applicable**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## EXHIBIT C

### Authorization Agreement for Prearranged Payments
### (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank

Mission Viejo, CA

---

Depository

Branch

26042 Marguerite Pkwy, Mission Viejo, CA 92692

---

Street Address, City, State, Zip Code

7429826410

122000247

---

Bank Transit/ABA Number

Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*

Depositor

By: _____

Title: _____

Date: 9/6/2023

Exhibit C

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B669F5

## EXHIBIT D

### Statement of Ownership Interests

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| Individual/Entity Name | Percentage of Ownership/Nature of Interest* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B669F5

## EXHIBIT E

### Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated ___September 29___, 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

DocuSign Envelope ID: 87A65DD2-542F-42CD-8E6A-D6E237B608F5

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S):

(Seal)    Signed: _Ernesto Abarro_
                    33C61360BA374A71...
                    (In his individual capacity)

Ernesto Abarro
120 S. Lovekin Blvd.
Blythe, CA 92225

(Seal)    Signed: _____
                    B05A39E0022040F...
                    (In his individual capacity)

Katayoun Aryana
1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B659F5

## EXHIBIT F

### Non-Disclosure and Non-Competition Agreement

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this 29 day of September, 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

### BACKGROUND:

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.      <u>Confidential Information</u>.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.      <u>Covenants Not to Compete</u>.

        (a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

(b)      Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)      Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)      Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)      Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)      As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.      <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.      <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.      <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.      <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

   7. <u>Third-Party Beneficiary.</u> Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

   **IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this  29  day of  September  _____, 2023.

**FRANCHISEE:**

**NEWPORT VENTURES, LLC**

By: _____
  Ernesto Abarro

By: _____
  Katayoun Aryana

**OBLIGEE:**

**ERNESTO ABARRO**

By: _____

**KATAYOUN ARYANA**

By: _____

Exhibit F-3

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.　In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

> Del Taco LLC
> 25521 Commercentre Drive
> Lake Forest, California 92630
> Attn: Jack Tang, Vice President, General Counsel

2.　In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.　The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.　Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.　All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be. Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant. Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CF-BE6A-D6F637B669F5

Case 8:24-bk-12713-TA Doc 1567 Filed 02/27/25 Entered 02/27/25 08:52:36 Desc
Memorandum of Points and Authorities in Support of the Set Page 661 of 1376

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.     Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.     Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.     Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.     Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant: No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc. Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.     The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.     The Lease is contingent upon Franchisor's written approval of the site.

12.     Landlord consents to the operation of the Restaurant on a 24-hour basis.

    The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Exhibit F-5

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D5E527B669F5

Case 8:24-bk-12738-TA    Doc 156-1    Filed 02/27/24    Entered 02/27/24 08:32:36    Desc
Memorandum of Points and Authorities in Support The    Page 662 of 1376

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                      **Tenant**

By:_____        By:_____

Its:_____        Its:_____

Date:_____        Date:_____

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

**DocuSign**

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5  Status: Completed
Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...
Source Envelope:
Document Pages: 1213  Signatures: 177  Envelope Originator:
Certificate Pages: 5  Initials: 0  Jack Tang
AutoNav: Enabled  25521 Commercentre drive Suite 200
EnvelopeId Stamping: Enabled  Lake Forest, CA  92630
Time Zone: (UTC-08:00) Pacific Time (US & Canada)  mhernandez@deltaco.com
IP Address: 209.234.159.82

## Record Tracking

Status: Original  Holder: Jack Tang  Location: DocuSign
9/5/2023 5:36:27 PM  mhernandez@deltaco.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication (None) | *Ernesto Abarro*<br>33C61360BA31471...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 9/6/2023 10:33:13 AM<br>ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Jack Tang*<br>AD28CBFCF34348A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 9/29/2023 9:27:32 AM<br>ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication (None) | *[signature]*<br>B05A39E6022040F...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 7/28/2023 8:56:42 AM<br>ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/19/2021 12:45:45 PM
Parties agreed to: Emineta Abara, Jack Tang, Polymath APC, Inc.

Case 8:24-bk-12738-TA    Doc 1507    Filed 02/27/25    Entered 02/27/25 16:52:36    Desc
Memorandum of Points and Authorities    Page 691 of 1415    Page 665 of 1376

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

## Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

## Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit J

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D9E327B668F5

STORE 1034



**FRANCHISE AGREEMENT**

DocuSign Envelope ID: 87A65DD2-542F-48CP-BE6A-D6E637B669F5

Case 8:24-bk-12737-TA Doc 1567 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities in Support of the Sale Page 670 of 1376

## Table of Contents

                                                                                    **Page**

1.   Grant. ....................................................................................................... 1
2.   Term and Renewal. ................................................................................. 3
3.   Fees and Payments. ................................................................................ 4
4.   Services By Del Taco. ............................................................................ 6
5.   Obligations of Franchisee; Operational Standards. ............................... 7
6.   Advertising and Marketing. .................................................................... 19
7.   Records and Reports. .............................................................................. 20
8.   Proprietary Marks. .................................................................................. 22
9.   Manuals. .................................................................................................. 24
10.  Confidentiality and Covenants Not To Compete. .................................. 25
11.  Insurance. ............................................................................................... 27
12.  Transfer of Interest. ............................................................................... 29
13.  Default and Termination. ....................................................................... 35
14.  Obligations Upon Termination or Expiration. ....................................... 38
15.  Taxes, Permits and Indebtedness .......................................................... 40
16.  Independent Contractor and Indemnification ......................................... 41
17.  Governing Law and Dispute Resolution. ............................................... 42
18.  Time is of the Essence ........................................................................... 46
19.  Approvals, Waivers and Binding Effects. .............................................. 46
20.  Notices. ................................................................................................... 46
21.  Force Majeure. ....................................................................................... 47
22.  Immunity for Certain Limited Disclosures. ........................................... 47
23.  Entire Agreement and Amendment ........................................................ 47
24.  Severability; Enforcement of Covenants; Construction. ....................... 48
25.  Joint and Several Obligation. ................................................................. 48
26.  Incorporation of Exhibits. ...................................................................... 48
27.  Counterparts. .......................................................................................... 48
28.  Survival of Provisions. ........................................................................... 49
29.  Representations, Warranties and Acknowledgments. ............................ 49
30.  Business Judgment. ................................................................................ 50

Exhibits:

A    Identification of Franchisee
B    Site Selection Addendum
C    Authorization Agreement for Prearranged Payments (Direct Debits)
D    Statement of Ownership Interests
E    Guarantee, Indemnification, and Acknowledgment
F    Non-Disclosure and Non-Competition Agreement
G    Addendum to Lease

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A05DD2-542F-42CP-BE6A-D6E637B669F5

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the  29  day of  September , 2023 (the "**Effective Date**").

## RECITALS

A.    Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.    The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.    Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.    Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.    Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.    Grant.

1.1    Grant of Rights. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E537B668F5

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

1.2     Protected Area. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

1.2.1     Advertise and promote the System within and outside of the Protected Area;

1.2.2     Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

1.2.2.1     Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

1.2.3     Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

DocuSign Envelope ID: 87A65DD2-542F-43CB-BE6A-D5E537B659F5

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    No Right to Subfranchise. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    Goodwill and Del Taco Name. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    Term.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    Renewal. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

## 3.    Fees and Payments.

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

3.3.2   The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

3.4   <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5   <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.   To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6   <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7   <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E237B698F5

3.8     Payments on Behalf of Franchisee.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9     Other Payments.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    No Refunds.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.      Services By Del Taco.**

4.1     Development of the Restaurant. Deleted As Not Applicable.

4.2     Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     Opening Assistance. Deleted As Not Applicable.

4.4     Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     Bulletins and Reports. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

4.9    Inspection. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10    Delegation of Duties. Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

## 5.    Obligations of Franchisee; Operational Standards.

5.1    System Standards and Development of Restaurant.    Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2    Pre-Opening Obligations.  Deleted:

5.2.1    Deleted As Not Applicable.

5.2.2    Deleted As Not Applicable.

5.2.3    Deleted As Not Applicable.

5.2.4    Deleted As Not Applicable.

5.2.5    Deleted As Not Applicable.

5.2.6    Deleted As Not Applicable.

5.3    Restaurant Opening.  Deleted As Not Applicable:

5.3.1    Deleted As Not Applicable.

5.3.2    Deleted As Not Applicable.

5.3.3    Deleted As Not Applicable.

5.3.4    Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5    Deleted As Not Applicable.

5.4    Training. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

       5.4.1   <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

       5.4.2   <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

       5.4.3   <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

       5.4.4   <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

       5.4.5   <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

5.4.6    [Reserved]

5.4.7    Training costs. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

5.4.8    Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

5.5    Restaurant Premises. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

5.6    Personnel. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

5.7    Health Standards. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

     5.8    <u>Restaurant Maintenance</u>.  Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

     5.9    <u>Remodeling</u>.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public.  The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

     5.10    <u>Franchisee Advisory Council</u>.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

     5.11    <u>Equipment Upgrades</u>.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

     5.12    <u>Standards and Specifications</u>.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.   In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   <u>Suppliers</u>.   Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

5.13.1   If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

5.13.2   Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

5.13.3   Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

5.13.4   Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

5.13.5   Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

all suppliers in accordance with the agreed-upon terms. In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

5.13.6   Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

5.14   Inspections.   Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals. Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection. Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection. Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs. Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

5.15   Technology and Computer System.   At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

5.15.1   Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable. In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications. To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

5.15.2   Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following: (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   Customer Data.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   Privacy Laws.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.18    <u>Website</u>.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees.
Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any
manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation,
to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically
designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more
related documents, designs, pages, or other communications that can be accessed through electronic means,
including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn,
Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    <u>POS or Cash Register Systems</u>.  Franchisee agrees to record all sales on computer-based
point of sale systems or such other types of cash register systems that Del Taco has the right to designate
or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part
of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are
fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must
record all Net Sales and all revenue information on such equipment.

5.20    <u>Gift Cards</u>.  If Del Taco requires, Franchisee agrees to participate in the gift card
program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware,
blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco
may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-
swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or
honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift
card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the
Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of
any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make
payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in
accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or
redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    <u>E-Mail, Internet and Other Media; E-Mail and Fax Communications</u>.  Franchisee must
comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing)
with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in
connection with discussing, advertising, or disseminating any information, or otherwise having a presence,
on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include
participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly
permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received
approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is
an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee
are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic
bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information,
Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and
affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to
Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official
Senders shall be the master and official list of Official Senders.

5.21.2   Franchisee agrees not to transmit or cause any other party to transmit
advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's
prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

15

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

5.21.3   Franchisee agrees that:  (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

5.22   <u>Credit Cards and Other Methods of Payment</u>.   At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

5.23   <u>Uniforms</u>.   To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

5.24   <u>Incentive Programs</u>.   Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

5.25   <u>Prices</u>.   With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

5.26    <u>Compliance with Laws and Good Business Practices</u>.    Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.    All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.    Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    <u>Franchisee Structure; Operating Principal and Owners</u>.

5.27.1    Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2    If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3    If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4    Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

5.27.4.1    <u>Operating Principal</u>. An Operating Principal shall participate personally in the direct operation of the Restaurant. If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant. Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2    <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee. All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3    <u>General Manager</u>: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager"). The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4    <u>General Manager</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28    <u>Personal Guarantee</u>. Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29    <u>System Modifications</u>. Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants. Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials. Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense. Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E527B669F5

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System.  Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30   No Third-Party Management.  The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco.  Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

## 6.   Advertising and Marketing.

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1   Marketing Fee Expenditure.  Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above.  Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof.  Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2   Local Advertising and Promotion.  All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws.  Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E537B669F5

forth in Section 6.4 below.  Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3     Costs of Local Advertising and Promotion.  As used in this Agreement, the term "**Local Advertising and Promotio**n" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1     Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2     Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3     The value of discounts provided to customers;

6.3.4     The cost of food items.

6.4     Approvals.  For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee).  If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them.  Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5     Promotional Materials. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials.  Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.     Records and Reports.

7.1     Records. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2     Periodic Reports. Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3     Reporting Requirements. In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4     Audit. Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5     Data. All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B658F5

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

7.6     Accounting and Bookkeeping Services.   Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

8.1     Ownership of the Proprietary Marks. Del Taco represents with respect to the Proprietary Marks that:

8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

8.2     Use of the Proprietary Marks. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    Franchisee Acknowledgements. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

9.4 <u>Revisions to the Manuals</u>. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

## 10. Confidentiality and Covenants Not To Compete.

10.1 <u>Confidential Information</u>. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2 <u>Irreparable Injury</u>. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3 <u>Information Exchange</u>. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4 <u>Full Time and Best Efforts</u>. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5 <u>In-Term Covenants</u>. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D5E327B669F5

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

10.5.1   Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

10.5.2   Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

10.6   Post-Term Covenants.   Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

10.7   Publicly-Held Corporations.   Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation. As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

10.8   Individual Covenants.   Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal. The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement. Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request. Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

10.9   Severability.   The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement. If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

10.10   Scope of Covenants. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11    <u>Enforcement of Claims</u>. The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12    <u>Irreparable Injury</u>.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13    <u>Remedies Not Exclusive</u>.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

**11.    Insurance.**

11.1    Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1    <u>Insurance Requirements</u>.    Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1    <u>Liability</u>.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2    <u>Fire</u>.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

11.1.1.3    <u>Business Interruption</u>.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4    <u>Business Automobile Liability Insurance</u>.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5    <u>Statutory Workers' Compensation Insurance</u>.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6    <u>Commercial Umbrella Liability Insurance</u>.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7    <u>Property Insurance</u>.  Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8    <u>Products Liability Insurance</u>. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9    <u>Cyber Liability Insurance</u>. Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10    <u>Other Insurance</u>. Any other insurance coverage that is required by federal, state, or municipal law.

11.2    <u>Referenced in Manuals</u>.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3    <u>Policy Cancellation</u>.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4    <u>Construction and Remodeling Insurance</u>.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

11.5    <u>No Waiver of Obligations</u>.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6    <u>Del Taco to be Additional Named Insured</u>.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7    <u>Evidence of Insurance</u>.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8    <u>Proof of Insurance</u>.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9    <u>Policy Limit Changes</u>.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10    <u>Del Taco's Insurance</u>.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

## 12.    Transfer of Interest.

12.1    <u>Del Taco Transfers</u>.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

12.2    <u>Owners</u>. If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

12.3    <u>Franchisee Transfers</u>. Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

12.3.1   Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

12.3.2   If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

12.3.3   If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

12.3.4   Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

12.3.5   Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

12.4    <u>Conditions for Approval</u>. Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

DocuSign Envelope ID: 87A6FDD2-542F-43CD-BE6A-D6E537B669F5

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1    Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2    The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3    The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4    Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5    If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6    If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7    All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

12.4.8  The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9  At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10  If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11  The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12  The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5    <u>Transfers to Entities for the Convenience of Ownership</u>.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1    Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2    Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6   Right of First Refusal.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7   Transfer Upon Death.  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco.  If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

12.8    <u>Transfer Upon Permanent Disability</u>.  Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.  If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.  Del Taco shall pay the cost of the required examination.

12.9    <u>Notification Upon Death or Permanent Disability</u>.  Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.  Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10    <u>No Waiver of Claims</u>.  Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11    <u>Insolvency</u>. If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12    <u>Securities Offerings</u>.  All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.  Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use. No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.  Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.  Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.  For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.  Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.  Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

**13.     Default and Termination.**

13.1     <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2     <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1   If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2   If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3   If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4   If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5   If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

13.2.6    If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7    If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8    If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9    If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10  If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11  If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12  If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13  If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14  If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15  If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16  If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17  If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18  If Franchisee fails to make any payments when due to Del Taco;

13.2.19  If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20  If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B698F5

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3    Termination With Opportunity to Cure.  Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.  If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4    Extended Notice of Termination. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5    Assignment Upon Bankruptcy.  If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6    Other Remedies.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1    Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2    Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

13.6.3    Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4    Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.    Obligations Upon Termination or Expiration.

14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1    Cease Operations.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2    Cease Use of Proprietary Marks.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3    Cancellation of Assumed Names.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4   <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%. The payments called for in this Section 14.1.4 are not a penalty. A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined. Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event. Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5   <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6   <u>No Confusion</u>. Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7   <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises. Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises. If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose. In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco. If Franchisee fails or refuses to comply with the

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

14.1.8    <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

14.1.9    <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.    Taxes, Permits and Indebtedness

15.1    <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

15.2    <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

15.3 <u>Compliance With Laws</u>. Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations. Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances. To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall: (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4 <u>Notification of Claims</u>. Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16. **Independent Contractor and Indemnification.**

16.1 It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1 <u>Identification as Independent Contractor</u>. At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2 <u>No Agency</u>. Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco. Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3 <u>Indemnification</u>. Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant, Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction. In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices. Franchisee acknowledges and agrees that Franchisee's

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17. Governing Law and Dispute Resolution.

17.1    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2    <u>Venue</u>.  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3    <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1    <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2    <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3    <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

17.3.3.1 <u>Power of Chairman</u>. The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2 <u>Response to Demand</u>. Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration. The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure. If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3 <u>Amendment of Claim</u>. If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim. The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4 <u>Time for Arbitration Hearing</u>. The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5 <u>List of Witnesses and Documents</u>. Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand. The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party. The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time. The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing. The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6 <u>Record</u>. The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party. The cost of the stenographic record should be borne by the parties equally.

17.3.3.7 <u>Attendance at Hearings</u>. Any person who is a party to the arbitration may attend the hearings. The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness. The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8 <u>Adjournments</u>. Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6F837B66DF5

17.3.3.9   <u>Production of Witnesses and Records</u>.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10   <u>Absence of a Party</u>.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11   <u>Authority to Administer Oaths</u>.  The chairman may administer oaths.

17.3.3.12   <u>Evidence</u>.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13   <u>Evidence by Affidavit and Filing of Documents</u>.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14   <u>Discovery</u>.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15   <u>Reopening of Hearings</u>.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16   <u>Extensions</u>.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

17.3.3.17   <u>Time for Award</u>.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

17.3.3.18   <u>Confidentiality</u>.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

17.3.4   <u>Application of Federal Rules of Civil Procedure</u>.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

17.3.5   <u>Finality; Enforcement; Venue</u>.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

17.3.6   <u>Arbitration Costs, Attorneys' Fees and Costs</u>.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.7   <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

17.4   <u>Injunctive Relief</u>.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5   <u>Limitation of Actions</u>. **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6   <u>Waiver of Damages</u>. **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

**18.    Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.    Approvals, Waivers and Binding Effects.**

19.1    Approvals.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2    No Warranties. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT. DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3    Waivers. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4    Binding Effect; No Other Rights. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.    Notices.**

20.1    Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B669F5

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party.  Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

| | |
|---|---|
| Del Taco: | 25521 Commercentre Drive, Suite 200<br>Lake Forest, California 92630<br>Fax Number: (949) 616-5002 |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

## 21.    Force Majeure.

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party.  Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof;   compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event.  The notice shall describe the nature of the event and an estimate as to its duration.

## 22.    Immunity for Certain Limited Disclosures.

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

## 23.    Entire Agreement and Amendment.

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement.  There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

47

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

**24.     Severability; Enforcement of Covenants; Construction.**

    24.1     <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

    24.2     <u>Enforceability of Covenants</u>.  Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

    24.3     <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

**25.     Joint and Several Obligation.**

    If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

**26.     Incorporation of Exhibits.**

    All exhibits referred to in this Agreement constitute an integral part of this Agreement.

**27.     Counterparts.**

    This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

**28. Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

**29. Representations, Warranties and Acknowledgments.**

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.    Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    <u>Receipt of Documents</u>.    Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.    Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.    Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    <u>No Other Obligations.</u>    Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D5E537B669F5

Case 8:24-bk-12337-TA Doc 1567-5 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities II Sup Part 6 Page 720 of 1376

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

29.1.8 <u>Restaurant Location.</u> Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

29.1.9 <u>Compliance with Anti-Terrorism Laws and Other Laws.</u> Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of "**Specially Designated Nationals**" or "**Blocked Persons**" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx   /); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30. Business Judgment.

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

**[SIGNATURE PAGE FILLOWS]**

Executed as of the day and year first set forth above.

**FRANCHISOR:**                                         **DEL TACO LLC**

By: *Jack Tang*

Jack Tang
Vice President & General Counsel


**FRANCHISEE:**                                         **NEWPORT VENTURES, LLC**


By: Techno Industries Inc
Its President & CEO

*Ernesto Abarro*

Ernesto Abarro

By: _____

Katayoun Aryana


Date: 9/6/2023

52

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F637B669F5

Case 8:24-bk-12871-TA   Doc 1567   Filed 02/27/25   Entered 02/27/25 16:13:36   Desc
Memorandum of Points and Authorities in Support of the   Page 749 of 1415   Page 723 of 1376

## Exhibit A

### Identification of Franchisee

1.   Name of Franchisee:            Newport Ventures, LLC

2.   Notice Address of Franchisee:   1500 E. Bethany Home Road
                                     Suite 250
                                     Phoenix, AZ 85014
                                     E-Mail: ernieabarro@gmail.com
                                     Fax Number: (949) 534-7000

3.   Location of Restaurant:         2913 23rd Avenue
                                     Greeley, CO 80631

4.   Protected Area:                 A circular area within a one-mile radius
                                     from the front door of the Restaurant, subject to Section
                                     1.2. of the Franchise Agreement.

5.   Date of Takeover:               October 4, 2023

6.   Date of Expiration:             January 1, 2027

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F637B669F5

Case 23-24871-NMC Doc 1507-1 Filed 02/27/24 Entered 02/27/24 16:15:43 Desc
Memorandum of Points and Authorities in Support of the Mot Page 724 of 1376

# <u>EXHIBIT B</u>

# **Deleted As Not Applicable**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

<u>**EXHIBIT C**</u>

**Authorization Agreement for Prearranged Payments**
**(Direct Debits)**

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank                          Mission Viejo, CA
_____          _____
Depository                                          Branch
26042 Marguerite Pkwy, Mission Viejo, CA 92692
_____
Street Address, City, State, Zip Code
 122000247                                7429826410
_____          _____
Bank Transit/ABA Number                          Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*
_____
 33C61360BA31471...
Depositor

By: _____

Title: _____

Date:  9/6/2023
_____

Exhibit C

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D5E637B669F5

## EXHIBIT D

### Statement of Ownership Interests

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| Individual/Entity Name | Percentage of Ownership/Nature of Interest* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B669F5

Case 8:24-bk-12377-TA Doc 1671 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Memorandum of Points and Authorities Page 753 of 1415   Page 727 of 1376

## EXHIBIT E

### Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated ___September 29___, 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to:  (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee.  Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms.  Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding.  If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Exhibit E-1

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B699F5

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts.  Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S)

(Seal)    Signed: _Ernesto Abarro_____
(In his individual capacity)

Ernesto Abarro
120 S. Lovekin Blvd.
Blythe, CA 92225

(Seal)    Signed: _____
(In his individual capacity)

Katayoun Aryana
1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-642F-48CD-BE6A-D6E637B689F5

## EXHIBIT F

### Non-Disclosure and Non-Competition Agreement

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this 29 day of September 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

BACKGROUND:

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.      <u>Confidential Information</u>.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.      <u>Covenants Not to Compete</u>.

(a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

(b)     Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)     Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)     Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)     Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)     As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.     <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.     <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.     <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.     <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

Exhibit F-2

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

7.    <u>Third-Party Beneficiary.</u>  Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this ___29___ day of ___September___ _____, 2023.

**FRANCHISEE:**                                          **OBLIGEE:**

**NEWPORT VENTURES, LLC**                    **ERNESTO ABARRO**

By: _Ernesto Abarro_____        By: _Ernesto Abarro_____
      Ernesto Abarro

By: _____    **KATAYOUN ARYANA**
      Katayoun Aryana
                                                                          By: _____

Exhibit F-3

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E537B669F5

## EXHIBIT G

## ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1. In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

   > Del Taco LLC
   > 25521 Commercentre Drive
   > Lake Forest, California 92630
   > Attn:  Jack Tang, Vice President, General Counsel

2. In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3. The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4. Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5. All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be.  Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant.  Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B699F5

Case 8:24-bk-12137-TA    Doc 1567    Filed 02/27/25    Entered 02/27/25 16:52:36    Desc
Memorandum of Points and Authorities    Page 759 of 1415    Page 733 of 1376

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.    Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.    Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.    Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.    Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.    The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.    The Lease is contingent upon Franchisor's written approval of the site.

12.    Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Exhibit F-5

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E327B669F5

Case 8:24-bk-12778-TA    Doc 1567    Filed 02/27/25    Entered 02/27/25 16:13:36    Desc
Memorandum of Points and Authorities    Page 760 of 1415    Page 734 of 1376

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                    **Tenant**

By:_____    By:_____


Its:_____    Its:_____


Date:_____    Date:_____

Exhibit F-6

# DocuSign

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5                    Status: Completed
Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...
Source Envelope:
Document Pages: 1213                    Signatures: 177                    Envelope Originator:
Certificate Pages: 5                    Initials: 0                    Jack Tang
AutoNav: Enabled                                                        25521 Commercentre drive Suite 200
EnvelopeId Stamping: Enabled                                           Lake Forest, CA  92630
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                      mhernandez@deltaco.com
                                                                       IP Address: 209.234.159.82

## Record Tracking

Status: Original                    Holder: Jack Tang                    Location: DocuSign
        9/5/2023 5:36:27 PM                 mhernandez@deltaco.com

| Signer Events | Signature | Timestamp |
| --- | --- | --- |
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication (None) | *Ernesto Abarro*<br>33C61360BA31471...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 9/6/2023 10:33:13 AM<br>    ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Jack Tang*<br>AD28CBFCF34348A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 9/29/2023 9:27:32 AM<br>    ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication (None) | B05A39E6022040F...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 7/28/2023 8:56:42 AM<br>    ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
| --- | --- | --- |

| Editor Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Agent Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Intermediary Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

## Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

## Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit K

DocuSign Envelope ID: 87A6FDD2-5426-42CD-BE6A-D9E827B668F5

Case 8:24-bk-12738-TA    Doc 156-1    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities IPage 767 of 1415    Page 741 of 1376

STORE 1043



**FRANCHISE AGREEMENT**

DocuSign Envelope ID: 87A6DDD2-542F-42CD-BE6A-D6F637B669F5

Case 8:24-bk-12841-TA   Doc 1567   Filed 02/27/25   Entered 02/27/25 16:52:36   Desc
Memorandum of Points and Authorities in Support   Page 742 of 1376

## Table of Contents

**Page**

1. Grant. .................................................................................................................. 1
2. Term and Renewal. ........................................................................................... 3
3. Fees and Payments. ........................................................................................... 4
4. Services By Del Taco. ....................................................................................... 6
5. Obligations of Franchisee; Operational Standards. ......................................... 7
6. Advertising and Marketing. ............................................................................ 19
7. Records and Reports. ....................................................................................... 20
8. Proprietary Marks. ........................................................................................... 22
9. Manuals. ........................................................................................................... 24
10. Confidentiality and Covenants Not To Compete. ........................................... 25
11. Insurance. ......................................................................................................... 27
12. Transfer of Interest. ......................................................................................... 29
13. Default and Termination. ................................................................................. 35
14. Obligations Upon Termination or Expiration. ................................................ 38
15. Taxes, Permits and Indebtedness. .................................................................... 40
16. Independent Contractor and Indemnification. ................................................. 41
17. Governing Law and Dispute Resolution. ......................................................... 42
18. Time is of the Essence ..................................................................................... 46
19. Approvals, Waivers and Binding Effects. ....................................................... 46
20. Notices. ............................................................................................................ 46
21. Force Majeure. ................................................................................................. 47
22. Immunity for Certain Limited Disclosures. .................................................... 47
23. Entire Agreement and Amendment .................................................................. 47
24. Severability; Enforcement of Covenants; Construction. ................................. 48
25. Joint and Several Obligation. ........................................................................... 48
26. Incorporation of Exhibits. ............................................................................... 48
27. Counterparts. .................................................................................................... 48
28. Survival of Provisions. .................................................................................... 49
29. Representations, Warranties and Acknowledgments. ...................................... 49
30. Business Judgment. .......................................................................................... 50

Exhibits:

A   Identification of Franchisee
B   Site Selection Addendum
C   Authorization Agreement for Prearranged Payments (Direct Debits)
D   Statement of Ownership Interests
E   Guarantee, Indemnification, and Acknowledgment
F   Non-Disclosure and Non-Competition Agreement
G   Addendum to Lease

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D6E637B668F5

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the __29__ day of __September__, 2023 (the "**Effective Date**").

## RECITALS

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.      Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.      Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.      Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.      Grant.

1.1      <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to: (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

DocuSign Envelope ID: 87A65DD2-542F-48CP-BE6A-D6E627B669F5

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

     1.2    <u>Protected Area</u>. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

     1.2.1    Advertise and promote the System within and outside of the Protected Area;

     1.2.2    Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

     1.2.2.1    Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

     1.2.3    Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

2

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B668F5

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10   Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

**3.    Fees and Payments.**

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D6E637B698F5

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

3.8     Payments on Behalf of Franchisee.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9     Other Payments.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    No Refunds.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.      Services By Del Taco.**

4.1     Development of the Restaurant. Deleted As Not Applicable.

4.2     Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     Opening Assistance. Deleted As Not Applicable.

4.4     Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     Bulletins and Reports. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BF6A-D6F637B669F5

      4.9    <u>Inspection</u>. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

      4.10    <u>Delegation of Duties.</u> Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

**5.      Obligations of Franchisee; Operational Standards.**

      5.1    <u>System Standards and Development of Restaurant</u>.  Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

      5.2    <u>Pre-Opening Obligations</u>.  Deleted:

      5.2.1    Deleted As Not Applicable.

      5.2.2    Deleted As Not Applicable.

      5.2.3    Deleted As Not Applicable.

      5.2.4    Deleted As Not Applicable.

      5.2.5    Deleted As Not Applicable.

      5.2.6    Deleted As Not Applicable.

      5.3    <u>Restaurant Opening</u>.  Deleted As Not Applicable:

      5.3.1    Deleted As Not Applicable.

      5.3.2    Deleted As Not Applicable.

      5.3.3    Deleted As Not Applicable.

      5.3.4    Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

      5.3.5    Deleted As Not Applicable.

      5.4    <u>Training</u>. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

       5.4.1   <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

       5.4.2   <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

       5.4.3   <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

       5.4.4   <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

       5.4.5   <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

     5.4.6   [Reserved]

     5.4.7   Training costs. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

     5.4.8   Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

     5.5   Restaurant Premises. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

     5.6   Personnel. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

     5.7   Health Standards. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

5.8    Restaurant Maintenance.  Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

5.9    Remodeling.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public.  The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

5.10    Franchisee Advisory Council.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

5.11    Equipment Upgrades.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

5.12    Standards and Specifications.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

5.12.1  To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2  To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3  To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4  To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5  To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6  To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13  <u>Suppliers</u>.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

thereafter been disapproved.  For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors.  Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

       5.13.1   If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval.  Franchisee shall not purchase any products or services from any supplier until and, unless, such supplier has been approved in writing by Del Taco.  Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing.  A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier.  Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

       5.13.2   Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

       5.13.3   Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants.  In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants.  Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

       5.13.4   Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services.  These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items.  Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

       5.13.5   Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers.  Franchisee shall promptly pay

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B669F5

all suppliers in accordance with the agreed-upon terms.  In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

       5.13.6  Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

     5.14    Inspections.  Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals.  Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection.  Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection.  Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs.  Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

     5.15   Technology and Computer System.  At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

       5.15.1  Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable.  In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications.  To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

       5.15.2  Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following:  (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   Customer Data.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   Privacy Laws.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.18   Website.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19   POS or Cash Register Systems.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20   Gift Cards.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21   E-Mail, Internet and Other Media; E-Mail and Fax Communications.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

5.21.2   Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

5.21.3   Franchisee agrees that: (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

5.22   <u>Credit Cards and Other Methods of Payment</u>.   At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

5.23   <u>Uniforms</u>.   To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

5.24   <u>Incentive Programs</u>.   Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

5.25   <u>Prices</u>.   With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

5.26    <u>Compliance with Laws and Good Business Practices</u>.    Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.    All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.    Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    <u>Franchisee Structure; Operating Principal and Owners</u>.

5.27.1    Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2    If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3    If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4    Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

5.27.4.1    <u>Operating Principal</u>.  An Operating Principal shall participate personally in the direct operation of the Restaurant.  If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant.  Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2    <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee.  All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3    <u>General Manager</u>: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager").  The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4    <u>General Manager</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28    <u>Personal Guarantee</u>.  Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29    <u>System Modifications</u>.  Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants.  Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials.  Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense.  Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30    No Third-Party Management.  The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco.  Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

## 6.    Advertising and Marketing.

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1    Marketing Fee Expenditure.  Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above.  Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof.  Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2    Local Advertising and Promotion.  All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws.  Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3     <u>Costs of Local Advertising and Promotion</u>.  As used in this Agreement, the term "**Local Advertising and Promotio**n" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1     Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2     Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3     The value of discounts provided to customers;

6.3.4     The cost of food items.

6.4     <u>Approvals</u>.  For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee).  If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them.  Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5     <u>Promotional Materials</u>. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials.  Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

# 7.     **Records and Reports.**

7.1     <u>Records</u>. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

Case 8:24-bk-12837-TA Doc 1567-1 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Memorandum of Points and Authorities Page 789 of 1415   Page 763 of 1376

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2     Periodic Reports. Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3     Reporting Requirements. In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4     Audit. Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5     Data. All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B69BF5

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

      7.6    <u>Accounting and Bookkeeping Services</u>.  Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

      8.1    <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

          8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

          8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

      8.2    <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

          8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

          8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

          8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

          8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>.  Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>.  The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

9.4 <u>Revisions to the Manuals</u>. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

**10. Confidentiality and Covenants Not To Compete.**

10.1 <u>Confidential Information</u>. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2 <u>Irreparable Injury</u>. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3 <u>Information Exchange</u>. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4 <u>Full Time and Best Efforts</u>. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5 <u>In-Term Covenants</u>. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

25

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

10.5.1  Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

10.5.2  Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

10.6  Post-Term Covenants.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of:  (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

10.7  Publicly-Held Corporations.  Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

10.8  Individual Covenants.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

10.9  Severability.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

10.10  Scope of Covenants. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11   <u>Enforcement of Claims</u>.  The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12   <u>Irreparable Injury</u>.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13   <u>Remedies Not Exclusive</u>.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

## 11.   Insurance.

11.1   Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1   <u>Insurance Requirements</u>.   Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1   <u>Liability</u>.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2   <u>Fire</u>.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

11.1.1.3    Business Interruption. Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4    Business Automobile Liability Insurance. Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5    Statutory Workers' Compensation Insurance. Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located. Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco. Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6    Commercial Umbrella Liability Insurance. Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7    Property Insurance. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8    Products Liability Insurance. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9    Cyber Liability Insurance. Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10    Other Insurance. Any other insurance coverage that is required by federal, state, or municipal law.

11.2    Referenced in Manuals. All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3    Policy Cancellation. In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below. Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4    Construction and Remodeling Insurance. In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

28

11.5     No Waiver of Obligations.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6     Del Taco to be Additional Named Insured.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7     Evidence of Insurance.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8     Proof of Insurance.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9     Policy Limit Changes.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10     Del Taco's Insurance.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.     Transfer of Interest.**

12.1     Del Taco Transfers.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

12.2    Owners. If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

12.3    Franchisee Transfers. Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

12.3.1    Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

12.3.2    If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

12.3.3    If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

12.3.4    Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

12.3.5    Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

12.4    Conditions for Approval. Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

12.4.8  The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9  At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5    <u>Transfers to Entities for the Convenience of Ownership</u>.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1   Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2   Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6   Right of First Refusal.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7   Transfer Upon Death.  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco.  If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

12.8    Transfer Upon Permanent Disability.    Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.    If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.    Del Taco shall pay the cost of the required examination.

12.9    Notification Upon Death or Permanent Disability.    Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.    Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10    No Waiver of Claims.    Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11    Insolvency.    If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12    Securities Offerings.    All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.    Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use.    No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.    Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.    Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.    For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.    Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.    Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E537B669F5

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

## 13.    Default and Termination.

13.1    <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2    <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1    If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2    If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3    If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4    If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5    If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

13.2.6   If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7   If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8   If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9   If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

Del Taco LLC
Franchise Agreement | 2023
Error! Unknown document property name.

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3    Termination With Opportunity to Cure. Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period. If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4    Extended Notice of Termination. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5    Assignment Upon Bankruptcy. If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement. In the event Del Taco does not elect to exercise the options

DocuSign Envelope ID: 87A6FDD2-5426-43CD-BE6A-D6E637B668F5

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6    Other Remedies.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1    Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2    Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

13.6.3    Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4    Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

14.    **Obligations Upon Termination or Expiration.**

14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1    Cease Operations.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2    Cease Use of Proprietary Marks.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3    Cancellation of Assumed Names.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

      14.1.4  <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%. The payments called for in this Section 14.1.4 are not a penalty. A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined. Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event. Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

      14.1.5  <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

      14.1.6  <u>No Confusion</u>. Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

      14.1.7  <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises. Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises. If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose. In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco. If Franchisee fails or refuses to comply with the

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

      14.1.8  <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

      14.1.9  <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

      14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.     Taxes, Permits and Indebtedness

    15.1   <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

    15.2   <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

15.3 <u>Compliance With Laws</u>. Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations. Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances. To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall: (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4 <u>Notification of Claims</u>. Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16. Independent Contractor and Indemnification.

16.1 It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1 <u>Identification as Independent Contractor</u>. At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2 <u>No Agency</u>. Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco. Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3 <u>Indemnification</u>. Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant, Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction. In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices. Franchisee acknowledges and agrees that Franchisee's

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-B6E637B668F5

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17.     Governing Law and Dispute Resolution.

17.1     <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2     <u>Venue.</u>  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3     <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1     <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2     <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3     <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

17.3.3.1    Power of Chairman.  The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2    Response to Demand.  Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration.  The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure.  If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3    Amendment of Claim.  If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim.  The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4    Time for Arbitration Hearing.  The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5    List of Witnesses and Documents.  Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand. The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party.  The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time.  The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing.  The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6    Record.  The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party.  The cost of the stenographic record should be borne by the parties equally.

17.3.3.7    Attendance at Hearings.  Any person who is a party to the arbitration may attend the hearings.  The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness.  The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8    Adjournments.  Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E627B69BF5

17.3.3.9    <u>Production of Witnesses and Records</u>.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10    <u>Absence of a Party</u>.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11    <u>Authority to Administer Oaths</u>.  The chairman may administer oaths.

17.3.3.12    <u>Evidence</u>.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13    <u>Evidence by Affidavit and Filing of Documents</u>.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14    <u>Discovery</u>.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15    <u>Reopening of Hearings</u>.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16    <u>Extensions</u>.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

DocuSign Envelope ID: 87A36DD2-542F-43CD-BE6A-D6E637B669F5

     17.3.3.17 <u>Time for Award</u>.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

     17.3.3.18 <u>Confidentiality</u>.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

    17.3.4 <u>Application of Federal Rules of Civil Procedure</u>.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

    17.3.5 <u>Finality; Enforcement; Venue</u>.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

    17.3.6 <u>Arbitration Costs, Attorneys' Fees and Costs</u>.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

    17.3.7 <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

   17.4 <u>Injunctive Relief</u>.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

   17.5 <u>Limitation of Actions</u>.  **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

   17.6 <u>Waiver of Damages</u>.  **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

## 18.    Time is of the Essence

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

## 19.    Approvals, Waivers and Binding Effects.

19.1    Approvals.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2    No Warranties. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3    Waivers. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4    Binding Effect; No Other Rights. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

## 20.    Notices.

20.1    Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party. Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

|  |  |
|---|---|
| Del Taco: | 25521 Commercentre Drive, Suite 200 |
|  | Lake Forest, California 92630 |
|  | Fax Number: (949) 616-5002 |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

## 21.     Force Majeure.

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party. Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof;  compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event.  The notice shall describe the nature of the event and an estimate as to its duration.

## 22.     Immunity for Certain Limited Disclosures.

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

## 23.     Entire Agreement and Amendment.

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement.  There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B669F5

Case 23-10597-BLS Doc 1371 Filed 02/27/24 Entered 02/27/24 16:52:36 Desc
Memorandum of Points and Authorities In Support of the 4 Page 790 of 1376

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any. Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing. The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

**24.    Severability; Enforcement of Covenants; Construction.**

24.1    <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2    <u>Enforceability of Covenants</u>. Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3    <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

**25.    Joint and Several Obligation.**

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

**26.    Incorporation of Exhibits.**

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

**27.    Counterparts.**

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

DocuSign Envelope ID: 87A65DD2-542E-436D-BE6A-D6E637B668F5

## 28.    Survival of Provisions.

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

## 29.    Representations, Warranties and Acknowledgments.

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.   Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    <u>Receipt of Documents</u>.   Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.   Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.   Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    <u>No Other Obligations.</u>   Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

        29.1.8  <u>Restaurant Location.</u>  Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

        29.1.9  <u>Compliance with Anti-Terrorism Laws and Other Laws</u>. Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of **"Specially Designated Nationals"** or **"Blocked Persons"** maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx__/); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.    **Business Judgment.**

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D5E327B669F5

Case 23-24808-LA11 Doc 1567 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities in Support of The Page 793 of 1376

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

[**SIGNATURE PAGE FILLOWS**]

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E237B669F5

Case 23-10787-LSS Doc 1071 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities In Support Thereof    Page 794 of 1376

Executed as of the day and year first set forth above.

FRANCHISOR:                          **DEL TACO LLC**

By: _Jack Tang_
    Jack Tang
    Vice President & General Counsel


FRANCHISEE:                          **NEWPORT VENTURES, LLC**


By: Techno Industries Inc
Its President & CEO

_Ernesto Abarro_
Ernesto Abarro

By: _Katayoun Aryana_
    Katayoun Aryana

Date: _9/6/2023_

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D6F637B669F5

Case 23-12237-FA Doc 1071 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities in Support of the Mo Page 795 of 1376

## Exhibit A

### Identification of Franchisee

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |

2.     Notice Address of Franchisee:

1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014
E-Mail: ernieabarro@gmail.com
Fax Number: (949) 534-7000

3.     Location of Restaurant:

11155 East Arapahoe Place
Centennial, CO 80015

4.     Protected Area:

A circular area within a one-mile radius
from the front door of the Restaurant, subject to Section
1.2. of the Franchise Agreement.

5.     Date of Takeover:

 October 4, 2023

6.     Date of Expiration:     September 28, 2027

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-642F-42CD-BE6A-D6E637B669F5

Case 8:24-bk-12738-TA Doc 150-1 Filed 02/27/24 Entered 02/27/24 08:13:46 Desc
Memorandum of Points and Authorities in Support The 44.5f    Page 796 of 1376

**EXHBIT B**

**Deleted As Not Applicable**

## EXHIBIT C

### Authorization Agreement for Prearranged Payments
### (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank                                    Mission Viejo, CA
_____          _____
Depository                                                  Branch
26042 Marguerite Pkwy, Mission Viejo, CA 92692
_____
Street Address, City, State, Zip Code
122000247                                              7429826410
_____          _____
Bank Transit/ABA Number                            Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*
_____
33C61360BA31471...
Depositor

By: _____

Title: _____

Date: 9/6/2023
       _____

Exhibit C

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E537B668F5

Case 23-24811 Doc 167-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities in Support Thereof Page 824 of 1415 Page 798 of 1376

<u>**EXHIBIT D**</u>

**Statement of Ownership Interests**

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| <u>Individual/Entity Name</u> | <u>Percentage of Ownership/Nature of Interest</u>* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

* Must equal 100%.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CP-BE6A-D6F637B669F5

Case 8:24-bk-12827-TA    Doc 1671    Filed 02/27/25    Entered 02/27/25 16:52:36    Desc
Memorandum of Points and Authorities   Page 825 of 1445    Page 799 of 1376

## EXHIBIT E

### Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated ___September 29___ , 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Exhibit E-1

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F837B669F5

Case 8:24-bk-12749-TA    Doc 1671    Filed 02/27/25    Entered 02/27/25 08:52:36    Desc
Memorandum of Points and Authorities    Page 826 of 1415    Page 800 of 1376

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S)

(Seal)                       Signed: _Ernesto Abarro_____
                                      33C61360BA31471...
                                      (In his individual capacity)

                             Ernesto Abarro
                             120 S. Lovekin Blvd.
                             Blythe, CA 92225

(Seal)                       Signed: _____
                                      B05A39E0022040F...
                                      (In his individual capacity)

                             Katayoun Aryana
                             1500 E. Bethany Home Road
                             Suite 250
                             Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-542E-42C9-BE6A-D9E637B669F5

## EXHIBIT F

### Non-Disclosure and Non-Competition Agreement

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this  29  day of September, 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

### BACKGROUND:

A.       Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.       Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.       The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.       <u>Confidential Information</u>.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.       <u>Covenants Not to Compete</u>.

(a)       Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6E637B668F5

(b)     Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)     Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)     Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)     Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any  Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)     As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.     <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.     <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.     <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.     <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

7.    <u>Third-Party Beneficiary.</u>  Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this __29__ day of __September__ _____, 2023.

**FRANCHISEE:**                          **OBLIGEE:**

**NEWPORT VENTURES, LLC**                **ERNESTO ABARRO**

By: _Ernesto Abarro_____     By: _Ernesto Abarro_____
33C61360BA31471...                        33C61360BA31471...
Ernesto Abarro

By: _____          **KATAYOUN ARYANA**
B05A39E6022040F...
Katayoun Aryana                          By: _____
                                          B05A39E6022040F...

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D6E527B668F5

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.     In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

> Del Taco LLC
> 25521 Commercentre Drive
> Lake Forest, California 92630
> Attn: Jack Tang, Vice President, General Counsel

2.     In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.     The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.     Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.     All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be. Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant. Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B699F5

Case 8:24-bk-12137-TA Doc 1567 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Memorandum of Points and Authorities in Support of Main Document Page 805 of 1376

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.    Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.    Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.    Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.    Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.   The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.   The Lease is contingent upon Franchisor's written approval of the site.

12.   Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                    **Tenant**

By:_____                    By:_____

Its:_____                    Its:_____

Date:_____                    Date:_____

Exhibit F-6

**DocuSign**

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5     Status: Completed
Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 1213 | Signatures: 177 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Jack Tang |
| AutoNav: Enabled | | 25521 Commercentre drive Suite 200 |
| EnvelopeId Stamping: Enabled | | Lake Forest, CA  92630 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | mhernandez@deltaco.com |
| | | IP Address: 209.234.159.82 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Jack Tang | Location: DocuSign |
|     9/5/2023 5:36:27 PM |     mhernandez@deltaco.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication<br>(None) | *Ernesto Abarro*<br>—33C61360BA31471...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 9/6/2023 10:33:13 AM<br>   ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication<br>(None) | *Jack Tang*<br>—AD28CBFCF34348A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 9/29/2023 9:27:32 AM<br>   ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication<br>(None) | *[signature]*<br>—B05A39E6022040F...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 7/28/2023 8:56:42 AM<br>   ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |

| Witness Events | Signature | Timestamp |
| --- | --- | --- |

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/10/2021 12:45:45 PM
Parties agreed to: Emesto Abarca, Jack Tang, Fernando Abarca

Case 8:24-bk-12288-TA    Doc 1507    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities    Page 835 of 1415    Page 809 of 1376

# ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

## Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

## Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit L

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D9E337B689F5

Case 8:24-bk-12738-TA Doc 156-1 Filed 02/21/24 Entered 02/21/24 08:32:36 Desc
Memorandum of Points and Authorities IPageg 8003 The 1415 Page 813 of 1376

STORE 1047



**FRANCHISE AGREEMENT**

# Table of Contents

**Page**

1.   Grant. .................................................................................................................... 1
2.   Term and Renewal. .............................................................................................. 3
3.   Fees and Payments. ............................................................................................. 4
4.   Services By Del Taco. .......................................................................................... 6
5.   Obligations of Franchisee; Operational Standards. ........................................... 7
6.   Advertising and Marketing. .................................................................................. 19
7.   Records and Reports. ........................................................................................... 20
8.   Proprietary Marks. ............................................................................................... 22
9.   Manuals. ............................................................................................................... 24
10.  Confidentiality and Covenants Not To Compete. ............................................... 25
11.  Insurance. ............................................................................................................. 27
12.  Transfer of Interest. ............................................................................................. 29
13.  Default and Termination. ..................................................................................... 35
14.  Obligations Upon Termination or Expiration. .................................................... 38
15.  Taxes, Permits and Indebtedness. ....................................................................... 40
16.  Independent Contractor and Indemnification. .................................................... 41
17.  Governing Law and Dispute Resolution. ............................................................ 42
18.  Time is of the Essence ......................................................................................... 46
19.  Approvals, Waivers and Binding Effects. ........................................................... 46
20.  Notices. ................................................................................................................. 46
21.  Force Majeure. ..................................................................................................... 47
22.  Immunity for Certain Limited Disclosures. ........................................................ 47
23.  Entire Agreement and Amendment ..................................................................... 47
24.  Severability; Enforcement of Covenants; Construction. .................................... 48
25.  Joint and Several Obligation. .............................................................................. 48
26.  Incorporation of Exhibits. ................................................................................... 48
27.  Counterparts. ........................................................................................................ 48
28.  Survival of Provisions. ........................................................................................ 49
29.  Representations, Warranties and Acknowledgments. ......................................... 49
30.  Business Judgment. .............................................................................................. 50

Exhibits:

A   Identification of Franchisee
B   Site Selection Addendum
C   Authorization Agreement for Prearranged Payments (Direct Debits)
D   Statement of Ownership Interests
E   Guarantee, Indemnification, and Acknowledgment
F   Non-Disclosure and Non-Competition Agreement
G   Addendum to Lease

i

DocuSign Envelope ID: 87A65DD2-642F-42CD-BE6A-D6E837B669F5

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the __29__ day of __September__, 2023 (the "**Effective Date**").

## RECITALS

A.       Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.       The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.       Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.       Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.       Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

**1.       Grant.**

1.1       <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B668F5

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A.  If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**").  Franchisee shall not relocate the Restaurant without Del Taco's prior written consent.  Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1.  In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G.  Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

     1.2    <u>Protected Area</u>.  Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area.  "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof.  "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement.  Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

     1.2.1    Advertise and promote the System within and outside of the Protected Area;

     1.2.2    Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

     1.2.2.1    Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area.  If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

     1.2.3    Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F637B669F5

Case 23-24474-JKT Doc 1367-1 Filed 02/27/24 Entered 02/27/24 16:51:36 Desc
Memorandum of Points and Authorities Page 843 of 1415    Page 817 of 1376

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System. Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System. Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System. Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>. Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B699F5

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

**3.    Fees and Payments.**

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

3.8     Payments on Behalf of Franchisee.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9     Other Payments.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    No Refunds.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.     Services By Del Taco.**

4.1     Development of the Restaurant. Deleted As Not Applicable.

4.2     Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     Opening Assistance. Deleted As Not Applicable.

4.4     Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     Bulletins and Reports. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

4.9     Inspection. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10     Delegation of Duties. Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

**5.      Obligations of Franchisee; Operational Standards.**

5.1     System Standards and Development of Restaurant.     Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2     Pre-Opening Obligations.  Deleted:

5.2.1     Deleted As Not Applicable.

5.2.2     Deleted As Not Applicable.

5.2.3     Deleted As Not Applicable.

5.2.4     Deleted As Not Applicable.

5.2.5     Deleted As Not Applicable.

5.2.6     Deleted As Not Applicable.

5.3     Restaurant Opening.  Deleted As Not Applicable:

5.3.1     Deleted As Not Applicable.

5.3.2     Deleted As Not Applicable.

5.3.3     Deleted As Not Applicable.

5.3.4     Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5     Deleted As Not Applicable.

5.4     Training. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time.  Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant.  Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training.  Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training.   Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco.  With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs:  the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

        5.4.1   <u>Initial Training</u>.  Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco.  All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal.  In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

        5.4.2   <u>Operating Principal and General Manager</u>.  If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities.  The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so.  Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

        5.4.3   <u>Refresher Training</u>.  If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement.  In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

        5.4.4   <u>Pre-Opening Crew Training</u>.  Deleted As Not Applicable.

        5.4.5   <u>Continuing Management and Crew Training</u>.  After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System.  Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant.  If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant.  Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling.  Franchisee is solely responsible for ensuring its

8

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

      5.4.6   [Reserved]

      5.4.7   <u>Training costs</u>. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

      5.4.8   <u>Additional Training.</u> If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

      5.5   <u>Restaurant Premises</u>. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

      5.6   <u>Personnel</u>. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

      5.7   <u>Health Standards</u>. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

5.8 <u>Restaurant Maintenance</u>. Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

5.9 <u>Remodeling</u>. Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement"). Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public. The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement. If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement. Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above. If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications. The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

5.10 <u>Franchisee Advisory Council</u>. Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants. Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate. Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

5.11 <u>Equipment Upgrades</u>. In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**"). Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

5.12 <u>Standards and Specifications</u>. To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

5.12.1    To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2    To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3    To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4    To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5    To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6    To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13    Suppliers.    Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6E527B669F5

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

5.13.1  If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

5.13.2  Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

5.13.3  Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

5.13.4  Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

5.13.5  Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

all suppliers in accordance with the agreed-upon terms.  In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

     5.13.6  Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

    5.14   <u>Inspections</u>.  Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals.  Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection.  Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection.  Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs.  Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

    5.15   <u>Technology and Computer System</u>.  At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

    5.15.1  Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable.  In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications.  To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

    5.15.2  Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following:  (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   <u>Customer Data</u>.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   <u>Privacy Laws</u>.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

5.18    Website.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees.
Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any
manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation,
to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically
designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more
related documents, designs, pages, or other communications that can be accessed through electronic means,
including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn,
Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    POS or Cash Register Systems.  Franchisee agrees to record all sales on computer-based
point of sale systems or such other types of cash register systems that Del Taco has the right to designate
or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part
of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are
fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must
record all Net Sales and all revenue information on such equipment.

5.20    Gift Cards.  If Del Taco requires, Franchisee agrees to participate in the gift card
program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware,
blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco
may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-
swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or
honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift
card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the
Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of
any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make
payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in
accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or
redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    E-Mail, Internet and Other Media; E-Mail and Fax Communications.  Franchisee must
comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing)
with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in
connection with discussing, advertising, or disseminating any information, or otherwise having a presence,
on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include
participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly
permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received
approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

5.21.1    Franchisee agrees that exchanging information with Del Taco by e-mail and fax is
an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee
are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic
bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information,
Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and
affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to
Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official
Senders shall be the master and official list of Official Senders.

5.21.2    Franchisee agrees not to transmit or cause any other party to transmit
advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's
prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

5.21.3   Franchisee agrees that:  (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

5.22   <u>Credit Cards and Other Methods of Payment</u>.  At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

5.23   <u>Uniforms</u>.  To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

5.24   <u>Incentive Programs</u>.  Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

5.25   <u>Prices</u>.  With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.26    Compliance with Laws and Good Business Practices.    Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.    All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.    Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    Franchisee Structure; Operating Principal and Owners.

5.27.1    Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2    If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3    If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4    Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

17

DocuSign Envelope ID: 87A65DD2-562F-43CD-BF6A-D6E637B669F5

5.27.4.1    <u>Operating Principal</u>.   An Operating Principal shall participate personally in the direct operation of the Restaurant.  If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant.  Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2    <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee.  All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3    <u>General Manager</u>: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager").  The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4    <u>General Manager</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28    <u>Personal Guarantee</u>.  Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29    <u>System Modifications</u>.  Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants.  Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials.  Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense.  Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-48CB-BE6A-D6F237B69F5

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30    No Third-Party Management. The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco. Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

**6.    Advertising and Marketing.**

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1    Marketing Fee Expenditure. Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above. Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2    Local Advertising and Promotion. All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws. Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3    <u>Costs of Local Advertising and Promotion</u>. As used in this Agreement, the term "**Local Advertising and Promotion**" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1    Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2    Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3    The value of discounts provided to customers;

6.3.4    The cost of food items.

6.4    <u>Approvals</u>. For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee). If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them. Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5    <u>Promotional Materials</u>. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials. Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

# 7.    Records and Reports.

7.1    <u>Records</u>. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

20

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2    Periodic Reports. Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3    Reporting Requirements. In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4    Audit. Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5    Data. All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B668F5

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

7.6    <u>Accounting and Bookkeeping Services</u>.    Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

8.1    <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

8.2    <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D5E637B669F5

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

9.4　Revisions to the Manuals. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

**10.　Confidentiality and Covenants Not To Compete.**

10.1　Confidential Information. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2　Irreparable Injury. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3　Information Exchange. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4　Full Time and Best Efforts. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5　In-Term Covenants. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

25

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

          10.5.1  Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

          10.5.2  Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

     10.6  Post-Term Covenants.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of:  (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

     10.7  Publicly-Held Corporations.  Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

     10.8  Individual Covenants.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

     10.9  Severability.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

     10.10  Scope of Covenants. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11   <u>Enforcement of Claims</u>.  The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12   <u>Irreparable Injury</u>.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13   <u>Remedies Not Exclusive</u>.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

**11.    Insurance.**

11.1   Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1   <u>Insurance Requirements</u>.   Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1   <u>Liability</u>.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2   <u>Fire</u>.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B669F5

Case 8:24-bk-12827-TA Doc 1067-1 Filed 02/21/25 Entered 02/21/25 16:52:36 Desc
Memorandum of Points and Authorities Page 868 of 1415    Page 842 of 1376

11.1.1.3    Business Interruption. Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4    Business Automobile Liability Insurance. Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5    Statutory Workers' Compensation Insurance. Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located. Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco. Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6    Commercial Umbrella Liability Insurance. Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7    Property Insurance. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8    Products Liability Insurance. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9    Cyber Liability Insurance. Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10    Other Insurance. Any other insurance coverage that is required by federal, state, or municipal law.

11.2    Referenced in Manuals. All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3    Policy Cancellation. In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below. Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4    Construction and Remodeling Insurance. In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

11.5    <u>No Waiver of Obligations</u>.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6    <u>Del Taco to be Additional Named Insured</u>.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7    <u>Evidence of Insurance</u>.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8    <u>Proof of Insurance</u>.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9    <u>Policy Limit Changes</u>.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10    <u>Del Taco's Insurance</u>.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.    Transfer of Interest.**

12.1    <u>Del Taco Transfers</u>.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

29

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

     12.2    <u>Owners</u>. If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

     12.3    <u>Franchisee Transfers</u>. Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

        12.3.1  Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

        12.3.2  If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

        12.3.3  If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

        12.3.4  Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

        12.3.5  Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

     12.4    <u>Conditions for Approval</u>. Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

12.4.8 The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9 At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000). The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training. The transfer fee is non-refundable. In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5 <u>Transfers to Entities for the Convenience of Ownership</u>. If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1 Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2 Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6     Right of First Refusal.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7     Transfer Upon Death.  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

12.8    Transfer Upon Permanent Disability.    Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.  If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.  Del Taco shall pay the cost of the required examination.

12.9    Notification Upon Death or Permanent Disability.    Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.  Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10   No Waiver of Claims.    Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11   Insolvency.   If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12   Securities Offerings.    All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.  Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use.  No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.  Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.  Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.  For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.  Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.  Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

**13.      Default and Termination.**

13.1      <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2      <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1   If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2   If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3   If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4   If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5   If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

13.2.6 If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7 If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8 If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9 If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3 <u>Termination With Opportunity to Cure</u>. Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period. If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4 <u>Extended Notice of Termination</u>. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5 <u>Assignment Upon Bankruptcy</u>. If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth: (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement. In the event Del Taco does not elect to exercise the options

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B669F5

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6    Other Remedies.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1    Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2    Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

13.6.3    Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4    Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.    Obligations Upon Termination or Expiration.

14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1    Cease Operations.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2    Cease Use of Proprietary Marks.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3    Cancellation of Assumed Names.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4 <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%. The payments called for in this Section 14.1.4 are not a penalty. A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined. Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event. Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5 <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6 <u>No Confusion</u>. Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7 <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises. Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises. If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose. In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco. If Franchisee fails or refuses to comply with the

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

14.1.8   Option to Purchase Equipment and Furnishings.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

14.1.9   Damages and Costs. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

14.1.10 Other Rights of Franchisee.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.      Taxes, Permits and Indebtedness

15.1    Taxes.  Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

15.2    Tax Disputes.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B669F5

15.3     Compliance With Laws.  Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.  Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.  To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4     Notification of Claims.  Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16.     Independent Contractor and Indemnification.

16.1     It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1   Identification as Independent Contractor.  At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2   No Agency.  Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3   Indemnification. Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B698F5

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17.    Governing Law and Dispute Resolution.

17.1    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2    <u>Venue.</u>  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3    <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1    <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2    <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3    <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

17.3.3.1    <u>Power of Chairman</u>.  The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2    <u>Response to Demand</u>.  Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration.  The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure.  If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3    <u>Amendment of Claim</u>.  If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim.  The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4    <u>Time for Arbitration Hearing</u>.  The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5    <u>List of Witnesses and Documents</u>.  Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand. The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party.  The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time.  The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing.  The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6    <u>Record</u>.  The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party.  The cost of the stenographic record should be borne by the parties equally.

17.3.3.7    <u>Attendance at Hearings</u>.  Any person who is a party to the arbitration may attend the hearings.  The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness.  The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8    <u>Adjournments</u>.  Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

17.3.3.9    Production of Witnesses and Records.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10    Absence of a Party.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11    Authority to Administer Oaths.  The chairman may administer oaths.

17.3.3.12    Evidence.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13    Evidence by Affidavit and Filing of Documents.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14    Discovery.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15    Reopening of Hearings.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16    Extensions.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

17.3.3.17   <u>Time for Award</u>.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

17.3.3.18   <u>Confidentiality</u>.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

17.3.4   <u>Application of Federal Rules of Civil Procedure</u>.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

17.3.5   <u>Finality; Enforcement; Venue</u>.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

17.3.6   <u>Arbitration Costs, Attorneys' Fees and Costs</u>.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.7   <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

17.4   <u>Injunctive Relief</u>.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5   <u>Limitation of Actions</u>.  **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6   <u>Waiver of Damages</u>. **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

45

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE **DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.**

**18.      Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.      Approvals, Waivers and Binding Effects.**

19.1      Approvals.   Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2      No Warranties. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3      Waivers. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4      Binding Effect; No Other Rights. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.      Notices.**

20.1      Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party. Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

| | |
|---|---|
| Del Taco: | 25521 Commercentre Drive, Suite 200 |
| | Lake Forest, California 92630 |
| | Fax Number: (949) 616-5002 |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

**21. Force Majeure.**

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party. Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof; compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event. The notice shall describe the nature of the event and an estimate as to its duration.

**22. Immunity for Certain Limited Disclosures.**

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

**23. Entire Agreement and Amendment.**

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement. There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

47

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

**24.    Severability; Enforcement of Covenants; Construction.**

24.1    <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2    <u>Enforceability of Covenants</u>.  Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3    <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

**25.    Joint and Several Obligation.**

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

**26.    Incorporation of Exhibits.**

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

**27.    Counterparts.**

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

28.     **Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

29.     **Representations, Warranties and Acknowledgments.**

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1  <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2  <u>Receipt of Documents</u>.  Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3  <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4  Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5  <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6  <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7  <u>No Other Obligations.</u>  Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

 29.1.8  <u>Restaurant Location.</u>  Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

 29.1.9  <u>Compliance with Anti-Terrorism Laws and Other Laws.</u> Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of "**Specially Designated Nationals**" or "**Blocked Persons**" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx  /); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at  [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.   **Business Judgment.**

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B668F5

Case 23-24-bk-12788-TA Doc 1567 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities In Support The 445    Page 865 of 1376

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

**[SIGNATURE PAGE FILLOWS]**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E327B669F5

Case 8:24-bk-12137-TA    Doc 156-1    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities In Support   The   Page 866 of 1376

Executed as of the day and year first set forth above.

FRANCHISOR:                          DEL TACO LLC

                                     By: _Jack Tang_
                                         Jack Tang
                                         Vice President & General Counsel


FRANCHISEE:                          NEWPORT VENTURES, LLC

                                     By: Techno Industries Inc
                                     Its President & CEO

                                     _Ernesto Abarro_____
                                     Ernesto Abarro

                                     By: _____
                                         Katayoun Aryana

                                     Date: _9/6/2023_____

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B668F5

Case 23-11771-TPA Doc 1567 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities in Support of the Page 867 of 1376

<u>**Exhibit A**</u>

**Identification of Franchisee**

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |
| 2. | Notice Address of Franchisee: | 1500 E. Bethany Home Road<br>Suite 250<br>Phoenix, AZ 85014<br>E-Mail: ernieabarro@gmail.com<br>Fax Number: (949) 534-7000 |
| 3. | Location of Restaurant: | 18260 East 104th Avenue<br>Commerce City, CO 80022 |
| 4. | Protected Area: | A circular area within a one-mile radius<br>from the front door of the Restaurant, subject to Section<br>1.2. of the Franchise Agreement. |
| 5. | Date of Takeover: | October 4, 2023 |
| 6. | Date of Expiration: | December 28, 2027 |

## EXHIBIT B

## Deleted As Not Applicable

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

# EXHIBIT C

## Authorization Agreement for Prearranged Payments
## (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank
_____

Mission Viejo, CA
_____

Depository                                    Branch

26042 Marguerite Pkwy, Mission Viejo, CA 92692
_____

Street Address, City, State, Zip Code

122000247
_____

7429826410
_____

Bank Transit/ABA Number                       Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*
_____

Depositor

By: _____

Title: _____

Date: _9/6/2023_____

Exhibit C

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B669F5

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D5E637B669F5

Case 8:24-bk-12837-TA    Doc 1567-1    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities    Page 896 of 1415    Page 870 of 1376

<u>**EXHIBIT D**</u>

**Statement of Ownership Interests**

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| <u>Individual/Entity Name</u> | <u>Percentage of Ownership/Nature of Interest</u>* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Exhibit D

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## EXHIBIT E

### Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated  September 29 , 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Exhibit E-1

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E237B669F5

Case 3:24-bk-12788-FA   Doc 156-1   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Memorandum of Points and Authorities   Page 898 of 1415    Page 872 of 1376

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts.  Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S)

(Seal)                    Signed: _Ernesto Abarro_____
                                   33C61360BA3197F...
                                   (In his individual capacity)

                          Ernesto Abarro
                          120 S. Lovekin Blvd.
                          Blythe, CA 92225

(Seal)                    Signed: _____
                                   B05A39E5022040F...
                                   (In his individual capacity)

                          Katayoun Aryana
                          1500 E. Bethany Home Road
                          Suite 250
                          Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6E837B669F5

<u>**EXHIBIT F**</u>

**Non-Disclosure and Non-Competition Agreement**

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this __29__ day of _September_, 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

BACKGROUND:

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.      <u>Confidential Information</u>.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.      <u>Covenants Not to Compete</u>.

        (a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

(b)     Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)     Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)     Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)     Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)     As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.     <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.     <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.     <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.     <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6DDD2-542F-43CD-BE6A-D6E637B669F5

Case 8:24-bk-12778-TA Doc 156-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities In Support of The Page 875 of 1376

7. <u>Third-Party Beneficiary.</u> Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this __29__ day of _____ September _____, 2023.

**FRANCHISEE:**

**NEWPORT VENTURES, LLC**

By: _____
  Ernesto Abarro

By: _____
  Katayoun Aryana

**OBLIGEE:**

**ERNESTO ABARRO**

By: _____

**KATAYOUN ARYANA**

By: _____

Exhibit F-3

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.    In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

> Del Taco LLC
> 25521 Commercentre Drive
> Lake Forest, California 92630
> Attn: Jack Tang, Vice President, General Counsel

2.    In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.    The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.    Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.    All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be. Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant. Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B668F5

Case 8:24-bk-12827-TA    Doc 1557    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities    Page 903 of 1415    Page 877 of 1376

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.      Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.      Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.      Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.      Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.     The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.     The Lease is contingent upon Franchisor's written approval of the site.

12.     Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E327B669F5

Case 8:24-bk-12788-TA    Doc 150-1    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities In Support    Page 904 of 1415    Page 878 of 1376

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                    **Tenant**

By:_____         By:_____

Its:_____         Its:_____

Date:_____         Date:_____

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

**DocuSign**

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5                                     Status: Completed
Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...
Source Envelope:
Document Pages: 1213                    Signatures: 177                            Envelope Originator:
Certificate Pages: 5                    Initials: 0                                Jack Tang
AutoNav: Enabled                                                                   25521 Commercentre drive Suite 200
EnvelopeId Stamping: Enabled                                                       Lake Forest, CA  92630
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                                  mhernandez@deltaco.com
                                                                                   IP Address: 209.234.159.82

## Record Tracking

Status: Original                       Holder: Jack Tang                          Location: DocuSign
        9/5/2023 5:36:27 PM                    mhernandez@deltaco.com

| Signer Events | Signature | Timestamp |
| --- | --- | --- |
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication (None) | *Ernesto Abarro*<br>33C61360BA31471...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 9/6/2023 10:33:13 AM<br>ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Jack Tang*<br>AD28CBFCF34348A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 9/29/2023 9:27:32 AM<br>ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication (None) | B05A39E6022040F...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 7/28/2023 8:56:42 AM<br>ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
| --- | --- | --- |

| Editor Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Agent Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Intermediary Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/10/2021 12:45:45 PM
Parties agreed to: Ernesto Abrego, Jack Tang, Schlumberger AREVO
Case 23-90147 Document 1571 Filed 02/27/124 Entered 02/27/124 08:52:36 Desc
Memorandum of Points and Authorities in Support of Page 881 of 1376

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..


**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.


**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit M

DocuSign Envelope ID: 87A6EDD2-542F-42CD-BE6A-D9E327B688F5

Case 8:24-bk-12771-TA    Doc 156-1    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities in Support    Page 911 of 1415    Page 885 of 1376

STORE 1073



**FRANCHISE AGREEMENT**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BF6A-D6E637B669F5

Case 8:24-bk-12827-TA    Doc 156-7    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities in Suppo    Page 912 of 1415    Page 886 of 1376

# Table of Contents

**Page**

1.  Grant. ...................................................................................................................... 1
2.  Term and Renewal. ................................................................................................. 3
3.  Fees and Payments. ................................................................................................ 4
4.  Services By Del Taco. ............................................................................................ 6
5.  Obligations of Franchisee; Operational Standards. ............................................... 7
6.  Advertising and Marketing. ................................................................................... 19
7.  Records and Reports. ............................................................................................. 20
8.  Proprietary Marks. ................................................................................................. 22
9.  Manuals. ................................................................................................................. 24
10. Confidentiality and Covenants Not To Compete. ................................................. 25
11. Insurance. ............................................................................................................... 27
12. Transfer of Interest. ............................................................................................... 29
13. Default and Termination. ....................................................................................... 35
14. Obligations Upon Termination or Expiration. ...................................................... 38
15. Taxes, Permits and Indebtedness. .......................................................................... 40
16. Independent Contractor and Indemnification. ....................................................... 41
17. Governing Law and Dispute Resolution. ............................................................... 42
18. Time is of the Essence ........................................................................................... 46
19. Approvals, Waivers and Binding Effects. .............................................................. 46
20. Notices. ................................................................................................................... 46
21. Force Majeure. ....................................................................................................... 47
22. Immunity for Certain Limited Disclosures. ........................................................... 47
23. Entire Agreement and Amendment. ....................................................................... 47
24. Severability; Enforcement of Covenants; Construction. ....................................... 48
25. Joint and Several Obligation. ................................................................................. 48
26. Incorporation of Exhibits. ...................................................................................... 48
27. Counterparts. .......................................................................................................... 48
28. Survival of Provisions. ........................................................................................... 49
29. Representations, Warranties and Acknowledgments. ............................................ 49
30. Business Judgment. ................................................................................................ 50

Exhibits:

A    Identification of Franchisee
B    Site Selection Addendum
C    Authorization Agreement for Prearranged Payments (Direct Debits)
D    Statement of Ownership Interests
E    Guarantee, Indemnification, and Acknowledgment
F    Non-Disclosure and Non-Competition Agreement
G    Addendum to Lease

i

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the _29_ day of ___September___, 2023 (the "**Effective Date**").

## RECITALS

A.       Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.       The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.       Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.       Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.       Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

**1.       Grant.**

1.1       <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

     1.2    <u>Protected Area</u>. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

     1.2.1    Advertise and promote the System within and outside of the Protected Area;

     1.2.2    Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

     1.2.2.1    Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

     1.2.3    Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-48CD-BF6A-D6E637B699F5

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    No assurances of a renewal franchise agreement.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

## 3.    Fees and Payments.

3.1    Franchise Fee.  Deleted As Not Applicable.

3.2    Promotional Fee.  Deleted As Not Applicable.

3.3    Royalty Fees.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

3.3.2   The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

3.4   <u>Marketing Fee</u>.   Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").   Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.   Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.   Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5   <u>Continuing Payments, EFT, and Reporting Obligations.</u>   All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.   Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.   Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.   To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.   Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.   Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.   Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.   Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6   <u>No Subordination</u>.   Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7   <u>Overdue Payments and Reports; Interest</u>.   Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.   If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.   Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

3.8  <u>Payments on Behalf of Franchisee</u>.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9  <u>Other Payments</u>.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10  <u>No Refunds</u>.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.  Services By Del Taco.**

4.1  <u>Development of the Restaurant</u>. Deleted As Not Applicable.

4.2  <u>Initial and Ongoing Assistance</u>. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3  <u>Opening Assistance</u>. Deleted As Not Applicable.

4.4  <u>Manuals</u>.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5  <u>Merchandising and Marketing Advice</u>. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6  <u>Ongoing Assistance</u>.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7  <u>Bulletins and Reports</u>. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8  <u>Computer System</u>. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

4.9     Inspection. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10     Delegation of Duties. Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

## 5.     Obligations of Franchisee; Operational Standards.

5.1     System Standards and Development of Restaurant.     Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2     Pre-Opening Obligations.  Deleted:

5.2.1     Deleted As Not Applicable.

5.2.2     Deleted As Not Applicable.

5.2.3     Deleted As Not Applicable.

5.2.4     Deleted As Not Applicable.

5.2.5     Deleted As Not Applicable.

5.2.6     Deleted As Not Applicable.

5.3     Restaurant Opening.  Deleted As Not Applicable:

5.3.1     Deleted As Not Applicable.

5.3.2     Deleted As Not Applicable.

5.3.3     Deleted As Not Applicable.

5.3.4     Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5     Deleted As Not Applicable.

5.4     Training. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D6E637B669F5

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

      5.4.1   <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

      5.4.2   <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

      5.4.3   <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

      5.4.4   <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

      5.4.5   <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

     5.4.6   [Reserved]

     5.4.7   Training costs. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

     5.4.8   Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

     5.5   Restaurant Premises. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

     5.6   Personnel. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

     5.7   Health Standards. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

5.8     Restaurant Maintenance.  Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

5.9     Remodeling.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public.  The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

5.10    Franchisee Advisory Council.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

5.11    Equipment Upgrades.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

5.12    Standards and Specifications.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing.  Franchisee agrees:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   <u>Suppliers</u>.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

11

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

     5.13.1   If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

     5.13.2   Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

     5.13.3   Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

     5.13.4   Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

     5.13.5   Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

all suppliers in accordance with the agreed-upon terms.  In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

        5.13.6   Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

        5.14   <u>Inspections</u>.   Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals.  Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection.  Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection.  Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs.  Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

        5.15   <u>Technology and Computer System</u>.   At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

        5.15.1   Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable.  In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications.  To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

        5.15.2   Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following:  (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   <u>Customer Data</u>.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   <u>Privacy Laws</u>.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

5.18    Website.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees.  Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    POS or Cash Register Systems.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20    Gift Cards.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    E-Mail, Internet and Other Media; E-Mail and Fax Communications.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

        5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

        5.21.2   Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

5.21.3   Franchisee agrees that: (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

5.22   <u>Credit Cards and Other Methods of Payment</u>. At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

5.23   <u>Uniforms</u>. To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

5.24   <u>Incentive Programs</u>. Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

5.25   <u>Prices</u>. With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

5.26    Compliance with Laws and Good Business Practices.    Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.    All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.    Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    Franchisee Structure; Operating Principal and Owners.

5.27.1    Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2    If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3    If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4    Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

5.27.4.1 <u>Operating Principal</u>. An Operating Principal shall participate personally in the direct operation of the Restaurant. If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant. Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2 <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee. All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3 <u>General Manager</u>: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager"). The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4 <u>General Manager</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28 <u>Personal Guarantee</u>. Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29 <u>System Modifications</u>. Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants. Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials. Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense. Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

18

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6F637B669F5

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30    No Third-Party Management.  The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco.  Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

## 6.    Advertising and Marketing.

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1    Marketing Fee Expenditure.  Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above.  Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof.  Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2    Local Advertising and Promotion.  All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws.  Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3     Costs of Local Advertising and Promotion.  As used in this Agreement, the term "**Local Advertising and Promotio**n" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1     Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2     Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3     The value of discounts provided to customers;

6.3.4     The cost of food items.

6.4     Approvals.  For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee).  If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them.  Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5     Promotional Materials. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials.  Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.     Records and Reports.

7.1     Records. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2     <u>Periodic Reports</u>. Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3     <u>Reporting Requirements</u>. In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4     <u>Audit</u>. Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5     <u>Data</u>. All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B698F5

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

7.6     <u>Accounting and Bookkeeping Services</u>.   Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.   Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.   In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.   Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.     Proprietary Marks.

8.1     <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

8.1.1     Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

8.1.2     Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

8.2     <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

8.2.1     Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

8.2.2     Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

8.2.3     Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

8.2.4     During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

9.4  Revisions to the Manuals. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

**10.    Confidentiality and Covenants Not To Compete.**

10.1  Confidential Information. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**").  Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant.  Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others.  Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee.  Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them.  Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2  Irreparable Injury.  Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3  Information Exchange.  Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant.  Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees.  Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products.  Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4  Full Time and Best Efforts.  During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5  In-Term Covenants.  Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System.  During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

10.5.1   Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

10.5.2   Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

10.6   Post-Term Covenants.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

10.7   Publicly-Held Corporations.   Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

10.8   Individual Covenants.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

10.9   Severability.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

10.10   Scope of Covenants. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11   <u>Enforcement of Claims</u>.  The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12   <u>Irreparable Injury</u>.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13   <u>Remedies Not Exclusive</u>.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

**11.   Insurance.**

11.1   Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1   <u>Insurance Requirements</u>.   Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1   <u>Liability</u>.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2   <u>Fire</u>.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

11.1.1.3    <u>Business Interruption</u>.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4    <u>Business Automobile Liability Insurance</u>.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5    <u>Statutory Workers' Compensation Insurance</u>.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6    <u>Commercial Umbrella Liability Insurance</u>.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7    <u>Property Insurance</u>.  Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8    <u>Products Liability Insurance</u>.  Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9    <u>Cyber Liability Insurance</u>.  Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10    <u>Other Insurance</u>.  Any other insurance coverage that is required by federal, state, or municipal law.

11.2    <u>Referenced in Manuals</u>.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3    <u>Policy Cancellation</u>.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4    <u>Construction and Remodeling Insurance</u>.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

11.5    <u>No Waiver of Obligations</u>.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6    <u>Del Taco to be Additional Named Insured</u>.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7    <u>Evidence of Insurance</u>.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8    <u>Proof of Insurance</u>.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9    <u>Policy Limit Changes</u>.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10    <u>Del Taco's Insurance</u>.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.    Transfer of Interest.**

12.1    <u>Del Taco Transfers</u>.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

      12.2   <u>Owners</u>. If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

      12.3   <u>Franchisee Transfers</u>. Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

      12.3.1   Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

      12.3.2   If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

      12.3.3   If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

      12.3.4   Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

      12.3.5   Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

      12.4   <u>Conditions for Approval</u>. Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

12.4.8   The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9   At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10  If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11  The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12  The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5    <u>Transfers to Entities for the Convenience of Ownership</u>.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1   Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2   Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

12.5.3    Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4    Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5    Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6    Right of First Refusal.

12.6.1    If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2    Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3    In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7    Transfer Upon Death.  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco.  If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.8    Transfer Upon Permanent Disability.    Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.    If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.    Del Taco shall pay the cost of the required examination.

12.9    Notification Upon Death or Permanent Disability.    Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.    Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10    No Waiver of Claims.    Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11    Insolvency.    If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12    Securities Offerings.    All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.    Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use.  No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.    Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.  Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.    For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.    Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.    Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

**13.    Default and Termination.**

13.1    <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2    <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1    If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2    If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3    If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4    If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5    If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

13.2.6   If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7   If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8   If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9   If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

36

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

    13.3   <u>Termination With Opportunity to Cure</u>. Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period. If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

    13.4   <u>Extended Notice of Termination</u>. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

    13.5   <u>Assignment Upon Bankruptcy</u>. If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth: (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement. In the event Del Taco does not elect to exercise the options

37

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

     13.6   <u>Other Remedies</u>.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

     13.6.1   Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

     13.6.2   Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

     13.6.3   Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

     13.6.4   Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.    **Obligations Upon Termination or Expiration.**

     14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

     14.1.1   <u>Cease Operations</u>.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

     14.1.2   <u>Cease Use of Proprietary Marks</u>.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

     14.1.3   <u>Cancellation of Assumed Names</u>.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4    <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%.  The payments called for in this Section 14.1.4 are not a penalty.  A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined.  Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event.  Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5    <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6    <u>No Confusion</u>.  Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7    <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises.  Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises.  If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose.  In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco.  If Franchisee fails or refuses to comply with the

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

14.1.8 <u>Option to Purchase Equipment and Furnishings</u>. Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value. The book value shall be determined based upon a five (5) year straight line depreciation of original costs. For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost. If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

14.1.9 <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

14.1.10 <u>Other Rights of Franchisee</u>. The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15. Taxes, Permits and Indebtedness

15.1 <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant. If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

15.2 <u>Tax Disputes</u>. In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

15.3    <u>Compliance With Laws</u>.  Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.  Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.  To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4    <u>Notification of Claims</u>.  Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

# 16.    Independent Contractor and Indemnification.

16.1    It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1    <u>Identification as Independent Contractor</u>.  At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2    <u>No Agency</u>.  Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3    <u>Indemnification</u>. Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

**17.     Governing Law and Dispute Resolution.**

17.1    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2    <u>Venue</u>.  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3    <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1    <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2    <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3    <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6E637B669F5

17.3.3.1    <u>Power of Chairman</u>.  The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2    <u>Response to Demand</u>.  Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration.  The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure.  If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3    <u>Amendment of Claim</u>.  If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim.  The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4    <u>Time for Arbitration Hearing</u>.  The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5    <u>List of Witnesses and Documents</u>.  Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand.  The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party.  The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time.  The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing.  The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6    <u>Record</u>.  The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party.  The cost of the stenographic record should be borne by the parties equally.

17.3.3.7    <u>Attendance at Hearings</u>.  Any person who is a party to the arbitration may attend the hearings.  The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness.  The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8    <u>Adjournments</u>.  Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

17.3.3.9   <u>Production of Witnesses and Records</u>.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10   <u>Absence of a Party</u>.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11   <u>Authority to Administer Oaths</u>.  The chairman may administer oaths.

17.3.3.12   <u>Evidence</u>.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13   <u>Evidence by Affidavit and Filing of Documents</u>.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14   <u>Discovery</u>.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15   <u>Reopening of Hearings</u>.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16   <u>Extensions</u>.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

44

17.3.3.17    Time for Award.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

17.3.3.18    Confidentiality.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

17.3.4    Application of Federal Rules of Civil Procedure.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

17.3.5    Finality; Enforcement; Venue.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

17.3.6    Arbitration Costs, Attorneys' Fees and Costs.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.7    Survival. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

17.4    Injunctive Relief.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5    Limitation of Actions.  **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6    Waiver of Damages.  **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

**18.     Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.     Approvals, Waivers and Binding Effects.**

19.1     Approvals.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2     No Warranties. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3     Waivers. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4     Binding Effect; No Other Rights. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.     Notices.**

20.1     Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party. Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

| | |
|---|---|
| Del Taco: | 25521 Commercentre Drive, Suite 200 |
| | Lake Forest, California 92630 |
| | Fax Number: (949) 616-5002 |
| | |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

## 21.     Force Majeure.

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party. Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof; compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event. The notice shall describe the nature of the event and an estimate as to its duration.

## 22.     Immunity for Certain Limited Disclosures.

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

## 23.     Entire Agreement and Amendment.

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement. There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

47

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any. Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing. The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

## 24. Severability; Enforcement of Covenants; Construction.

24.1 <u>Severability</u>. If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable. The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party. In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect. If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2 <u>Enforceability of Covenants</u>. Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3 <u>Construction</u>. All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

## 25. Joint and Several Obligation.

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

## 26. Incorporation of Exhibits.

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

## 27. Counterparts.

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

**28.      Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

**29.      Representations, Warranties and Acknowledgments.**

29.1      Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1      <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2      <u>Receipt of Documents</u>.   Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3      <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4      Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5      <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6      <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7      <u>No Other Obligations.</u>   Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

29.1.8  <u>Restaurant Location.</u>  Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

29.1.9  <u>Compliance with Anti-Terrorism Laws and Other Laws</u>. Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of **"Specially Designated Nationals"** or **"Blocked Persons"** maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at  https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx_/); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.    Business Judgment.

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E327B669F5

Case 22-11528-JTD   Doc 1671   Filed 02/27/24   Entered 02/27/24 18:32:36   Desc
Memorandum of Points and Authorities in Support of the   Page 937 of 1376

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

**[SIGNATURE PAGE FILLOWS]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-642F-42CD-BE6A-D6F627B669F5

Case 8:24-bk-12784-TA   Doc 156-1   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Memorandum of Points and Authorities In Support of the   Page 938 of 1376

Executed as of the day and year first set forth above.

**FRANCHISOR:**                              **DEL TACO LLC**

By: *Jack Tang*

AD28CBFCF34346A...

Jack Tang
Vice President & General Counsel


**FRANCHISEE:**                              **NEWPORT VENTURES, LLC**

By: Techno Industries Inc
Its President & CEO

*Ernesto Abarro*

33C61360BA31471...

Ernesto Abarro

By: [signature]

B05A39E6022040F...

Katayoun Aryana

Date: 9/6/2023

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E327B669F5

Case 23-24882 Doc 1671 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities in Support of The Page 939 of 1376

<u>**Exhibit A**</u>

**Identification of Franchisee**

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |

2.     Notice Address of Franchisee:     1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014
E-Mail: ernieabarro@gmail.com
Fax Number: (949) 534-7000

3.     Location of Restaurant:     4310 N. Academy Blvd.
Colorado Springs, CO 80918

4.     Protected Area:     A circular area within a one-mile radius
from the front door of the Restaurant, subject to Section
1.2. of the Franchise Agreement.

5.     Date of Takeover:     October 4, 2023

6.     Date of Expiration:     March 22, 2029

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E637B668F5

**EXHIBIT B**

**Deleted As Not Applicable**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B668F5

Case 8:24-bk-12738-TA   Doc 150-1   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Memorandum of Points and Authorities In Support   Page 967 of 1415   Page 941 of 1376

## EXHIBIT C

### Authorization Agreement for Prearranged Payments
### (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank                           Mission Viejo, CA

Depository                                  Branch

26042 Marguerite Pkwy, Mission Viejo, CA 92692

Street Address, City, State, Zip Code

122000247                                   7429826410

Bank Transit/ABA Number                     Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*

Depositor

By: _____

Title: _____

Date: 9/6/2023

Exhibit C

**EXHIBIT D**

**Statement of Ownership Interests**

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| Individual/Entity Name | Percentage of Ownership/Nature of Interest* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6F537B669F5

## EXHIBIT E

## Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated ___September 29___ , 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Exhibit E-1

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S):

(Seal)

Signed: _Ernesto Abarro_
33C61360BA319714...
(In his individual capacity)

Ernesto Abarro
120 S. Lovekin Blvd.
Blythe, CA 92225

(Seal)

Signed: _____
B05A39E0022040F...
(In his individual capacity)

Katayoun Aryana
1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-5425-436D-BE6A-D6E537B669F5

## EXHIBIT F

### Non-Disclosure and Non-Competition Agreement

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this __29__ day of __September__ 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

BACKGROUND:

A.       Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.       Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.       The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.       <u>Confidential Information</u>.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.       <u>Covenants Not to Compete</u>.

(a)       Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

Case 8:24-bk-12827-TA   Doc 1671   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Main Document   Page 972 of 1415   Page 946 of 1376
Memorandum of Points and Authorities In Support Th   Page 946 of 1376

(b)     Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)     Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)    Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)     Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)     As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.     <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.     <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.     <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.     <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

7.      <u>Third-Party Beneficiary.</u>  Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this <u>29</u> day of <u>September</u> _____, 2023.

**FRANCHISEE:**                                              **OBLIGEE:**

**NEWPORT VENTURES, LLC**                      **ERNESTO ABARRO**

By: _____        By: _____
       Ernesto Abarro                                               33C61360BA31471...

By: _____
       Katayoun Aryana

**KATAYOUN ARYANA**

By: _____
       B05A39E6022040F...

Exhibit F-3

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.      In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

> Del Taco LLC
> 25521 Commercentre Drive
> Lake Forest, California 92630
> Attn: Jack Tang, Vice President, General Counsel

2.      In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.      The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.      Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.      All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be. Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant. Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

Exhibit F-4

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.      Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.      Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.      Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.      Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.    The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.    The Lease is contingent upon Franchisor's written approval of the site.

12.    Landlord consents to the operation of the Restaurant on a 24-hour basis.

      The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**

By:_____

Its:_____

Date:_____

**Tenant**

By:_____

Its:_____

Date:_____

Exhibit F-6

DocuSign®

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5     Status: Completed
Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...
Source Envelope:
Document Pages: 1213     Signatures: 177     Envelope Originator:
Certificate Pages: 5     Initials: 0     Jack Tang
AutoNav: Enabled     25521 Commercentre drive Suite 200
EnvelopeId Stamping: Enabled     Lake Forest, CA  92630
Time Zone: (UTC-08:00) Pacific Time (US & Canada)     mhernandez@deltaco.com
    IP Address: 209.234.159.82

## Record Tracking

Status: Original     Holder: Jack Tang     Location: DocuSign
    9/5/2023 5:36:27 PM     mhernandez@deltaco.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication (None) | *Ernesto Abarro*<br>33C61360BA31471...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 9/6/2023 10:33:13 AM<br>   ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Jack Tang*<br>AD28CBFCF34346A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 9/29/2023 9:27:32 AM<br>   ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication (None) | B05A39E6022040F...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| **Electronic Record and Signature Disclosure:**<br>   Accepted: 7/28/2023 8:56:42 AM<br>   ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/19/2021 12:45:45 PM
Parties agreed to: Ernesto Abarca, Jack Tang, Schamick ADAPA

Case 22-48044 Doc 1071 Filed 02/27/24 Entered 02/27/24 08:52:46 Desc
Memorandum of Points and Authorities Page 979 of 1415    Page 953 of 1376

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

Exhibit N

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D9F327B669F5

Case 8:24-bk-12738-TA Doc 156-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities Page 983 of 1415    Page 957 of 1376

STORE 1086



**FRANCHISE AGREEMENT**

# Table of Contents

**Page**

| | | |
|---|---|---|
| 1. | Grant. | 1 |
| 2. | Term and Renewal. | 3 |
| 3. | Fees and Payments. | 4 |
| 4. | Services By Del Taco. | 6 |
| 5. | Obligations of Franchisee; Operational Standards. | 7 |
| 6. | Advertising and Marketing. | 19 |
| 7. | Records and Reports. | 20 |
| 8. | Proprietary Marks. | 22 |
| 9. | Manuals. | 24 |
| 10. | Confidentiality and Covenants Not To Compete. | 25 |
| 11. | Insurance. | 27 |
| 12. | Transfer of Interest. | 29 |
| 13. | Default and Termination. | 35 |
| 14. | Obligations Upon Termination or Expiration. | 38 |
| 15. | Taxes, Permits and Indebtedness. | 40 |
| 16. | Independent Contractor and Indemnification. | 41 |
| 17. | Governing Law and Dispute Resolution. | 42 |
| 18. | Time is of the Essence | 46 |
| 19. | Approvals, Waivers and Binding Effects. | 46 |
| 20. | Notices. | 46 |
| 21. | Force Majeure. | 47 |
| 22. | Immunity for Certain Limited Disclosures. | 47 |
| 23. | Entire Agreement and Amendment. | 47 |
| 24. | Severability; Enforcement of Covenants; Construction. | 48 |
| 25. | Joint and Several Obligation. | 48 |
| 26. | Incorporation of Exhibits. | 48 |
| 27. | Counterparts. | 48 |
| 28. | Survival of Provisions. | 49 |
| 29. | Representations, Warranties and Acknowledgments. | 49 |
| 30. | Business Judgment. | 50 |

Exhibits:

| | |
|---|---|
| A | Identification of Franchisee |
| B | Site Selection Addendum |
| C | Authorization Agreement for Prearranged Payments (Direct Debits) |
| D | Statement of Ownership Interests |
| E | Guarantee, Indemnification, and Acknowledgment |
| F | Non-Disclosure and Non-Competition Agreement |
| G | Addendum to Lease |

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the ___29___ day of ___September___, 2023 (the "**Effective Date**").

## RECITALS

A.    Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.    The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.    Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.    Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.    Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.    Grant.

1.1    <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B669F5

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

     1.2   <u>Protected Area</u>. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

     1.2.1   Advertise and promote the System within and outside of the Protected Area;

     1.2.2   Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

     1.2.2.1   Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

     1.2.3   Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

2

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2, and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    No assurances of a renewal franchise agreement.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

## 3.    Fees and Payments.

3.1    Franchise Fee.  Deleted As Not Applicable.

3.2    Promotional Fee.  Deleted As Not Applicable.

3.3    Royalty Fees.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

       3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

       3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

       3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

       3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

       3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D5E637B669F5

3.8   <u>Payments on Behalf of Franchisee</u>.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9   <u>Other Payments</u>.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10   <u>No Refunds</u>.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.   Services By Del Taco.**

4.1   <u>Development of the Restaurant</u>. Deleted As Not Applicable.

4.2   <u>Initial and Ongoing Assistance</u>. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3   <u>Opening Assistance</u>. Deleted As Not Applicable.

4.4   <u>Manuals</u>.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5   <u>Merchandising and Marketing Advice</u>. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6   <u>Ongoing Assistance</u>.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7   <u>Bulletins and Reports</u>. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8   <u>Computer System</u>. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-5425-42CD-BF6A-D6E637B669F5

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6F637B669F5

4.9     <u>Inspection</u>. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10     <u>Delegation of Duties.</u> Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

**5.      Obligations of Franchisee; Operational Standards.**

5.1     <u>System Standards and Development of Restaurant</u>.     Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2     <u>Pre-Opening Obligations</u>.  Deleted:

5.2.1     Deleted As Not Applicable.

5.2.2     Deleted As Not Applicable.

5.2.3     Deleted As Not Applicable.

5.2.4     Deleted As Not Applicable.

5.2.5     Deleted As Not Applicable.

5.2.6     Deleted As Not Applicable.

5.3     <u>Restaurant Opening</u>.  Deleted As Not Applicable:

5.3.1     Deleted As Not Applicable.

5.3.2     Deleted As Not Applicable.

5.3.3     Deleted As Not Applicable.

5.3.4     Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5     Deleted As Not Applicable.

5.4     <u>Training</u>. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

   5.4.1 <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

   5.4.2 <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

   5.4.3 <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

   5.4.4 <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

   5.4.5 <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

DocuSign Envelope ID: 87A65DD2-542E-43CD-BF6A-D6E537B669F5

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

    5.4.6   [Reserved]

    5.4.7   Training costs. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

    5.4.8   Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

    5.5   Restaurant Premises. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

    5.6   Personnel. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

    5.7   Health Standards. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

5.8 _Restaurant Maintenance_. Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

5.9 _Remodeling_. Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement"). Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public. The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement. If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement. Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above. If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications. The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

5.10 _Franchisee Advisory Council_. Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants. Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate. Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

5.11 _Equipment Upgrades_. In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**"). Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

5.12 _Standards and Specifications_. To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42GD-BE6A-D6F537B669F5

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   <u>Suppliers</u>.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

      5.13.1  If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

      5.13.2  Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

      5.13.3  Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

      5.13.4  Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

      5.13.5  Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

all suppliers in accordance with the agreed-upon terms. In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

      5.13.6  Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

    5.14   <u>Inspections</u>.  Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals. Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection. Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection. Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs. Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

    5.15   <u>Technology and Computer System</u>.  At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

      5.15.1  Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable. In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications. To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

      5.15.2  Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following: (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   Customer Data.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   Privacy Laws.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

14

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F637B669F5

5.18    <u>Website</u>.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    <u>POS or Cash Register Systems</u>.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20    <u>Gift Cards</u>.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    <u>E-Mail, Internet and Other Media; E-Mail and Fax Communications</u>.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

    5.21.1    Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

    5.21.2    Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

5.21.3   Franchisee agrees that:  (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

5.22   <u>Credit Cards and Other Methods of Payment</u>.   At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

5.23   <u>Uniforms</u>.   To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

5.24   <u>Incentive Programs</u>.   Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

5.25   <u>Prices</u>.   With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

DocuSign Envelope ID: 87A6DDD2-542E-48CF-BE6A-D6F637B668F5

5.26    <u>Compliance with Laws and Good Business Practices</u>.  Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.  All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.  Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    <u>Franchisee Structure; Operating Principal and Owners</u>.

5.27.1   Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2   If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3   If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4   Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

DocuSign Envelope ID: 87A65DD2-542F-43CP-BF6A-D6F637B669F5
Case 8:24-bk-12842-TA Doc 1557 Filed 02/27/25 Entered 02/27/25 16:15:36 Desc
Main Document Page 1002 of 1415 Page 976 of 1376
Memorandum of Points and Authorities Page 1002 of 1415

5.27.4.1    Operating Principal.  An Operating Principal shall participate personally in the direct operation of the Restaurant.  If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant.  Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2    Owners:  An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee.  All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3    General Manager:  Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager").  The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4    General Manager:  Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28    Personal Guarantee.  Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29    System Modifications.  Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants.  Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials.  Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense.  Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30   No Third-Party Management. The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco. Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

**6.     Advertising and Marketing.**

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1   Marketing Fee Expenditure. Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above. Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2   Local Advertising and Promotion. All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws. Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3     Costs of Local Advertising and Promotion. As used in this Agreement, the term "**Local Advertising and Promotio**n" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1     Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2     Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3     The value of discounts provided to customers;

6.3.4     The cost of food items.

6.4     Approvals. For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee). If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them. Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5     Promotional Materials. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials. Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.     Records and Reports.

7.1     Records. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2     Periodic Reports. Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3     Reporting Requirements. In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4     Audit. Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5     Data. All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F637B669F5

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

7.6    Accounting and Bookkeeping Services.    Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

8.1    Ownership of the Proprietary Marks. Del Taco represents with respect to the Proprietary Marks that:

8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

8.2    Use of the Proprietary Marks. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D6E637B669F5

Case 8:24-bk-12137-TA Doc 1367-5 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities Page 1008 of 1415 Page 982 of 1376

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CP-BE6A-D6F637B669F5

Case 8:24-bk-12228-TA Doc 1567-1 Filed 02/21/25 Entered 02/21/25 16:32:36 Desc
Memorandum of Points and Authorities Page 1009 of 1415    Page 983 of 1376

9.4    <u>Revisions to the Manuals</u>. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

**10.    Confidentiality and Covenants Not To Compete.**

10.1    <u>Confidential Information</u>. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2    <u>Irreparable Injury</u>.    Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3    <u>Information Exchange</u>.    Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4    <u>Full Time and Best Efforts</u>.    During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5    <u>In-Term Covenants</u>.    Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

10.5.1  Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

10.5.2  Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

10.6  <u>Post-Term Covenants</u>.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of:  (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

10.7  <u>Publicly-Held Corporations</u>.   Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

10.8  <u>Individual Covenants</u>.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

10.9  <u>Severability</u>.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

10.10  <u>Scope of Covenants</u>. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11    <u>Enforcement of Claims</u>. The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10. Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12    <u>Irreparable Injury</u>. Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13    <u>Remedies Not Exclusive</u>. The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

**11.    Insurance.**

11.1    Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1    <u>Insurance Requirements</u>. Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located. Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1    <u>Liability</u>. A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2    <u>Fire</u>. Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment. The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E837B699F5

Memorandum of Points & Authorities in Support of the

11.1.1.3   <u>Business Interruption</u>. Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

11.1.1.4   <u>Business Automobile Liability Insurance</u>. Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

11.1.1.5   <u>Statutory Workers' Compensation Insurance</u>. Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located. Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco. Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

11.1.1.6   <u>Commercial Umbrella Liability Insurance</u>. Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

11.1.1.7   <u>Property Insurance</u>. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

11.1.1.8   <u>Products Liability Insurance</u>. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

11.1.1.9   <u>Cyber Liability Insurance</u>. Cyber liability insurance in an amount that Del Taco designates.

11.1.1.10   <u>Other Insurance</u>. Any other insurance coverage that is required by federal, state, or municipal law.

11.2   <u>Referenced in Manuals</u>. All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

11.3   <u>Policy Cancellation</u>. In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below. Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

11.4   <u>Construction and Remodeling Insurance</u>. In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E537B669F5

11.5    No Waiver of Obligations.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6    Del Taco to be Additional Named Insured.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7    Evidence of Insurance.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8    Proof of Insurance.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9    Policy Limit Changes.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10    Del Taco's Insurance.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

## 12.    Transfer of Interest.

12.1    Del Taco Transfers.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

      12.2    <u>Owners</u>. If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

      12.3    <u>Franchisee Transfers</u>. Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

          12.3.1   Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

          12.3.2   If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

          12.3.3   If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

          12.3.4   Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

          12.3.5   Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

      12.4    <u>Conditions for Approval</u>. Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

12.4.8 The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9 At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000). The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training. The transfer fee is non-refundable. In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5    <u>Transfers to Entities for the Convenience of Ownership</u>.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1   Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2   Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6   Right of First Refusal.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7   Transfer Upon Death.  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.8    Transfer Upon Permanent Disability.    Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.  If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.  Del Taco shall pay the cost of the required examination.

12.9    Notification Upon Death or Permanent Disability.    Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.  Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10    No Waiver of Claims.    Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11    Insolvency.    If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12    Securities Offerings.    All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.  Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use.  No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.  Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.  Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.  For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.  Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.  Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B668F5

Case 8:24-bk-12827-TA Doc 1671 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Main Document Page 1019 of 1415    Page 993 of 1376
Memorandum of Points and Authorities

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

**13.    Default and Termination.**

13.1    <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2    <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1    If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2    If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3    If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4    If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5    If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

13.2.6   If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7   If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8   If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9   If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3    Termination With Opportunity to Cure.  Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.  If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4    Extended Notice of Termination. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5    Assignment Upon Bankruptcy.  If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options

37

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6    Other Remedies.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1   Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2   Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

13.6.3   Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4   Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.    Obligations Upon Termination or Expiration.

14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1   Cease Operations.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2   Cease Use of Proprietary Marks.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3   Cancellation of Assumed Names.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

        14.1.4  <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%. The payments called for in this Section 14.1.4 are not a penalty. A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined. Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event. Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

        14.1.5  <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

        14.1.6  <u>No Confusion</u>. Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

        14.1.7  <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises. Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises. If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose. In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco. If Franchisee fails or refuses to comply with the

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

        14.1.8   <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

        14.1.9   <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

        14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.      Taxes, Permits and Indebtedness

    15.1   <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

    15.2   <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

15.3    Compliance With Laws.  Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.  Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.  To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4    Notification of Claims.  Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16.    Independent Contractor and Indemnification.

16.1    It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1    Identification as Independent Contractor.  At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2    No Agency.  Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3    Indemnification.  Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

41

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17.    Governing Law and Dispute Resolution.

17.1    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2    <u>Venue.</u>  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3    <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1    <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2    <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3    <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

17.3.3.1 <u>Power of Chairman</u>. The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2 <u>Response to Demand</u>. Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration. The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure. If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3 <u>Amendment of Claim</u>. If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim. The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4 <u>Time for Arbitration Hearing</u>. The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5 <u>List of Witnesses and Documents</u>. Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand. The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party. The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time. The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing. The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6 <u>Record</u>. The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party. The cost of the stenographic record should be borne by the parties equally.

17.3.3.7 <u>Attendance at Hearings</u>. Any person who is a party to the arbitration may attend the hearings. The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness. The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8 <u>Adjournments</u>. Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

17.3.3.9    Production of Witnesses and Records.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10    Absence of a Party.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11    Authority to Administer Oaths.  The chairman may administer oaths.

17.3.3.12    Evidence.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13    Evidence by Affidavit and Filing of Documents.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14    Discovery.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15    Reopening of Hearings.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16    Extensions.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

44

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

Case 8:24-bk-12827-TA Doc 1567-1 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Memorandum of Points and Authorities IR Supp Doc Page 1003 of 1376

17.3.3.17    <u>Time for Award</u>.  The arbitrators shall render the award no later than 20 days after the completion of the hearing.

17.3.3.18    <u>Confidentiality</u>.  The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

17.3.4    <u>Application of Federal Rules of Civil Procedure</u>.  Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

17.3.5    <u>Finality; Enforcement; Venue</u>.  The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction.  All arbitrations shall take place in Orange County, California.

17.3.6    <u>Arbitration Costs, Attorneys' Fees and Costs</u>.  Each party shall bear their share of the costs of the arbitration proceeding.  The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.7    <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

17.4    <u>Injunctive Relief</u>.  Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5    <u>Limitation of Actions</u>**. EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6    <u>Waiver of Damages</u>. **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

DocuSign Envelope ID: 87A65DD2-542F-43CB-BE6A-D6E637B669F5

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

**18.      Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.      Approvals, Waivers and Binding Effects.**

19.1      <u>Approvals</u>.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2      <u>No Warranties</u>. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3      <u>Waivers</u>. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4      <u>Binding Effect; No Other Rights</u>. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.      Notices.**

20.1      Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

DocuSign Envelope ID: 87A65DD2-642F-42CD-BE6A-D6E637B669F5

Case 8:24-bk-12837-TA Doc 1607 Filed 02/27/25 Entered 02/27/25 16:32:36 Desc
Memorandum of Points and Authorities IR Sup 1031 of 1415 Page 1005 of 1376

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party. Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

|  |  |
|---|---|
| Del Taco: | 25521 Commercentre Drive, Suite 200 Lake Forest, California 92630 Fax Number: (949) 616-5002 |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

## 21. Force Majeure.

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party. Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof; compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event. The notice shall describe the nature of the event and an estimate as to its duration.

## 22. Immunity for Certain Limited Disclosures.

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

## 23. Entire Agreement and Amendment.

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement. There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

47

Case 8:24-bk-12827-TA   Doc 661   Filed 02/27/24   Entered 02/27/24 08:32:36   Desc
Main Document   Page 1032 of 1415   Page 1006 of 1376
Memorandum of Points and Authorities ISupp 1082 of 1405

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

**24.     Severability; Enforcement of Covenants; Construction.**

24.1     <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2     <u>Enforceability of Covenants</u>.  Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3     <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision.  Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

**25.     Joint and Several Obligation.**

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

**26.     Incorporation of Exhibits.**

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

**27.     Counterparts.**

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

DocuSign Envelope ID: 87A65DD2-642E-42CD-BE6A-D6E637B668F5

**28.    Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

**29.    Representations, Warranties and Acknowledgments.**

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    <u>Receipt of Documents</u>.    Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    <u>No Other Obligations.</u>    Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

29.1.8   <u>Restaurant Location.</u>   Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

29.1.9   <u>Compliance with Anti-Terrorism Laws and Other Laws.</u>   Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of "**Specially Designated Nationals**" or "**Blocked Persons**" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx  /); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at   [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.   Business Judgment.

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CP-BF6A-D6F327B669F5

Case 23-44591 Doc 1001 Filed 02/21/24 Entered 02/27/25 10:32:36 Desc
Memorandum of Points and Authorities in Support of Mo   Page 1009 of 1376

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

**[SIGNATURE PAGE FILLOWS]**

Executed as of the day and year first set forth above.

FRANCHISOR:     **DEL TACO LLC**

By: _Jack Tang_____
         Jack Tang
         Vice President & General Counsel


FRANCHISEE:     **NEWPORT VENTURES, LLC**


By: Techno Industries Inc
Its President & CEO

_Ernesto Abarro_____
Ernesto Abarro

By: _____
       Katayoun Aryana


Date: _9/6/2023_____

DocuSign Envelope ID: 87A65DD2-542E-42CD-BE6A-D6E637B669F5

## Exhibit A

### Identification of Franchisee

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |
| 2. | Notice Address of Franchisee: | 1500 E. Bethany Home Road<br>Suite 250<br>Phoenix, AZ 85014<br>E-Mail: ernieabarro@gmail.com<br>Fax Number: (949) 534-7000 |
| 3. | Location of Restaurant: | 11147 Pikes Peak Drive<br>Parker, CO 80138 |
| 4. | Protected Area: | A circular area within a one-mile radius<br>from the front door of the Restaurant, subject to Section<br>1.2. of the Franchise Agreement. |
| 5. | Date of Takeover: | October 4, 2023 |
| 6. | Date of Expiration: | January 28, 2030 |

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E627B668F5

## EXHBIT B

**Deleted As Not Applicable**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E237B669F5

## EXHIBIT C

### Authorization Agreement for Prearranged Payments
### (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank        Mission Viejo, CA

Depository        Branch

26042 Marguerite Pkwy, Mission Viejo, CA 92692

Street Address, City, State, Zip Code

122000247        7429826410

Bank Transit/ABA Number        Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

_Ernesto Albarro_

DocuSigned by:

33C61360BA31471...

Depositor

By: _____

Title: _____

Date: 9/6/2023

Exhibit C

DocuSign Envelope ID: 87A6FDD2-642F-42CD-BE6A-D5E637B669F5

Case 8:24-bk-12788-TA    Doc 1001-1    Filed 02/27/24    Entered 02/27/24 08:32:36    Desc
Memorandum of Points and Authorities    Page 1040 of 1415    Page 1014 of 1376

<u>**EXHIBIT D**</u>

**Statement of Ownership Interests**

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| <u>Individual/Entity Name</u> | <u>Percentage of Ownership/Nature of Interest</u>* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## EXHIBIT E

## Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated ___September 29___, 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Exhibit E-1

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6EDD2-642F-42CD-BE6A-D6E237B669F5

Case 8:24-bk-12789-TA   Doc 1671   Filed 02/27/25   Entered 02/27/25 10:52:36   Desc
Memorandum of Points and Authorities IPage 1042 of 1415   Page 1016 of 1376

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts.  Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S):

(Seal)                                    Signed: _Ernesto Abarro_____
                                                   33C6136DBA314717
                                                   (In his individual capacity)

Ernesto Abarro
120 S. Lovekin Blvd.
Blythe, CA 92225

(Seal)                                    Signed: _____
                                                   B05A39E0022040F
                                                   (In his individual capacity)

Katayoun Aryana
1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-542F-48CD-BF6A-D6E537B668F5

## EXHIBIT F

### Non-Disclosure and Non-Competition Agreement

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this _29_ day of _____September_____, 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

### BACKGROUND:

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.      <u>Confidential Information</u>. Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.      <u>Covenants Not to Compete</u>.

(a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B668F5

   (b) Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

     (i) Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

     (ii) Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

   (c) Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

   (d) As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

  3. <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

  4. <u>Severability.</u> All agreements and covenants contained herein are severable. If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy. In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

  5. <u>Delay.</u> No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

  6. <u>Jurisdiction, Venue and Choice of Law.</u> This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

DocuSign Envelope ID: 87A6FDD2-542F-43CD-BE6A-D5E527B669F5

Case 8:24-bk-12758-TA    Doc 1507    Filed 02/27/25    Entered 02/27/25 16:52:36    Desc
Memorandum of Points and Authorities    Page 1045 of 1415    Page 1019 of 1376

7.     Third-Party Beneficiary.    Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this ___29___ day of ___September___ _____, 2023.


**FRANCHISEE:**                                    **OBLIGEE:**

**NEWPORT VENTURES, LLC**                           **ERNESTO ABARRO**

By: _Ernesto Abarro_____              By: _Ernesto Abarro_____
      33C61360BA31471...                               33C61360BA31471...
      Ernesto Abarro

By: _____           **KATAYOUN ARYANA**
      B05A39E6022040F...
      Katayoun Aryana                             By: _____
                                                       B05A39E6022040F...

Exhibit F-3

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D5F527B669F5

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.    In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

> Del Taco LLC
> 25521 Commercentre Drive
> Lake Forest, California 92630
> Attn:  Jack Tang, Vice President, General Counsel

2.    In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.    The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.    Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.    All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be.  Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant.  Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B699F5

Case 8:24-bk-12381-TA Doc 1671 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Memorandum of Points and Authorities In Support of the Main Document Page 1021 of 1376 Page 1047 of 1415

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.      Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.      Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.      Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.      Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.     The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.     The Lease is contingent upon Franchisor's written approval of the site.

12.     Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                              **Tenant**

By:_____              By:_____

Its:_____              Its:_____

Date:_____              Date:_____

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

**DocuSign**

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5      Status: Completed

Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...

Source Envelope:

Document Pages: 1213      Signatures: 177      Envelope Originator:

Certificate Pages: 5      Initials: 0      Jack Tang

AutoNav: Enabled      25521 Commercentre drive Suite 200

EnvelopeId Stamping: Enabled      Lake Forest, CA 92630

Time Zone: (UTC-08:00) Pacific Time (US & Canada)      mhernandez@deltaco.com

IP Address: 209.234.159.82

## Record Tracking

Status: Original      Holder: Jack Tang      Location: DocuSign

     9/5/2023 5:36:27 PM      mhernandez@deltaco.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication (None) | *Ernesto Abarro*<br>—33C61360BA31471...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 9/6/2023 10:33:13 AM<br>ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Jack Tang*<br>—AD28CBFCF34346A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 9/29/2023 9:27:32 AM<br>ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication (None) | *[signature]*<br>—B05A39E6022040F...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 7/28/2023 8:56:42 AM<br>ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/19/2021 12:45:45 PM
Parties agreed to: Ernesto Abara, Jean Taror Gutierrez

Case 8:24-bk-12138-TA   Doc 1071   Filed 02/27/25   Entered 02/27/25 16:52:36   Desc
Memorandum of Points and Authorities   Page 1051 of 1415   Page 1025 of 1376

# ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit O

DocuSign Envelope ID: 87A6EDD2-542E-42CD-BE6A-D9E627B689F5

Case 23-24885-JKS Doc 156-1 Filed 02/27/24 Entered 02/27/24 08:13:36 Desc
Memorandum of Points and Authorities Page 1055 of 1415   Page 1029 of 1376

STORE 1109



**FRANCHISE AGREEMENT**

# Table of Contents

1.      Grant. ...................................................................................................................... 1
2.      Term and Renewal. ................................................................................................ 3
3.      Fees and Payments. ............................................................................................... 4
4.      Services By Del Taco. ............................................................................................ 6
5.      Obligations of Franchisee; Operational Standards. .......................................... 7
6.      Advertising and Marketing. ................................................................................ 19
7.      Records and Reports. ........................................................................................... 20
8.      Proprietary Marks. ............................................................................................... 22
9.      Manuals. ................................................................................................................ 24
10.     Confidentiality and Covenants Not To Compete. ........................................... 25
11.     Insurance. .............................................................................................................. 27
12.     Transfer of Interest. ............................................................................................. 29
13.     Default and Termination. .................................................................................... 35
14.     Obligations Upon Termination or Expiration. ................................................. 38
15.     Taxes, Permits and Indebtedness ....................................................................... 40
16.     Independent Contractor and Indemnification .................................................. 41
17.     Governing Law and Dispute Resolution. .......................................................... 42
18.     Time is of the Essence .......................................................................................... 46
19.     Approvals, Waivers and Binding Effects. ......................................................... 46
20.     Notices. .................................................................................................................. 46
21.     Force Majeure. ...................................................................................................... 47
22.     Immunity for Certain Limited Disclosures. ...................................................... 47
23.     Entire Agreement and Amendment .................................................................... 47
24.     Severability; Enforcement of Covenants; Construction. ................................ 48
25.     Joint and Several Obligation. ............................................................................. 48
26.     Incorporation of Exhibits. ................................................................................... 48
27.     Counterparts. ........................................................................................................ 48
28.     Survival of Provisions. ........................................................................................ 49
29.     Representations, Warranties and Acknowledgments. ..................................... 49
30.     Business Judgment. .............................................................................................. 50

Exhibits:

A       Identification of Franchisee
B       Site Selection Addendum
C       Authorization Agreement for Prearranged Payments (Direct Debits)
D       Statement of Ownership Interests
E       Guarantee, Indemnification, and Acknowledgment
F       Non-Disclosure and Non-Competition Agreement
G       Addendum to Lease

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B669F5

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the ____ day of _____, 2023 (the "**Effective Date**").

## RECITALS

A.    Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.    The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.    Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.    Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.    Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.    Grant.

1.1    <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

   1.2 <u>Protected Area</u>. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

   1.2.1 Advertise and promote the System within and outside of the Protected Area;

   1.2.2 Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

   1.2.2.1 Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

   1.2.3 Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6E637B669F5

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

## 3.    Fees and Payments.

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

       3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

       3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

       3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

       3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

       3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

DocuSign Envelope ID: 87A6DD2-542E-48CD-BE6A-D6E237B69F5

3.8    <u>Payments on Behalf of Franchisee</u>.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9    <u>Other Payments</u>.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    <u>No Refunds</u>.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.    Services By Del Taco.**

4.1    <u>Development of the Restaurant</u>. Deleted As Not Applicable.

4.2    <u>Initial and Ongoing Assistance</u>. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3    <u>Opening Assistance</u>. Deleted As Not Applicable.

4.4    <u>Manuals</u>.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5    <u>Merchandising and Marketing Advice</u>. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6    <u>Ongoing Assistance</u>.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7    <u>Bulletins and Reports</u>. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8    <u>Computer System</u>. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

6

4.9    <u>Inspection</u>. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10    <u>Delegation of Duties.</u> Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

**5.    Obligations of Franchisee; Operational Standards.**

5.1    <u>System Standards and Development of Restaurant</u>.  Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2    <u>Pre-Opening Obligations</u>.  Deleted:

5.2.1    Deleted As Not Applicable.

5.2.2    Deleted As Not Applicable.

5.2.3    Deleted As Not Applicable.

5.2.4    Deleted As Not Applicable.

5.2.5    Deleted As Not Applicable.

5.2.6    Deleted As Not Applicable.

5.3    <u>Restaurant Opening</u>.  Deleted As Not Applicable:

5.3.1    Deleted As Not Applicable.

5.3.2    Deleted As Not Applicable.

5.3.3    Deleted As Not Applicable.

5.3.4    Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5    Deleted As Not Applicable.

5.4    <u>Training</u>. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

       5.4.1   <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

       5.4.2   <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

       5.4.3   <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

       5.4.4   <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

       5.4.5   <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

     5.4.6   [Reserved]

     5.4.7   <u>Training costs</u>. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

     5.4.8   <u>Additional Training.</u> If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

     5.5   <u>Restaurant Premises</u>. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

     5.6   <u>Personnel</u>. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

     5.7   <u>Health Standards</u>. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

9

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

     5.8    <u>Restaurant Maintenance</u>.  Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

     5.9    <u>Remodeling</u>.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public.  The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

     5.10    <u>Franchisee Advisory Council</u>.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

     5.11    <u>Equipment Upgrades</u>.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

     5.12    <u>Standards and Specifications</u>.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing.  Franchisee agrees:

DocuSign Envelope ID: 87A6EDD2-542E-48CD-BE6A-D6F537B699F5

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   <u>Suppliers</u>.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

11

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

  5.13.1 If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

  5.13.2 Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

  5.13.3 Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

  5.13.4 Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

  5.13.5 Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

all suppliers in accordance with the agreed-upon terms.  In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

       5.13.6   Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

     5.14    Inspections.   Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals.  Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection.  Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection.  Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs.  Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

     5.15    Technology and Computer System.   At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

       5.15.1   Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable.  In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications.  To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

       5.15.2   Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following:  (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   <u>Customer Data</u>.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   <u>Privacy Laws</u>.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

14

5.18    <u>Website</u>.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    <u>POS or Cash Register Systems</u>.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20    <u>Gift Cards</u>.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    <u>E-Mail, Internet and Other Media; E-Mail and Fax Communications</u>.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

5.21.1    Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

5.21.2    Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

5.21.3    Franchisee agrees that: (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

5.21.4    The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

5.22    Credit Cards and Other Methods of Payment.    At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

5.23    Uniforms.    To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

5.24    Incentive Programs.    Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

5.25    Prices.    With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.26   <u>Compliance with Laws and Good Business Practices</u>.  Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.  All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.  Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27   <u>Franchisee Structure; Operating Principal and Owners</u>.

5.27.1  Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2  If Franchisee is a partnership or limited liability partnership it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3  If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4  Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

5.27.4.1   Operating Principal.  An Operating Principal shall participate personally in the direct operation of the Restaurant.  If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant.  Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2   Owners: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee.  All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3   General Manager: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager").  The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4   General Manager: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28   Personal Guarantee.  Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29   System Modifications.  Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants.  Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials.  Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense.  Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30    No Third-Party Management. The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco. Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

**6.    Advertising and Marketing.**

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1    Marketing Fee Expenditure. Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above. Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2    Local Advertising and Promotion. All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws. Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3     Costs of Local Advertising and Promotion.  As used in this Agreement, the term "**Local Advertising and Promotio**n" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1     Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2     Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3     The value of discounts provided to customers;

6.3.4     The cost of food items.

6.4     Approvals.  For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee).  If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them.  Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5     Promotional Materials. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials.  Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.     Records and Reports.

7.1     Records. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

20

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

      7.2     Periodic Reports. Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

      7.3     Reporting Requirements. In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

      7.4     Audit. Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

      7.5     Data. All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

7.6  Accounting and Bookkeeping Services.  Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.  Proprietary Marks.

8.1  Ownership of the Proprietary Marks. Del Taco represents with respect to the Proprietary Marks that:

8.1.1  Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

8.1.2  Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

8.2  Use of the Proprietary Marks. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

8.2.1  Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

8.2.2  Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

8.2.3  Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

8.2.4  During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

DocuSign Envelope ID: 87A65DD2-542E-43CD-BE6A-D6E327B669F5

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

9.4    Revisions to the Manuals. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

**10.    Confidentiality and Covenants Not To Compete.**

10.1    Confidential Information. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2    Irreparable Injury. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3    Information Exchange. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4    Full Time and Best Efforts. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5    In-Term Covenants. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

        10.5.1  Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

        10.5.2  Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

     10.6   Post-Term Covenants.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

     10.7   Publicly-Held Corporations.   Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

     10.8   Individual Covenants.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

     10.9   Severability.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

     10.10  Scope of Covenants. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11 <u>Enforcement of Claims</u>. The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10. Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12 <u>Irreparable Injury</u>. Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13 <u>Remedies Not Exclusive</u>. The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

## 11. Insurance.

11.1 Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1 <u>Insurance Requirements</u>. Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located. Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1 <u>Liability</u>. A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2 <u>Fire</u>. Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment. The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E637B669F5

    11.1.1.3 <u>Business Interruption</u>.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

    11.1.1.4 <u>Business Automobile Liability Insurance</u>.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

    11.1.1.5 <u>Statutory Workers' Compensation Insurance</u>.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

    11.1.1.6 <u>Commercial Umbrella Liability Insurance</u>.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

    11.1.1.7 <u>Property Insurance</u>. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

    11.1.1.8 <u>Products Liability Insurance</u>. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

    11.1.1.9 <u>Cyber Liability Insurance</u>. Cyber liability insurance in an amount that Del Taco designates.

    11.1.1.10 <u>Other Insurance</u>. Any other insurance coverage that is required by federal, state, or municipal law.

  11.2 <u>Referenced in Manuals</u>.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

  11.3 <u>Policy Cancellation</u>.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

  11.4 <u>Construction and Remodeling Insurance</u>.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

11.5   <u>No Waiver of Obligations</u>.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6   <u>Del Taco to be Additional Named Insured</u>.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7   <u>Evidence of Insurance</u>.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8   <u>Proof of Insurance</u>.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9   <u>Policy Limit Changes</u>.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10   <u>Del Taco's Insurance</u>.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

## 12.    Transfer of Interest.

12.1   <u>Del Taco Transfers</u>.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent.  Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment.  Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring.  With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party.  Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

     12.2   <u>Owners</u>.  If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto.  Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

     12.3   <u>Franchisee Transfers</u>.  Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character.  Accordingly:

     12.3.1   Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber:  (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

     12.3.2   If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

     12.3.3   If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

     12.3.4   Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

     12.3.5   Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

     12.4   <u>Conditions for Approval</u>.  Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6F537B668F5

DocuSign Envelope ID: 87A65DD2-642F-48CB-BE6A-D6E237B66BF5

Case 23-24-bk-12278841 FA Doc 1067-15 Filed 02/21/24 Entered 02/27/24 08:13:436 Desc
Memorandum of Point Main Document IP Supp 108 of 145   Page 1062 of 1376

12.4.8   The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9   At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10  If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11  The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12  The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5   <u>Transfers to Entities for the Convenience of Ownership</u>.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1   Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2   Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6   <u>Right of First Refusal</u>.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7   <u>Transfer Upon Death.</u>  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

DocuSign Envelope ID: 87A61DD2-542F-48CD-BE6A-D6E637B669F5

DocuSign Envelope ID: 87A65DD2-542F-43CD-BF6A-D6E237B669F5

12.8 <u>Transfer Upon Permanent Disability</u>. Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely. If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal. Del Taco shall pay the cost of the required examination.

12.9 <u>Notification Upon Death or Permanent Disability</u>. Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing. Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10 <u>No Waiver of Claims</u>. Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11 <u>Insolvency</u>. If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12 <u>Securities Offerings</u>. All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency. Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use. No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement. Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence. Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification. For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering. Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences. Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

## 13.  Default and Termination.

13.1   <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2   <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1   If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2   If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3   If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4   If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5   If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

13.2.6    If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7    If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8    If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9    If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3    Termination With Opportunity to Cure.  Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.  If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4    Extended Notice of Termination.  If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5    Assignment Upon Bankruptcy.  If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6    Other Remedies.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1   Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2   Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

13.6.3   Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4   Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.    Obligations Upon Termination or Expiration.

14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1   Cease Operations.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2   Cease Use of Proprietary Marks.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3   Cancellation of Assumed Names.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4   Pay Monies Owed; Liquidated Damages. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%. The payments called for in this Section 14.1.4 are not a penalty. A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined. Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event. Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5   Return of Manuals and Other Materials. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6   No Confusion. Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7   Assign Leases; Modification of Premises. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises. Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises. If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose. In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco. If Franchisee fails or refuses to comply with the

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

14.1.8   Option to Purchase Equipment and Furnishings.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

14.1.9   Damages and Costs. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

14.1.10 Other Rights of Franchisee.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.    Taxes, Permits and Indebtedness

15.1   Taxes.  Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

15.2   Tax Disputes.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

15.3   Compliance With Laws.   Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.   Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.   To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4   Notification of Claims.   Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

16.   **Independent Contractor and Indemnification.**

16.1   It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1   Identification as Independent Contractor.   At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2   No Agency.   Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3   Indemnification.   Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

**17.** **Governing Law and Dispute Resolution.**

17.1 <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions. However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement. Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2 <u>Venue.</u> Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California. The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above. Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision. Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3 <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1 <u>Demand to Arbitrate</u>. The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute. The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought. A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2 <u>Appointment of Arbitrators</u>. Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration. If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association. Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect. If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3 <u>Conduct of Arbitration</u>. Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

17.3.3.1 <u>Power of Chairman</u>. The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2 <u>Response to Demand</u>. Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration. The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure. If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3 <u>Amendment of Claim</u>. If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim. The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4 <u>Time for Arbitration Hearing</u>. The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5 <u>List of Witnesses and Documents</u>. Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand. The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party. The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time. The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing. The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6 <u>Record</u>. The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party. The cost of the stenographic record should be borne by the parties equally.

17.3.3.7 <u>Attendance at Hearings</u>. Any person who is a party to the arbitration may attend the hearings. The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness. The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8 <u>Adjournments</u>. Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

17.3.3.9    <u>Production of Witnesses and Records</u>.  Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence.  The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10    <u>Absence of a Party</u>.  The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend.  The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11    <u>Authority to Administer Oaths</u>.  The chairman may administer oaths.

17.3.3.12    <u>Evidence</u>.  The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute.  The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence.  The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13    <u>Evidence by Affidavit and Filing of Documents</u>.  The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission.  Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators.  All parties shall have the opportunity to examine those documents.

17.3.3.14    <u>Discovery</u>.  The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose.  Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt.  In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person.  The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15    <u>Reopening of Hearings</u>.  The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16    <u>Extensions</u>.  The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

17.3.3.17 <u>Time for Award</u>. The arbitrators shall render the award no later than 20 days after the completion of the hearing.

17.3.3.18 <u>Confidentiality</u>. The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

17.3.4 <u>Application of Federal Rules of Civil Procedure</u>. Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

17.3.5 <u>Finality; Enforcement; Venue</u>. The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction. All arbitrations shall take place in Orange County, California.

17.3.6 <u>Arbitration Costs, Attorneys' Fees and Costs</u>. Each party shall bear their share of the costs of the arbitration proceeding. The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.7 <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

17.4 <u>Injunctive Relief</u>. Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5 <u>Limitation of Actions</u>. **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6 <u>Waiver of Damages</u>. **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

**LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.**

**18.      Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.      Approvals, Waivers and Binding Effects.**

19.1      <u>Approvals</u>.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2      <u>No Warranties</u>. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3      <u>Waivers</u>. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4      <u>Binding Effect; No Other Rights</u>. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.      Notices.**

20.1      Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

46

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6DDD2-5626-48CD-BE6A-D6E327B669F5

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party. Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

Del Taco:                    25521 Commercentre Drive, Suite 200
                             Lake Forest, California 92630
                             Fax Number: (949) 616-5002

Franchisee:                  Franchisee's notice address set forth on Exhibit A to this
                             Agreement

**21.     Force Majeure.**

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party. Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof; compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event. The notice shall describe the nature of the event and an estimate as to its duration.

**22.     Immunity for Certain Limited Disclosures.**

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

**23.     Entire Agreement and Amendment.**

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement. There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

DocuSign Envelope ID: 87A6DD2-542E-43CD-BF6A-D6E637B669F5

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

24. **Severability; Enforcement of Covenants; Construction.**

24.1    <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2    <u>Enforceability of Covenants</u>.  Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3    <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

25. **Joint and Several Obligation.**

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

26. **Incorporation of Exhibits.**

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

27. **Counterparts.**

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-48CP-BE6A-D6E637B669F5

**28.    Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

**29.    Representations, Warranties and Acknowledgments.**

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    <u>Receipt of Documents</u>.  Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    <u>No Other Obligations.</u>  Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

         29.1.8 <u>Restaurant Location.</u> Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

         29.1.9 <u>Compliance with Anti-Terrorism Laws and Other Laws.</u> Franchisee and its owners represent and warrant to Del Taco that: (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of "**Specially Designated Nationals**" or "**Blocked Persons**" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx /); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.    **Business Judgment.**

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement. Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests. In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action. Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review. If applicable law implies a covenant of good faith and

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D5F327B668F5

Case 83244-bk-12788TFA  Doc 1567  Filed 02/27/24  Entered 02/27/24 08:32:36  Desc
Memorandum of Points and Authorities in Support of the  Page 1081 of 1376

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

**[SIGNATURE PAGE FILLOWS]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Executed as of the day and year first set forth above.

FRANCHISOR:                           **DEL TACO LLC**

                                      By: _Jack Tang_____
                                              Jack Tang
                                              Vice President & General Counsel


FRANCHISEE:                           **NEWPORT VENTURES, LLC**


                                      By: Techno Industries Inc
                                      Its President & CEO

                                      _Ernesto Abarro_____
                                      Ernesto Abarro

                                      By: _____
                                              Katayoun Aryana

                                      Date: _9/6/2023_____

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E327B669F5

### Exhibit A

### Identification of Franchisee

1.  Name of Franchisee:                Newport Ventures, LLC

2.  Notice Address of Franchisee:      1500 E. Bethany Home Road
                                       Suite 250
                                       Phoenix, AZ 85014
                                       E-Mail: ernieabarro@gmail.com
                                       Fax Number: (949) 534-7000

3.  Location of Restaurant:            43 Union Boulevard
                                       Lakewood, CO 80228

4.  Protected Area:                    A circular area within a one-mile radius
                                       from the front door of the Restaurant, subject to Section
                                       1.2. of the Franchise Agreement.

5.  Date of Takeover:                  October 4, 2023

6.  Date of Expiration:                April 21, 2031

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

**EXHBIT B**

**Deleted As Not Applicable**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F627B668F5

## EXHIBIT C

### Authorization Agreement for Prearranged Payments
### (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank                                   Mission Viejo, CA

---

Depository                                          Branch

26042 Marguerite Pkwy, Mission Viejo, CA 92692

---

Street Address, City, State, Zip Code

122000247                                           7429826410

---

Bank Transit/ABA Number                            Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*
DocuSigned by:
33C6136DBA31471...

Depositor

By: _____

Title: _____

Date: 9/6/2023

Exhibit C

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E637B669F5

Case 8:24-bk-12788-TA    Doc 160-1    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities In Support of the    Page 1086 of 1376

## EXHIBIT D

### Statement of Ownership Interests

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| Individual/Entity Name | Percentage of Ownership/Nature of Interest* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Exhibit D

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E537B668F5

Case 8:24-bk-12627-TA   Doc 1671   Filed 02/27/25   Entered 02/27/25 16:31:36   Desc
Memorandum of Points and Authorities In Supp   Page 1087 of 1376

<strong><u>EXHIBIT E</u></strong>

<strong>Guarantee, Indemnification, and Acknowledgment</strong>

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated _____September 29_____, 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to:  (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee.  Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms.  Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding.  If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Exhibit E-1

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S)

(Seal)

Signed: _Ernesto Abarro_
33C61360BA31471...
(In his individual capacity)

Ernesto Abarro
120 S. Lovekin Blvd.
Blythe, CA 92225

(Seal)

Signed: _____
B06A30E6022040F...
(In his individual capacity)

Katayoun Aryana
1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E237B669F5

## EXHIBIT F

### Non-Disclosure and Non-Competition Agreement

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this 29 day of September 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

BACKGROUND:

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.      <u>Confidential Information</u>. Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.      <u>Covenants Not to Compete</u>.

(a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

(b)    Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)    Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)    Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)    Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)    As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.    <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.    <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.    <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.    <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6E627B668F5

Case 8:24-bk-12771-TA    Doc 156-1    Filed 02/27/24    Entered 02/27/24 08:52:36    Desc
Memorandum of Points and Authorities In Support The et al5    Page 1091 of 1376

     7.    <u>Third-Party Beneficiary.</u>  Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

     **IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this <u> 29 </u> day of <u> September </u> <u>       </u>, 2023.

**FRANCHISEE:**

**NEWPORT VENTURES, LLC**

By: _Ernesto Abarro_
     33C61360BA31471...
    Ernesto Abarro

By: _[signature]_
     B05A39E6022040F...
    Katayoun Aryana

**OBLIGEE:**

**ERNESTO ABARRO**

By: _Ernesto Abarro_
     33C61360BA31471...

**KATAYOUN ARYANA**

By: _[signature]_
     B05A39E6022040F...

Exhibit F-3

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1. In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

   > Del Taco LLC
   > 25521 Commercentre Drive
   > Lake Forest, California 92630
   > Attn: Jack Tang, Vice President, General Counsel

2. In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3. The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4. Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5. All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be. Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant. Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.     Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.     Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.     Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.     Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant: No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc. Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.     The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.     The Lease is contingent upon Franchisor's written approval of the site.

12.     Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Exhibit F-5

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                    **Tenant**

By:_____            By:_____

Its:_____            Its:_____

Date:_____            Date:_____

Exhibit F-6

DocuSign

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5      Status: Completed

Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...

Source Envelope:

Document Pages: 1213      Signatures: 177      Envelope Originator:

Certificate Pages: 5      Initials: 0      Jack Tang

AutoNav: Enabled      25521 Commercentre drive Suite 200

EnvelopeId Stamping: Enabled      Lake Forest, CA 92630

Time Zone: (UTC-08:00) Pacific Time (US & Canada)      mhernandez@deltaco.com

IP Address: 209.234.159.82

## Record Tracking

Status: Original      Holder: Jack Tang      Location: DocuSign

9/5/2023 5:36:27 PM      mhernandez@deltaco.com

| Signer Events | Signature | Timestamp |
| --- | --- | --- |
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication<br>(None) | Ernesto Abarro<br>-33C61360BA31471...<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 9/6/2023 10:33:13 AM<br>    ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication<br>(None) | Jack Tang<br>-AD28CBFCF34346A...<br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 9/29/2023 9:27:32 AM<br>    ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication<br>(None) | B05A39E6022040F...<br>Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 7/28/2023 8:56:42 AM<br>    ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
| --- | --- | --- |

| Editor Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Agent Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Intermediary Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

| Electronic Record and Signature Disclosure |
|---|

# ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

## Required hardware and software

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

## Acknowledging your access and consent to receive and sign documents electronically

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit P

DocuSign Envelope ID: 87A6FDD2-5426-42CD-BE6A-D9E327B689F5

STORE 1117



**FRANCHISE AGREEMENT**

# Table of Contents

Page

1. Grant. ........................................................................................................................ 1
2. Term and Renewal. ................................................................................................... 3
3. Fees and Payments. ................................................................................................... 4
4. Services By Del Taco. ............................................................................................... 6
5. Obligations of Franchisee; Operational Standards. ................................................. 7
6. Advertising and Marketing. ..................................................................................... 19
7. Records and Reports. ............................................................................................... 20
8. Proprietary Marks. ................................................................................................... 22
9. Manuals. ................................................................................................................... 24
10. Confidentiality and Covenants Not To Compete. .................................................... 25
11. Insurance. ................................................................................................................. 27
12. Transfer of Interest. ................................................................................................. 29
13. Default and Termination. ......................................................................................... 35
14. Obligations Upon Termination or Expiration. ......................................................... 38
15. Taxes, Permits and Indebtedness ............................................................................. 40
16. Independent Contractor and Indemnification ........................................................... 41
17. Governing Law and Dispute Resolution. ................................................................. 42
18. Time is of the Essence .............................................................................................. 46
19. Approvals, Waivers and Binding Effects. ................................................................ 46
20. Notices. ..................................................................................................................... 46
21. Force Majeure. .......................................................................................................... 47
22. Immunity for Certain Limited Disclosures. ............................................................. 47
23. Entire Agreement and Amendment. ......................................................................... 47
24. Severability; Enforcement of Covenants; Construction. .......................................... 48
25. Joint and Several Obligation. ................................................................................... 48
26. Incorporation of Exhibits. ........................................................................................ 48
27. Counterparts. ............................................................................................................ 48
28. Survival of Provisions. ............................................................................................. 49
29. Representations, Warranties and Acknowledgments. ............................................... 49
30. Business Judgment. .................................................................................................. 50

Exhibits:

A    Identification of Franchisee
B    Site Selection Addendum
C    Authorization Agreement for Prearranged Payments (Direct Debits)
D    Statement of Ownership Interests
E    Guarantee, Indemnification, and Acknowledgment
F    Non-Disclosure and Non-Competition Agreement
G    Addendum to Lease

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E537B669F5

Case 23-11131-TMH   Doc 1367   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Memorandum of Points and Authorities   Page 1103 of 1376

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the ___29___ day of ___September___, 2023 (the "**Effective Date**").

<u>RECITALS</u>

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.      Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.      Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.      Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

**1.      Grant.**

1.1      <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

      1.2    <u>Protected Area</u>. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

      1.2.1    Advertise and promote the System within and outside of the Protected Area;

      1.2.2    Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

      1.2.2.1    Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

      1.2.3    Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

DocuSign Envelope ID: 87A65DD2-542F-42CB-BE6A-D6F527B669F5

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2, and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

## 3.    Fees and Payments.

3.1    <u>Franchise Fee</u>.  Deleted As Not Applicable.

3.2    <u>Promotional Fee</u>.  Deleted As Not Applicable.

3.3    <u>Royalty Fees</u>.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

3.4    Marketing Fee.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5    Continuing Payments, EFT, and Reporting Obligations.  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6    No Subordination.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7    Overdue Payments and Reports; Interest.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

5

3.8     Payments on Behalf of Franchisee.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9     Other Payments.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    No Refunds.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.      Services By Del Taco.**

4.1     Development of the Restaurant. Deleted As Not Applicable.

4.2     Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     Opening Assistance. Deleted As Not Applicable.

4.4     Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     Bulletins and Reports. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

4.9　　Inspection. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10　　Delegation of Duties. Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

**5.　　Obligations of Franchisee; Operational Standards.**

5.1　　System Standards and Development of Restaurant.　　Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2　　Pre-Opening Obligations.　　Deleted:

5.2.1　　Deleted As Not Applicable.

5.2.2　　Deleted As Not Applicable.

5.2.3　　Deleted As Not Applicable.

5.2.4　　Deleted As Not Applicable.

5.2.5　　Deleted As Not Applicable.

5.2.6　　Deleted As Not Applicable.

5.3　　Restaurant Opening.　　Deleted As Not Applicable:

5.3.1　　Deleted As Not Applicable.

5.3.2　　Deleted As Not Applicable.

5.3.3　　Deleted As Not Applicable.

5.3.4　　Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5　　Deleted As Not Applicable.

5.4　　Training. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

       5.4.1   <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

       5.4.2   <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

       5.4.3   <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

       5.4.4   <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

       5.4.5   <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

5.4.6 [Reserved]

5.4.7 Training costs. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

5.4.8 Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

5.5 Restaurant Premises. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

5.6 Personnel. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

5.7 Health Standards. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

    5.8    <u>Restaurant Maintenance</u>.  Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

    5.9    <u>Remodeling</u>.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public.  The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

    5.10    <u>Franchisee Advisory Council</u>.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

    5.11    <u>Equipment Upgrades</u>.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

    5.12    <u>Standards and Specifications</u>.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.   In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   <u>Suppliers</u>.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

thereafter been disapproved.  For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors.  Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

      5.13.1   If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval.  Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco.  Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing.  A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier.  Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers.  Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

      5.13.2   Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

      5.13.3   Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants.  In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants.  Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

      5.13.4   Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services.  These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items.  Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

      5.13.5   Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers.  Franchisee shall promptly pay

all suppliers in accordance with the agreed-upon terms.  In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

      5.13.6  Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

    5.14   <u>Inspections</u>.  Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals.  Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection.  Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection.  Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs.  Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

    5.15   <u>Technology and Computer System</u>.  At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

      5.15.1  Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable.  In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications.  To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

      5.15.2  Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following:  (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   Customer Data.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

5.17   Privacy Laws.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

5.18    <u>Website</u>.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    <u>POS or Cash Register Systems</u>.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20    <u>Gift Cards</u>.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    <u>E-Mail, Internet and Other Media; E-Mail and Fax Communications</u>.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

5.21.2   Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

5.21.3   Franchisee agrees that:  (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

5.22   <u>Credit Cards and Other Methods of Payment</u>.   At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

5.23   <u>Uniforms</u>.   To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

5.24   <u>Incentive Programs</u>.   Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

5.25   <u>Prices</u>.   With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

5.26    Compliance with Laws and Good Business Practices.    Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.    All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.    Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    Franchisee Structure; Operating Principal and Owners.

5.27.1    Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2    If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3    If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4    Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

5.27.4.1   <u>Operating Principal</u>. An Operating Principal shall participate personally in the direct operation of the Restaurant. If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant. Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2   <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee. All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3   <u>General Manager</u>: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager"). The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4   <u>General Manager</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28   <u>Personal Guarantee</u>. Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29   <u>System Modifications</u>. Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants. Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials. Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense. Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

18

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30   No Third-Party Management.  The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco.  Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

**6.      Advertising and Marketing.**

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1   Marketing Fee Expenditure.  Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above.  Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof.  Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2   Local Advertising and Promotion.  All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws.  Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3     Costs of Local Advertising and Promotion.  As used in this Agreement, the term "**Local Advertising and Promotio**n" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1     Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2     Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3     The value of discounts provided to customers;

6.3.4     The cost of food items.

6.4     Approvals.  For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee).  If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them.  Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5     Promotional Materials. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials.  Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.     Records and Reports.

7.1     Records. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

   7.2  <u>Periodic Reports</u>. Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

   7.3  <u>Reporting Requirements</u>. In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

   7.4  <u>Audit</u>. Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee. Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees. Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee. If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs). The foregoing remedies shall be in addition to any other remedies Del Taco may have.

   7.5  <u>Data</u>. All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee. In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

7.6 <u>Accounting and Bookkeeping Services</u>. Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business. Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual. In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years. Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8. Proprietary Marks.

8.1 <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

8.1.1 Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

8.1.2 Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

8.2 <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

8.2.1 Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

8.2.2 Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

8.2.3 Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

8.2.4 During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    Franchisee Acknowledgements. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

9.4 _Revisions to the Manuals_. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

## 10. Confidentiality and Covenants Not To Compete.

10.1 _Confidential Information_. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2 _Irreparable Injury_. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3 _Information Exchange_. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4 _Full Time and Best Efforts_. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5 _In-Term Covenants_. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

          10.5.1   Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

          10.5.2   Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

      10.6   <u>Post-Term Covenants</u>.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of:  (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

      10.7   <u>Publicly-Held Corporations</u>.   Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

      10.8   <u>Individual Covenants</u>.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

      10.9   <u>Severability</u>.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

      10.10   <u>Scope of Covenants</u>. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11    Enforcement of Claims.  The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12    Irreparable Injury.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13    Remedies Not Exclusive.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

## 11.    Insurance.

11.1    Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1    Insurance Requirements.  Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1    Liability.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2    Fire.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

        11.1.1.3    <u>Business Interruption</u>.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

        11.1.1.4    <u>Business Automobile Liability Insurance</u>.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

        11.1.1.5    <u>Statutory Workers' Compensation Insurance</u>.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

        11.1.1.6    <u>Commercial Umbrella Liability Insurance</u>.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

        11.1.1.7    <u>Property Insurance</u>. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

        11.1.1.8    <u>Products Liability Insurance</u>. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

        11.1.1.9    <u>Cyber Liability Insurance</u>. Cyber liability insurance in an amount that Del Taco designates.

        11.1.1.10    <u>Other Insurance</u>. Any other insurance coverage that is required by federal, state, or municipal law.

    11.2    <u>Referenced in Manuals</u>.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

    11.3    <u>Policy Cancellation</u>.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

    11.4    <u>Construction and Remodeling Insurance</u>.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

11.5   <u>No Waiver of Obligations</u>.  Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6   <u>Del Taco to be Additional Named Insured</u>.  All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees.  Additional insured status shall include coverage for ongoing and completed operations.  The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage.  Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds.  Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7   <u>Evidence of Insurance</u>.  At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder.  All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates.  Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage.  In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8   <u>Proof of Insurance</u>.  In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9   <u>Policy Limit Changes</u>.  Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10   <u>Del Taco's Insurance</u>.  Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.**   **Transfer of Interest.**

12.1   <u>Del Taco Transfers</u>.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent.  Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment.  Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring.  With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party.  Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

12.2    <u>Owners</u>.  If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto.  Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

12.3    <u>Franchisee Transfers</u>.  Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character.  Accordingly:

12.3.1    Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber:  (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

12.3.2    If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

12.3.3    If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

12.3.4    Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

12.3.5    Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

12.4    <u>Conditions for Approval</u>.  Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1    Franchisee shall comply with Del Taco's then-current transfer policies. Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2    The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3    The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4    Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5    If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6    If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7    All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

12.4.8   The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9   At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5     Transfers to Entities for the Convenience of Ownership.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1   Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2   Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6   Right of First Refusal.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require. Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party. If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer. Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash. If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination. If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee. The cost of any such appraisal shall be shared equally by Del Taco and Franchisee. If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7   Transfer Upon Death.   Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco. If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

12.8    Transfer Upon Permanent Disability.    Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely. If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal. Del Taco shall pay the cost of the required examination.

12.9    Notification Upon Death or Permanent Disability.    Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing. Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10    No Waiver of Claims.    Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11    Insolvency.    If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12    Securities Offerings.    All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency. Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use. No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement. Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence. Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification. For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering. Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences. Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

## 13. Default and Termination.

13.1 <u>Automatic Termination</u>. Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2 <u>Termination Upon Notice Without Opportunity to Cure</u>. Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1 If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2 If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3 If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4 If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5 If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

13.2.6   If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7   If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8   If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9   If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3    Termination With Opportunity to Cure.  Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.  If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4    Extended Notice of Termination. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5    Assignment Upon Bankruptcy.  If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth:  (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6   <u>Other Remedies</u>.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1   Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2   Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

13.6.3   Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4   Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.   **Obligations Upon Termination or Expiration.**

14.1   Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1   <u>Cease Operations</u>.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2   <u>Cease Use of Proprietary Marks</u>.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3   <u>Cancellation of Assumed Names</u>.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4   Pay Monies Owed; Liquidated Damages. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%.   The payments called for in this Section 14.1.4 are not a penalty.   A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined.   Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event.   Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5   Return of Manuals and Other Materials. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6   No Confusion.   Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7   Assign Leases; Modification of Premises. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises.   Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises.   If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose.   In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco.   If Franchisee fails or refuses to comply with the

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

      14.1.8  <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

      14.1.9  <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

      14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.     Taxes, Permits and Indebtedness

    15.1  <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

    15.2  <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

15.3    Compliance With Laws.  Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.  Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.  To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4    Notification of Claims.  Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16.    Independent Contractor and Indemnification.

16.1    It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1    Identification as Independent Contractor.  At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2    No Agency.  Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3    Indemnification. Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

**17.      Governing Law and Dispute Resolution.**

17.1      <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2      <u>Venue.</u>  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3      <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1      <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2      <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3      <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

17.3.3.1    <u>Power of Chairman</u>.  The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2    <u>Response to Demand</u>.  Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration.  The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure.  If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3    <u>Amendment of Claim</u>.  If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim.  The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4    <u>Time for Arbitration Hearing</u>.  The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5    <u>List of Witnesses and Documents</u>.  Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand. The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party.  The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time.  The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing.  The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6    <u>Record</u>.  The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party.  The cost of the stenographic record should be borne by the parties equally.

17.3.3.7    <u>Attendance at Hearings</u>.  Any person who is a party to the arbitration may attend the hearings.  The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness.  The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8    <u>Adjournments</u>.  Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

       17.3.3.9   <u>Production of Witnesses and Records</u>. Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence. The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

       17.3.3.10   <u>Absence of a Party</u>. The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend. The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

       17.3.3.11   <u>Authority to Administer Oaths</u>. The chairman may administer oaths.

       17.3.3.12   <u>Evidence</u>. The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute. The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence. The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

       17.3.3.13   <u>Evidence by Affidavit and Filing of Documents</u>. The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission. Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators. All parties shall have the opportunity to examine those documents.

       17.3.3.14   <u>Discovery</u>. The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose. Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt. In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person. The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

       17.3.3.15   <u>Reopening of Hearings</u>. The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

       17.3.3.16   <u>Extensions</u>. The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

44

17.3.3.17   <u>Time for Award</u>. The arbitrators shall render the award no later than 20 days after the completion of the hearing.

17.3.3.18   <u>Confidentiality</u>. The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

17.3.4   <u>Application of Federal Rules of Civil Procedure</u>. Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

17.3.5   <u>Finality; Enforcement; Venue</u>. The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction. All arbitrations shall take place in Orange County, California.

17.3.6   <u>Arbitration Costs, Attorneys' Fees and Costs</u>. Each party shall bear their share of the costs of the arbitration proceeding. The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.7   <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

17.4   <u>Injunctive Relief</u>. Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5   <u>Limitation of Actions</u>**. EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6   <u>Waiver of Damages</u>. **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

**18.    Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.    Approvals, Waivers and Binding Effects.**

19.1    <u>Approvals</u>.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2    <u>No Warranties</u>. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3    <u>Waivers</u>. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4    <u>Binding Effect; No Other Rights</u>. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.    Notices.**

20.1    Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E637B669F5

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party. Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

| Del Taco: | 25521 Commercentre Drive, Suite 200 |
| | Lake Forest, California 92630 |
| | Fax Number: (949) 616-5002 |
| | |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

**21.    Force Majeure.**

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party. Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof; compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event. The notice shall describe the nature of the event and an estimate as to its duration.

**22.    Immunity for Certain Limited Disclosures.**

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

**23.    Entire Agreement and Amendment.**

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement. There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

47

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

## 24.     Severability; Enforcement of Covenants; Construction.

24.1     <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2     <u>Enforceability of Covenants</u>.  Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3     <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

## 25.     Joint and Several Obligation.

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

## 26.     Incorporation of Exhibits.

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

## 27.     Counterparts.

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## 28. Survival of Provisions.

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

## 29. Representations, Warranties and Acknowledgments.

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    <u>Independent Investigation</u>. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    <u>Receipt of Documents</u>.  Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    <u>No Other Representations</u>. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    <u>No Other Obligations.</u>  Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

        29.1.8 <u>Restaurant Location.</u> Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

        29.1.9 <u>Compliance with Anti-Terrorism Laws and Other Laws.</u> Franchisee and its owners represent and warrant to Del Taco that: (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of "**Specially Designated Nationals**" or "**Blocked Persons**" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx /); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30. **Business Judgment.**

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement. Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests. In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action. Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review. If applicable law implies a covenant of good faith and

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D5F327B668F5

Case 23-44504-dru11 Doc 156-1 Filed 02/27/24 Entered 02/27/24 08:13:36 Desc
Memorandum of Points and Authorities In Support Thereof Page 1179 of 1415 Page 1153 of 1376

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

[**SIGNATURE PAGE FILLOWS**]

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D5E327B669F5

Case 23-24408-CMB Doc 1071 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities in Support of the Page 1154 of 1376

Executed as of the day and year first set forth above.

FRANCHISOR:                              DEL TACO LLC

                                         By _____
                                            *Jack Tang*
                                            Jack Tang
                                            Vice President & General Counsel


FRANCHISEE:                              NEWPORT VENTURES, LLC


                                         By: Techno Industries Inc
                                         Its President & CEO

                                         _____
                                         *Ernesto Abarro*
                                         Ernesto Abarro

                                         By: _____
                                            *Katayoun Aryana*
                                            Katayoun Aryana

                                         Date: ___9/6/2023_____

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B668F5

**Exhibit A**

### Identification of Franchisee

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |
| 2. | Notice Address of Franchisee: | 1500 E. Bethany Home Road<br>Suite 250<br>Phoenix, AZ 85014<br>E-Mail: ernieabarro@gmail.com<br>Fax Number: (949) 534-7000 |
| 3. | Location of Restaurant: | 8020 N. Academy Blvd.<br>Colorado Springs, CO 80920 |
| 4. | Protected Area: | A circular area within a one-mile radius<br>from the front door of the Restaurant, subject to Section<br>1.2. of the Franchise Agreement. |
| 5. | Date of Takeover: | October 4, 2023 |
| 6. | Date of Expiration: | August 24, 2031 |

DocuSign Envelope ID: 87A6FDD2-5426-42CD-BE6A-D6E827B669F5

Case 8:24-bk-12738-TA    Doc 1607    Filed 02/27/25    Entered 02/27/25 10:32:36    Desc
Memorandum of Points and Authorities    Page 1082 of 1405    Page 1156 of 1376

**<u>EXHBIT B</u>**

**Deleted As Not Applicable**

## EXHIBIT C

### Authorization Agreement for Prearranged Payments
### (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank

Mission Viejo, CA

———————————————————  ———————————————————
Depository                                          Branch
26042 Marguerite Pkwy, Mission Viejo, CA 92692

———————————————————
Street Address, City, State, Zip Code

7429826410

———————————————————
122000247

———————————————————  ———————————————————
Bank Transit/ABA Number                  Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*
———————————————————
Depositor

By: ———————————————————

Title: ———————————————————

Date: 9/6/2023
———————————————————

Exhibit C

DocuSign Envelope ID: 87A6FDD2-642F-42CD-BE6A-D5F527B669F5

Case 8:24-bk-12788-TA  Doc 1567-1  Filed 02/27/24  Entered 02/27/24 08:52:36  Desc
Memorandum of Points and Authorities  Page 1084 of 1405  Page 1158 of 1376

## EXHIBIT D

### Statement of Ownership Interests

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| Individual/Entity Name | Percentage of Ownership/Nature of Interest* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Exhibit D

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E537B669F5

# EXHIBIT E

## Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated ___September 29___ , 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S):

(Seal)     Signed: _Ernesto Abarro_____
33C613C0BA3147...
(In his individual capacity)

Ernesto Abarro
120 S. Lovekin Blvd.
Blythe, CA 92225

(Seal)     Signed: _____
B05A39E0022040F...
(In his individual capacity)

Katayoun Aryana
1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 87A65DD2-542E-48CB-BF6A-B6E237B669F5

## EXHIBIT F

### Non-Disclosure and Non-Competition Agreement

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this ___29___day of ___September___, 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

BACKGROUND:

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.      Confidential Information.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.      Covenants Not to Compete.

(a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

DocuSign Envelope ID: 87A66DD2-5425-436D-BE6A-D6E637B669F5

(b)     Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)     Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)     Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)     Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any  Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)     As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.     <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.     <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.     <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.     <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

Exhibit F-2

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B669F5

Case 8:24-bk-12771-TA Doc 156-1 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities In Support of Motion Page 1163 of 1376

7.     _Third-Party Beneficiary._  Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this ___ day of September 29 _____, 2023.

**FRANCHISEE:**                                              **OBLIGEE:**

**NEWPORT VENTURES, LLC**                    **ERNESTO ABARRO**

By: _Ernesto Abarro_                                           By: _Ernesto Abarro_
    33C61360BA31471...                                             33C61360BA31471...
Ernesto Abarro

By: [signature]                                                **KATAYOUN ARYANA**
    B05A39E6022040F...
Katayoun Aryana                                              By: [signature]
                                                                   B05A39E6022040F...

Exhibit F-3

## EXHIBIT G

### ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.     In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

Del Taco LLC
25521 Commercentre Drive
Lake Forest, California 92630
Attn:  Jack Tang, Vice President, General Counsel

2.     In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.     The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.     Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.     All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be.  Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant.  Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

DocuSign Envelope ID: 87A65DD2-542E-42CP-BE6A-D6E637B699F5

Case 8:24-bk-12791-TA    Doc 1571    Filed 02/27/25    Entered 02/27/25 16:52:36    Desc
Memorandum of Points and Authorities    Page 1001 of 1415    Page 1165 of 1376

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.      Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.      Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.      Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.      Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.    The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.    The Lease is contingent upon Franchisor's written approval of the site.

12.    Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Exhibit F-5

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6F327B669F5

Case 8:24-bk-12378-TA    Doc 150-1    Filed 02/27/24    Entered 02/27/24 08:32:36    Desc
Memorandum of Points and Authorities IR Supp    Page 1166 of 1376    Page 1166 of 1376

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**

By:_____

Its:_____

Date:_____

**Tenant**

By:_____

Its:_____

Date:_____

Exhibit F-6

**DocuSign**

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5
Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...
Source Envelope:
Document Pages: 1213
Certificate Pages: 5
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Status: Completed

Signatures: 177
Initials: 0

Envelope Originator:
Jack Tang
25521 Commercentre drive Suite 200
Lake Forest, CA  92630
mhernandez@deltaco.com
IP Address: 209.234.159.82

## Record Tracking

Status: Original
        9/5/2023 5:36:27 PM

Holder: Jack Tang
        mhernandez@deltaco.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication (None) | *Ernesto Abarro*<br>33C61360BA31471...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 9/5/2023 6:35:09 PM<br>Viewed: 9/6/2023 10:33:13 AM<br>Signed: 9/6/2023 10:42:42 AM |
| Electronic Record and Signature Disclosure:<br>    Accepted: 9/6/2023 10:33:13 AM<br>    ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Jack Tang*<br>AD28CBFCF34348A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 9/5/2023 6:35:11 PM<br>Resent: 9/6/2023 10:48:07 AM<br>Resent: 9/29/2023 9:26:01 AM<br>Viewed: 9/29/2023 9:27:32 AM<br>Signed: 9/29/2023 9:28:28 AM |
| Electronic Record and Signature Disclosure:<br>    Accepted: 9/29/2023 9:27:32 AM<br>    ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana<br>karyana@acc.capital<br>Security Level: Email, Account Authentication (None) | B05A39E6022040F...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 50.235.38.2<br>Signed using mobile | Sent: 9/5/2023 6:35:10 PM<br>Viewed: 9/6/2023 10:34:06 AM<br>Signed: 9/6/2023 10:36:22 AM |
| Electronic Record and Signature Disclosure:<br>    Accepted: 7/28/2023 8:56:42 AM<br>    ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/19/2021 12:45:45 PM
Parties agreed to: Ernesto Abarca Jr., Del Taco Operating Partnership, LP

Case 8:24-bk-12118-TA    Doc 571    Filed 02/27/25    Entered 02/27/25 16:32:36    Desc
Memorandum of Points and Authorities    Page 1025 of 1415    Page 1169 of 1376

# ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

Exhibit Q

DocuSign Envelope ID: 87A6EDD2-542E-42CD-BE6A-D9E637B669F5



**FRANCHISE AGREEMENT**

## Table of Contents

**Page**

1. Grant. ...........................................................................................................................1
2. Term and Renewal. ....................................................................................................3
3. Fees and Payments. ...................................................................................................4
4. Services By Del Taco. ...............................................................................................6
5. Obligations of Franchisee; Operational Standards. ..................................................7
6. Advertising and Marketing. ......................................................................................19
7. Records and Reports. ................................................................................................20
8. Proprietary Marks. ....................................................................................................22
9. Manuals. ....................................................................................................................24
10. Confidentiality and Covenants Not To Compete. .....................................................25
11. Insurance. ..................................................................................................................27
12. Transfer of Interest. ..................................................................................................29
13. Default and Termination. ..........................................................................................35
14. Obligations Upon Termination or Expiration. ..........................................................38
15. Taxes, Permits and Indebtedness ..............................................................................40
16. Independent Contractor and Indemnification. ...........................................................41
17. Governing Law and Dispute Resolution. ..................................................................42
18. Time is of the Essence ..............................................................................................46
19. Approvals, Waivers and Binding Effects. .................................................................46
20. Notices. .....................................................................................................................46
21. Force Majeure. ..........................................................................................................47
22. Immunity for Certain Limited Disclosures. ..............................................................47
23. Entire Agreement and Amendment ...........................................................................47
24. Severability; Enforcement of Covenants; Construction. ...........................................48
25. Joint and Several Obligation. ....................................................................................48
26. Incorporation of Exhibits. .........................................................................................48
27. Counterparts. .............................................................................................................48
28. Survival of Provisions. ..............................................................................................49
29. Representations, Warranties and Acknowledgments. ................................................49
30. Business Judgment. ...................................................................................................50

Exhibits:

A    Identification of Franchisee
B    Site Selection Addendum
C    Authorization Agreement for Prearranged Payments (Direct Debits)
D    Statement of Ownership Interests
E    Guarantee, Indemnification, and Acknowledgment
F    Non-Disclosure and Non-Competition Agreement
G    Addendum to Lease

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E327B669F5

# FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Franchise Agreement (this "**Agreement**") as of the ___29___ day of ___September___ 2023 (the "**Effective Date**").

## RECITALS

A.       Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.       The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.       Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.       Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.       Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.       Grant.

1.1       <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the

Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A.  If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**").  Franchisee shall not relocate the Restaurant without Del Taco's prior written consent.  Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1.  In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G.  Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

      1.2    <u>Protected Area</u>.  Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof.  "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement.  Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

      1.2.1    Advertise and promote the System within and outside of the Protected Area;

      1.2.2    Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, convenience stores, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

      1.2.2.1    Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area.  If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

      1.2.3    Offer and sell any products of services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

1.2.4    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area; and

1.2.5    Not more often than once every five (5) years, reduce the radius of the Protected Area so that the daytime and/or residential population of the Protected Area does not exceed 30,000 people, as determined by the then most current information supplied by a third party research service designated by Del Taco.

1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Takeover Date and expire on the Expiration Date set forth on Exhibit A to this Agreement.

2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10    Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    No assurances of a renewal franchise agreement.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

## 3.    Fees and Payments.

3.1    Franchise Fee.  Deleted As Not Applicable.

3.2    Promotional Fee.  Deleted As Not Applicable.

3.3    Royalty Fees.  During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees within three (3) days after the close of each Sales Week (defined below), based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

3.3.1    "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities.  Del Taco reserves the right to modify its policies and practices regarding

DocuSign Envelope ID: 87A65DD2-562E-48CD-BE6A-D6E637B669F5

Case 23-44513-mxm11 Doc 1567-1 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Memorandum of Points and Authorities in Support of Del Page 1179 of 1376

revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

3.3.2    The term "**Sales Week**" means the period starting with the commencement of business on Wednesday and concluding at the close of business on the following Tuesday (or, if the Restaurant is not open on a Tuesday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

3.4    <u>Marketing Fee</u>.  Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**").  Del Taco reserves the right to increase the Marketing Fee to the then-current fee that it charges new franchisees.  Franchisee shall pay the Marketing Fee within three (3) days after the close of each Sales Week, based on the Net Sales of the Restaurant for the immediately preceding Sales Week, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.  Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5    <u>Continuing Payments, EFT, and Reporting Obligations.</u>  All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding Sales Week (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco within three (3) days after the close of the Sales Week.  Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account.  Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals.  To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day.  Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales.  Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others.  Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder.  Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6    <u>No Subordination</u>.  Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7    <u>Overdue Payments and Reports; Interest</u>.  Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue.  If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6E637B669F5

3.8    Payments on Behalf of Franchisee.  Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9    Other Payments.  All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10    No Refunds.  Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4.    Services By Del Taco.**

4.1    Development of the Restaurant. Deleted As Not Applicable.

4.2    Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), General Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.3 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3    Opening Assistance. Deleted As Not Applicable.

4.4    Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5    Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6    Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7    Bulletins and Reports. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8    Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6F637B669F5

4.9    <u>Inspection</u>. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10    <u>Delegation of Duties.</u> Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

**5.      Obligations of Franchisee; Operational Standards.**

5.1    <u>System Standards and Development of Restaurant</u>.    Franchisee understands and acknowledges that every detail of the Restaurant is important to Franchisee, Del Taco, and other franchisees in order to develop and maintain high operating standards, to increase the demand for the products sold by all franchisees, and to protect Del Taco's reputation and goodwill. Franchisee shall construct, furnish, and open the Restaurant according to the requirements contained herein, and Franchisee shall open the Restaurant at the later of (a) one hundred eighty (180) days from the Effective Date, or (b) if upon execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, one hundred eighty (180) days from the later of (i) Del Taco's approval of the location for the Restaurant pursuant to the Site Selection Addendum), or (ii) Franchisee's access to the leased premises as permitted by the lessor under the lease.

5.2    <u>Pre-Opening Obligations</u>.  Deleted:

5.2.1    Deleted As Not Applicable.

5.2.2    Deleted As Not Applicable.

5.2.3    Deleted As Not Applicable.

5.2.4    Deleted As Not Applicable.

5.2.5    Deleted As Not Applicable.

5.2.6    Deleted As Not Applicable.

5.3    <u>Restaurant Opening</u>.  Deleted As Not Applicable:

5.3.1    Deleted As Not Applicable.

5.3.2    Deleted As Not Applicable.

5.3.3    Deleted As Not Applicable.

5.3.4    Franchisee shall not open the Restaurant until the Operating Principal, the General Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5    Deleted As Not Applicable.

5.4    <u>Training</u>. Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and

7

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time. Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant. Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training. Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least five individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time General Manager, and at least four (4) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

       5.4.1   <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or General Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

       5.4.2   <u>Operating Principal and General Manager</u>. If the Operating Principal or the General Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

       5.4.3   <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

       5.4.4   <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

       5.4.5   <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified General Manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of four shift managers (inclusive of the General Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

managers and employees are adequately trained and supervised. Del Taco shall make classroom training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in subparagraph (b), above, and receive certification by Del Taco. If a general manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified general manager.

        5.4.6   [Reserved]

        5.4.7   Training costs. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required, attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

        5.4.8   Additional Training. If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

        5.5   Restaurant Premises. Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

        5.6   Personnel. Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed a employer or joint employer with Franchisee for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

        5.7   Health Standards. Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain

all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual.

     5.8    <u>Restaurant Maintenance</u>.  Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

     5.9    <u>Remodeling</u>.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public.  The expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

     5.10    <u>Franchisee Advisory Council</u>.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

     5.11    <u>Equipment Upgrades</u>.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

     5.12    <u>Standards and Specifications</u>.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

5.12.1   To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2   To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.  In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   <u>Suppliers</u>.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not

thereafter been disapproved. For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors. Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

      5.13.1  If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval. Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

      5.13.2  Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

      5.13.3  Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

      5.13.4  Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

      5.13.5  Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

all suppliers in accordance with the agreed-upon terms. In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

        5.13.6   Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

        5.14    <u>Inspections</u>.   Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals. Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection. Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection. Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs. Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

        5.15    <u>Technology and Computer System</u>.   At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

        5.15.1   Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable. In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications. To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

        5.15.2   Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following: (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d)

the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

      5.15.3   Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

      5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

      5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

      5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

      5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

    5.16   <u>Customer Data</u>.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.

    5.17   <u>Privacy Laws</u>.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

      5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

      5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

14

5.18    Website.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

5.19    POS or Cash Register Systems.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

5.20    Gift Cards.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

5.21    E-Mail, Internet and Other Media; E-Mail and Fax Communications.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.  To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.  Del Taco's list of Official Senders shall be the master and official list of Official Senders.

5.21.2   Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan

for transmitting such advertisements or solicitations. Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications. Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

    5.21.3 Franchisee agrees that: (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

    5.21.4 The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

   5.22 <u>Credit Cards and Other Methods of Payment</u>. At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval. Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider. Franchisee must comply with all credit-card policies as prescribed in the Manuals. Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA"). Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

   5.23 <u>Uniforms</u>. To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals. Franchisee shall purchase such attire only from approved suppliers.

   5.24 <u>Incentive Programs</u>. Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

   5.25 <u>Prices</u>. With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws. If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

5.26    Compliance with Laws and Good Business Practices.    Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.   All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising. Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.   Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27    Franchisee Structure; Operating Principal and Owners.

5.27.1    Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2    If Franchisee is a partnership or limited liability partnership it shall: (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3    If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.4    Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

5.27.4.1    Operating Principal. An Operating Principal shall participate personally in the direct operation of the Restaurant. If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant. Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

5.27.4.2    Owners: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee. All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

5.27.4.3    General Manager: Franchisee shall designate a Restaurant general manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "General Manager"). The General Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

5.27.4.4    General Manager: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the General Manager and Operating Principal (the "Shift Managers").

5.28    Personal Guarantee. Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

5.29    System Modifications. Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System and operations of Del Taco Restaurants. Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials. Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense. Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site

or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

       5.30   <u>No Third-Party Management</u>. The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the General Manager or another general manager hired by and employed by Franchisee and approved by Del Taco. Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

**6.    Advertising and Marketing.**

       Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

       6.1   <u>Marketing Fee Expenditure</u>. Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above. Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

       6.2   <u>Local Advertising and Promotion.</u> All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws. Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set

forth in Section 6.4 below. Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3     Costs of Local Advertising and Promotion. As used in this Agreement, the term "**Local Advertising and Promotion**" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1     Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2     Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3     The value of discounts provided to customers;

6.3.4     The cost of food items.

6.4     Approvals. For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee). If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them. Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5     Promotional Materials. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials. Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.     Records and Reports.

7.1     Records. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-

renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing. Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year. To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2     Periodic Reports.  Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3     Reporting Requirements.  In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco. Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4     Audit.  Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee.  Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees.  Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee.  If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs).  The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5     Data.  All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee.  In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement.  Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request.  Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement.  Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E637B669F5

franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

       7.6    <u>Accounting and Bookkeeping Services</u>.  Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business.  Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual.  In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years.  Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

       8.1    <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

       8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

       8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

       8.2    <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

       8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

       8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

       8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

       8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

8.3    Franchisee Acknowledgements. Franchisee expressly understands and acknowledges that:

8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    <u>Manuals</u>.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received on loan from Del Taco for the term of this Agreement.  The Manuals may consist of multiple volumes of printed text, video and/or audio tapes and files, computer disks and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    <u>Confidentiality of the Manuals</u>. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    <u>Protection of the Manuals</u>. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

9.4    Revisions to the Manuals. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

**10.    Confidentiality and Covenants Not To Compete.**

10.1    Confidential Information. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**").  Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant.  Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others.  Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee.  Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them.  Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

10.2    Irreparable Injury.   Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

10.3    Information Exchange.   Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant.  Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees.  Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products.  Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

10.4    Full Time and Best Efforts.   During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

10.5    In-Term Covenants.    Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques and the System.  During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee

DocuSign Envelope ID: 87A65DD2-542F-43CD-BE6A-D6E327B669F5

Case 8:24-bk-12381-TA Doc 1071 Filed 02/27/25 Entered 02/27/25 08:52:36 Desc
Memorandum of Points and Authorities In Supp of Mot Page 1200 of 1376

of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

          10.5.1  Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

          10.5.2  Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

      10.6   Post-Term Covenants.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

      10.7   Publicly-Held Corporations.  Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

      10.8   Individual Covenants.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

      10.9   Severability.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

      10.10  Scope of Covenants. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent,

effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11    Enforcement of Claims.  The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12    Irreparable Injury.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13    Remedies Not Exclusive.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

## 11.    Insurance.

11.1    Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1    Insurance Requirements.    Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located.  Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1    Liability.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2    Fire.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E527B669F5

    11.1.1.3 <u>Business Interruption</u>.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

    11.1.1.4 <u>Business Automobile Liability Insurance</u>.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

    11.1.1.5 <u>Statutory Workers' Compensation Insurance</u>.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

    11.1.1.6 <u>Commercial Umbrella Liability Insurance</u>.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

    11.1.1.7 <u>Property Insurance</u>. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

    11.1.1.8 <u>Products Liability Insurance</u>. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

    11.1.1.9 <u>Cyber Liability Insurance</u>. Cyber liability insurance in an amount that Del Taco designates.

    11.1.1.10 <u>Other Insurance</u>. Any other insurance coverage that is required by federal, state, or municipal law.

  11.2 <u>Referenced in Manuals</u>.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

  11.3 <u>Policy Cancellation</u>.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

  11.4 <u>Construction and Remodeling Insurance</u>.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

11.5 <u>No Waiver of Obligations</u>. Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6 <u>Del Taco to be Additional Named Insured</u>. All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees. Additional insured status shall include coverage for ongoing and completed operations. The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage. Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds. Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7 <u>Evidence of Insurance</u>. At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder. All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates. Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage. In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8 <u>Proof of Insurance</u>. In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9 <u>Policy Limit Changes</u>. Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10 <u>Del Taco's Insurance</u>. Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12.  Transfer of Interest.**

12.1 <u>Del Taco Transfers</u>. Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this

29

Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent. Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment. Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring. With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party. Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

     12.2   <u>Owners</u>. If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto. Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

     12.3   <u>Franchisee Transfers</u>. Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character. Accordingly:

       12.3.1  Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber: (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

       12.3.2  If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

       12.3.3  If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

       12.3.4  Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

       12.3.5  Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

     12.4   <u>Conditions for Approval</u>. Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-436D-BE6A-D6E637B669F5

any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to, and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

12.4.8  The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9  At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's General Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5  <u>Transfers to Entities for the Convenience of Ownership</u>.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1  Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2  Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6    Right of First Refusal.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7    Transfer Upon Death.  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco. If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

12.8   Transfer Upon Permanent Disability.  Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely.  If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal.  Del Taco shall pay the cost of the required examination.

12.9   Notification Upon Death or Permanent Disability.  Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing.  Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10   No Waiver of Claims.  Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11   Insolvency. If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12   Securities Offerings.  All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency.  Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use. No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement.  Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence.  Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification.  For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering.  Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences.  Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

**13.      Default and Termination.**

13.1      <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2      <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1   If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2   If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3   If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4   If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5   If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

13.2.6  If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7  If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8  If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9  If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications

established from time to time by Del Taco as to the quality of service, specifications and use of computer hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3 <u>Termination With Opportunity to Cure</u>. Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period. If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4 <u>Extended Notice of Termination</u>. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5 <u>Assignment Upon Bankruptcy</u>. If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth: (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement. In the event Del Taco does not elect to exercise the options

described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6     Other Remedies.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1   Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2   Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2  above;

13.6.3   Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4   Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

## 14.     Obligations Upon Termination or Expiration.

14.1     Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1   Cease Operations.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2   Cease Use of Proprietary Marks.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3   Cancellation of Assumed Names.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del

Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

      14.1.4   <u>Pay Monies Owed; Liquidated Damages</u>. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%. The payments called for in this Section 14.1.4 are not a penalty. A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined. Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event. Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

      14.1.5   <u>Return of Manuals and Other Materials</u>. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

      14.1.6   <u>No Confusion</u>. Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

      14.1.7   <u>Assign Leases; Modification of Premises</u>. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises. Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises. If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose. In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco. If Franchisee fails or refuses to comply with the

requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

14.1.8  <u>Option to Purchase Equipment and Furnishings</u>.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

14.1.9  <u>Damages and Costs</u>. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

14.1.10 <u>Other Rights of Franchisee</u>.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.    Taxes, Permits and Indebtedness

15.1    <u>Taxes</u>. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

15.2    <u>Tax Disputes</u>.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

15.3    Compliance With Laws.  Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating regulations.  Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.  To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4    Notification of Claims.  Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

16.    **Independent Contractor and Indemnification.**

16.1    It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever.

16.1.1    Identification as Independent Contractor.  At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2    No Agency.  Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3    Indemnification.  Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17.  **Governing Law and Dispute Resolution.**

17.1    <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2    <u>Venue.</u>   Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3    <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other Agreement between the parties shall be referred to arbitration in accordance with the following provisions:

17.3.1    <u>Demand to Arbitrate</u>.  The claimant shall send a notice of a demand for arbitration, in writing, to the other party to the dispute.  The demand shall state with particularity the nature and grounds of the claim, dispute or controversy and the nature of relief being sought.  A claimant shall make a demand for arbitration promptly after the claim, dispute or other matter in question has arisen; but, in any event, before the applicable statute of limitations would bar the institution of legal or equitable proceedings based on the claim, dispute or other matter in question.

17.3.2    <u>Appointment of Arbitrators</u>.  Within 10 days after the demand to arbitrate, Del Taco and Franchisee each shall request the appointment of three neutral arbitrators by the American Arbitration Association, or its successor, and the three arbitrators chosen shall conduct the arbitration.  If the failure or refusal of either party to cooperate in the selection of the arbitrators prevents the selection of the arbitrators within 30 days after the demand for arbitration, the failure or refusal shall constitute an irrevocable consent to the arbitrators appointed by the American Arbitration Association.  Unless otherwise specifically stated in this Section 17.3.2, the appointment of an arbitrator shall take place in accordance with the rules of the American Arbitration Association, or its successor, then in effect.  If the American Arbitration Association, or successor, no longer exists, either party may apply to the Orange County Superior Court for the appointment of the arbitrators.

17.3.3    <u>Conduct of Arbitration</u>.  Notwithstanding any requirements imposed by law (except to the extent mandatory), the following provisions shall apply to any arbitration conducted under this Section 17.3.3:

17.3.3.1    Power of Chairman.  The arbitrators shall select a chairman of the arbitration panel, who shall rule on all procedural matters including the selection of the time and place for the hearing, matters relating to discovery, and the admissibility of evidence.

17.3.3.2    Response to Demand.  Within five days after the appointment of the last arbitrator, the party against whom arbitration is sought shall file with the arbitrators and serve on the other party a statement (i) responding with particularity to the claims set forth in the demand to arbitrate, (ii) setting forth any defensive matters, and (iii) setting forth any claims that the person has against the party instituting the arbitration.  The statement required by this provision shall take substantially the same form as required for answers and cross-complaints by the Federal Rules of Civil Procedure.  If the other party does not file a statement required by this provision in a timely manner, it shall not have the right to assert any defensive matters or any claims against the party instituting the arbitration.

17.3.3.3    Amendment of Claim.  If, after the delivery of the notice of demand for arbitration, either party desires to make any new or different claim, the party shall make the claim made in writing and shall file it with the arbitrators if the chairman, upon good cause shown, determines the other party may file the amended claim.  The filing of an amended claim shall not extend the time for the holding of the arbitration hearing or the making of an award.

17.3.3.4    Time for Arbitration Hearing.  The arbitration hearing shall take place no sooner than 60 nor later than 90 days after the appointment of the last arbitrator and the chairman shall give notice of the date, time and place of the hearing to the parties within 10 days after the appointment of the last arbitrator.

17.3.3.5    List of Witnesses and Documents.  Either party, within 10 days after receipt of the notice of the hearing, shall have the right to demand in writing, served personally or by registered or certified mail, that the other party provide a list of witnesses it intends to call, designating which witnesses it will call as expert witnesses, and a list of documents it intends to introduce at the hearing, provided that the demanding party provides its lists of witnesses and documents at the time of its demand.  The demanding party shall serve a copy of those demands and the demanding party's lists on the arbitrators at the time served on the other party.  The recipient of the request shall serve on the requesting party personally or by certified mail, within 10 days after receipt of the request, copies of the lists requested and, also, shall serve such lists on the arbitrators at the same time.  The party shall make any documents listed available for inspection and copying at reasonable times prior to the hearing.  The failure to list a witness or a document shall bar the testimony of an unlisted witness or the introduction of any undesignated document at the hearing.

17.3.3.6    Record.  The arbitrators shall make the necessary arrangements for the taking of a stenographic record whenever requested by a party.  The cost of the stenographic record should be borne by the parties equally.

17.3.3.7    Attendance at Hearings.  Any person who is a party to the arbitration may attend the hearings.  The arbitrators otherwise shall have the power to exclude any witness, other than a party or other essential person, during the testimony of any other witness.  The arbitrators also shall have the power to exclude the attendance of any other person.

17.3.3.8    Adjournments.  Except for adjournments required by law or caused by the illness or disability of an arbitrator, the arbitrators shall not adjourn, continue or otherwise delay the hearing without the written consent of the parties.

17.3.3.9   Production of Witnesses and Records. Upon application of a party to the arbitration or upon his or her own determination, the chairman may issue subpoenas for the attendance of witnesses and subpoenas duces tecum for the production of books, records, documents and other evidence. The parties shall serve and may enforce subpoenas in accordance with the provisions of the Federal Rules of Civil Procedure then in effect.

17.3.3.10   Absence of a Party. The arbitration may proceed in the absence of any party who, after the notice of the hearing, fails to attend. The arbitrators shall not make an award solely on the default of a party, and the arbitrators shall require the party present to submit evidence required for the making of an award.

17.3.3.11   Authority to Administer Oaths. The chairman may administer oaths.

17.3.3.12   Evidence. The parties may offer any evidence they desire and shall produce any additional evidence the arbitrators may deem necessary to an understanding and determination of the dispute. The chairman shall judge the relevancy and materiality of the evidence offered and need not conform to the legal rules of evidence. The parties shall present all evidence in the presence of all of the arbitrators and all of the parties, except when a party has failed to appear or has waived his or right to attend.

17.3.3.13   Evidence by Affidavit and Filing of Documents. The arbitrators shall receive and consider the evidence of witnesses by affidavit, but shall give it only as much weight as they deem it entitled to after consideration of any objections made to its admission. Each party shall file all documents not filed with the arbitrators at the hearing, but arranged for at the hearing or subsequently by agreement of the parties, shall be filed with the arbitrators. All parties shall have the opportunity to examine those documents.

17.3.3.14   Discovery. The parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration and, to that end, to use and exercise all the same rights, remedies and procedures (subject to all the same duties, liabilities and obligations) in the arbitration with respect to the subject matter as provided in the Federal Rules of Civil Procedure then in effect, subject to such limitations (based on the nature of the case) as the arbitrators may impose. Notwithstanding the foregoing, a party may take a deposition on 10 days' notice at any time after the delivery of the notice of demand to arbitrate and may require an answer or response to interrogatories, requests for documents, or for admission within 15 days after their receipt. In connection with any discovery, the arbitrator shall have the power to enforce the rights, remedies, procedures, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions, consequences, liabilities, sanctions and penalties available in like circumstances in a civil action by a federal court under the provisions of the Federal Rules Civil Procedure, except the power to order the arrest or imprisonment of any person. The chairman may consider, determine and make any orders imposing any terms, conditions, consequences, liabilities, sanctions and penalties, deemed necessary or appropriate at any time or stage of the course of the arbitration, and those orders shall constitute conclusive, final and enforceable arbitration awards on the merits.

17.3.3.15   Reopening of Hearings. The arbitrators may reopen an arbitration hearing on his or her own motion or upon application of a party at any time before making an award; provided, however, that, if the reopening of the hearing will prevent the making of the award within the time specified in this Section 17.3.3.15, the arbitrators may not reopen the matter unless the parties agree to an extension of the time limit.

17.3.3.16   Extensions. The parties may modify any period of time by mutual agreement, but the arbitrators shall not have the power to extend any period of time whatsoever.

44

17.3.3.17 <u>Time for Award</u>. The arbitrators shall render the award no later than 20 days after the completion of the hearing.

17.3.3.18 <u>Confidentiality</u>. The arbitration proceedings and arbitration award shall be maintained by the parties as strictly confidential, except as is otherwise required by law or court order or as is necessary to confirm, vacate or enforce the award and for disclosure in confidence to the parties' respective attorneys and tax advisors.

17.3.4 <u>Application of Federal Rules of Civil Procedure</u>. Except as provided otherwise in this Section 17.3.4, any arbitration conducted under this Section 17.3.4 shall take place in accordance with the Federal Rules of Civil Procedure then in effect.

17.3.5 <u>Finality; Enforcement; Venue</u>. The award of the arbitrators shall constitute a final award and shall bind all parties to the arbitration, and the parties may enter a judgment on the award in any court of competent jurisdiction. All arbitrations shall take place in Orange County, California.

17.3.6 <u>Arbitration Costs, Attorneys' Fees and Costs</u>. Each party shall bear their share of the costs of the arbitration proceeding. The prevailing party to the arbitration shall have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party shall be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.7 <u>Survival</u>. This agreement to arbitrate shall survive the expiration or termination of this Agreement.

17.4 <u>Injunctive Relief</u>. Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction for the entry of temporary or preliminary injunctive relief, restraining orders and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5 <u>Limitation of Actions</u>. **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5 ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6 <u>Waiver of Damages</u>. **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY**

LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.

**18.      Time is of the Essence**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.      Approvals, Waivers and Binding Effects.**

19.1      <u>Approvals</u>.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2      <u>No Warranties</u>. Del Taco makes no warranties or guarantees upon which Franchisee may rely, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3      <u>Waivers</u>. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4      <u>Binding Effect; No Other Rights</u>. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.      Notices.**

20.1      Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the

respective parties at the addresses below, unless and until a different address has been designated by written notice to the other party.  Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

|  |  |
|--|--|
| Del Taco: | 25521 Commercentre Drive, Suite 200<br>Lake Forest, California 92630<br>Fax Number: (949) 616-5002 |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

## 21. Force Majeure.

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party.  Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof;  compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event.  The notice shall describe the nature of the event and an estimate as to its duration.

## 22. Immunity for Certain Limited Disclosures.

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

## 23. Entire Agreement and Amendment.

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements no other representations having induced Franchisee to execute this Agreement.  There are no other oral or written understandings or agreements between Del Taco and Franchisee, or oral representations by Del Taco, or written representations by Del Taco (other than those set forth in the Franchise Disclosure Document, if any, that Del Taco provided to Franchisee), relating to the subject matter of this Agreement, the franchise relationship, or the Restaurant (and any understandings or agreements reached, or any representations made, before this Agreement are superseded by this Agreement). However, and

notwithstanding the foregoing, nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

**24.     Severability; Enforcement of Covenants; Construction.**

24.1     <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement unless in Del Taco's reasonable opinion the effect of such determination has the effect of frustrating the purpose of this Agreement, whereupon Del Taco shall have the right by notice in writing to Franchisee to immediately terminate this Agreement.

24.2     <u>Enforceability of Covenants</u>.  Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3     <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision.  Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

**25.     Joint and Several Obligation.**

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

**26.     Incorporation of Exhibits.**

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

**27.     Counterparts.**

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

## 28. Survival of Provisions.

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

## 29. Representations, Warranties and Acknowledgments.

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    Independent Investigation. Franchisee has conducted an independent investigation of the business contemplated by this Agreement and recognizes that the business involves risks which make the success of the venture dependent upon factors which are beyond the control of Del Taco and largely dependent upon Franchisee's ability.  Del Taco expressly disclaims the making of, and Franchisee acknowledges that it has not received or relied upon, any warranty or guarantee, expressed or implied, as to the potential sales volume, profits or operating success of the business venture contemplated by this Agreement.

29.1.2    Receipt of Documents.    Franchisee acknowledges receipt of a copy of this Agreement, the exhibit(s) hereto, and agreements relating hereto, if any, with all of the blank lines therein filled in, at least seven (7) days prior to the date on which this Agreement was executed, and with sufficient time within which to review the Agreement, with advisors of Franchisee's choosing.  Franchisee further acknowledges receipt of the franchise disclosure document required by the Federal Trade Commission's Franchise Rule at least fourteen (14) days prior to the date on which this Agreement was executed.

29.1.3    No Other Representations. Franchisee has no knowledge of, and has not relied upon, any representations by Del Taco or its officers, directors, owners, employees, or agents about the business contemplated by this Agreement contrary to the terms of this Agreement or the information set forth in the most recent franchise disclosure document provided to Franchisee.

29.1.4    Consultation. Franchisee has read and understands this Agreement and Del Taco has afforded Franchisee ample time and opportunity to consult with advisors of its own choosing about the potential benefits and risks of entering into this Agreement.

29.1.5    Modification of Offers. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement.  Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.6    Development Agreement Terms. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.7    No Other Obligations.    Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would

Case 8:24-bk-12837-TA   Doc 667   Filed 02/27/24   Entered 02/27/24 08:52:36   Desc
Main Document   Page 1250 of 1415   Page 1224 of 1376
Memorandum of Points and Authorities IRS EXHIBIT F

preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

29.1.8  <u>Restaurant Location.</u> Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location, and that Franchisee shall be solely responsible for Franchisee's own success at the location.

29.1.9  <u>Compliance with Anti-Terrorism Laws and Other Laws.</u> Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of **"Specially Designated Nationals"** or **"Blocked Persons"** maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx  _/); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at  [http://www.epic.org/privacy/terrorism/hr3162.html](http://www.epic.org/privacy/terrorism/hr3162.html)), U.S. Executive Order 13244 (text currently available at [http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html](http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html)), the Foreign Corrupt Practices Act, or any similar law. Franchisee recognizes that Del Taco approved Franchisee in reliance on all of the statements Franchisee and its owners have made in connection therewith, and that Franchisee has a continuing obligation to advise Del Taco of any material changes in these statements and representations made to Del Taco in this Agreement or in the franchise application.

## 30.    Business Judgment.

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of its sole judgment of what is in Del Taco's best interest of the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  In the absence of an applicable statute, Del Taco will have no liability to Franchisee for any such decision or action.  Del Taco and Franchisee intend that the exercise of Del Taco's right or discretion will not be subject to limitation or review.  If applicable law implies a covenant of good faith and

DocuSign Envelope ID: 87A6FDD2-542F-48CD-BE6A-D5E327B668F5

fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with a fair construction of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

**[SIGNATURE PAGE FILLOWS]**

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42CD-BE6A-D6F327B669F5

Case 8:24-bk-12738-TA   Doc 156-1   Filed 02/27/25   Entered 02/27/25 16:32:36   Desc
Memorandum of Points and Authorities in Support   Page 1226 of 1376

Executed as of the day and year first set forth above.

FRANCHISOR:      **DEL TACO LLC**

By: _Jack Tang_
          Jack Tang
          Vice President & General Counsel

FRANCHISEE:      **NEWPORT VENTURES, LLC**

          By: Techno Industries Inc
          Its President & CEO

_Ernesto Abarro_
Ernesto Abarro

By: _____
          Katayoun Aryana

Date: _9/6/2023_____

DocuSign Envelope ID: 87A65DD2-542F-48CD-BE6A-D6E627B669F5

Case 23-01357-FA Doc 1571 Filed 02/27/25 Entered 02/27/25 16:15:36 Desc
Memorandum of Points and Authorities Page 1253 of 1415    Page 1227 of 1376

**Exhibit A**

**Identification of Franchisee**

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |

2.  Notice Address of Franchisee:   1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014
E-Mail: ernieabarro@gmail.com
Fax Number: (949) 534-7000

3.  Location of Restaurant:   6383 Promenade Parkway
Castle Rock, CO 80108

4.  Protected Area:   A circular area within a one-mile radius
from the front door of the Restaurant, subject to Section
1.2. of the Franchise Agreement.

5.  Date of Takeover:   October 4, 2023

6.  Date of Expiration:   September 6, 2038

DocuSign Envelope ID: 87A6FDD2-5425-48CD-BE6A-D6E637B668F5

**<u>EXHIBIT B</u>**

**Deleted As Not Applicable**

## EXHIBIT C

### Authorization Agreement for Prearranged Payments
### (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank

Mission Viejo, CA

_____

_____

Depository

Branch

26042 Marguerite Pkwy, Mission Viejo, CA 92692

_____

_____

Street Address, City, State, Zip Code

122000247

7429826410

_____

_____

Bank Transit/ABA Number

Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

*Ernesto Albarro*

—DocuSigned by:
33C6136DBA31471...

Depositor

By: _____

Title: _____

Date: 9/6/2023
_____

Exhibit C

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-642F-42CD-BE6A-D6F627B698F5

Case 8:24-bk-12787-TA    Doc 1507    Filed 02/27/25    Entered 02/27/25 08:32:36    Desc
Memorandum of Points and Authorities    Page 1256 of 1415    Page 1230 of 1376

## EXHIBIT D

### Statement of Ownership Interests

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| Individual/Entity Name | Percentage of Ownership/Nature of Interest* |
|---|---|
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

Exhibit D

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542F-42GP-BE6A-D6E537B669F5

## EXHIBIT E

### Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated <u>September 29</u>, 2023 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S):

(Seal)                    Signed: _Ernesto Abarro_____
                                  33C6136DBA3147C...
                                  (In his individual capacity)

                          Ernesto Abarro
                          120 S. Lovekin Blvd.
                          Blythe, CA 92225


(Seal)                    Signed: _____
                                  B05A39E6022040F...
                                  (In his individual capacity)

                          Katayoun Aryana
                          1500 E. Bethany Home Road
                          Suite 250
                          Phoenix, AZ 85014

DocuSign Envelope ID: 87A65DD2-542F-43CP-BE6A-D6F637B669F5

## EXHIBIT F

### Non-Disclosure and Non-Competition Agreement

**THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this <u>29</u> day of <u>September</u>, 2023, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

### BACKGROUND:

A.       Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.       Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

C.       The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

1.       <u>Confidential Information</u>.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

2.       <u>Covenants Not to Compete</u>.

(a)       Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

(b)     Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

(i)     Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

(ii)     Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

(c)     Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

(d)     As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

3.     <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

4.     <u>Severability.</u>  All agreements and covenants contained herein are severable.  If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy.  In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

5.     <u>Delay.</u>  No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

6.     <u>Jurisdiction, Venue and Choice of Law.</u>  This agreement shall be interpreted and construed in accordance with Section 17 of the Agreement.  In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A6FDD2-542F-42CD-BE6A-D6F637B669F5

Case 8:24-bk-12778-TA Doc 1561 Filed 02/27/25 Entered 02/27/25 08:32:36 Desc
Memorandum of Points and Authorities IR Supp Doc The 415 Page 1235 of 1376

7.    Third-Party Beneficiary.  Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this __29__ day of __September__ _____, 2023.

**FRANCHISEE:**                                   **OBLIGEE:**

**NEWPORT VENTURES, LLC**              **ERNESTO ABARRO**

By: _Ernesto Abarro_____     By: _Ernesto Abarro_____
      Ernesto Abarro                                       33C61360BA31471...

By: _____     **KATAYOUN ARYANA**
      Katayoun Aryana
                                                       By: _____
                                                             B05A39E6022040F...

Exhibit F-3

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

DocuSign Envelope ID: 87A65DD2-542E-48CD-BE6A-D6E537B669F5

## EXHIBIT G

### ADDENDUM TO LEASE

   This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

   WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

   WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

   NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.  In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

     Del Taco LLC
     25521 Commercentre Drive
     Lake Forest, California 92630
     Attn:  Jack Tang, Vice President, General Counsel

2.  In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.  The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.  Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.  All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be.  Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant.  Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by

DocuSign Envelope ID: 87A65DD2-542F-43CF-BE6A-D6E627B668F5

Case 8:24-bk-12377-TA   Doc 1671   Filed 02/27/25   Entered 02/27/25 16:32:36   Desc
Memorandum of Points and Authorities   Page 1263 of 1415   Page 1237 of 1376

Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

6.   Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.   Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.   Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.   Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.   The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.   The Lease is contingent upon Franchisor's written approval of the site.

12.   Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

**[Signature Page Follows]**

Exhibit F-5

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                          **Tenant**

By:_____                By:_____

Its:_____                Its:_____

Date:_____                Date:_____

Exhibit F-6

Del Taco LLC
Franchise Agreement | 2023
**Error! Unknown document property name.**

## Certificate Of Completion

Envelope Id: 97A6FDD2542642CDBE6AD6F827BC6BF5      Status: Completed

Subject: Complete with DocuSign: STORE 738 - FA as Assigned.docx, STORE 793 - FA as Assigned.docx, STORE...

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 1213 | Signatures: 177 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Jack Tang |
| AutoNav: Enabled | | 25521 Commercentre drive Suite 200 |
| EnvelopeId Stamping: Enabled | | Lake Forest, CA  92630 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | mhernandez@deltaco.com |
| | | IP Address: 209.234.159.82 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Jack Tang | Location: DocuSign |
|     9/5/2023 5:36:27 PM |     mhernandez@deltaco.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro | *Ernesto Abarro* | Sent: 9/5/2023 6:35:09 PM |
| ernieabarro@gmail.com | —33C61360BA31471… | Viewed: 9/6/2023 10:33:13 AM |
| Security Level: Email, Account Authentication (None) | | Signed: 9/6/2023 10:42:42 AM |
| | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 50.225.0.130 | |
| **Electronic Record and Signature Disclosure:** | | |
|   Accepted: 9/6/2023 10:33:13 AM | | |
|   ID: d5b4db8d-9a2b-447f-a9bc-759157f92ce9 | | |
| Jack Tang | *Jack Tang* | Sent: 9/5/2023 6:35:11 PM |
| jtang@deltaco.com | —AD28CBFCF34348A… | Resent: 9/6/2023 10:48:07 AM |
| General Counsel | | Resent: 9/29/2023 9:26:01 AM |
| Del Taco LLC | | Viewed: 9/29/2023 9:27:32 AM |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | Signed: 9/29/2023 9:28:28 AM |
| | Using IP Address: 209.234.159.82 | |
| **Electronic Record and Signature Disclosure:** | | |
|   Accepted: 9/29/2023 9:27:32 AM | | |
|   ID: baa2fdb1-0811-457d-8ef2-bd80c7872e0e | | |
| Katayoun Aryana | | Sent: 9/5/2023 6:35:10 PM |
| karyana@acc.capital | | Viewed: 9/6/2023 10:34:06 AM |
| Security Level: Email, Account Authentication (None) | | Signed: 9/6/2023 10:36:22 AM |
| | Signature Adoption: Drawn on Device | |
| | Using IP Address: 50.235.38.2 | |
| | Signed using mobile | |
| **Electronic Record and Signature Disclosure:** | | |
|   Accepted: 7/28/2023 8:56:42 AM | | |
|   ID: 649c602f-389c-46c6-80b2-13f1288df0c4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 9/5/2023 6:35:12 PM |
| Certified Delivered | Security Checked | 9/6/2023 10:34:06 AM |
| Signing Complete | Security Checked | 9/6/2023 10:36:22 AM |
| Completed | Security Checked | 9/29/2023 9:28:28 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 1/10/2021 12:45:45 PM
Parties agreed to: Ernesto Chavez Jr., Taco Del Norte LLC

Case 8:24-bk-12738-TA    Doc 1571    Filed 02/27/25    Entered 02/27/25 16:32:36    Desc
Memorandum of Points and Authorities    Page 1267 of 1415    Page 1241 of 1376

# ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

Exhibit R

DocuSign Envelope ID: 5A534E94-E474-4EB4-8367-FF654134EE63



**RENEWAL FRANCHISE AGREEMENT**

# Table of Contents

1. Grant. ................................................................................................................... 1
2. Term and Renewal. ........................................................................................... 3
3. Fees and Payments. ........................................................................................... 5
4. Services By Del Taco. ....................................................................................... 6
5. Obligations of Franchisee; Operational Standards. ............................... 7
6. Advertising and Marketing. .......................................................................... 21
7. Records and Reports. ....................................................................................... 23
8. Proprietary Marks. ........................................................................................... 24
9. Manuals. ............................................................................................................... 26
10. Confidentiality and Covenants Not To Compete. ............................... 27
11. Insurance. ........................................................................................................... 29
12. Transfer of Interest. ....................................................................................... 31
13. Default and Termination. ............................................................................ 37
14. Obligations Upon Termination or Expiration. ...................................... 40
15. Taxes, Permits and Indebtedness. ............................................................. 42
16. Independent Contractor and Indemnification. ..................................... 43
17. Governing Law and Dispute Resolution. ................................................ 44
18. Time is of the Essence ................................................................................... 46
19. Approvals, Waivers and Binding Effects. ............................................... 46
20. Notices. ................................................................................................................ 46
21. Force Majeure. .................................................................................................. 47
22. Immunity for Certain Limited Disclosures. ........................................... 47
23. Entire Agreement and Amendment. ......................................................... 47
24. Severability; Enforcement of Covenants; Construction. .................... 48
25. Joint and Several Obligation. ...................................................................... 48
26. Incorporation of Exhibits. ............................................................................ 48
27. Counterparts. ..................................................................................................... 48
28. Survival of Provisions. ................................................................................... 48
29. Representations, Warranties and Acknowledgments. ........................ 48
30. Business Judgment. ......................................................................................... 49

Exhibits:

A  Identification of Franchisee
B  Site Selection Addendum
C  Authorization Agreement for Prearranged Payments (Direct Debits)
D  Statement of Ownership Interests
E  Guarantee, Indemnification, and Acknowledgment
F  Non-Disclosure and Non-Competition Agreement
G  Addendum to Lease

DocuSign Envelope ID: 5A534594-F577-45B1-8267-FF654135FE58

# RENEWAL FRANCHISE AGREEMENT

Del Taco LLC ("**Del Taco**"), a California limited liability company, and the undersigned (the "**Franchisee**") enter into this Renewal Franchise Agreement (this "**Agreement**") as of the __22__ day of ___May___, 2024 (the "**Effective Date**").

## RECITALS

A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

B.      The distinguishing characteristics of the System include, among other things: one or more specially-designed buildings or facilities for restaurant operations with specified site furniture, fixtures, kitchen display systems and equipment; site selection and layout criteria; distinctive interior and exterior design, décor, signage color scheme and furnishings, fixtures and other trade dress elements; proprietary products; standards, specifications, policies and procedures for construction and management; quality, distinctiveness and uniformity of products and services; standards, specifications, policy and procedures for restaurant operations; training and assistance; and advertising and promotional programs, all as more particularly described and designated in the Manuals (defined below) and all of which Del Taco may change, improve, and further develop at its option from time to time;

C.      Del Taco identifies the System by means of certain licensed trade names, service marks, trademarks, logos, emblems, and indicia of origin, including the mark "Del Taco" and such other trade names, service marks and trademarks as are now designated (and may hereinafter be designated by Del Taco in writing) for use in connection with the System (the "**Proprietary Marks**"). Del Taco continues to use such Proprietary Marks in order to identify for the public the source of products and services marketed thereunder and under the System, and to represent the System's high standards of quality, appearance, and service;

D.      Del Taco is in the business of operating and franchising others to operate restaurants that sell Menu Items and products and services that Del Taco designates under the System and the Proprietary Marks (each a "**Del Taco Restaurant**") and Franchisee desires to operate a Del Taco Restaurant and to receive the training and other assistance provided by Del Taco in connection therewith; and

E.      Franchisee understands and acknowledges the importance of Del Taco's high standards of quality, cleanliness, appearance, and service and the necessity of operating the business franchised under this Agreement in conformity with Del Taco's standards and specifications.

Now, therefore, in consideration of the foregoing and of the covenants contained in this Agreement, the parties agree as follows:

## 1.      Grant.

1.1      <u>Grant of Rights</u>. Upon the terms and conditions set forth in this Agreement, Del Taco hereby grants to Franchisee the right, and Franchisee accepts and undertakes the obligation, to:  (a) operate one (1) Del Taco Restaurant under the System (the "**Restaurant**"); (b) to use, only in connection with the Restaurant, the Proprietary Marks and the System, as they may be changed, improved, or further developed

DocuSign Envelope ID: 5A534594-E37A-45B1-8367-FF654135FF58

from time to time by Del Taco; and (c) and to do so only at or from a physical premises located within the Protected Area (defined below in Section 1.2) at the location specified in Exhibit A. If, at the time of execution of this Agreement, a location for the Restaurant has not been obtained by Franchisee and approved by Del Taco, Franchisee shall lease, sublease, or acquire a site for the Restaurant, subject to Del Taco's written consent in accordance with the Site Selection Addendum attached as Exhibit B (the "**Site Selection Addendum**"). Franchisee shall not relocate the Restaurant without Del Taco's prior written consent. Del Taco shall grant or withhold consent of the location of the Restaurant under this Section 1.1. In connection with Del Taco's consent to the location, Franchisee shall execute, and cause the landlord to execute, the Addendum to Lease appended hereto as Exhibit G. Franchisee acknowledges and agrees that Del Taco's consent to Franchisee's proposed location, under this Section 1.1 or pursuant to the Site Selection Addendum, does not constitute any assurance, representation, or warranty of Del Taco of any kind.

    1.2    <u>Protected Area</u>. Except as otherwise described in this Agreement, for so long as Franchisee is in full compliance with this Agreement, Del Taco will not, during the term of this Agreement, operate or license others to operate a Del Taco Restaurant at a physical premises located within the Protected Area. "**Protected Area**" shall mean the area described in Exhibit A, with the exception of any outlet that is defined in this Agreement as an Alternative Point of Distribution (defined below) that is developed, constructed, operated, merchandised, sold, licensed and/or franchised to others by Del Taco to sell Menu Items, products, and services to the public within the Protected Area, as may be revised in accordance with Section 1.2.5 hereof. "**Alternative Point(s) of Distribution**" shall mean any outlet described in Section 1.2.2 of this Agreement. Del Taco retains all other rights not expressly granted in this Agreement. Without obligation to Franchisee, Del Taco and its affiliates may, among other things, and regardless of proximity to or economic impact upon the Restaurant:

    1.2.1    Advertise and promote the System within and outside of the Protected Area;

    1.2.2    Sell or authorize others to sell Menu Items, products, and services to the public within the Protected Area through Alternative Points of Distribution, which include outlets (whether mobile or fixed, permanent or temporary) located on military bases, institutional outlets (including college campuses, hospitals and school lunch programs), fairs, athletic contests or other special events, casinos, airports and larger retail outlets, including Wal-Mart and Home Depot, toll roads, limited access highways, schools, universities, enclosed shopping malls, hotels, industrial or government facilities, amusement or theme park complexes, train stations, bus stations or other transportation facilities and other locations owned or operated by major institutions with sites throughout the country or a particular state, or any other outlet and to use the System in connection with those Alternative Points of Distribution.

    1.2.2.1    Del Taco shall notify Franchisee in writing of Del Taco's or another franchisee's intent to develop one or more Del Taco restaurants at the specific Alternative Point of Distribution within the Protected Area. If Franchisee can demonstrate to Del Taco's satisfaction, within 30 days of Franchisee's receipt of such notification, that Franchisee has the ability to enter into an agreement under the same terms and conditions offered to Del Taco or another franchisee, as well as the financial and operational resources available to it for the development of the Del Taco restaurant at the specific Alternative Point of Distribution, then Del Taco shall offer the opportunity to Franchisee under the same terms and conditions offered to Del Taco or another franchisee.

    1.2.3    Offer and sell any products or services (including those offered by the Restaurant), under any marks (including the Proprietary Marks) outside of the Protected Area, and through any means (including through a Del Taco Restaurant);

2

       1.2.4    Construct and operate other Del Taco Restaurants and to use the Del Taco System or any part of the Del Taco System at any location outside the Protected Area and to license others to do the same;

       1.2.5    Establish, operate, and license others to establish and operate, businesses other than Del Taco Restaurants within and outside of the Protected Area;

       1.2.6    Establish, operate, and license others to establish and operate, any co-branded or multi-branded restaurant or food-related business, within or outside the Protected Area, which uses the Proprietary Marks and the trademark(s) of one or more other related or unrelated brands and which may offer or sell same or similar menu items as Del Taco restaurants;

       1.2.7    Offer and sell, and authorize others to offer and sell, approved collateral products and services, including those offered and sold at the Restaurant (such as pre-packaged food products, clothing, and other branded merchandise and memorabilia), under the Proprietary Marks or other marks at or from any location or through any channel of distribution (including, but not limited to, grocery stores, catalogs, the Internet, other retail or restaurant locations and other food service facilities such as kiosks, concessions, food trucks, or multi-brand facilities) and provide a limited number or representative sample of the products and services normally offered by the Restaurant;

       1.2.8    Establish and operate, and license others to establish and operate, any restaurants or other businesses that Del Taco or its affiliates may operate or license as a result of any acquisition, consolidation, or merger, whether or not located within the Protected Area and despite the proximity of such restaurants to the Protected Area or the Restaurant or their actual or threatened impact on sales at the Restaurant, whether or not such other restaurants or businesses operate under the Proprietary Marks or under other marks; and

       1.2.9    Engage in any other activity, action, or undertaking that Del Taco or its affiliates are not expressly prohibited from taking under this Agreement.

    1.3    <u>No Right to Subfranchise</u>. Franchisee may not subfranchise, sublicense, or relicense to others any right to use the System or the Proprietary Marks.

    1.4    <u>Goodwill and Del Taco Name</u>. Except as expressly provided by this Agreement, Franchisee shall acquire no right, title or interest in and to the System.  Any and all goodwill associated with the System shall inure exclusively to Del Taco's benefit; and, upon the expiration or termination of this Agreement for any cause whatsoever, Del Taco shall not have any obligation to pay any money for any goodwill associated with Franchisee's use of the System.  Franchisee shall not take any action whatsoever to contest the validity or ownership of the System or the goodwill associated with the System.  Franchisee shall have no right to use in its name the name "Del Taco," "Del" or any other names used by Del Taco.

## 2.    Term and Renewal.

    2.1    <u>Term</u>.  Except as otherwise provided herein and unless sooner terminated in accordance with the provisions hereof, the initial term of this Agreement shall commence on the Effective Date and expire on November 19, 2043.

    2.2    <u>Renewal</u>. Franchisee may, at its option, renew Franchisee's right to operate the Restaurant for one (1) additional term which shall be the lesser of (a) twenty (20) years or (b) the remaining term of the lease for the Restaurant premises, including all applicable extensions or renewals, subject to the following conditions, each of which must be met prior to such renewal:

3

2.2.1    Franchisee shall deliver to Del Taco a written notice of Franchisee's election to renew no fewer than twelve (12) months nor more than eighteen (18) months prior to the end of the initial term;

2.2.2    Franchisee shall pay in lieu of the initial franchise fee, a renewal fee equal to the greater of (a) $35,000 or (b) Del Taco's then-current initial franchise fee for a new Del Taco Restaurant when it delivers the written notice required under Section 2.2.1;

2.2.3    Franchisee shall not have received, prior to its election to renew, written notice of a default under this Agreement on more than 3 separate occasions and, from the time of Franchisee's election to renew through the expiration of the initial term, Franchisee shall not have been in default of any provision of this Agreement, any amendment to this Agreement, or any other agreement between Franchisee and Del Taco or its affiliates; and, in the reasonable judgment of Del Taco, Franchisee shall have substantially complied with all the terms and conditions of this Agreement, such other agreements, as well as the operating standards prescribed by Del Taco during the term of this Agreement;

2.2.4    Franchisee shall present evidence to Del Taco that Franchisee has the right to remain in possession of the premises of the Restaurant for the duration of the renewal term, or shall obtain approval by Del Taco of a new location for the Restaurant for the duration of the renewal term;

2.2.5    Franchisee shall refurbish, remodel, renovate and upgrade the Restaurant to comply with Del Taco's then-current specifications for new Del Taco restaurants of the same or similar type, including fixtures, furnishings, technology and kitchen equipment.

2.2.6    Franchisee shall have satisfied all monetary obligations owed by Franchisee to Del Taco and its affiliates, and shall have timely met those obligations throughout the term of this Agreement;

2.2.7    Franchisee shall execute a general release, in a form satisfactory to Del Taco of any and all claims against Del Taco and its current and former affiliates, and their respective past and present officers, directors, agents, and employees;

2.2.8    Franchisee shall execute Del Taco's then-current form of franchise agreement, which agreement shall supersede this Agreement in all respects (except with respect to the renewal provisions of the new franchise agreement, which shall not supersede this Section 2.2,  and Franchisee acknowledges that the terms, conditions, and provisions of which, and the obligations of the parties thereto, may differ substantially from the terms, conditions, provisions and obligations in this Agreement, including a higher percentage Royalty Fee and advertising contribution or expenditure, and a different or modified Protected Area;

2.2.9    Upon execution of the then-current form of franchise agreement, Franchisee also shall pay a Promotional Fee (defined below) of the higher of (1) $10,000 or (2) an amount equal to the Promotional Fee then being charged to new franchisees; and

2.2.10   Franchisee and its personnel shall comply with Del Taco's then current qualification and training requirements, prior to commencement of operations under the renewal form of franchise agreement.

2.3    <u>No assurances of a renewal franchise agreement</u>.  Franchisee accepts this Agreement with the full and complete understanding that the grant of rights to operate a Franchise hereunder is not a promise or assurance that Franchisee will be granted a renewal franchise agreement.

4

## 3. Fees and Payments.

**3.1** <u>Franchise Fee</u>. Franchisee shall pay Del Taco an initial franchise fee of $35,000, upon execution of this Agreement. Except as otherwise stated in this Agreement, as between Franchisee and Del Taco the Franchise Fee is fully-earned and non-refundable in consideration of the administrative and other expenses incurred by Del Taco in granting this franchise and for Del Taco's lost or deferred opportunity to offer the rights to this franchise to others.

**3.2** <u>Promotional Fee</u>. Franchisee shall pay Del Taco a fee of $10,000 (the "**Promotional Fee**") upon execution of this Agreement. The Promotional Fee shall be drawn upon by Franchisee through reimbursements submitted to Del Taco in the manner that Del Taco designates or through direct payments by Del Taco to vendors in order to promote the Restaurant within a year of the Restaurant's opening. Franchisee shall not contract for nor make any expenditures related to the promotion of the Restaurant unless Franchisee has submitted a request and received the written approval of Del Taco. Franchisee shall submit invoices for promotional expenditures to Del Taco for direct payment to the vendor or for reimbursement. Del Taco shall not pay or reimburse food or paper costs. Del Taco shall not have any obligation to refund any portion of the Promotional Fee for any reason. If Franchisee fails to spend all of the Promotional Fee within 12 months after the opening of the Restaurant, Franchisee shall forfeit the unused portion of the fee and Del Taco shall apply it toward Del Taco's general advertising or marketing programs.

**3.3** <u>Royalty Fees</u>. During the initial term of this Agreement, Franchisee shall pay Del Taco a continuing royalty fee in an amount equal to five percent (5%) of the Restaurant's Net Sales ("**Royalty Fees**"). Franchisee shall pay the Royalty Fees monthly by the fifteenth (15th) day of each month, based on the Net Sales of the Restaurant for the immediately preceding month, or for such other period as Del Taco may specify in the Manuals or otherwise in writing.

**3.3.1** "**Net Sales**" means all revenue from the sale of all products, including all Menu Items and all other products or services offered at or from the Restaurant, and all other income of every kind and nature related to, derived from, or originating from the Restaurant, including proceeds of any business interruption insurance policies, whether at retail, delivery, catering, or wholesale (whether such sales are permitted or not), whether for cash, check, or credit, and regardless of collection in the case of check or credit; provided, however, that "Net Sales" excludes any customer refunds, discounts from coupon sales, sales taxes, and/or other taxes collected from customers by Franchisee and actually transmitted to the appropriate taxing authorities. Del Taco reserves the right to modify its policies and practices regarding revenue recognition, revenue reporting, and the inclusion or exclusion of certain revenue from "Net Sales" as circumstances, business practices, and technology change.

**3.3.2** The term "**Sales Week**" means the period starting with the commencement of business on Monday and concluding at the close of business on the following Sunday (or, if the Restaurant is not open on a Sunday, the immediately preceding business day); however, Del Taco shall designate in writing any other period of not less than seven days to constitute a "Week" under this Agreement.

**3.4** <u>Marketing Fee</u>. Franchisee shall pay to Del Taco a marketing fee equal to 4% of the Restaurant's Net Sales (the "**Marketing Fee**"). Del Taco reserves the right, upon prior written notice to Franchisee, to increase the Marketing Fee to the then-current fee that it charges new franchisees. Franchisee shall pay the Marketing Fee monthly by the fifteenth (15th) day of each month, based on the Net Sales of the Restaurant for the immediately preceding month, or for such other period as Del Taco may specify in the Manuals or otherwise in writing. Del Taco expressly reserves the right to change the due date of the Marketing Fee upon ten (10) days' prior written notice to Franchisee.

3.5 <u>Continuing Payments, EFT, and Reporting Obligations.</u> All payments required by Sections 3.3 and 3.4 based on the Net Sales for the preceding month (or for such other period as Del Taco may specify in the Manuals or otherwise in writing), shall be paid and submitted by electronic funds transfer so as to be received by Del Taco by the fifteenth (15th) day of each month. Franchisee shall execute a form of electronic funds transfer ("**EFT**" authorization (in the form attached as Exhibit C to this Agreement or such other form that Del Taco designates) for direct debits from Franchisee's business bank operating account. Franchisee shall deliver to Del Taco any and all reports, statements and/or other information required under Section 7 below, at the time and in the format reasonably requested by Del Taco, which may include electronically polled data from Franchisee's Point of Sale system. Franchisee shall comply with the payment and reporting procedures specified by Del Taco in this Agreement and the Manuals. To ensure that payments are received by Del Taco on as timely basis, such policies and procedures may require that Franchisee have sufficient funds in its account by a date certain, as the EFT process may sweep such account the day before for payment on the preceding day. Franchisee's obligations for the full and timely payment of Royalty Fees and Marketing Fees, and all other amounts provided for in this Agreement, shall be absolute, unconditional, fully earned, and due upon Franchisee's generation of Net Sales. Franchisee shall not for any reason delay or withhold the payment of all or any part of those or any other payments due hereunder, put the same in escrow or set off same against any claims or alleged claims Franchisee may allege against Del Taco or others. Franchisee shall not, on grounds of any alleged nonperformance by Del Taco or others, withhold payment of any fee, including Royalty Fees or Marketing Fees, nor withhold or delay submission of any reports due hereunder. Del Taco reserves the right to change the due date of any fees upon ten (10) days' prior written notice to Franchisee.

3.6 <u>No Subordination.</u> Franchisee shall not subordinate to any other obligation its obligation to pay Del Taco the Royalty Fees and/or any other fee or charge payable to Del Taco, whether under this Agreement or otherwise.

3.7 <u>Overdue Payments and Reports; Interest.</u> Any payment or report not actually received by Del Taco on or before the date such payment or report is due shall be deemed overdue. If any payment or report is overdue, Franchisee shall pay Del Taco, in addition to the overdue amount, a late payment/late report charge of one hundred dollars ($100) for each week or part thereof that the payment or report is late, and interest on such amount from the date it was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less. Entitlement to such interest shall be in addition to any other remedies Del Taco may have.

3.8 <u>Payments on Behalf of Franchisee.</u> Franchisee shall pay to Del Taco, within fifteen (15) days of any written request by Del Taco which is accompanied by reasonable substantiating material, any monies which Del Taco has paid, or has become obligated to pay, on behalf of Franchisee, by consent or otherwise under this Agreement.

3.9 <u>Other Payments.</u> All payments and fees owed by Franchisee to Del Taco shall be paid by Franchisee in the manner and within the time periods as provided for in this Agreement or in the Manuals. Del Taco reserves the right to collect all fees and payments due by Franchisee by EFT as provided for in Section 3.5 or otherwise in the Manuals.

3.10 <u>No Refunds.</u> Upon the expiration or termination of this Agreement, Del Taco shall not refund any amounts paid pursuant to this Agreement for any reason whatsoever.

**4. Services By Del Taco.**

4.1 <u>Development of the Restaurant</u>. Deleted As Not Applicable.

6

4.2     Initial and Ongoing Assistance. Prior to the Restaurant opening, Del Taco shall provide to Franchisee, its Operating Principal (as defined in Section 5.27.4.1 below), Restaurant Manager (as defined in Section 5.27.4.3 below), Shift Managers (as defined in Section 5.27.4.4 below) and to such of Franchisee's other employees of which Del Taco shall approve for training, such training programs as Del Taco may designate, to be conducted at such time(s) and location(s) designated by Del Taco.  Del Taco shall also provide such ongoing training as it may, from time to time, deem appropriate.  Del Taco shall be responsible for the cost of instruction and materials, subject to the terms set forth in Section 5.4.7 below.

4.3     Opening Assistance.  Deleted As Not Applicable

4.4     Manuals.  Del Taco shall loan or otherwise provide Franchisee access to Del Taco's confidential Standard Operating Procedures Manual and other manuals (the "Manuals"), which may be revised from Del Taco from time to time.

4.5     Merchandising and Marketing Advice. Del Taco shall provide Franchisee such merchandising, marketing and other related advice as Del Taco deems advisable and as Del Taco may develop from time to time.

4.6     Ongoing Assistance.  Del Taco shall provide such periodic individual or group advice, consultation and assistance, rendered by personal visit, telephone, mail or e-mail and made available from time to time as Del Taco deems advisable at the time(s) and in the manner determined by Del Taco.

4.7     Bulletins and Reports. Del Taco shall provide Franchisee such bulletins, intranet information, brochures and reports published by Del Taco from time to time as Del Taco deems advisable regarding its plans, policies, research, developments and activities.

4.8     Computer System. Del Taco shall have the right to specify or require that certain brands, types, makes, and/or models of communications, computer systems, kitchen display systems and hardware to be used by, between, or among Restaurants, including:  (a) back office and point of sale systems, data, audio, video, and voice storage, retrieval, and transmission systems for use at Franchisee's Restaurant, between or among Restaurants, and between and among Franchisee's Restaurant and Del Taco and/or Franchisee; (b) physical, electronic, and other security systems; (c) printers and other peripheral devices; (d) archival back-up systems; (e) e mail systems; and (f) Internet access mode and speed (collectively, the "**Computer System**").

4.9     Inspection. Del Taco shall inspect the Restaurant prior to the opening of the Restaurant. Franchisee shall not commence operation of the Restaurant without Del Taco's prior written approval.

4.10    Delegation of Duties. Franchisee acknowledges and agrees that any designee, employee, or agent of Del Taco may perform any duty or obligation imposed on or available to Del Taco by the Agreement, as Del Taco may direct.

**5.     Obligations of Franchisee; Operational Standards.**

5.1     System Standards and Development of Restaurant.  Deleted As Not Applicable

5.2     Pre-Opening Obligations.  Before commencing any construction of the Restaurant, Franchisee, at its expense, shall comply, to Del Taco's satisfaction, with all of the following requirements:

5.2.1    Deleted As Not Applicable.

7

DocuSign Envelope ID: 5A534594-F377-45B1-8367-FF564125FF58

5.2.2    Franchisee shall comply, at Franchisee's expense, with all federal, state and local laws, codes and regulations, including the applicable provisions of the ADA regarding the construction, design and operation of the Restaurant.

5.2.3    Deleted As Not Applicable.

5.2.4    Deleted As Not Applicable.

5.2.5    Deleted As Not Applicable.

5.2.6    Prior to signing a lease, Franchisee shall submit to Del Taco a final draft of the lease for the Restaurant premises.  The lease must contain the provisions contained in Exhibit G (Addendum to Lease) hereof and be approved in writing by Del Taco prior to Franchisee's signing of the final lease.  Within fifteen (15) days following Franchisee's execution of the lease for the Restaurant premises, Franchisee shall provide to Del Taco copies of (i) the fully-executed lease for the premises and the executed Addendum to Lease and (ii) the landlord's and property management company's notice address and contact information.  Further, not later than ten (10) days following Franchisee's opening of the Restaurant for business, Franchisee shall provide Del Taco with a copy of the commencement date letter from the landlord, or similar documentary evidence which indicates the commencement date under the lease and the expiration date of the lease.

5.3    <u>Restaurant Opening</u>.  Deleted As Not Applicable.

5.3.1    Franchisee shall not open the Restaurant for business without first complying with all of Del Taco's pre-opening requirements and obligations contained in this Agreement and the Manuals.

5.3.2    Franchisee shall draw upon the Promotional Fee as described in Section 3.2 to conduct such grand opening and promotional activities as Del Taco may require.

5.3.3    Franchisee shall not open the Restaurant until Del Taco has determined that all construction has been substantially completed, and that such construction conforms to Del Taco's standards including materials, quality of work, signage, decor, paint, and equipment.

5.3.4    Franchisee shall not open the Restaurant until the Operating Principal, the Restaurant Manager and the Shift Managers have successfully completed all training required by Del Taco, and Franchisee has hired and trained to Del Taco's standards a sufficient number of employees to service the anticipated level of the Restaurant's customers.

5.3.5    In addition, Franchisee shall not open the Restaurant until all amounts due to Del Taco under this Agreement or any other related agreements have been paid.

5.4    <u>Training</u>.  Franchisee acknowledges that its owners and managers must be knowledgeable regarding the operation of Del Taco Restaurants, including the preparation and delivery of Menu Items and the provision of customer service in accordance with the brand standards established by Del Taco, which may be modified by Del Taco from time to time.  Franchisee acknowledges that successful completion of Del Taco's training programs by Franchisee's owners and managers is critical to properly own, operate and manage the Restaurant.  Franchisee acknowledges that applicable laws and regulations require that at least one person on the staff at a food service business must satisfactorily complete state and/or local mandated food handling training, and be certified as having successfully completed the training.  Franchisee and at least one of its employees that attend Del Taco's management training program must also successfully

8

complete a state and/or local mandated food handling program before commencing training with Del Taco, and Franchisee and each trainee must provide a certificate of successful completion of such program prior to commencing training. Also, Franchisee's employees must be covered by Franchisee's workers' compensation insurance policy prior to commencing training with Del Taco, and Franchisee must provide evidence of such coverage if requested by Del Taco. With regard to training, at least seven individuals must attend and successfully complete Del Taco's training programs: the Franchisee's Operating Principal, one (1) full-time Restaurant Manager, and at least five (5) Shift Managers (collectively, the "**Franchisee's Principal Trainees**").

     5.4.1   <u>Initial Training</u>. Prior to the opening of the Restaurant, the Franchisee's Principal Trainees, and such other employees of Franchisee who Del Taco shall have the right to approve, shall attend and successfully complete, to Del Taco's satisfaction, the initial training program offered by Del Taco. All aspects of the Franchised Business shall be conducted under the management and supervision of the Operating Principal. In addition, the daily operations of the Restaurant shall be supervised under the active full-time management of the Operating Principal or Restaurant Manager who has successfully completed (to Del Taco's satisfaction) Del Taco's initial training program.

     5.4.2   <u>Operating Principal and Restaurant Manager</u>. If the Operating Principal or the Restaurant Manager cease active management of or employment at the Restaurant, Franchisee shall enroll a qualified replacement (who shall be reasonably acceptable to Del Taco) in Del Taco's initial training program not more than thirty (30) days after the cessation of the former person's full-time employment and/or management responsibilities. The replacement shall attend and successfully complete the basic management training program, to Del Taco's reasonable satisfaction, as soon as it is practical to do so. Franchisee shall pay Del Taco's then-current training fees and per diem expenses.

     5.4.3   <u>Refresher Training</u>. If Franchisee is in default of this Agreement, the Franchisee's Principal Trainees may also be required to attend such refresher courses, seminars, and other training programs as Del Taco may reasonably specify from time to time, including up to twenty (20) days of refresher programs each year during the term of the Agreement. In addition, such of the Franchisee's Principal Trainees as Del Taco may require, may be required to attend Del Taco's annual convention for up to three (3) days per year.

     5.4.4   <u>Pre-Opening Crew Training</u>. Deleted As Not Applicable.

     5.4.5   <u>Continuing Management and Crew Training</u>. After the Restaurant has opened, Del Taco may, at its option, assist Franchisee in the training of management and crew to promote the proper use of the System. Franchisee at all times shall maintain at least one certified Restaurant Manager in the Restaurant and shall have a combination of nine additional Shift Managers trained and certified by Del Taco for the Restaurant. If Del Taco has given Franchisee written consent to operate the Restaurant less than 24 hours each day, Franchisee shall have a minimum of eight Shift Managers (inclusive of the Restaurant Manager) trained and certified by Del Taco for the Restaurant. Franchisee shall have sole authority and discretion regarding all employment matters, including hiring, firing, discipline, compensation, benefits, and scheduling. Franchisee is solely responsible for ensuring its managers and employees are adequately trained and supervised. Del Taco shall make training available to all future management employees of Franchisee. Every future manager must complete, to Del Taco's satisfaction, the pre-opening management training described in Section 5.4 above, and receive certification by Del Taco. If a Restaurant Manager's position becomes vacant, Franchisee shall fill the vacancy within 60 days with a fully-trained and certified Restaurant Manager.

     5.4.6   <u>Training costs</u>. The cost of all initial training instruction and required materials shall be borne by Del Taco. All other expenses incurred in connection with training and, if required,

9

DocuSign Envelope ID: 5A534594-F377-4581-8367-FE654124FF53

attendance at Del Taco's annual convention, including the costs of transportation, lodging, meals, wages, workers' compensation insurance and trainees' meals during training sessions, for Franchisee, its investors, and all of its employees, shall be borne by Franchisee.

        5.4.7   <u>Additional Training.</u> If Franchisee requests that Del Taco provide on-site training in addition to that described in this Section 5.4, and Del Taco is able to do so, then Franchisee agrees that it shall pay Del Taco's then-current per diem charges and out-of-pocket expenses, which shall be as set forth in the Manual or otherwise in writing.

        5.5   <u>Restaurant Premises.</u> Franchisee shall use the Restaurant premises solely for the operation of the Restaurant; shall keep the Restaurant open and in normal operation for such hours and days as Del Taco may from time to time specify in the Manuals or as Del Taco may otherwise approve in writing; and shall refrain from using or permitting the use of the Restaurant premises for any other purpose or activity at any time. As used in this Section 5.5, the term "premises" shall include the grounds surrounding the Restaurant. Franchisee shall comply with all terms and conditions of the lease for the Restaurant, and shall provide Del Taco with copies of all notices of default or breach of the lease, notices regarding the renewal or extension of the lease, and all other notices or correspondence related to Franchisee compliance with lease and Franchisee's right to remain in possession of the premises.

        5.6   <u>Personnel.</u> Franchisee agrees to maintain a competent, conscientious, trained staff in numbers sufficient to promptly service customers, including at least one (1) Shift Manager on duty at all times and to take such steps as are necessary to ensure that its employees preserve good customer relations and comply with such dress code as Del Taco may prescribe. Franchisee shall comply with all applicable employment and wage and hour laws and regulations. Franchisee is solely responsible for all employment decisions and functions of the Restaurant including those related to hiring, firing, training, compliance with wage and hour requirements, personnel policies, scheduling, benefits, recordkeeping, supervision, and discipline of employees, regardless of whether Franchisee receives advice from Del Taco on these subjects. Franchisee acknowledges and agrees that all personnel decisions, including hiring, firing, disciplining, compensation, benefits, and scheduling, shall be made by Franchisee, without any influence or advice from Del Taco, and such decisions and actions shall not be, nor be deemed to be, a decision or action of Del Taco. Further, it is the intention of the parties to this Agreement that Del Taco shall not be deemed an employer or joint employer with Franchisee or Franchisee's employees for any reason. If Del Taco incurs any cost, loss, or damage as a result of any actions or omissions of Franchisee or Franchisee's employees, including any that relate to any party making a finding of any joint employer status, Franchisee will fully indemnify Del Taco for such loss.

        5.7   <u>Health Standards.</u> Franchisee shall meet and maintain the highest health standards and ratings applicable to the operation of the Restaurant. Franchisee shall furnish to Del Taco, within five (5) days after receipt thereof, a copy of all inspection reports, warnings, citations, certificates, and/or ratings resulting from inspections conducted by any federal, state or municipal agency with jurisdiction over the Restaurant. Without limiting the foregoing, Franchisee and all required personnel shall obtain and maintain all necessary and required licenses and certificates for food service and food handling as may be required by applicable local rules and regulations and/or the Manual, at Franchisee's sole expense.

        5.8   <u>Restaurant Maintenance.</u> Franchisee shall at all times maintain the Restaurant in a high degree of sanitation, repair, and condition, and in connection therewith shall make such additions, alterations, repairs, and replacements thereto (but no others without Del Taco's prior written consent) as may be required for that purpose, including such periodic repainting or replacement of obsolete signs, furnishings, equipment, and decor as Del Taco may reasonably direct.

10

5.9    Remodeling.  Del Taco shall have the right (the "**Remodel Right**") to require Franchisee to perform such remodeling, repairs, replacements and redecoration in and upon the premises and equipment as Del Taco may deem necessary and practical to bring the premises and equipment up to the then-current operational standards and image of Del Taco (an "Image Enhancement").  Del Taco may exercise its Remodel Right upon (a) the expiration of every ten-year period following the opening of the Restaurant for business with the public (the expenditure required to remodel the Restaurant shall be capped at $250,000 indexed pursuant to the Consumer Price Index (CPI)); (b) the sale, assignment, transfer or encumbrance (collectively, the "Transfer") of the Restaurant, any of the rights created by this Agreement, any part of the System, or any other interest created under this Agreement, including if Franchisee is a legal entity, the sale, resale, pledge, assignment, transfer or encumbrance of any ownership interest in Franchisee that, alone or together with any other related, previous, simultaneous or proposed transfers, would result in a change in "control" of Franchisee within the meaning of the Securities Act of 1933, as amended, and the rules and regulations promulgated under that act, or a Transfer of a Restaurant from Del Taco, its affiliate, or another franchisee; or (c) the issuance of a successor franchise agreement.  If Del Taco chooses to exercise its Remodel Right upon the occurrence of a Transfer, then, after the Transfer, Del Taco may exercise its Remodel Right upon the occurrence of any of the following events: (a) the expiration of every ten-year period following the Transfer; (b) a subsequent Transfer; or (c) the issuance of a successor franchise agreement.  Del Taco reserves the right to designate type and scheduling of the refurbishing, remodeling and/or renovation referred to above.  If Franchisee at any time deems it necessary and practical to replace any equipment or repair or remodel the premises or take any similar action, Franchisee shall perform the replacement, repairs or remodeling in accordance with Del Taco's then-current standards and specifications.  The obligations imposed under this Section 5.9 supplement any obligation to maintain, restore or repair the premises imposed under any lease or sublease with respect to the Restaurant.

5.10    Franchisee Advisory Council.  Del Taco has established or shall have the right to establish a franchisee advisory council or similar advisory group, for the purpose of fostering communication among and between franchisees and Del Taco, as well as to establish, modify or discuss various practices or policies applicable to Del Taco Restaurants.  Franchisee may be required to participate in such franchisee advisory council meetings and programs as Del Taco shall designate.  Franchisee may be required to pay such dues to the franchisee advisory council as Del Taco shall determine. Del Taco may modify or dissolve the franchisee advisory council at any time.

5.11    Equipment Upgrades.  In addition to Facilities Remodeling, Franchisee shall make, from time to time, such upgrades and other changes to the kitchen equipment and electronic equipment utilized in the Restaurant and the Computer System as Del Taco may request in writing (and as also specified above) (collectively, "**Equipment Upgrades**").  Del Taco shall have the right to require any Equipment Upgrades it deems necessary for Franchisee's Restaurant.

5.12    Standards and Specifications.  To ensure that the highest degree of quality and service is maintained, Franchisee shall operate the Restaurant in strict conformity with such methods, standards, and specifications as Del Taco may from time to time prescribe in the Manuals or otherwise in writing. Franchisee agrees:

5.12.1    To maintain in sufficient supply, and to use and/or sell at all times only such products, ingredients, materials, supplies, and paper goods as conform to Del Taco's written standards and specifications, and to refrain from deviating therefrom by the use or offer of any non-conforming items without Del Taco's specific prior written consent.

5.12.2    To sell or offer for sale only such products as have been expressly approved for sale in writing by Del Taco; to sell or offer for sale all such products, utilizing the ingredients and employing the preparation standards and techniques, as specified by Del Taco; to refrain from any deviation from Del

11

Taco's standards and specifications, including the manner of preparation of products, without Del Taco's prior written consent; and to discontinue selling and offering for sale any products which Del Taco shall have the right to disapprove, in writing, at any time.

5.12.3   To permit Del Taco or its agents, at any reasonable time, to remove samples of products, without payment therefor, in amounts reasonably necessary for testing by Del Taco or an independent laboratory to determine whether said samples meet Del Taco's then current standards and specifications.  In addition to any other remedies it may have under this Agreement, Del Taco may require Franchisee to bear the cost of such testing if the supplier of the item has not previously been approved by Del Taco or if the sample fails to conform to Del Taco's specifications.

5.12.4   To purchase and install, at Franchisee's expense, all fixtures, kitchen display systems, furnishings, equipment, decor, and signs as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any fixtures, furnishings, equipment, decor, signs, or other items not previously approved as meeting Del Taco's standards and specifications.

5.12.5   To refrain from installing or permitting to be installed any vending machine, game or coin operated device, unless specifically approved in writing, in advance, by Del Taco.

5.12.6   To fully and faithfully comply with all applicable governing authorities, laws and regulations.  Franchisee shall immediately close the Restaurant and terminate operations in the event that: (i) any products sold at the Restaurant evidence adulteration or deviation from the standards set for products by Del Taco; (ii) any products sold at the Restaurant fail to comply with applicable laws or regulations; or (iii) Franchisee fails to maintain the products, Restaurant premises, equipment, personnel, or operation of the Restaurant in accordance with any applicable law or regulations.   In the event of such closing, Franchisee shall immediately notify Del Taco in writing and Franchisee shall destroy immediately in accordance with procedures set forth in the Manual, or otherwise in writing by Del Taco, all products which it knows, or should know through the exercise of reasonable care, to be adulterated, tainted, contaminated, spoiled, unsafe, or otherwise unfit for human consumption and eliminate the source thereof, and remedy any unsanitary, unsafe, or other condition or other violation of the applicable law or regulation.  Franchisee shall not reopen the Restaurant until after Del Taco has inspected the Restaurant premises, and Del Taco has determined that Franchisee has corrected the condition and that all products sold at the Restaurant comply with Del Taco's standards.

5.13   Suppliers.  Franchisee shall purchase all products, ingredients, supplies, materials, and other products used or offered for sale at the Restaurant solely from suppliers that Del Taco has approved in writing.  In determining whether it will approve any particular supplier, Del Taco shall consider various factors, including a supplier who can demonstrate, to Del Taco's continuing reasonable satisfaction, the ability to meet Del Taco's then current standards and specifications for such items; who possesses adequate quality controls and capacity to supply Franchisee's needs promptly and reliably; who would enable the System, in Del Taco's sole opinion, to take advantage of marketplace efficiencies; and who has been approved in writing by Del Taco prior to any purchases by Franchisee from any such supplier, and have not thereafter been disapproved.  For the purpose of this Agreement, the term "supplier" shall include, but not be limited to, manufacturers, distributors, resellers, and other vendors.  Franchisee recognizes that Del Taco shall have the right to appoint only one manufacturer, distributor, reseller, and/or other vendor for any particular item, and that Del Taco may so designate itself or its affiliate.

5.13.1   If Franchisee wishes to purchase any products or any items from an unapproved supplier, Franchisee shall first submit to Del Taco a written request for such approval.  Franchisee shall not purchase any products or services from any supplier until, and unless, such supplier has been approved in

12

writing by Del Taco. Del Taco shall have the right to require that its representatives be permitted to inspect the supplier's facilities, and that samples from the supplier be delivered, either to Del Taco or to an independent laboratory designated by Del Taco for testing. A charge not to exceed the reasonable cost of the inspection and the actual cost of the test shall be paid by Franchisee or the supplier. Del Taco may also require that the supplier comply with such other requirements as Del Taco may deem appropriate, including payment of reasonable continuing inspection fees and administrative costs, or other payment to Del Taco by the supplier on account of their dealings with Franchisee or other franchisees, for use, without restriction (unless otherwise instructed by the supplier) and for services that Del Taco may render to such suppliers. Del Taco reserves the right, at its option, to reinspect from time to time the facilities and products of any such approved supplier and to revoke its approval upon the supplier's failure to continue to meet any of Del Taco's then current criteria.

      5.13.2   Nothing in the foregoing shall be construed to require Del Taco to approve any particular supplier, nor to require Del Taco to make available to prospective suppliers, standards and specifications for formulas, which Del Taco shall have the right to deem confidential.

      5.13.3   Notwithstanding anything to the contrary contained in this Agreement, Franchisee acknowledges and agrees that, at Del Taco's sole option, Del Taco may establish one or more strategic alliances or preferred vendor programs with one or more nationally or regionally-known suppliers who are willing to supply all or some Restaurants with some or all of the products and/or services that Del Taco requires for use and/or sale in the development and/or operation of Restaurants. In this event, Del Taco may limit the number of approved suppliers with whom Franchisee may deal, designate sources that Franchisee must use for some or all products and other products and services, and/or refuse any of Franchisee's requests if Del Taco believes that this action is in the best interests of the System or the franchised network of Restaurants. Del Taco shall have unlimited discretion to approve or disapprove of the suppliers who may be permitted to sell products to Franchisee.

      5.13.4   Franchisee acknowledges and agrees that Del Taco shall have the right to collect and retain all manufacturing allowances, marketing allowances, rebates, credits, monies, payments or benefits (collectively, "**Allowances**") offered by suppliers to Franchisee or to Del Taco or its affiliates based upon Franchisee's purchases of products and other goods and services. These Allowances are based on System-wide purchases of food, beverages, paper goods, merchandise and other items. Franchisee assigns to Del Taco or its designee all of Franchisee's right, title and interest in and to any and all such Allowances and authorizes Del Taco or its designee to collect and retain any or all such Allowances without restriction (unless otherwise instructed by the supplier); provided, however, that Del Taco's current policy is to utilize such funds for purposes that Del Taco believes, in its sole discretion, may enhance the "Del Taco" brand and/or public awareness of the brand.

      5.13.5   Franchisee shall comply with all terms, conditions, and obligations of all contracts and arrangements with suppliers, including contracts and arrangements negotiated by Del Taco or third parties as part of a network or multiple-franchise or multiple-restaurant supply and distribution arrangement, and Franchisee's contracts with and obligations to suppliers. Franchisee shall promptly pay all suppliers in accordance with the agreed-upon terms. In the event Franchisee fails to promptly pay one or more suppliers as required, Del Taco may, but is not required to, pay such supplier(s) on behalf of Franchisee, and Franchisee shall promptly reimburse Del Taco for such payment following notice from Del Taco, or Del Taco may obtain payment through the EFT process described in Section 3.5 above and the Manuals.

      5.13.6   Del Taco reserves the right to designate, specify and/or approve the manufacturer and/or supplier of all signs used or installed at the Restaurant (the "Sign Manufacturer").

13

5.14    <u>Inspections</u>.  Franchisee grants Del Taco and its agents the right to enter upon the Restaurant premises at any time for the purpose of conducting inspections, for among other purposes, preserving validity of the Proprietary Marks, and verifying Franchisee's compliance with this Agreement and the policies and procedures outlined in the Manuals.  Del Taco shall also have the right to take and maintain photographs and videos, in any medium, of the Restaurant and the operations at the Restaurant. Franchisee shall cooperate with Del Taco's representatives in such inspections by rendering such assistance as they may reasonably request; and, upon notice from Del Taco or its agents and without limiting Del Taco's other rights under this Agreement, Franchisee shall take such steps as may be necessary to correct immediately any deficiencies detected during any such inspection.  Franchisee shall reimburse Del Taco for all of Del Taco's costs and expenses, including labor and travel expenses, incurred in conducting all such follow-up inspections after the first follow-up inspection.  Del Taco may also assess a reinspection fee of $500 per visit, in addition to a reimbursement of costs.  Franchisee shall make such payments within fifteen (15) days of receipt of an invoice from Del Taco, or Del Taco may elect to obtain payment through the EFT provisions of Section 3.5.

5.15    <u>Technology and Computer System</u>.  At Del Taco's request, Franchisee shall purchase or lease, and thereafter maintain, the Computer System, and comply with Del Taco's requirements, specifications and policies concerning the use of technology, as they may be specified in this Agreement, or specified or modified in the Manuals or otherwise in writing.

5.15.1  Del Taco shall have the right at any time to retrieve and use such data and information from Franchisee's Computer System that Del Taco deems necessary or desirable.  In view of the contemplated interconnection of computer systems and the necessity that such systems be compatible with each other, Franchisee expressly agrees that it shall strictly comply with Del Taco's standards and specifications for all item(s) associated with Franchisee's Computer System, and will otherwise operate its Computer System in accordance with Del Taco's standards and specifications.  To ensure full operational efficiency and optimum communication capability between and among equipment and computer systems installed by Franchisee, Del Taco, and other franchisees, Franchisee agrees, at its expense, that Franchisee shall keep its Computer System in good maintenance and repair, and, at its expense, and following the determination that Del Taco shall have the right to make, to the effect that same will prove economically or otherwise beneficial to all System franchisees, that Franchisee shall promptly install such additions, changes, modifications, substitutions and/or replacement to Franchisee's computer hardware, software, telephone and power lines, and other related facilities, as Del Taco directs periodically in writing. Franchisee shall provide to Del Taco, upon Del Taco's request, all e mail lists and customer lists used or maintained by Franchisee on the Computer System or elsewhere.

5.15.2  Del Taco has the right, but not the obligation, to develop or have developed for it, or to designate, any or all of the following:  (a) computer software programs and accounting system software that Franchisee must use in connection with the Computer System ("Required Software"), which Franchisee must install; (b) updates, supplements, modifications, or enhancements to the Required Software, which Franchisee must install; (c) the tangible media upon which such Franchisee must record or receive data; (d) the database file structure of Franchisee's Computer System; (e) an Extranet for informational assistance, which may include the Manuals, training other assistance materials, and management reporting solutions; and (f) answering service requirements and/or system-wide phone order processing of all delivery orders, and/or to designate vendors that will provide such order processing.

5.15.3  Franchisee agrees to install and use the Computer System and Required Software in the manner that Del Taco requires.

14

5.15.4   Franchise agrees to implement and periodically upgrade and make other changes to the Computer System and Required Software as Del Taco may reasonably request in writing (collectively, "**Computer Upgrades**").

5.15.5   Franchisee agrees to comply with Del Taco's written specifications (whether in the Manuals or otherwise) with respect to the Computer System and the Required Software, and with respect to Computer Upgrades, at Franchisee's own expense.

5.15.6   Franchisee agrees to afford Del Taco unimpeded access to its Computer System and Required Software in the manner, form, and at the times that Del Taco requests.

5.15.7   Because changes to technology are dynamic and not predictable within the term of this Agreement, and in order to provide for inevitable but unpredictable changes to technological needs and opportunities, Franchisee agrees:  (a) that Del Taco will have the right to establish, in writing, reasonable new standards to address new technologies, whether published in the Manuals or otherwise in writing, and that Del Taco has the right to implement those changes in technology into the System; and (b) to abide by Del Taco's reasonable new standards as if this Section 5.15, and other technology provisions in this Agreement, were periodically revised for that purpose.

5.16   <u>Customer Data</u>.  Franchisee agrees that all data that it collects from customers and potential customers in connection with the Franchised Business ("**Customer Data**") is deemed to be owned exclusively by Del Taco, and Franchisee also agrees to provide the Customer Data to Del Taco at any time that Del Taco requests.  Franchisee has the right to use Customer Data while this Agreement or a successor or renewal Franchise Agreement is in effect, but only in connection with operating the Restaurant and only in accordance with the policies that Del Taco establishes from time to time.  Franchisee may not sell, transfer, or use Customer Data for any purpose other than operating the Restaurant and marketing "Del Taco brand" products and services.  However, if Franchisee Transfers the Restaurant (as provided in Section 12.3 below), as part of the Transfer, Franchisee must also Transfer use of the Customer Data to the buyer as part of the total purchase price paid for the Restaurant.  Franchisee must secure from its vendors, customers, prospective customers, and others all consents and authorizations, and provide them all disclosures, that applicable law requires to transmit the Customer Data to Del Taco and its affiliates and for Del Taco and its affiliates to use that Customer Data in the manner that this Agreement contemplates.

5.17   <u>Privacy Laws</u>.  Franchisee agrees to abide by all applicable laws pertaining to the privacy of consumer, employee, and transactional information ("**Privacy Laws**").

5.17.1   Franchisee agrees to comply with Del Taco's standards and policies pertaining to Privacy Laws.  If there is a conflict between Del Taco's standards and policies pertaining to Privacy Laws and actual applicable law, Franchisee shall: (i) comply with the requirements of applicable law; (ii) immediately give Del Taco written notice of said conflict; and (iii) promptly and fully cooperate with Del Taco and its counsel in determining the most effective way, if possible, to meet its standards and policies pertaining to Privacy Laws within the bounds of applicable law.

5.17.2   Franchisee agrees not to publish, disseminate, implement, revise, or rescind a data privacy policy without Del Taco's prior written consent as to said policy.

5.17.3   For purposes of this Section 5.17, "**Personal Information**" means Customer Data and any other information that is received from Del Taco, or collected on Del Taco's behalf, that identifies, relates to, describes, is capable of being associated with, or is linked or could reasonably be linked, directly or indirectly, with a particular consumer or household, and including particular elements of "personal information" as defined under Cal. Civ. Code § 1798.140.

15

DocuSign Envelope ID: 5A534594-E37A-45B1-8367-FF854124FF58

Case 22-11824-KBO Doc 1571 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities In Support of Exhibit 45 Page 1262 of 1376

5.17.4    With regard to Personal Information that Franchisee may collect, receive, or otherwise process as a result of any agreements between Franchisee and Del Taco (or its subsidiaries or affiliates), including this Agreement, Franchisee agrees and certifies that it will:

5.17.4.1    Process Personal Information only for the limited and specified purposes of providing services requested by Del Taco.

5.17.4.2    Notify Del Taco, and provide Del Taco with the ability to object, before transmitting Personal Information to a service provider, sub-processor, subcontractor, or other vendor.

5.17.4.3    Require any service provider, sub-processor, subcontractor, or other vendor that receives Personal Information to agree to provisions materially similar to those found within this Section 5.17.

5.17.4.4    Cooperate and assist Del Taco with responding to any request from an individual to exercise their rights under a data privacy or data security law or regulation.

5.17.4.5    Comply with all applicable data privacy and data security laws including, but not limited to, Cal. Civ. Code 1798.100. et seq.

5.17.4.6    Notify Del Taco if it believes that it can no longer meet the obligations of this Section 5.17.

5.17.4.7    Implement and maintain reasonable and appropriate security procedures and practices designed to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure.

5.17.4.8    Notify Del Taco immediately after becoming aware of any loss, unauthorized, or unlawful processing, destruction, damage, alteration, or unauthorized disclosure of, or access to, the Personal Information (a "**Security Breach**"), and cooperate with Del Taco in the event of a Security Breach, including by sharing information relevant to the Security Breach.

5.17.4.9    Allow and contribute to reasonable audits by Del Taco, including inspections by the Del Taco or its auditor, to verify Franchisee's compliance with data processing and security obligations and applicable data protection statutes and regulations.

5.17.5    Franchisee further agrees and certifies that it will not:

5.17.5.1    Sell, rent, release, disclose, disseminate, make available, transfer, or otherwise communicate orally, in writing, or by electronic or other means, Personal Information to another business or a third party for monetary or other valuable consideration.

5.17.5.2    Retain, use, disclose, collect, sell, or otherwise process Personal Information for any purpose other than for the specific purpose of, and as necessary for, performing services for Del Taco pursuant to a written agreement(s). For clarity, Franchisee may not retain, use, or disclose the Personal Information for any other commercial purposes or outside of the direct business relationship between Franchisee and Del Taco.

5.17.5.3    Combine the Personal Information that it receives from Del Taco with the Personal Information that it receives from another company or business (or that it collects from its own

16

interaction with individuals), except if expressly permitted to do so by Del Taco or required to do so by law.

        5.17.5.4    Share, rent, release, disclose, disseminate, make available, transfer, or otherwise communicate orally, in writing, or by electronic or other means, Personal Information for the purpose of cross-context behavioral advertising.

        5.17.6  This Section 5.17 will survive expiration or termination of this Agreement and any other agreement(s) that may exist between Franchisee and Del Taco (or its subsidiaries or affiliates). Existing terms in such agreement(s) remain in effect except that this Section 5.17 controls in the event of a conflict with such terms.  In the event of a breach of this Section 5.17, Del Taco may take reasonable and appropriate steps to stop and remediate the unauthorized use by Franchisee of Personal Information.

    5.18   <u>Website</u>.  Del Taco will maintain a Website for benefit of Del Taco and its franchisees. Franchisee shall not establish a Website or permit any other party to establish a Website that relates in any manner to its Restaurant or referring to the Proprietary Marks.  Del Taco has the right, but not the obligation, to provide one or more references or webpage(s) to Franchisee's Restaurant, as Del Taco may periodically designate, within Del Taco's Website.  (The term "Website" as used in this Agreement means one or more related documents, designs, pages, or other communications that can be accessed through electronic means, including the Internet, World Wide Web, social networking sites (including Facebook, Twitter, LinkedIn, Instagram, YouTube, etc.), blogs, vlogs, and other applications, etc.).

    5.19   <u>POS or Cash Register Systems</u>.  Franchisee agrees to record all sales on computer-based point of sale systems or such other types of cash register systems that Del Taco has the right to designate or approve in the Manual or otherwise in writing ("POS System").  The POS System is deemed to be part of Franchisee's Computer System.  Franchisee must utilize computer-based point-of-sale devices that are fully compatible with any program or system that Del Taco has the right to designate, and Franchisee must record all Net Sales and all revenue information on such equipment.

    5.20   <u>Gift Cards</u>.  If Del Taco requires, Franchisee agrees to participate in the gift card program(s) that Del Taco specifies.  For this purpose, Franchisee must purchase the software, hardware, blank cards, and other items needed to sell and process gift cards or stored value cards, which Del Taco may specify in the Manuals or otherwise in writing.  Franchisee also agrees to pay such monthly and per-swipe transaction fees as may be required by the vendor of the gift card system.  Franchisee must sell or honor gift cards only in accordance with Del Taco's written standards.  Franchisee must account for all gift card sales, gift card redemptions, and other gift card transactions in the manner Del Taco specifies in the Manuals.  Franchisee must maintain sufficient cash reserves to pay Del Taco or other franchisees as part of any network-wide periodic reconciliation of the gift card program.  Franchisee shall pay Del Taco or make payments as specified by Del Taco, in such amounts and at such times as directed by Del Taco, in accordance with Del Taco's gift card rules, programs and policies.  Franchisee agrees not to sell, issue, or redeem gift certificates other than gift cards that Del Taco has approved in writing.

    5.21   <u>E-Mail, Internet and Other Media; E-Mail and Fax Communications</u>.  Franchisee must comply with Del Taco's requirements and policies (as described in the Manuals or otherwise in writing) with respect to the transmission of all e-mails in connection with the Restaurant and the business, and in connection with discussing, advertising, or disseminating any information, or otherwise having a presence, on the Internet, or in any other media, regarding the Restaurant and the business.  Such activities include participation in any Internet "blogs" or social networking sites.  Any such activities which are not expressly permitted in the Manuals or otherwise in writing, or for which Franchisee has not previously received approval from Del Taco, shall be subject to Del Taco's approval as described in Section 6 below.

17

DocuSign Envelope ID: 5A534594-E377-45B4-8367-EE654124EF58

5.21.1   Franchisee agrees that exchanging information with Del Taco by e-mail and fax is an important way to enable quick, effective, and efficient communication, and that Del Taco and Franchisee are entitled to rely upon each other's use of e-mail and faxes for communicating as part of the economic bargain underlying this Agreement.   To facilitate the use of e-mail and fax to exchange information, Franchisee authorizes the transmission of e-mail by Del Taco and Del Taco's employees, vendors, and affiliates (on matters pertaining to the business contemplated hereunder) (together, "**Official Senders**") to Franchisee and Franchisee's employees during the term of this Agreement.   Del Taco's list of Official Senders shall be the master and official list of Official Senders.

5.21.2   Franchisee agrees not to transmit or cause any other party to transmit advertisements or solicitations by telephone, text, or e-mail or other electronic media without Del Taco's prior written consent as to: (a) the content of such advertisements or solicitations; and (b) Franchisee's plan for transmitting such advertisements or solicitations.  Del Taco's review of Franchisee's advertisements or solicitations, or of Franchisee's plan for transmitting such advertisements or solicitations, is only for Del Taco's benefit and Del Taco's review will pertain to whether the proposed advertisements or solicitations comply with Del Taco's specifications.  Franchisee agrees that it will be solely responsible for complying with any laws pertaining to sending such advertisements and solicitations, including the Controlling the Assault of Non-Solicited Pornography and Proprietary Marketing Act of 2003 (known as the "CAN-SPAM Act of 2003") and the Telephone Consumer Protection Act of 1991.

5.21.3   Franchisee agrees that:  (a) Official Senders are authorized to send e-mails and faxes to Franchisee and its employees; (b) Franchisee will cause its officers, directors, and employees (as a condition of their employment or position with Franchisee) to give their consent (in an e-mail, electronically, or in a pen-and-paper writing, as Del Taco may reasonably require) to Official Senders' transmission of e-mails and faxes to those persons, and that such persons shall not opt-out, or otherwise ask to no longer receive e-mails, from Official Senders during the time that such person works for or is affiliated with Franchisee; and (c) Franchisee will not opt-out, or otherwise ask to no longer receive e-mails and/or faxes, from Official Senders during the term of this Agreement.

5.21.4   The consent given above in this Section 5.21 will not apply to the provision of formal notices under this Agreement by either party using e-mail unless and until the parties have otherwise agreed, in a pen-and-paper writing that both parties have signed.

5.22     Credit Cards and Other Methods of Payment.   At all times, Franchisee must maintain credit-card relationships with the credit- and debit-card issuers or sponsors, check or credit verification services, financial-center services, and electronic-funds-transfer systems that Del Taco designates as mandatory, and Franchisee must not use any such services or providers that Del Taco has not approved in writing or for which Del Taco has revoked its approval.  Del Taco has the right to modify its requirements and designate additional approved or required methods of payment and vendors for processing such payments, and to revoke its approval of any service provider.  Franchisee must comply with all credit-card policies as prescribed in the Manuals.  Franchisee must comply with the Payment Card Industry Data Security Standards ("PCI DSS") as they may be revised and modified by the Payment Card Industry Security Standards Council (see www.pcisecuritystandards.org), or such successor or replacement organization and/or in accordance with other standards as Del Taco may specify, and the Fair and Accurate Credit Transactions Act ("FACTA").  Franchisee shall also upgrade periodically its POS System and related software, at Franchisee's expense, to maintain compliance with PCI DSS, FACTA, and all related laws and regulations.

5.23     Uniforms.   To promote a uniform System image, Franchisee shall require all of its Restaurant personnel to dress during business hours in the attire specified in the Manuals.  Franchisee shall purchase such attire only from approved suppliers.

5.24  <u>Incentive Programs</u>.  Franchisee shall offer for sale, and will honor for purchases by customers, any incentive or convenience programs which Del Taco may institute from time to time, and Franchisee shall do so in compliance with Del Taco's standards and procedures for such programs.

5.25  <u>Prices</u>.  With respect to the sale of all Menu Items, products, or services, Franchisee shall have sole discretion as to the prices to be charged to customers; provided, however, that Del Taco may establish, advertise, and promote maximum prices on such Menu Items, products, and services, subject to compliance with applicable laws.  If Del Taco has imposed such a maximum price on a particular Menu Item, product, or service, and subject to applicable law, Franchisee may not charge a price for such Menu Item, product, or service in excess of the maximum price set by Del Taco.

5.26  <u>Compliance with Laws and Good Business Practices</u>.  Franchisee shall operate the Restaurant in full compliance, subject to its right to contest, with all applicable laws, ordinances and regulations including all government regulations relating to handling of food products, occupational hazards and health, workers' compensation insurance, unemployment insurance and withholding and payment of federal and state income taxes, social security taxes and sales taxes.  All advertising and promotion by Franchisee shall be factually accurate and conform to the highest standards of ethical advertising.  Franchisee shall in all dealings with its customers, suppliers and the public adhere to the highest standards of honesty, integrity, fair dealing and ethical conduct, and shall comply with all consumer protection and unfair competition laws and regulations.  Franchisee agrees to refrain from any business or advertising practice which may be injurious to the business of Del Taco and the goodwill associated with the Proprietary Marks and other Restaurants.

5.27  <u>Franchisee Structure; Operating Principal and Owners</u>.

5.27.1  Except as otherwise approved in writing by Del Taco, if Franchisee is a corporation, it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles or certificates of incorporation and bylaws, as well as such other documents as Del Taco may reasonably request, and any amendment thereto; (iii) maintain stop transfer instructions on its records against the transfer of any equity securities and shall only issue securities upon the face of which a legend, in a form satisfactory to Del Taco, appears which references the transfer restrictions imposed by this Agreement; (iv) not issue any voting securities or securities convertible into voting securities; and (v) maintain a current list of all owners of record and all beneficial owners of any class of voting stock of Franchisee and furnish the list to Del Taco upon request, which list shall be amended to reflect changes in ownership, as permitted under this Agreement.

5.27.2  If Franchisee is a partnership or limited liability partnership it shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with its partnership agreement as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all general and limited partners in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records and in its partnership agreement against the transfer of partnership interests and equity securities, and shall only issue securities or partnership interests with documentation which bears a notice or legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

5.27.3  If a Franchisee is a limited liability company, Franchisee shall:  (i) be newly organized, and confine its activities, and its governing documents shall at all times provide that its activities are confined, exclusively to operating the Restaurant; (ii) furnish Del Taco with a copy of its articles of

19

Del Taco LLC
Franchise Agreement | 2024

organization and operating agreement, as well as such other documents as Del Taco may reasonably request, and any amendments thereto; (iii) prepare and furnish to Del Taco, upon request, a current list of all members and managers in Franchisee, which list shall be amended to reflect changes in ownership, as permitted under this Agreement; and (iv) maintain stop transfer instructions on its records against the transfer of equity securities and shall only issue securities upon the face of which bear a legend, in a form satisfactory to Del Taco, which references the transfer restrictions imposed by this Agreement.

       5.27.4  Franchisee shall designate, subject to the review and approval or disapproval by Del Taco, individuals to serve in the following positions:

       5.27.4.1  <u>Operating Principal</u>. An Operating Principal shall participate personally in the direct operation of the Restaurant. If Franchisee is an individual and meets the required qualifications, Franchisee may serve as the Operating Principal for the Restaurant. Franchisee shall notify Del Taco promptly if the individual serving as the Operating Principal for the Restaurant no longer serves as an employee of Franchisee or no longer meets the requirements of being an Operating Principal for the Restaurant. "Operating Principal" shall mean an individual who (1) has at least five years of management experience in the operation of a quick service restaurant (or, if Franchisee or Franchisee's affiliate operates at least one Del Taco Restaurant as of the Effective Date, the Operating Principal of the Restaurant must have at least two years of management experience in the operation of a quick service restaurant), (2) has completed Del Taco's required training program, (3) Del Taco has approved to supervise the day-to-day operations of the Restaurant, (4) owns at least 10% of the equity interest in Franchisee if Franchisee is a business entity, and (5) lives no more than a three-hour drive from the Restaurant.

       5.27.4.2  <u>Owners</u>: An "owner" is any person that has any direct or indirect interest in Franchisee, or in any entity that has any direct or indirect ownership interest in Franchisee. All owners along with their ownership interests, shall be identified in Exhibit E hereto, and any change in ownership, whether subject to Section 12.3 or not, shall be provided to Del Taco, in advance and in writing, and Exhibit E shall be amended to reflect all changes in ownership.

       5.27.4.3  <u>Restaurant Manager</u>: Franchisee shall designate a Restaurant Manager, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for the direct oversight and management of the day-to-day operations and personnel at the Restaurant (the "Restaurant Manager"). The Restaurant Manager and the Principal Operator may be the same person, if he/she is qualified to perform both roles and duties, and is approved by Del Taco.

       5.27.4.4  <u>Other Managers</u>: Franchisee shall designate shift managers, subject to approval by Del Taco, and satisfactory completion of Del Taco's training programs, who shall be responsible for oversight and management of the day-to-day shift operations and personnel at the Restaurant under the supervision of the Restaurant Manager and Operating Principal (the "Shift Managers").

       5.28  <u>Personal Guarantee</u>. Concurrent with its execution of this Agreement, if Franchisee is a business entity, each owner shall execute the Guarantee, Indemnification and Acknowledgement in the form attached to this Agreement as Exhibit D, provided, however, that no guarantee shall be required from a person who acquires Franchisee's securities (other than a controlling interest) if and after Franchisee becomes registered under the Securities Exchange Act of 1934.

       5.29  <u>System Modifications</u>. Franchisee acknowledges and agrees that from time to time hereafter Del Taco may change or modify the System as Del Taco deems appropriate, including to reflect the changing market and/or to meet new and changing consumer demands, and that variations and additions to the System may be required from time to time to preserve and enhance the public image of the System

and operations of Del Taco Restaurants. Del Taco's changes to the System may include the adoption and use of new or modified products, services, equipment and furnishings and new techniques and methodologies relating to the preparation, sale, promotion and marketing of food and beverage products and services, and new trademarks, service marks and copyrighted materials. Notwithstanding the provisions and limitations of Section 5.9, Franchisee shall, upon reasonable notice, accept, implement, use and display in the operation of the Restaurant any such changes in the System, as if they were part of this Agreement at the time of execution hereof, at Franchisee's sole expense. Additionally, Del Taco reserves the right, in its sole discretion, to vary the standards throughout the System, as well as the services and assistance that Del Taco may provide to some franchisees based upon the peculiarities of a particular site or circumstance, existing business practices, or other factors that Del Taco deems to be important to the operation of any Del Taco Restaurant or the System. Franchisee shall have no recourse against Del Taco on account of any variation to any franchisee and shall not be entitled to require Del Taco to provide Franchisee with a like or similar variation hereunder.

5.30    No Third-Party Management. The Restaurant shall be operated under the control and supervision of Franchisee, its Principal Operator, the Restaurant Manager or another manager hired by and employed by Franchisee and approved by Del Taco. Franchisee shall not hire or retain a management company, manager (other than an employee manager trained and approved by Del Taco), or third party to undertake any of the management or operational functions of the Restaurant.

## 6.    Advertising and Marketing.

Recognizing the value of advertising and marketing, and the importance of the standardization of advertising and marketing programs to the furtherance of the goodwill and public image of the System, the parties agree as follows:

6.1    Marketing Fee Expenditure. Del Taco shall use the Marketing Fee for any and all costs of maintaining, administering, directing, conducting, creating and/or otherwise preparing advertising, marketing, public relations and/or promotional programs and materials, and any other activities which Del Taco believes will enhance the image of the System, including the costs of preparing and/or conducting: media advertising campaigns; social media campaigns; direct mail advertising; marketing surveys and other public relations activities; employing advertising and/or public relations agencies to assist therein; brand research and development; developing and hosting marketing, brand development and enhancement, and customer engagement seminars for franchisees; purchasing promotional items; creating menu boards; developing new or modified trade dress and marks; point-of-purchase (POP) materials; design and photographs; conducting and administering visual merchandising, and other merchandising programs; purchasing media space or time (including all associated fees and expenses); administering regional and multi-regional marketing and advertising programs; market research and customer satisfaction surveys; developing and implementing customer loyalty and gift card programs; customer retention programs; the creative development of, and actual production associated with, premium items, giveaways, promotions, contests, public relation events, and charitable or non-profit events; developing, implementing and maintaining an electronic commerce website and/or related strategies; maintaining and developing one or more websites devoted to the System and/or the "Del Taco" brand; providing promotional and other marketing materials and services to the Del Taco restaurants operated under the System; the salaries of Del Taco's employees to the extent such employees provide services in conjunction with the System marketing activities; and all administrative and internal costs and expenses incurred in connection with the above. Del Taco or its designee shall have the right to direct all advertising programs, as well as all aspects thereof, including the concepts, materials, and media used in such programs and the placement and allocation thereof. Franchisee agrees and acknowledges that Del Taco's expenditures from the marketing fees are intended to maximize general public recognition, acceptance, perception of, and use of the System; and that Del Taco and its designee are not obligated, in administering the marketing fee expenditures, to make

21

expenditures for Franchisee which are equivalent or proportionate to Franchisee's contribution, or to ensure that any particular franchisee benefits directly or pro rata from such expenditures.

6.2   <u>Local Advertising and Promotion.</u>  All local advertising and promotion by Franchisee shall be in such media, and of such type and format as Del Taco may approve; shall be conducted in a dignified manner; shall conform to such standards and requirements as Del Taco may specify; and shall comply with all applicable laws.  Franchisee shall not use any advertising or promotional plans or materials unless and until Franchisee has received written approval from Del Taco, pursuant to the procedures and terms set forth in Section 6.4 below.  Franchisee shall comply with all of Del Taco's written instructions, policies, procedures, and restrictions regarding advertising and marketing within the Protected Area, outside of Franchisee's Protected Area, and in areas that may be territories assigned to other Del Taco Restaurants or franchisees (including, without limitation, rules regarding honoring of gift certificates, stored value cards, and promotions).

6.3   <u>Costs of Local Advertising and Promotion</u>.  As used in this Agreement, the term "**Local Advertising and Promotio**n" shall consist only of the direct costs of purchasing and producing advertising materials (including, but not limited to, camera ready advertising and point of sale materials), media (space or time), and those direct out of pocket expenses related to costs of advertising and sales promotion spent by Franchisee in the Protected Area, advertising agency fees and expenses, postage, shipping, telephone, and photocopying; however, the parties expressly agree that advertising and sales promotion shall not include costs or expenses incurred by or on behalf of Franchisee in connection with any of the following:

6.3.1   Salaries and expenses of any employees of Franchisee, including salaries or expenses for attendance at advertising meetings or activities, or incentives provided or offered to such employees, including discount coupons;

6.3.2   Charitable, political, or other contributions or donations, whether in cash, food, or services;

6.3.3   The value of discounts provided to customers;

6.3.4   The cost of food items.

6.4   <u>Approvals</u>.  For all proposed Local Advertising and Promotion, Franchisee shall submit samples of such plans and materials to Del Taco in the manner that Del Taco prescribes, for Del Taco's review and prior written approval (except with respect to prices to be charged by Franchisee).  If written approval is not received by Franchisee from Del Taco within fifteen (15) days of the date of receipt by Del Taco of such samples or materials, Del Taco shall be deemed to have disapproved them.  Franchisee acknowledges and agrees that any and all copyright in and to advertising and promotional materials developed by or on behalf of Franchisee shall be the sole property of Del Taco, and Franchisee agrees to execute such documents (and, if necessary, require its independent contractors to execute such documents) as may be deemed reasonably necessary by Del Taco to give effect to this provision.

6.5   <u>Promotional Materials</u>. Del Taco may make available to Franchisee from time to time, at Franchisee's expense, advertising plans and promotional materials, including newspaper mats, coupons, merchandising materials, sales aids, point of purchase materials, special promotions, direct mail materials, community relations programs, and similar advertising and promotional materials.  Del Taco may provide periodic marketing assistance to Franchisee, including telephone and email marketing assistance, and templates or other materials for email-based marketing. Del Taco shall have the right to require all advertising and promotional materials, signs, decorations, paper goods (including disposable food and beverage containers, bags, napkins, menus, and all forms and stationery used in the Restaurant), any and

all replacement trade dress products, and other items which may be designated by Del Taco, to bear the Del Taco's then-current Proprietary Marks and logos in the form, color, location, and manner then-prescribed by Del Taco.

## 7.    Records and Reports.

7.1    <u>Records</u>. Franchisee shall maintain for a period of not less than three (3) years during the term of this Agreement, and, for not less than three (3) years following the termination, expiration, or non-renewal of this Agreement, full, complete, and accurate books, records, and accounts in accordance with generally accepted accounting principles, as required by law, and in the form and manner prescribed by Del Taco from time to time in the Manuals or otherwise in writing.  Franchisee shall prepare and maintain all books and records required under this Agreement and as prescribed by Del Taco during each fiscal year during the Term of this Agreement and for the three years prior to each fiscal year.  To the extent books and records are created and/or maintained in an electronic form, all such books and records must be capable of being reviewed by Del Taco or its designee without special hardware or software.

7.2    <u>Periodic Reports</u>.  Franchisee shall, at its expense, provide to Del Taco, in a format specified by Del Taco, such financial and operating reports that Del Taco prescribes.

7.3    <u>Reporting Requirements</u>.  In addition to the Sales Reports required pursuant to Section 3.5, Franchisee shall submit to Del Taco a copy of their Profit and Loss Statement for each restaurant on an annual basis by March of the following year, and on a quarterly basis as requested by Del Taco.  Additionally, Franchisee shall provide such other forms, reports, records, information, and data as and when Del Taco may reasonably designate, in the form and format, and at the times and places reasonably required by Del Taco, upon request and as specified from time to time in the Manuals or otherwise in writing, restated in accordance with Del Taco's financial reporting periods, consistent with Del Taco's then current financial reporting periods and accounting practices and standards.

7.4    <u>Audit</u>.  Del Taco or its designated agents shall have the right at all reasonable times to examine, copy, and/or personally review or audit, at Del Taco's expense, all books, records, and sales and income tax returns of Franchisee.  Franchisee shall cooperate fully with all audits and requests for information made by Del Taco or its designees.  Del Taco shall also have the right, at any time, to have an independent audit made of the books of Franchisee.  If an inspection should reveal that any payments have been understated or overstated in any report to Del Taco, then Franchisee shall immediately pay Del Taco, in the event of an understatement, the amount understated upon demand, in addition to interest from the date such amount was due until paid, at the rate of one and one half percent (1.5%) per month, or the maximum rate permitted by law, whichever is less.  If an inspection is necessitated because Franchisee fails to timely provide Sales Reports or if an inspection discloses an understatement in any report by Franchisee of two percent (2%) or more, Franchisee shall, in addition, reimburse Del Taco for any and all costs and expenses connected with the inspection (including, without limitation, travel, lodging and wages expenses, and reasonable accounting and legal costs).  The foregoing remedies shall be in addition to any other remedies Del Taco may have.

7.5    <u>Data</u>.  All data provided by Franchisee in any form, and whether required by this Section 7.5 or any other requirement under the System or in the Manuals, including data uploaded to Del Taco's computer system from the Franchisee's Computer System, and/or downloaded from the Franchisee's Computer System to Del Taco's computer system, is and will be owned exclusively by Del Taco, including without limitation, Customer Data (described in Section 5.16 above), customer lists and e mail lists, and Del Taco will have the right to use such data in any manner that Del Taco deems appropriate without compensation to Franchisee.  In addition, all other data created or collected by Franchisee in connection with the System, or in connection with Franchisee's operation of the business (including but not limited to

23

consumer and transaction data), is and will be owned exclusively by Del Taco during the term of, and following termination or expiration of, this Agreement. Copies and/or originals of such data must be provided to Del Taco upon Del Taco's request. Del Taco hereby licenses use of such data back to Franchisee, at no additional cost, solely for the term of this Agreement and solely for Franchisee's use in connection with the business franchised under this Agreement. Del Taco may use all such information, data, and reports in any manner, including, without limitation, providing financial and operating reports to franchisees and operators operating under the System, preparing franchise disclosure documents, and providing information to prospective franchisees, and/or in complying with government regulations.

7.6    <u>Accounting and Bookkeeping Services</u>.  Del Taco reserves the right to require that Franchisee retain and utilize an accounting and bookkeeping service or company that is designated, specified or approved by Del Taco, from the Effective Date of this Agreement through the period that is ninety (90) days after the completion of Franchisee's second full calendar year of operation of the Restaurant following the opening of the business. Franchisee shall pay such service or company the fees and costs charged by the service or company, shall use such on-line, electronic, and paper reporting systems specified by such service or company, and shall submit reports to Del Taco as required under this Agreement or in the Manual. In addition, in the event Franchisee fails to comply with any reporting requirement under this Section 7.6 or in the Manuals, or fails to make timely, accurate and complete payments as required under this Agreement, Del Taco has the right to require that Franchisee utilize an accounting or bookkeeping service or company designated or specified by Del Taco for a period of not less than two (2) years. Franchisee will provide to the service or company complete and accurate information required by Del Taco and the service or company, and Franchisee acknowledges and agrees that Del Taco will have full access to the data and information that Franchisee provides to the accounting or bookkeeping service or company.

## 8.    Proprietary Marks.

8.1    <u>Ownership of the Proprietary Marks</u>. Del Taco represents with respect to the Proprietary Marks that:

8.1.1    Del Taco is the owner of all right, title, and interest in and to the Proprietary Marks.

8.1.2    Del Taco has taken and will take all steps reasonably necessary to preserve and protect Del Taco's ownership of, and validity in, the Proprietary Marks.

8.2    <u>Use of the Proprietary Marks</u>. With respect to Franchisee's use of the Proprietary Marks, Franchisee agrees that:

8.2.1    Franchisee shall use only the Proprietary Marks designated by Del Taco, and shall use them only in the manner authorized and permitted by Del Taco; all items bearing the Proprietary Marks shall bear the then-current logo.

8.2.2    Franchisee shall use the Proprietary Marks only for the operation of the business franchised hereunder and only at the location authorized hereunder, or in Del Taco approved advertising for the business conducted at or from that location.

8.2.3    Unless Del Taco otherwise directs Franchisee, in writing, to do so, Franchisee shall operate and advertise the Restaurant only under the name "Del Taco," without prefix or suffix.

8.2.4    During the term of this Agreement and any renewal of this Agreement, Franchisee shall identify itself (in a manner reasonably acceptable to Del Taco) as the owner of the Restaurant in

conjunction with any use of the Proprietary Marks, including uses on invoices, order forms, receipts, and contracts, as well as the display of a notice in such content and form and at such conspicuous locations on the premises of the Restaurant as Del Taco may designate in writing.

       8.2.5    Franchisee's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of Del Taco's rights.

       8.2.6    Franchisee shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of Del Taco.

       8.2.7    Franchisee shall not use the Proprietary Marks or any variant thereof as part of its corporate or other legal name, or as part of any e-mail address, domain name, websites or other identification of Franchisee in any electronic medium (including e-mail addresses, account names in a social media site, and the like) of Franchisee or the Restaurant in any forum or medium.

       8.2.8    Franchisee shall execute any documents deemed necessary by Del Taco to obtain protection for the Proprietary Marks or to maintain their continued validity and enforceability.

       8.2.9    With respect to litigation involving the Proprietary Marks, the parties agree that:

       8.2.9.1    Franchisee shall promptly notify Del Taco of any suspected infringement of the Proprietary Marks, any known challenge to the validity of the Proprietary Marks, or any known challenge to Del Taco's ownership of, or Franchisee's right to use, the Proprietary Marks licensed hereunder.  Franchisee acknowledges that Del Taco shall have the right to direct and control any administrative proceeding or litigation involving the Proprietary Marks, including any settlement thereof. Del Taco shall also have the right, but not the obligation, to take action against uses by others that may constitute infringement of the Proprietary Marks.

       8.2.9.2    Except to the extent that any litigation involving the Proprietary Marks is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement or involving any other claim against Del Taco, Del Taco agrees to reimburse Franchisee for its out of pocket litigation costs in doing such acts and things, except that Franchisee shall bear the salary costs of its employees, and Del Taco shall bear the costs of any judgment or settlement but only if the claim on which the judgment or settlement is made is only related to the validity or ownership of the mark.  To the extent that such litigation is the result of Franchisee's use of the Proprietary Marks in a manner inconsistent with the terms of this Agreement, Franchisee shall reimburse Del Taco for the cost of such litigation (or, upon Del Taco's written request, pay Del Taco's legal fees directly), including attorney's fees, as well as the cost of any judgment or settlement.

       8.2.9.3    If Del Taco undertakes the defense or prosecution of any litigation relating to the Proprietary Marks, Franchisee shall execute any and all documents and do such acts and things as may, in the opinion of counsel for Del Taco, be necessary to carry out such defense or prosecution, including becoming a nominal party to any legal action.

    8.3    <u>Franchisee Acknowledgements</u>. Franchisee expressly understands and acknowledges that:

       8.3.1    The Proprietary Marks are valid, owned by Del Taco, and serve to identify the System and those who are authorized to operate under the System.

8.3.2    Neither Franchisee nor any Principal of Franchisee shall directly or indirectly contest the validity or Del Taco's ownership of the Proprietary Marks, nor shall Franchisee, directly or indirectly, seek to register the Proprietary Marks with any government agency, except with Del Taco's express prior written consent.

8.3.3    Franchisee's use of the Proprietary Marks does not give Franchisee any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

8.3.4    The right and license of the Proprietary Marks granted hereunder to Franchisee is nonexclusive, and Del Taco thus has and retains the rights, among others:

8.3.4.1    To use the Proprietary Marks itself in connection with selling products and services;

8.3.4.2    To grant other licenses for the Proprietary Marks, in addition to those licenses already granted to existing franchisees or other licensees authorized to operate using the Proprietary Marks;

8.3.4.3    To develop and establish other systems using the same or similar Proprietary Marks, or any other proprietary marks, and to grant licenses or franchises thereto without providing any rights therein to Franchisee.

8.3.5.    Del Taco reserves the right to substitute different proprietary marks for use in identifying the System and the businesses operating thereunder if the Proprietary Marks no longer can be used, or if Del Taco, exercising its right to do so, determines that substitution of different proprietary marks will be beneficial to the System.  In such circumstances, Franchisee shall implement at Franchisee's expense such substituted proprietary marks in such ways as Del Taco may direct, and the use of the substituted proprietary marks shall be governed by the terms of this Agreement.

## 9.    Manuals.

9.1    Manuals.  In order to protect the reputation and goodwill of Del Taco and to maintain high standards of operation under Del Taco's Proprietary Marks, Franchisee shall conduct its business in accordance with the Manuals, one (1) copy of which Franchisee acknowledges having received electronically from Del Taco for the term of this Agreement.  The Manuals may consist of multiple electronic files, including videos and other electronically stored data, and various and periodic or episodic operational and/or management electronic bulletins, and Franchisee acknowledges and agrees that Del Taco may provide a portion or all of the Manuals (including updates and amendments), and other instructional information and materials in, or via, electronic media, including through the Internet.

9.2    Confidentiality of the Manuals. Franchisee shall at all times treat the Manuals, any other manuals created for or approved for use in the operation of the Restaurant, and the information contained therein, as confidential, and shall use best efforts to maintain such information as secret and confidential, protect it from viewing by others, and treat the Manuals with the same degree of care as it would treat its most highly confidential documents.  Franchisee shall not at any time copy, duplicate, record, or otherwise reproduce the foregoing materials, in whole or in part, nor otherwise make the same available to any unauthorized person.

9.3    Protection of the Manuals. The Manuals shall at all times remain the sole property of Del Taco and shall at all times be kept in a secure place on the Restaurant premises.  Franchisee shall ensure that the Manuals are kept current and up to date; and, in the event of any dispute as to the contents of the

26

Manuals, the terms of the master copy of the Manuals maintained by Del Taco at Del Taco's home office shall be controlling.

      9.4    <u>Revisions to the Manuals</u>. Del Taco may from time to time revise the contents of the Manuals, and Franchisee expressly agrees to make corresponding revisions to its copy of the Manuals and to comply with each new or changed standard immediately upon receipt of such revision.

## 10.    **Confidentiality and Covenants Not To Compete.**

      10.1    <u>Confidential Information</u>. Franchisee shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know-how concerning the methods of operation of the business franchised hereunder which may be communicated to Franchisee or of which Franchisee may be apprised by virtue of Franchisee's operation under the terms of this Agreement (the "**Confidential Information**"). Franchisee shall divulge such Confidential Information only to such of its employees as must have access to it in order to operate the Restaurant. Any and all information, knowledge, know-how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Franchisee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Any employee who may have access to any Confidential Information regarding the Restaurant shall execute a covenant that s/he will maintain the confidentiality of information they receive in connection with their association with Franchisee. Such covenants shall be on a form provided by Del Taco, which form shall, among other things, designate Del Taco as a third party beneficiary of such covenants with the independent right to enforce them. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

      10.2    <u>Irreparable Injury</u>. Franchisee acknowledges that any failure to comply with the requirements of this Section 10 will cause Del Taco irreparable injury, and Franchisee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Section 10.

      10.3    <u>Information Exchange</u>. Franchisee agrees to disclose to Del Taco all ideas, concepts, methods, techniques and products conceived or developed by Franchisee, its affiliates, owners, agents, or employees during the term of this Agreement relating to the development and/or operation of the Restaurant. Franchisee hereby grants to Del Taco and agrees to procure from its affiliates, owners, agents, or employees a perpetual, non-exclusive, and worldwide right to use any such ideas, concepts, methods, techniques and products in all food service businesses operated by Del Taco or its affiliates, franchisees and designees. Del Taco shall have no obligation to make any payments to Franchisee with respect to any such ideas, concepts, methods, techniques or products. Franchisee agrees that Franchisee will not use or allow any other person or entity to use any such concept, method, technique or product without obtaining Del Taco's prior written approval.

      10.4    <u>Full Time and Best Efforts</u>. During the term of this Agreement, except as otherwise approved in writing by Del Taco, the Operating Principal or a Manager appointed in accordance with Section 5 shall devote full time, energy, and best efforts to the management and operation of the Restaurant.

      10.5    <u>In-Term Covenants</u>. Franchisee specifically acknowledges that, pursuant to this Agreement, Franchisee will receive valuable specialized training and Confidential Information, including information regarding Del Taco's operational, sales, promotional, and marketing methods and techniques

and the System. During the term of this Agreement, except as otherwise approved in writing by Del Taco, Franchisee shall not (a) within the Protected Area or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco, either directly or indirectly, for Franchisee, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

        10.5.1  Divert or attempt to divert any business or customer of the Restaurant or of any Del Taco Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks and the System.

        10.5.2  Except as otherwise approved in writing by Del Taco directly or indirectly own, maintain, operate, engage in, have any interest in or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor, or otherwise) any "**Competitive Business**," which shall mean a restaurant or food service business that offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format.

    10.6  <u>Post-Term Covenants</u>.  Except as otherwise approved in writing by Del Taco, Franchisee shall not, for a continuous uninterrupted period of two (2) years from the date of:  (a) a transfer permitted under Section 12.3 above; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 10.6; either directly or indirectly own, maintain, operate, engage in, have any interest in, or provide any assistance to (whether as owner, stockholder, partner, officer, director, employee, consultant, franchisor, lessor or otherwise) any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section 10.6 commence. If Franchisee does not comply with the post-term covenants as specified in this Section 10.6, the post-term non-compete period shall not begin to run until Franchisee begins to comply.

    10.7  <u>Publicly-Held Corporations</u>.  Section 10.6 above shall not apply to ownership by Franchisee of less than a five percent (5%) beneficial interest in the outstanding equity securities of any publicly held corporation.  As used in this Agreement, the term "**publicly held corporation**" shall be deemed to refer to a corporation which has securities that have been registered under the Securities Exchange Act of 1934.

    10.8  <u>Individual Covenants</u>.  Franchisee shall require and obtain execution of covenants similar to those set forth in Sections 8, 9, 10, 12, and 14 (as modified to apply to an individual, if applicable) from any or all of Franchisee's owners holding a ten percent (10%) or greater interest in Franchisee and the Operating Principal.  The covenants required by this Section 10.8 shall be in the form provided in Exhibit F to this Agreement.  Franchisee shall deliver to Del Taco copies of such executed covenants immediately upon Del Taco's request.  Failure by Franchisee to obtain execution of a covenant required by this Section 10.8 shall constitute a default under Sections 10.5 and 10.6 above.

    10.9  <u>Severability</u>.  The parties agree that each of the foregoing covenants shall be construed as independent of any other covenant or provision of this Agreement.  If all or any portion of a covenant in this Section 10 is held unreasonable or unenforceable by a court or agency having valid jurisdiction in an unappealed final decision to which Del Taco is a party, Franchisee agrees to be bound by any lesser covenant subsumed within the terms of such covenant that imposes the maximum duty permitted by law, as if the resulting covenant were separately stated in and made a part of this Section 10.

28

10.10    Scope of Covenants. Del Taco shall have the right to reduce the scope of any covenant set forth in Sections 10.5 and 10.6 in this Agreement, or any portion thereof, without Franchisee's consent, effective immediately upon receipt by Franchisee of written notice thereof; and Franchisee agrees that it shall comply forthwith with any covenant as so modified, which shall be fully enforceable notwithstanding the provisions of Section 24 and 24.2 below.

10.11    Enforcement of Claims. The existence of any claims Franchisee may have against Del Taco, whether or not arising from this Agreement, shall not constitute a defense to the enforcement by Del Taco of the covenants in this Section 10.  Franchisee agrees to pay all costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)) incurred by Del Taco in connection with the enforcement of this Section 10.

10.12    Irreparable Injury.  Franchisee acknowledges that Franchisee's violation of the terms of this Section 10 would result in irreparable injury to Del Taco for which no adequate remedy at law may be available, and Franchisee accordingly consents to the issuance of an injunction prohibiting any conduct by Franchisee in violation of the terms of this Section 10.

10.13    Remedies Not Exclusive.  The remedies in this Section 10 are in addition to the other right and remedies available to Del Taco and shall not serve as an election of remedies or a waiver of any other rights.

## 11.    Insurance.

11.1    Franchisee shall comply with the following indemnification and insurance provisions:

11.1.1    Insurance Requirements.    Prior to the commencement of any activities or operations pursuant to this Agreement, Franchisee shall procure and maintain in full force and effect during the term of this Agreement (and for such period thereafter as is necessary to provide the coverages required hereunder for events having occurred during the Term of this Agreement), at Franchisee's expense, the following insurance policy or policies in connection with the Restaurant or other facilities on premises, or by reason of the construction, operation, or occupancy of the Restaurant or other facilities on premises. Such policy or policies shall be written by an insurance company or companies approved by Del Taco, having a rating of at least "A" in the most recent Key Rating Guide published by the A.M. Best Company (or another rating that Del Taco reasonably designates if A.M. Best Company no longer publishes the Key Rating Guide) and licensed to do business in the state in which the Restaurant is located. Such policy or policies shall include, at a minimum (except as additional coverages and higher policy limits may reasonably be specified for all franchisees from time to time by Del Taco in the Manuals or otherwise in writing to reflect inflation, identification of new risks, changes in the law or standards of liability, higher damage awards and other relevant changes in circumstances), the following:

11.1.1.1    Liability.  A comprehensive general liability policy in the amount of not less than $2,000,000 combined single limit bodily injury liability per person and per occurrence and property damage liability per occurrence, including premises, operations, products and completed operations, broad form property damage, blanket contractual owner's and contractor's protective, personal injury, and non-owned or hired automobiles.

11.1.1.2    Fire.  Fire, extended coverage and "**all risk**" or direct physical loss, subject to standard exclusions, in an amount not less than 100% of the replacement value of the premises (exclusive of foundation and excavation costs), including all Equipment and any additions to or substitutions for the premises and Equipment.  The replacement cost values as defined in said policy shall

include the replacement value of stated items then being constructed or purchased by Del Taco at the time of loss.

        11.1.1.3   <u>Business Interruption</u>.  Business interruption insurance in an amount not less than adequate to pay for the monthly rent reserved under any real property lease or sublease, restaurant equipment lease or sublease, sign lease or sublease, and other continuing expenses up to six months without possibility of co-insurance penalty.

        11.1.1.4   <u>Business Automobile Liability Insurance</u>.  Business automobile liability insurance, including a combined single bodily injury and property damage coverage for all owned, non-owned, and hired vehicles, with limits of liability not less than One Million Dollars ($1,000,000) per occurrence for both bodily injury and property damage.

        11.1.1.5   <u>Statutory Workers' Compensation Insurance</u>.  Statutory workers' compensation insurance and employer's liability insurance for a minimum limit of at least One Million Dollars ($1,000,000), as well as such other disability benefits type insurance as may be required by statute or rule of the state in which the Restaurant is located.  Franchisee shall have and maintain such insurance for all of its employees prior to any employee commencing any training with Del Taco.  Franchisee agrees to obtain a waiver of subrogation endorsement on its workers' compensation policy, and shall provide to Del Taco proof of both (i) the effective workers' compensation policy, and (ii) the endorsement to such policy waiving the insurer's right of subrogation.

        11.1.1.6   <u>Commercial Umbrella Liability Insurance</u>.  Commercial umbrella liability insurance with limits which bring the total of all primary underlying coverages to not less than Three Million Dollars ($3,000,000) total limit of liability.

        11.1.1.7   <u>Property Insurance</u>. Property insurance providing coverage for direct physical loss or damage to real and personal property for all risk perils, including the perils of flood and earthquake.

        11.1.1.8   <u>Products Liability Insurance</u>. Products liability insurance in an amount not less than One Million Dollars ($1,000,000), which policy shall be considered primary.

        11.1.1.9   <u>Cyber Liability Insurance</u>. Cyber liability insurance in an amount that Del Taco designates.

        11.1.1.10   <u>Other Insurance</u>. Any other insurance coverage that is required by federal, state, or municipal law.

        11.2   <u>Referenced in Manuals</u>.  All policies listed in Section 11.1 (unless otherwise noted below) shall contain such endorsements as shall, from time to time, be provided in the Manuals.

        11.3   <u>Policy Cancellation</u>.  In the event of cancellation, material change, or non-renewal of any policy, sixty (60) days' advance written notice must be provided to Del Taco in the manner provided in Section 11.7 below.  Franchisee shall arrange for a copy of such notification to be sent to Del Taco by the insurance company.

        11.4   <u>Construction and Remodeling Insurance</u>.  In connection with all significant construction, reconstruction, or remodeling of the Restaurant during the term of this Agreement, Franchisee will cause the general contractor, its subcontractors, and any other contractor, to effect and maintain at general contractor's and all other contractor's own expense, such insurance policies and bonds with such

30

endorsements as are set forth in the Manuals, all written by insurance or bonding companies approved by Del Taco, having a rating as set forth in Section 11.1.1 above.

11.5 <u>No Waiver of Obligations</u>. Franchisee's obligation to obtain and maintain the foregoing policy or policies in the amounts specified shall not be limited in any way by reason of any insurance which may be maintained by Del Taco, nor shall Franchisee's performance of that obligation relieve it of liability under the indemnity provisions set forth in Section 16.1.3 below.

11.6 <u>Del Taco to be Additional Named Insured</u>. All insurance policies shall list Del Taco and its affiliates, and their respective officers, directors, employees, partners, members, subsidiaries, employees and agents as additional named insureds, and shall also contain a provision that Del Taco, although named as an insured, shall nevertheless be entitled to recover under said policies on any loss occasioned to Del Taco or its servants, agents, or employees by reason of the negligence of Franchisee or its servants, agents, or employees. Additional insured status shall include coverage for ongoing and completed operations. The additional insured endorsement form shall be ISO CG 20-26 or such other form that Del Taco approves in writing that provides comparable coverage. Additional insured coverage shall not be limited to vicarious liability and shall extend to (and there shall be no endorsement limiting coverage for) Del Taco's negligent acts, errors or omissions or other additional insureds. Franchisee shall maintain such additional insured status for Del Taco on Franchisee's general liability policies continuously during the term of the Franchise Agreement.

11.7 <u>Evidence of Insurance</u>. At least thirty (30) days prior to the time any insurance is first required to be carried by Franchisee, and thereafter at least thirty (30) days prior to the expiration of any such policy, Franchisee shall deliver to Del Taco, certificates of insurance, endorsements, insurance declarations and/or other documents requested by Del Taco (collectively, "**certificates**"), evidencing the proper coverage with limits not less than those required hereunder. All certificates shall expressly provide that no less than thirty (30) days' prior written notice shall be given Del Taco in the event of material alteration to, cancellation, or non-renewal of the coverages evidenced by such certificates. Further certificates evidencing the insurance required by Section 11.1.1 above shall name Del Taco, and each of its affiliates, directors, agents, and employees as additional insureds, and shall expressly provide that any interest of same therein shall not be affected by any breach by Franchisee of any policy provisions for which such certificates evidence coverage. In the event that Franchisee fails to obtain the required insurance or to provide evidence reasonably satisfactory to Del Taco of the insurance policies required by this Section 11.1, Del Taco shall have the right to obtain such required policies on Franchisee's behalf, and Franchisee agrees that it will promptly reimburse Del Taco for all costs related to obtaining such policies upon notice from Del Taco.

11.8 <u>Proof of Insurance</u>. In addition to its obligations under Section 11.7 above, on the first (1st) anniversary of the Effective Date, and on each subsequent anniversary thereof during the term of this Agreement and any renewal hereof, Franchisee shall provide Del Taco with proof of insurance evidencing the proper coverage with limits not less than those required hereunder, in such form as Del Taco may reasonably require.

11.9 <u>Policy Limit Changes</u>. Del Taco shall have the right, from time to time, to make such changes in minimum policy limits and endorsements as it deems advisable.

11.10 <u>Del Taco's Insurance</u>. Franchisee acknowledges and agrees that any insurance policies maintained by Del Taco for Del Taco's benefit shall have no effect upon Franchisee's obligation to obtain any insurance required by this Section 11.

**12. Transfer of Interest.**

31

12.1    <u>Del Taco Transfers</u>.  Del Taco has the right to transfer or assign this Agreement, the System, Confidential Information, and all or any part of Del Taco's rights or obligations under this Agreement or Del Taco's interest in the System and Confidential Information to any person or legal entity without Franchisee's consent.  Any transferee or assignee of this Agreement from Del Taco will become solely responsible for all of Del Taco's obligations under this Agreement from the date of the transfer or assignment.  Without limiting the foregoing, Del Taco may sell its assets (including its rights in the Proprietary Marks and the System) to a third party; may offer its securities privately or publicly; may merge with or acquire other legal entities, or be acquired by another legal entity; and may undertake a refinancing, recapitalization, leveraged buyout, or other economic or financial restructuring.  With regard to any or all of the above transfers, sales, assignments, and dispositions, Franchisee waives any claims, demands, or damages against Del Taco or its affiliates arising from or related to Del Taco's transfer of its rights in this Agreement, the System, or Confidential Information to any other party.  Nothing contained in this Agreement will require Del Taco to remain in the business of operating or licensing the operation of Del Taco Restaurants or other businesses or to offer any services or products to Franchisee, whether or not bearing the Proprietary Marks, if Del Taco transfers or assigns its rights in or obligations under this Agreement and the System.

12.2    <u>Owners</u>.  If Franchisee is a business entity, each owner and the interest of each of them in Franchisee, is identified in Exhibit A hereto.  Franchisee represents and warrants that its owners are set forth on Exhibit A attached to this Agreement, and covenant that Franchisee will not permit the identity of such owners, or their respective interests in Franchisee, to change without complying with this Agreement.

12.3    <u>Franchisee Transfers</u>.  Franchisee understands and acknowledges that the rights and duties set forth in this Agreement are personal to Franchisee, and that Del Taco has granted this franchise in reliance on Franchisee or its owners' business skill, financial capacity, and personal character.  Accordingly:

12.3.1   Franchisee shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber:  (a) this Agreement or any of Del Taco's rights and obligations under this Agreement; (b) all or substantially all of the assets of the Restaurant; (c) the leases or any other interest in the Restaurant; or (d) any direct or indirect ownership interest in Franchisee.

12.3.2   If Franchisee is a corporation or limited liability company, Franchisee shall not, without Del Taco's prior written consent, issue any voting securities or securities convertible into voting securities, and the recipient of any such securities shall become an owner under this Agreement, if so designated by Del Taco.

12.3.3   If Franchisee is a partnership or limited partnership, the partners of the partnership shall not, without Del Taco's prior written consent, admit additional general partners, remove a general partner, or otherwise materially alter the powers of any general partner.

12.3.4   Franchisee's owner shall not, without Del Taco's prior written consent, transfer, pledge or otherwise encumber any interest of an owner in Franchisee as shown in Exhibit A.

12.3.5   Franchisee shall not transfer or assign the lease for the Restaurant, or permit a default or surrender of the lease that will or may cause the Restaurant to be owned, leased, or operated by, any person or entity that will not operate a Del Taco Restaurant, without Del Taco's prior written consent.

12.4    <u>Conditions for Approval</u>.  Del Taco shall not unreasonably withhold any consent required by Section 12.3.4 above; provided, that if Franchisee proposes to transfer its obligations hereunder or any interest in all or substantially all of the assets of the Restaurant, or if Franchisee or an owner proposes to

transfer any direct or indirect interest in Franchisee, or if Franchisee or any owner proposes to undertake any transfer that is subject to Section 12.3, Del Taco shall have the right to require, among other things, any or all of the following as conditions of Del Taco's approval:

12.4.1   Franchisee shall comply with Del Taco's then-current transfer policies.  Franchisee and the proposed transferee shall provide Del Taco with all information and documents requested by Del Taco for its evaluation of the proposed transfer, transaction, and transferee, including the business and financial terms of the proposed transaction including the leases and/or any assignments, renewal or extension of the leases and any necessary landlord consents, financial and operational information regarding the proposed transferee, and evidence of any financing that may be required to complete the transaction and/or fund the transferee's operation after the transfer.

12.4.2   The transferor shall have executed a general release (which shall include a release from the transferor, Franchisee, Franchisee's owners, and guarantors), in a form satisfactory to Del Taco, of any and all claims against Del Taco and its affiliates, successors, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in their corporate and individual capacities including claims arising under this Agreement, any other agreement between Del Taco and Franchisee or their affiliates, and federal, state, and local laws and rules.

12.4.3   The transferee of an owner shall be designated as an owner and each transferee who is designated as an owner shall enter into a written agreement, in a form satisfactory to Del Taco, agreeing to be bound as an owner under the terms of this Agreement as long as such person or entity owns any interest in Franchisee; and, if Franchisee's obligations were guaranteed by the transferor, the owner shall guarantee the performance of all such obligations in writing in a form satisfactory to Del Taco.

12.4.4   Prior to and after the transfer, Franchisee's new owners shall meet Del Taco's educational, managerial, and business standards; each shall possess a good moral character, business reputation, and credit rating; have the aptitude and ability to operate the Restaurant, as may be evidenced by prior related business experience or otherwise; Franchisee's Operating Principal, and such other owners and employees as specified by Del Taco, shall satisfactorily complete Del Taco's initial training program; and have adequate financial resources and capital to operate the Restaurant.  The price, consideration, and other proposed terms of the proposed transfer must not, in Del Taco's reasonable business judgment, have the effect of negatively impacting the future viability of the Restaurant.

12.4.5   If a proposed transfer would result in a change of control in Franchisee, at Del Taco's option, Franchisee (or transferee) shall execute the form of franchise agreement then being offered to new franchisees, and such other ancillary agreements required by Del Taco for the business franchised hereunder, which agreements shall supersede this Agreement and its ancillary documents in all respects, and the terms of which may differ from the terms of this Agreement including higher Royalty Fees and Marketing Fees, and a different or modified Protected Area, provided however that the term of such franchise agreement shall be equal to the then unexpired term of this Agreement.

12.4.6   If a proposed transfer would result in a change in Franchisee's control, and if so requested by Del Taco, Franchisee, at Franchisee's expense, shall upgrade the Restaurant to conform to the then-current standards and specifications of new Restaurant then being established in the System, and shall complete the upgrading and other requirements set forth in this Section 12.4.6 or as required under Section 5.9 above within the time specified by Del Taco.

12.4.7   All of Franchisee's monetary obligations hereunder shall be paid in full on a current basis, and Franchisee must not be otherwise in default of any of Franchisee's obligations hereunder including Franchisee's reporting obligations.

33

12.4.8  The transferor shall remain liable for all of the obligations to Del Taco in connection with the Restaurant that arose prior to the effective date of the transfer, and any covenants that survive the termination or expiration of this Agreement, and shall execute any and all instruments reasonably requested by Del Taco to evidence such liability.

12.4.9  At Franchisee's expense, one (1) owner designated by Del Taco to be a new Operating Principal and any of Franchisee's Restaurant Managers that Del Taco designates shall successfully complete (to Del Taco's satisfaction) all training programs required by Del Taco upon such terms and conditions as Del Taco may reasonably require (and while Del Taco will not charge a fee for attendance at such training programs, the transferee shall be responsible for the salary and all expenses of the person who attends training).

12.4.10 If a proposed transfer would result in a change in Franchisee's control, and to compensate Del Taco for Del Taco's legal, accounting, training, and other expenses incurred in connection with the transfer, Franchisee shall pay Del Taco a non-refundable transfer fee in the amount of Five Thousand Dollars ($5,000).  The transfer fee shall be paid at the earlier of (a) when the transferee signs the new franchise agreement, or (b) when the transferee begins training.  The transfer fee is non-refundable.  In addition, in the event a proposed transfer is not consummated or closed, for any reason except for disapproval by Del Taco, Franchisee or the proposed transferee shall reimburse Del Taco for all of Del Taco's costs and expenses incurred in connection with Del Taco's evaluation of the proposed transfer, including attorneys' and accountants' fees, background checks, site evaluation, and training, if applicable, to the extent the portion of the transfer fee paid does not cover those costs and expenses.

12.4.11 The transferor and/or the transferring franchisee must certify to Del Taco that the transferring franchisee has provided to the transferee true, complete and accurate copies of Franchisee's financial information and documents regarding the operation of the Restaurant, including the trailing two years of financial statements and monthly cash reports, the lease for the Restaurant premises, material contracts, and such other information as may be specified by Del Taco.

12.4.12 The transferor must acknowledge and agree that the transferor shall remain bound by the covenants contained in Section 10 above.

12.5    Transfers to Entities for the Convenience of Ownership.  If Franchisee desires to transfer all of Franchisee's interest in this Agreement, or if all of Franchisee's owners desire to transfer all of their ownership interests in Franchisee, to a corporation, limited liability company, or other entity, solely for the convenience of ownership and/or for tax or estate planning reasons, Del Taco shall not unreasonably withhold Del Taco's consent to such transfer, and Del Taco shall not require that Franchisee comply with the provisions and conditions of Section 12.4 or 12.6, if Franchisee complies with all of the following conditions:

12.5.1   Franchisee shall provide written notice to Del Taco not less than thirty (30) days prior to the date of the proposed transfer, and shall provide Del Taco with such documents and information as Del Taco may request in support of Franchisee's request, which may include, among other things, entity formation and good standing certifications, evidence of insurance in the name of the new franchisee entity, and bank information for the new franchisee entity.

12.5.2   Franchisee and Franchisee's owners shall own all of the outstanding equity interests in the new franchisee entity, and shall own the same percentage ownership interests in the new franchisee entity as they own in Franchisee, and if Franchisee is an individual, Franchisee shall own 100% of the outstanding voting equity interests in the new franchisee entity.

34

12.5.3   Each owner who owns at least twenty percent (20%) of the outstanding equity interests in the new franchisee entity shall execute a Guarantee in the form attached as Exhibit E hereto.

12.5.4   Franchisee and Franchisee's owners shall comply with the provisions of Sections 12.4.1, 12.4.2, 12.4.6, 12.4.7, and 12.4.11 of this Agreement, and the new entity and its owners shall comply with Sections 5.27 and 5.28 of this Agreement.

12.5.5   Franchisee and Franchisee's owners shall execute such transfer documents, agreements and other materials as Del Taco may require.

12.6   <u>Right of First Refusal</u>.

12.6.1   If Franchisee or any owner desires to accept any *bona fide* offer from a third party to purchase Franchisee, all or substantially all of the assets of the Restaurant, or any direct or indirect interest in Franchisee, Franchise or such owner shall promptly notify Del Taco of such offer and shall provide such information and documentation relating to the offer as Del Taco may require.  Del Taco shall have the right and option, exercisable within thirty (30) days after receipt of all such information, to send written notice to the seller that Del Taco intends to purchase the seller's interest on the same terms and conditions offered by the third party.  If Del Taco elects to purchase the seller's interest, the closing on such purchase shall occur within sixty (60) days from the date of notice to the seller of the election to purchase by Del Taco.

12.6.2   Any material change in the terms of the *bona fide* offer prior to closing shall constitute a new offer subject to the same rights of first refusal by Del Taco as in the case of the third party's initial offer.  Del Taco's failure to exercise the option afforded by this Section 12.6 shall not constitute a waiver of any other provision of this Agreement, including all of the requirements of this Section 12.6, with respect to a proposed transfer, or a waiver of any subsequent offer.

12.6.3   In the event the consideration, terms, and/or conditions offered by a third party are such that Del Taco may not reasonably be required to furnish the same consideration, terms, and/or conditions, then Del Taco may purchase the interest proposed to be sold for the reasonable equivalent in cash.  If the parties cannot agree within a reasonable time on the reasonable equivalent in cash of the consideration, terms, and/or conditions offered by the third party, they must attempt to appoint a mutually-acceptable independent appraiser to make a binding determination.  If the parties are unable to agree upon one (1) independent appraiser, then an independent appraiser shall be promptly designated by Del Taco and another independent appraiser shall be promptly designated by Franchisee, which two (2) appraisers shall, in turn, promptly designate a third appraiser; all three (3) appraisers shall promptly confer and reach a single determination, which determination shall be binding upon Del Taco and Franchisee.  The cost of any such appraisal shall be shared equally by Del Taco and Franchisee.  If Del Taco elects to exercise its right under this Section 12.6, Del Taco shall have the right to set off all amounts due from Franchisee, and one-half (½) of the cost of the appraisal, if any, against any payment to the seller.

12.7   <u>Transfer Upon Death.</u>  Within six (6) months after Franchisee's death (if a natural person) or the death of an owner, the executor, administrator, or other personal representative of the deceased will transfer the interest of the deceased in this Agreement or Franchisee to a third party approved by Del Taco.  If no personal representative is designated or appointed and no probate proceedings are instituted with respect to the estate of the deceased, the distributee of the interest of the deceased must be approved by Del Taco.  If the distributee is not approved by Del Taco, the distributee will transfer the interest of the deceased to a third party approved by Del Taco within six (6) months after the date of death of the deceased.

35

12.8    <u>Transfer Upon Permanent Disability</u>.    Upon Franchisee's permanent disability or the permanent disability of any owner with a controlling interest in Franchisee, Del Taco may require Franchisee's or the owner's interest to be transferred to a third party approved by Del Taco within six (6) months after notice to Franchisee. "**Permanent Disability**" shall mean any physical, emotional, or mental injury, illness, or incapacity that would prevent a person from performing the obligations set forth in this Agreement for at least six (6) consecutive months and from which condition recovery within six (6) consecutive months from the date of determination of disability is unlikely. If Del Taco and Franchisee or Franchisee's representative disagree as to whether a person has a permanent disability, the existence of the permanent disability shall be determined by a licensed practicing physician selected by Del Taco upon examination of such person or, if such person refuses to be examined, then such person shall automatically be deemed permanently disabled for the purposes of this Section 12.8 as of the date of refusal. Del Taco shall pay the cost of the required examination.

12.9    <u>Notification Upon Death or Permanent Disability</u>. Within ten (10) days after the death or permanent disability of Franchisee (if a natural person) or an owner, Franchisee or Franchisee's representative shall notify Del Taco of the death or permanent disability in writing. Any transfer upon death or permanent disability will be subject to the same terms and conditions set out in this Section 12 for any *inter vivos* transfer.

12.10    <u>No Waiver of Claims</u>. Del Taco's consent to a transfer which is the subject of this Section 12 shall not constitute a waiver of any claims Del Taco may have against the transferring party, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of this Agreement by the transferor or transferee.

12.11    <u>Insolvency</u>. If Franchisee or any person holding any interest (direct or indirect) in Franchisee becomes a debtor in a proceeding under the U.S. Bankruptcy Code or any similar law in the U.S. or elsewhere, it is the parties' understanding and agreement that any transfer in Franchisee, Franchisee's obligations and/or rights hereunder, all or substantially all of the assets of the Restaurant, or any indirect or direct interest in Franchisee shall be subject to all of the terms of this Section 12.

12.12    <u>Securities Offerings</u>.    All materials for an offering of stock or partnership interests in Franchisee or any of Franchisee's affiliates which are required by federal or state law shall be submitted to Del Taco for review as described below before such materials are filed with any government agency. Any materials to be used in any exempt offering shall be submitted to Del Taco for such review prior to their use. No offering by Franchisee or any of Franchisee's affiliates shall imply (by use of the Proprietary Marks or otherwise) that Del Taco is participating in an underwriting, issuance, or offering of the securities of Franchisee or Franchisee's affiliates; and Del Taco's review of any offering shall be limited solely to the relationship between Del Taco and Franchisee and any subsidiaries and affiliates, if applicable, and shall not constitute any opinion as to any legal requirement. Del Taco may, at its option, require the offering materials to contain a written statement prescribed by Del Taco concerning the limitations stated in the preceding sentence. Franchisee (and the offeror if not Franchisee), the owners, and all other participants in the offering must fully indemnify Del Taco, its subsidiaries, affiliates, successor, and assigns, and their respective directors, officers, shareholders, partners, agents, representatives, servants, and employees in connection with the offering and shall execute any and all documents required by Del Taco to endorse such indemnification. For each proposed offering, Franchisee shall pay Del Taco a non-refundable fee of Five Thousand Dollars ($5,000) or such greater amount as is necessary to reimburse Del Taco for its reasonable costs and expenses (including legal and accounting fees) for reviewing the proposed offering. Franchisee shall give Del Taco written notice at least thirty (30) days before the date that any offering or other transaction described in this Section 12 commences. Any such offering shall be subject to all of the other provisions of this Section 12; and further, without limiting the foregoing, it is agreed that any such offering

shall be subject to Del Taco's approval as to the structure and voting control of the offeror (and Franchisee, if Franchisee is not the offeror) after the financing is completed.

## 13. Default and Termination.

13.1 <u>Automatic Termination</u>.  Franchisee shall be deemed to be in default under this Agreement, and all rights granted herein shall automatically terminate without notice to Franchisee, if Franchisee shall become insolvent or make a general assignment for the benefit of creditors; or if a petition in bankruptcy is filed by Franchisee or such a petition is filed against and not opposed by Franchisee; or if Franchisee is adjudicated bankrupt or insolvent; or if a bill in equity or other proceeding for the appointment of a receiver or other custodian for Franchisee's business or assets is filed and consented to by Franchisee; or if a receiver or other custodian (permanent or temporary) of Franchisee's assets or property, or any part thereof, is appointed by any court of competent jurisdiction; or if proceedings for a composition with creditors under any state or federal law should be instituted by or against Franchisee; or if a final judgment of $10,000 or more against Franchisee or Franchisee's affiliate remains unsatisfied or of record for thirty (30) days or longer (unless unappealed or a supersedeas bond is filed); or if Franchisee is dissolved; or if an attachment or execution is levied against Franchisee's business or property, including Franchisee's bank accounts, property or any receivables and is not dismissed within thirty (30) days; or if suit to foreclose any lien or mortgage against the Restaurant premises or equipment is instituted against Franchisee and not dismissed within five (5) days; or if the real or personal property of the Restaurant shall be sold after levy thereupon by any sheriff, marshal, or constable.

13.2 <u>Termination Upon Notice Without Opportunity to Cure</u>.  Franchisee shall be deemed to be in default and Del Taco may, at its option, terminate this Agreement and all rights granted hereunder, without affording Franchisee any opportunity to cure the default, effective immediately upon the delivery of written notice to Franchisee by Del Taco (in the manner set forth under Section 20 below), upon the occurrence of any of the following events:

13.2.1  If Franchisee fails to obtain approval of the site for the Restaurant pursuant to this Agreement or the Site Selection Addendum;

13.2.2  If Franchisee fails to construct, maintain, repair or renovate the Restaurant in accordance with this Agreement or Del Taco's plans and specifications or fails to equip the Restaurant in accordance with Del Taco's standards and specifications;

13.2.3  If Franchisee, its Operating Principal, or managers fail to complete the initial training program pursuant to Section 5.4 of this Agreement;

13.2.4  If Franchisee at any time without the written consent of Del Taco ceases to operate or otherwise abandons the Restaurant for three (3) consecutive business days, or loses the right to possession of the Restaurant, or otherwise forfeits the right to do or transact business in the jurisdiction where the Restaurant is located; provided, however, that if, through no fault of Franchisee, the premises are damaged or destroyed by an event such that repairs or reconstruction cannot be completed within ninety (90) days thereafter, then Franchisee shall have thirty (30) days after such event in which to apply for Del Taco's approval to relocate and/or reconstruct the Restaurant, which approval shall not be unreasonably withheld;

13.2.5  If Franchisee defaults under any lease or sublease for the Restaurant (the "**Lease**") and fails to cure the default within the time period specified in the Lease, or if the Lease is terminated, for any reason, or expires;

13.2.6   If Franchisee, any owner of Franchisee, or any affiliate of Franchisee is convicted of a felony, a crime involving moral turpitude, or any other crime or offense that Del Taco believes is reasonably likely to have an adverse effect on the System, the Proprietary Marks, the goodwill associated therewith, or Del Taco's interest therein;

13.2.7   If Franchisee engages in any conduct or practice that is fraudulent, unfair, unethical, or a deceptive practice;

13.2.8   If a threat or danger to public health or safety results from the construction, maintenance, or operation of the Restaurant;

13.2.9   If Franchisee or any of Franchisee's owners purports to transfer any rights or obligations under this Agreement or any interest to any third party in a manner that is contrary to the terms of Section 12;

13.2.10 If Franchisee fails to permit an inspection pursuant to Section 5.14 or an audit pursuant to Section 7.4;

13.2.11 If Franchisee fails to comply with the covenants in Section 10.5 or fails to timely obtain execution of the covenants required under Section 10.8;

13.2.12 If, contrary to the terms of Sections 9 or 10 above, Franchisee discloses or divulges the contents of the Manuals or other Confidential Information provided to Franchisee by Del Taco;

13.2.13 If Franchisee knowingly maintains false books or records, or submits any false reports (including information provided as part of Franchisee's application for this franchise) to Del Taco;

13.2.14 If Franchisee makes, or has made, any misrepresentation or engaged in any act of fraud in connection with obtaining this Agreement or in conducting the business franchised and licensed under this Agreement;

13.2.15 If Franchisee fails to pay any supplier or vendor when due, and fails to cure such default within the time period specified by the supplier or vendor, or in the applicable supply contract;

13.2.16 If Franchisee fails to pay any third party, including a lender, seller or lessor of products, services or equipment, any amount due by Franchisee to such parties on any note, financing, obligation, or financial instrument when due, and such failure to pay the full amount owed is not cured after any notice required by the contract or under applicable law;

13.2.17 If Franchisee makes any unauthorized or improper use of the Proprietary Marks, or if Franchisee or any owner of Franchisee fails to utilize the Proprietary Marks solely in the manner and for the purposes directed by Del Taco, or directly or indirectly contests the validity of Del Taco's ownership of the Proprietary Marks or Del Taco's right to use and to license others to use the Proprietary Marks;

13.2.18 If Franchisee fails to make any payments when due to Del Taco;

13.2.19 If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement;

13.2.20 If Franchisee fails to operate the Restaurant in accordance with this Agreement, including operating the Restaurant in compliance with the operating standards and specifications established from time to time by Del Taco as to the quality of service, specifications and use of computer

38

hardware and software, cleanliness, health and sanitation, or if Franchisee receives a failing score on any inspection conducted in accordance with Section 5.14 hereof;

13.2.21 If Franchisee defaults in the performance of any other obligation under this Agreement or any other agreement with Del Taco or any of its affiliates;

13.2.22 If Franchisee fails on more than two occasions during any 12-month period to comply with one or more requirements of this Agreement or any other agreement with Del Taco;

13.2.23 If Franchisee fails to comply with any laws as more specifically set forth in Section 5.26;

13.2.24 If Franchisee, prior to operating the Restaurant, does not obtain Del Taco's prior written approval of an Operating Principal if (1) Franchisee is not an individual or (2) Franchisee does not participate personally in the direct operation of the Restaurant;

13.2.25 If the right of Franchisee to possess the Restaurant terminates for any reason whatsoever.

13.3  Termination With Opportunity to Cure.  Except as otherwise provided in Sections 13.1 and 13.2 above, upon any other default by Franchisee of Franchisee's obligations hereunder, Del Taco may terminate this Agreement by giving written notice of termination (in the manner set forth under Section 20 below) setting forth the nature of such default to Franchisee at least thirty (30) days prior to the effective date of termination (or, with respect to monetary defaults, five (5) days); provided, however, that Franchisee may avoid termination by immediately initiating a remedy to cure such default, curing it to Del Taco's satisfaction, and by promptly providing proof thereof satisfactory to Del Taco, all within the thirty (30) (or five (5)) day period.  If any such default is not cured within the specified time, this Agreement shall terminate without further notice to Franchisee effective immediately upon the expiration of the thirty (30) (or five (5)) day period or such longer period as applicable law may require.

13.4  Extended Notice of Termination. If any law applicable to this Section 13 requires a longer notice period prior to termination of this Agreement, or prior to a refusal to enter into a successor or renewal franchise, than is required hereunder, a different standard of "**good cause**", or the taking of some other action not required hereunder, the prior notice, "good cause" standard, and/or other action required by such law shall be substituted for the comparable provisions hereof.

13.5  Assignment Upon Bankruptcy.  If, for any reason, this Agreement is not terminated pursuant to this Section 13, and the Agreement is assumed, or assignment of the same to any person or entity who has made a bona fide offer to accept an assignment of the Agreement is contemplated, pursuant to the United States Bankruptcy Code, then notice of such proposed assignment or assumption, setting forth: (i) the name and address of the proposed assignee; and (ii) all of the terms and conditions of the proposed assignment and assumption, shall be given to Del Taco within twenty (20) days after receipt of such proposed assignee's offer to accept assignment of this Agreement, and, in any event, within ten (10) days prior to the date application is made to a court of competent jurisdiction for authority and approval to enter into such assignment and assumption, and Del Taco shall thereupon have the prior right and option, to be exercised by notice given at any time prior to the effective date of such proposed assignment and assumption, to accept an assignment of this Agreement to Del Taco upon the same terms and conditions and for the same consideration, if any, as in the bona fide offer made by the proposed assignee, less any brokerage commissions which may be payable by Franchisee out of the consideration to be paid by such assignee for the assignment of this Agreement.  In the event Del Taco does not elect to exercise the options described in this Section 13.5, any transfer or assignment pursuant to the United States Bankruptcy Code

39

shall be subject to the same terms and conditions of any other transfer or assignment set forth in Section 12.

13.6    Other Remedies.  Del Taco has the right to undertake any one or more of the following actions in addition to terminating this Agreement:

13.6.1    Del Taco may require Franchisee to close the Restaurant and take the necessary steps to bring the Restaurant (including the operation, maintenance of the equipment and premises, repair and restoration of the Restaurant) into strict conformity with Del Taco's standards and specifications and the requirements of this Agreement.  Franchisee shall not reopen the Restaurant until Franchisee has brought it into conformity with Del Taco's standards and specifications;

13.6.2    Del Taco may modify, or eliminate completely, the Protected Area described in Section 1.2 above;

13.6.3    Del Taco may elect, but has no obligation, to assume complete operating control and possession of the Restaurant and operate the same in the capacity of a receiver.  Del Taco shall apply funds received from that operation, first to the payment of all of Del Taco's costs and expenses of operation, then to the current obligations of Franchisee to Del Taco or any third party, and then to the past due obligations of Franchisee to Del Taco or any third party, with any remaining funds paid over to Franchisee;

13.6.4    Del Taco may disable access to or remove all or any references to the Restaurant or webpage(s) of the Restaurant from the Authorized Website, until such time as the default is fully cured;

If any of such rights, options, arrangements, or areas are terminated or modified in accordance with this Section 13.6, such action shall be without prejudice to Del Taco's right to terminate this Agreement in accordance with Sections 13.2 or 13.3 above, and/or to terminate any other rights, options or arrangements under this Agreement at any time thereafter for the same default or as a result of any additional defaults of the terms of this Agreement.

**14.    Obligations Upon Termination or Expiration.**

14.1    Upon termination or expiration of this Agreement, all rights granted hereunder to Franchisee shall forthwith terminate, and:

14.1.1    Cease Operations.  Franchisee shall immediately cease to operate the Restaurant, and shall not thereafter, directly or indirectly, represent to the public or hold Franchisee out as a present or former franchisee of Del Taco.

14.1.2    Cease Use of Proprietary Marks.  Franchisee shall immediately and permanently cease to use, in any manner whatsoever, any confidential methods, procedures and techniques associated with the System, the mark "Del Taco" and all other Proprietary Marks and distinctive forms, slogans, signs, symbols, and devices associated with the System.  In particular, Franchisee shall cease to use all signs, advertising materials, displays, stationery, forms, and any other articles that display the Proprietary Marks, remove all such articles and/or permit Del Taco to enter the Restaurant and remove or permanently cover all signs or advertisements identifiable in any way with Del Taco's name or business, at Franchisee's expense.

14.1.3    Cancellation of Assumed Names.  Franchisee shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the Proprietary Mark "Del Taco" and all other Proprietary Marks, and/or any other service mark or trademark, and Franchisee shall

furnish Del Taco with evidence satisfactory to Del Taco of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

14.1.4   Pay Monies Owed; Liquidated Damages. Franchisee shall pay Del Taco all sums then due plus damages for the right to receive the Royalty Fees for the remaining term of this Agreement, together with any other damages suffered by Del Taco as a result of the default. The damages for royalties due during the remainder of the term of this Agreement shall equal the product of the average yearly amount of all fees paid or payments by Franchisee under Section 3 of this Agreement during the three years immediately preceding the termination (or such period as the Restaurant was open for business, if the Restaurant was not open for business during the entire three year period), multiplied by the number of years remaining in the term, minus 20%. The payments called for in this Section 14.1.4 are not a penalty. A precise calculation of the full extent of damages that Del Taco will incur if this Agreement terminates because Franchisee defaults cannot be reasonably determined. Nevertheless, the parties agree that the lump-sum payment provided under this Section 14.1.4 is reasonable in light of the damages for premature termination that may reasonably be expected to occur in such event. Franchisee shall also pay to Del Taco, in addition to any amounts then due and owing, all expenses incurred by Del Taco as a result of any default, including reasonable attorneys' fees, expenses, and costs, and interest on such attorneys' fees, expenses, and costs.

14.1.5   Return of Manuals and Other Materials. Franchisee shall immediately deliver to Del Taco the Manuals, plans and specifications, designs, records, data, samples, models, programs, handbooks and drawings relating to Del Taco's operations or business, and all other materials containing Confidential Information (including any copies thereof, even if such copies were made in violation of this Agreement), all of which are acknowledged to be Del Taco's property.

14.1.6   No Confusion. Franchisee agrees that, if it continues to operate or subsequently begins to operate any other business, Franchisee shall not use any reproduction, counterfeit copy, or colorable imitation of the Proprietary Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which is likely to dilute Del Taco's rights in and to the Proprietary Marks, and further agree not to utilize any designation of origin, description, trademark, service mark, or representation which suggests or represents a present or past association or connection with Del Taco, the System, or the Proprietary Marks.

14.1.7   Assign Leases; Modification of Premises. Del Taco shall have the right and option, but not the obligation, to acquire the Leases for the Restaurant, or otherwise acquire the right to occupy the premises. Del Taco may assign or delegate this right or option to any of Del Taco's affiliates or a third party designee, without notice to, or request for approval from, the landlord or lessor of the premises. If Del Taco or its assignee or delegatee does not elect or is unable to exercise any option Del Taco may have to acquire the leases or subleases for the premises of the Restaurant, or otherwise acquire the right to occupy the premises, Franchisee shall make such modifications or alterations to the premises operated hereunder (including the changing of the telephone number) immediately upon termination or expiration of this Agreement as may be necessary to distinguish the appearance of said premises from that of other Del Taco Restaurants, and shall make such specific additional changes thereto as Del Taco may reasonably request for that purpose. In addition, Franchisee shall cease use of, and if Del Taco requests shall transfer to Del Taco, all telephone numbers, customer "**loyalty**" lists, and any domain names, websites, email addresses, and any other identifiers, whether or not authorized by Del Taco, used by Del Taco while operating the Restaurant, and shall promptly execute such documents or take such steps necessary to remove reference to the Restaurant from all trade or business telephone directories, including "**yellow**" and "**white**" pages, or at Del Taco's request transfer same to Del Taco. If Franchisee fails or refuses to comply with the requirements of this Section 14.1.7, Del Taco (or its designee) shall have the right to enter upon the premises of the Restaurant, without being guilty of trespass or any other tort, for the purpose of making or causing

41

to be made such changes as may be required, at Franchisee's expense, which expense Franchisee agrees to pay upon demand.

14.1.8    Option to Purchase Equipment and Furnishings.  Del Taco shall have the option, to be exercised within thirty (30) days after termination or expiration of this Agreement, to purchase from Franchisee any or all of the equipment or inventory related to the operation of the Restaurant, at the lesser of the fair market value or Franchisee's book value.  The book value shall be determined based upon a five (5) year straight line depreciation of original costs.  For equipment that is five (5) or more years old, the parties agree that fair market value shall be deemed to be ten percent (10%) of the equipment's original cost.  If Del Taco elects to exercise any option to purchase herein provided, Del Taco shall set off all amounts due from Franchisee. Notwithstanding any term or provision in this subparagraph to the contrary, Del Taco expressly reserves the right, but not the obligation, to negotiate to purchase the equipment directly from the lessor of the equipment. The transfer of the equipment from Franchisee to Del Taco shall take place within sixty (60) days after the expiration or termination of this Agreement upon receipt of payment or any applicable transfer and release documents from Del Taco; provided, however, that if the transfer cannot take place within that time period because of delays caused by Franchisee's lender or lessor, the time period shall extend by a like number of days. If Del Taco exercises the foregoing option, Franchisee shall leave all of the equipment at the Restaurant in good working order and repair and shall allow Del Taco to use the equipment without charge until the transfer of the equipment takes place.

14.1.9    Damages and Costs. Franchisee shall pay Del Taco all damages, costs, interest, and expenses, including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), incurred by Del Taco subsequent to the termination or expiration of this Agreement in obtaining injunctive or other relief for the enforcement of any provisions of this Section 14.1.9.

14.1.10 Other Rights of Franchisee.  The termination of this Agreement shall not affect the rights of Franchisee to operate other Del Taco restaurants in accordance with the terms of any other applicable franchise agreements with Del Taco until and unless the other franchise agreements, or any of them, terminate or expire.

## 15.    Taxes, Permits and Indebtedness

15.1    Taxes. Franchisee shall promptly pay when due all taxes levied or assessed, including unemployment and sales taxes, and all accounts and other indebtedness of every kind incurred by Franchisee in the conduct of the Restaurant.  If Franchisee is required to deduct any sales tax, gross receipts tax, income tax, withholding tax or similar tax from any payment to Del Taco, then, to the extent that Del Taco is not able to successfully obtain and utilize a tax credit from the applicable taxing authorities, the amount payable by Del Taco shall be increased by such amount as is necessary to make the actual amount received (after such withholding tax and after any additional taxes on account of such additional payment) equal to the amount that Del Taco would have received had no tax payment been required, provided that such shortfall is not caused by Del Taco's negligence in filing the claims, or for reasons that can be solely attributable to Del Taco.

15.2    Tax Disputes.  In the event of any bona fide dispute as to Franchisee's liability for taxes assessed or other indebtedness, Franchisee may contest the validity or the amount of the tax or indebtedness in accordance with procedures of the taxing authority or applicable law; however, in no event shall Franchisee permit a tax sale or seizure by levy of execution or similar writ or warrant, or attachment by a creditor, to occur against the premises of the Restaurant, or any improvements thereon.

15.3    Compliance With Laws.  Franchisee shall comply with all federal, state, and local laws, rules, and regulations, including employment, labor, and wage and hour laws, tax laws, and local operating

regulations.  Franchisee shall timely obtain any and all permits, certificates, or licenses necessary for the full and proper conduct of the Restaurant, including licenses to do business, health certificates, fictitious name registrations, sales tax permits, and fire clearances.  To the extent that the requirements of said laws are in conflict with the terms of this Agreement, the Manuals, or Del Taco's other instructions, Franchisee shall:  (a) comply with said laws; and (b) immediately provide written notice describing the nature of such conflict to Del Taco.

15.4     <u>Notification of Claims</u>.  Franchisee shall notify Del Taco in writing within three (3) days of receipt of notice of any health or safety violation, the commencement of any action, suit, or proceeding, and of the issuance of any order, writ, injunction, award, or decree of any court, agency, or other governmental instrumentality, or within three (3) days occurrence of any accident or injury which may adversely affect the operation of the Restaurant or Franchisee's financial condition, or give rise to liability or a claim against Franchisee or Del Taco.

## 16.     **Independent Contractor and Indemnification.**

16.1     It is understood and agreed by the parties hereto that this Agreement does not in any way create the relationship of principal, agent, fiduciary, joint venture, joint employer, or employer/employee between Del Taco and Franchisee; that Franchisee shall be an independent contractor; and that nothing in this Agreement is intended to constitute either party an agent, legal representative, subsidiary, joint venturer, joint employer, partner, employee, or servant of the other for any purpose whatsoever. For the avoidance of doubt, Del Taco is not the employer or joint employer of Franchisee or Franchisee's employees.

16.1.1     <u>Identification as Independent Contractor</u>.  At all times during the term of this Agreement and any extensions hereof, Franchisee shall hold itself out to the public as an independent contractor operating the business pursuant to a franchise from Del Taco.

16.1.2     <u>No Agency</u>.  Franchisee shall not act or attempt to act or represent itself, directly or by implication, as an agent of Del Taco. It is understood and agreed that nothing in this Agreement authorizes Franchisee to make any contract, agreement, warranty, or representation on Del Taco's behalf, or to incur any debt or other obligation in Del Taco's name; and that Del Taco shall in no event assume liability for, or be deemed liable hereunder as a result of, any such action; nor shall Del Taco be liable by reason of any act or omission by Franchisee in Franchisee's conduct of the Restaurant or for any claim or judgment arising therefrom against Franchisee or Del Taco.  Franchisee shall not have the authority, express or implied, to bind or obligate Del Taco in any way.

16.1.3     <u>Indemnification</u>.  Franchisee shall, to the fullest extent permissible under applicable law, indemnify and hold Del Taco and its affiliates, and each of Del Taco's respective officers, directors, employees, and agents harmless against any and all claims, obligations, and damages arising directly or indirectly from, as a result of, or in connection with this Agreement, the Restaurant, Franchisee's operation of the Restaurant,  Franchisee and its employees' actions and inaction, or Franchisee's breach of this Agreement, including those alleged to be caused by Del Taco's negligence, as well as the costs, including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses), of defending against them, unless (and then only to the extent that) the claims, obligations, and damages are determined to be caused solely by Del Taco's gross negligence or willful misconduct according to a final, unappealable ruling issued by a court or arbitrator with competent jurisdiction.  In the event Del Taco incurs any costs or expenses, including legal fees (including attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses)), travel expenses, and other charges, in connection with any proceeding involving Franchisee in which Del Taco are not a party, Franchisee shall reimburse Del Taco for all such costs and expenses promptly upon presentation of invoices.  Franchisee acknowledges and agrees that Franchisee's

43

indemnification and hold harmless obligations under this Section 16 shall survive the termination or expiration of this Agreement.

## 17.     Governing Law and Dispute Resolution.

17.1     <u>Governing Law</u>. This Agreement shall be governed and construed in accordance with the laws of California, without regard to its conflicts of laws provisions.  However, the laws of the state in which the Restaurant operates shall govern the enforcement of the non-compete provisions of Section 10 of this Agreement.  Nothing in this Section 17 is intended by the parties to subject this Agreement to any franchise, business opportunity, antitrust, consumer protection, or any other law, rule, or regulation of the State of California to which this Agreement would not otherwise be subject.

17.2     <u>Venue</u>.  Subject to the terms and provisions of Section 17.3 below, the parties agree that any action brought by one party against the other in any court, whether federal or state, shall be brought only before a court of competent jurisdiction in Orange County, California.  The parties agree that this Section 17.2 shall not be construed as preventing either party from removing an action from state to federal court; provided, however, that venue shall be as set forth above.  Franchisee and its owners hereby waive all questions of personal jurisdiction or venue for the purpose of carrying out this provision.  Any such action shall be conducted on an individual basis, and not as part of a consolidated, common, or class action, and Franchisee and its owners waive any and all rights to proceed on a consolidated, common, or class basis.

17.3     <u>Arbitration</u>. Except as otherwise provided in this Agreement, any claim, controversy or dispute arising out of or relating to this Agreement, the Restaurant, or the relationship created by this Agreement, including any claim by Franchisee or its owners, concerning the entry into, the performance under, or the termination of this Agreement, or any other agreement between the parties will be resolved via binding arbitration under the authority of the Federal Arbitration Act in accordance with the following provisions:

17.3.1   Any arbitration will be administered by the American Arbitration Association (or its successor) pursuant to its then-current commercial arbitration rules and procedures.  The arbitrator will have the authority to decide issues regarding arbitrability and the scope of the arbitrator's jurisdiction.  The arbitration must take place in the county in which our headquarters are located at the time of the dispute (currently Orange County, California).

17.3.2   Any arbitration must be on an individual basis, and not as part of a common, consolidated, or class action.  The parties and the arbitrator will have no authority or power to proceed with any claim as a class action or otherwise to join or consolidate any claim with any other claim or any other proceeding involving third parties.  If a court determines that this limitation on joinder of or class action certification of claims is unenforceable, then this entire commitment to arbitrate will become null and void and the parties will submit all claims to the jurisdiction of the courts.

17.3.3   The arbitrator must follow the law and not disregard the terms of this Agreement or its related agreements.  Except as otherwise provided in this Agreement, the arbitrator will have the authority to award any interim, interlocutory, or final remedy or relief that a court of the State of California could order or grant, including, without limitation, general damages, specific performance of any obligation created under this Agreement, the issuance of an injunction or other extraordinary relief, or the imposition of sanctions for abuse or frustration of the arbitration process; however, the arbitrator may not under any circumstances:  (i) stay the effectiveness of any pending termination of this Agreement; (ii) assess punitive or other prohibited damages; or (iii) make an award that extends, modifies, or suspends any lawful term of this Agreement or its related agreements or any reasonable standard of business performance that we set.

A judgment may be entered upon the arbitration award by any state or federal court of competent jurisdiction. The decision of the arbitrator will be binding and final on all parties to the dispute.

17.3.4 Except as necessary to obtain interim or provisional relief, to enforce any arbitration award or order, or to comply with any franchise-specific disclosure obligation, the arbitration proceeding and award will be maintained as strictly confidential and neither party hereto nor the arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties hereto.

17.3.5 Each party will bear its share of the costs of the arbitration proceeding. The prevailing party to the arbitration will have the right to an award of its reasonable attorneys' fees and costs incurred after the filing of the demand for arbitration. If either Del Taco or Franchisee seeks to enforce this Agreement in any arbitral or other proceeding, the prevailing party will be entitled to recover its reasonable costs and expenses (including reasonable attorneys' fees, costs, and expenses (and interest on such fees, costs, and expenses) and expert witness fees, costs of investigation and proof of facts, court costs, other litigation expenses and travel or living expenses) incurred in connection with such judicial or other proceeding.

17.3.6 This agreement to arbitrate will survive the expiration or termination of this Agreement.

17.4 <u>Injunctive Relief</u>. Notwithstanding anything to the contrary contained in this Section 17, either party may file suit in a court of competent jurisdiction (pursuant to Section 17.2) for the entry of temporary or preliminary injunctive relief, restraining orders, and orders of specific performance, including injunctive relief pertaining to Franchisee's use of the System, including Del Taco's trademarks and service marks.

17.5 <u>Limitation of Actions</u>. **EXCEPT AS OTHERWISE PROVIDED IN THIS SECTION 17.5, ANY AND ALL CLAIMS AND ACTIONS ARISING OUT OF OR RELATING TO THIS AGREEMENT, THE FRANCHISE RELATIONSHIP, OR FRANCHISEE'S OPERATION OF THE FRANCHISED BUSINESS, (INCLUDING ANY DEFENSES AND ANY CLAIMS OF SET-OFF OR RECOUPMENT), SHALL BE IRREVOCABLY BARRED UNLESS BROUGHT OR ASSERTED BEFORE THE EXPIRATION OF THE EARLIER OF (A) THE TIME PERIOD FOR BRINGING AN ACTION UNDER ANY APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS; (B) ONE (1) YEAR AFTER THE DATE UPON WHICH A PARTY DISCOVERED, OR SHOULD HAVE DISCOVERED, THE FACTS GIVING RISE TO AN ALLEGED CLAIM; OR (C) TWO (2) YEARS AFTER THE FIRST ACT OR OMISSION GIVING RISE TO AN ALLEGED CLAIM. CLAIMS ATTRIBUTABLE TO UNDERREPORTING OF SALES, AND CLAIMS OF THE PARTIES FOR FAILURE TO PAY MONIES OWED AND/OR INDEMNIFICATION SHALL BE SUBJECT ONLY TO THE APPLICABLE STATE OR FEDERAL STATUTE OF LIMITATIONS.**

17.6 <u>Waiver of Damages</u>. **EXCEPT AS OTHERWISE DESCRIBED IN THIS AGREEMENT (INCLUDING, WITHOUT LIMITATION, AS TO INDEMNIFICATION UNDER SECTION 16.1.3), DEL TACO, FRANCHISEE, AND FRANCHISEE'S OWNERS HEREBY WAIVE TO THE FULLEST EXTENT PERMITTED BY LAW ANY RIGHT TO OR CLAIM FOR ANY LOST FUTURE PROFITS OR PUNITIVE, EXEMPLARY, CONSEQUENTIAL, OR MULTIPLE DAMAGES AGAINST THE OTHER, AND AGREE THAT IN THE EVENT OF A DISPUTE AMONG THEM EACH SHALL BE LIMITED TO THE RECOVERY ONLY OF DIRECT DAMAGES SUSTAINED BY DEL TACO, FRANCHISEE, OR FRANCHISEE'S OWNERS.**

17.7    Waiver of Jury Trial. The parties hereto irrevocably waive trial by jury in any action, proceeding, or counterclaim in connection with any matter or dispute of any kind arising under or in any way connected with this Agreement or any right or remedy hereunder, whether at law or in equity, brought by either party hereto.

**18.     Time is of the Essence.**

As to all reports and fees payable to or to be made to Del Taco and any inspections initiated by Del Taco under Section 5.14, time shall be of the essence.

**19.     Approvals, Waivers and Binding Effects.**

19.1    Approvals.  Whenever this Agreement requires Del Taco's prior approval or consent, Franchisee shall make a timely written request to Del Taco for the approval or consent, which Del Taco shall grant, if at all, only in writing.

19.2    No Warranties. Del Taco makes no warranties or guarantees, and assumes no liability or obligation to Franchisee, by providing any waiver, approval, consent or suggestion to Franchisee in connection with this Agreement or by reason of any neglect, delay or denial of any request.

DEL TACO DISCLAIMS ALL WARRANTIES FOR THE GOODS, EXPRESS OR IMPLIED, INCLUDING THE WARRANTIES OF FITNESS FOR PARTICULAR PURPOSE, MERCHANTABILITY, AND NONINFRINGEMENT.  DEL TACO WILL NOT BE LIABLE TO FRANCHISEE RELATING TO THE RESALE OF ANY OF THE GOODS FURNISHED, WHETHER SUCH CLAIM IS BASED ON BREACH OF WARRANTY, CONTRACT, TORT OR OTHER LEGAL THEORY AND REGARDLESS OF THE CAUSES OF SUCH LOSS OR DAMAGES OR WHETHER ANY OTHER REMEDY PROVIDED IN THIS AGREEMENT FAILS AND IN NO EVENT WILL ANY SUCH LIABILITY UNDER THIS SECTION 19.2 EXCEED THE PURCHASE PRICE PAID FOR THE PRODUCTS.

19.3    Waivers. Except as set forth in this Agreement, no rights or remedies set forth in this Agreement shall exclude any other right or remedy allowed by law or in equity.  No waiver by a party of any covenant or condition or breach of any covenant or condition of this Agreement shall constitute a waiver of any subsequent breach or nonobservance on any other occasion of the same or any other covenant or condition of this Agreement.  Subsequent acceptance by Del Taco of payments due it shall not constitute a waiver by Del Taco of any prior breach.

19.4    Binding Effect; No Other Rights. This Agreement shall bind the parties and their respective executors, administrators, successors and assigns. Except as expressly provided to the contrary herein, nothing in this Agreement is intended, nor shall be deemed, to confer upon any person or legal entity other than Franchisee, Del Taco, and such of the parties' respective successors and assigns as may be contemplated (and, as to Franchisee, permitted) by Section 12.3 above, any rights or remedies under or by reason of this Agreement.

**20.     Notices.**

20.1    Any and all notices required or permitted under this Agreement shall be in writing and shall be personally delivered, sent by registered mail, a recognized overnight delivery service (e.g., UPS, FedEx, etc.), or by other means which affords the sender evidence of delivery, or of rejected delivery, to the respective parties at the addresses below, unless and until a different address has been designated by written

46

notice to the other party.  Any notice by a means which affords the sender evidence of delivery, or rejected delivery, shall be deemed to have been given at the date and time of receipt or rejected delivery.

| | |
|---|---|
| Del Taco: | 25521 Commercentre Drive, Suite 150<br>Lake Forest, California 92630<br>Fax Number: (949) 616-5002 |
| Franchisee: | Franchisee's notice address set forth on Exhibit A to this Agreement |

### 21.     Force Majeure.

No failure by any party to this Agreement to take action on account of any default by any other party, or to exercise any right hereunder, whether in a single instance or repeatedly, shall constitute a waiver of any such default or right or the performance required of such other party.  Except as otherwise provided in this Agreement, neither Del Taco nor Franchisee shall be liable for loss or damage or deemed to be in breach of this Agreement if the failure to perform the obligations of Del Taco or Franchisee results from: transportation shortages, inadequate supply of equipment, merchandise, supplies, labor, material or energy, or the voluntary foregoing of the right to acquire or use any of the foregoing in order to accommodate or comply with the orders, requests, regulations, recommendations or instructions of any federal, state, or municipal government or any department or agency thereof;  compliance with any law; epidemic; pandemic; public health emergency; or act of God. Any delay resulting from any of such causes shall extend performance accordingly or excuse performance, in whole or in part, as may be reasonable, except that such causes shall not excuse payments of amounts owed at the time of such occurrence or payment of fees and all other amounts due to Del Taco and its affiliates thereafter. The party whose performance is affected by any of such causes shall give prompt written notice of the circumstances of such event to the other party, but in no event more than five (5) days after the commencement of such event.  The notice shall describe the nature of the event and an estimate as to its duration.

### 22.     Immunity for Certain Limited Disclosures.

Notwithstanding anything in this Agreement to the contrary, Franchisee and its affiliates may, in accordance with any applicable law, including the federal Defend Trade Secrets Act, disclose Confidential Information, including Del Taco's trade secrets, (a) in confidence, to federal, state, or local government officials, or to an attorney of Franchisee, for the sole purpose of reporting or investigating a suspected violation of law; or (b) in a document filed in a lawsuit or other legal proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with any applicable law or create liability for disclosures expressly allowed by law.

### 23.     Entire Agreement and Amendment.

This Agreement and the exhibits referred to in this Agreement constitute the entire, full, and complete Agreement between Del Taco and Franchisee concerning the Agreement's subject matter, and supersede any and all prior or contemporaneous negotiations, discussions, understandings and agreements. There are no other oral or written understandings or agreements between Del Taco and Franchisee relating to the subject matter of this Agreement. Nothing in this Franchise Agreement is intended to disclaim any representations made by Del Taco in the Franchise Disclosure Document that Del Taco furnished to Franchisee, if any.  Except for those permitted to be made unilaterally by Del Taco hereunder, no amendment, change, or variance from this Agreement shall be binding on either party unless mutually agreed to by the parties and executed by their authorized officers or agents in writing.  The System and Manuals are subject to change by Del Taco at any time, at Del Taco's option.

24.    **Severability; Enforcement of Covenants; Construction.**

24.1    <u>Severability</u>.  If any of the provisions of this Agreement may be construed in more than one way, one of which would render the provision illegal or otherwise voidable or unenforceable, such provision shall have the meaning which renders it valid and enforceable.  The language of all provisions of this Agreement shall be construed according to its fair meaning and not strictly against any party.  In the event any court or other government authority shall determine that any provision in this Agreement is not enforceable as written, the parties agree that the provision shall be amended so that it is enforceable to the fullest extent permissible under the laws and public policies of the jurisdiction in which enforcement is sought and affords the parties the same basic rights and obligations and has the same economic effect.  If any provision in this Agreement is held invalid or otherwise unenforceable by any court or other government authority or in any other proceeding, such findings shall not invalidate the remainder of the agreement.

24.2    <u>Enforceability of Covenants</u>. Franchisee agrees to be bound by any promise or covenant imposing the maximum duty permitted by law which is subsumed within the terms of any provision of this Agreement, as though it were separately articulated in and made a part of this Agreement, that may result from striking from any of the provisions hereof any portion or portions which a court may hold to be unenforceable in a final decision to which Del Taco and Franchisee are a party, or from reducing the scope of any promise or covenant to the extent required to comply with such a court order.

24.3    <u>Construction</u>.  All captions and headings in this Agreement are intended solely for the convenience of the parties, and none shall be deemed to affect the meaning or construction of any provision. Each pronoun used in this Agreement shall include the other numbers and genders, as appropriate. The words "**include**" and "**including**" will be construed to include the words "**without limitation**."

25.    **Joint and Several Obligation.**

If Franchisee consists of more than one person or entity, each person and entity shall have joint and several liability for Franchisee's obligations under this Agreement.

26.    **Incorporation of Exhibits.**

All exhibits referred to in this Agreement constitute an integral part of this Agreement.

27.    **Counterparts.**

This Agreement may be executed in any number of counterparts each of which when so executed will be an original, but all of which together will constitute one (1) and the same instrument.

28.    **Survival of Provisions.**

All provisions of this Agreement which, by their terms or intent, are designed to survive the expiration or termination of this Agreement, shall so survive the expiration and/or termination of this Agreement.

29.    **Representations, Warranties and Acknowledgments.**

29.1    Franchisee represents, warrants and acknowledges to Del Taco as follows:

29.1.1    <u>Modification of Offers</u>. Franchisee understands that present and future franchisees of Del Taco may operate under different forms of agreements and, consequently, the obligations and rights

of the parties to those agreements may differ materially from the obligations and rights contained in this Agreement. Franchisee also acknowledges and agrees that Del Taco may modify the offer of Del Taco franchises to other franchisees in any manner and at any time, which offers and agreements have or may have terms, conditions, and obligations that may differ from the terms, conditions, and obligations in this Agreement.

29.1.2    <u>Development Agreement Terms</u>. Franchisee understands that a franchisee who is a party to a Del Taco Development Agreement may enjoy significantly more favorable terms and conditions under its Del Taco Franchise Agreement than the terms and conditions contained in this Agreement.

29.1.3    <u>No Other Obligations.</u>  Each party represents and warrants to the others that his/her/its execution of this Agreement and all exhibits and addenda hereto do not violate or breach any other agreement, contract or covenant to which such party is bound, and further represents and warrants to the other parties that there are no other agreements, court orders, or any other legal obligations that would preclude or in any manner restrict such party from: (a) negotiating and entering into this Agreement; (b) exercising its rights under this Agreement; and/or (c) fulfilling its responsibilities under this Agreement.

29.1.4    <u>Restaurant Location.</u> Franchisee acknowledges having sole and complete responsibility for the choice of the location of the Restaurant; and that Del Taco has not (and shall not be deemed to have, even by Del Taco's approval of the location) given any representation, promise, or guarantee of Franchisee's success at the location.

29.1.5    <u>Compliance with Anti-Terrorism Laws and Other Laws</u>. Franchisee and its owners represent and warrant to Del Taco that:  (a) neither Franchisee nor any of its owners have made any untrue statement of any material fact nor omitted to state any material fact in Franchisee and their franchise application and other documents and information submitted to Del Taco, or in obtaining the rights granted herein; (b) neither Franchisee nor any of its owners have any direct or indirect legal or beneficial interest in any business that may be deemed a Competitive Business, except as otherwise completely and accurately disclosed in  Franchisee's franchise application materials; (c) Franchisee and its owners have a legal right to own and operate the Restaurant, and the owner or officer that executes this Franchise Agreement on Franchisee's behalf has all legal right an authority to execute on Franchisee's behalf and to legally and contractually bind Franchisee; and (d) neither Franchisee nor its owners (i) have been designated as suspected terrorists under U.S. Executive Order 13244; (ii) is identified, either by name or an alias, pseudonym or nickname, on the lists of "**Specially Designated Nationals**" or "**Blocked Persons**" maintained by the U.S. Treasury Department's Office of Foreign Assets Control (texts currently available at   https://www.treasury.gov/resource-center/sanctions/SDN-List/Pages/default.aspx_/); (iii) have not violated and will not violate any law (in effect now or which may become effective in the future) prohibiting corrupt business practices, money laundering or the aid or support of persons who conspire to commit acts of terror against any person or government, including acts prohibited by the U.S. Patriot Act (text currently available at  <u>http://www.epic.org/privacy/terrorism/hr3162.html</u>), U.S. Executive Order 13244 (text currently available at <u>http://www.treas.gov/offices/enforcement/ofac/sanctions/terrorism.html</u>), the Foreign Corrupt Practices Act, or any similar law.

## 30.    Business Judgment.

Franchisee understands and agrees that Del Taco may operate and change the System in any manner that is not expressly and specifically prohibited by this Agreement.  Whenever Del Taco has expressly reserved in this Agreement or is deemed to have a right and/or discretion to take or withhold an action, or to grant or decline to grant Franchisee a right to take or withhold an action, except as otherwise expressly and specifically provided in this Agreement, Del Taco may make such decision or exercise its right and/or discretion on the basis of Del Taco's sole judgment of what is in Del Taco's best interest of Del Taco and

49

DocuSign Envelope ID: 5A534594-F37A-4584-A367-FE654124FE63

Case 22-45186-K12788RA Doc 1261-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities Page 100 of 145   Page 1296 of 1376

the System and brand overall, including Del Taco, its affiliates, and the franchise network, at the time Del Taco's decision is made or Del Taco's right or discretion is exercised, without regard to whether: (1) other reasonable alternative decisions or actions, or even arguably preferable alternative decisions or actions, could have been made by Del Taco; (2) Del Taco's decision or the action taken promotes Del Taco's financial or other individual interest; (3) Del Taco's decision or the action it takes applies differently to Franchisee and one or more other franchisees or Del Taco company-owned or affiliate-owned operations; or (4) Del Taco's decision or the exercise of its right or discretion is adverse to Franchisee's interests.  If applicable law implies a covenant of good faith and fair dealing in this Agreement, Del Taco and Franchisee agree that such covenant shall not imply any rights or obligations that are inconsistent with the express wording of the terms of this Agreement and that this Agreement grants Del Taco the right to make decisions, take actions and/or refrain from taking actions not inconsistent with Franchisee's rights and obligations hereunder.

[Signature Page Follows]

50

DocuSign Envelope ID: 5A534594-F37E-45B4-8367-FE654124FE53

Case 8:24-bk-12788-TA Doc 150-1 Filed 02/27/25 Entered 02/27/25 16:52:36 Desc
Memorandum of Points and Authorities in Support of Mot Page 1297 of 1376

Executed as of the day and year first set forth above.

**FRANCHISOR:**                                              **DEL TACO LLC**

By: _Jack Tang_
DocuSigned by:
AD28CBFCF34346A...
Jack Tang
Vice President, General Counsel

**FRANCHISEE:**                                              **NEWPORT VENTURES, LLC**

By: Techno Industries Inc
Its President & CEO

By: _____
DocuSigned by:
48F3F4B6234A40F...
Ernesto Abarro

By: _____
DocuSigned by:
C809831805CD4F3...
Katayoun Aryana

Date: _5/21/2024_____

DocuSign Envelope ID: 5A534594-E27-4EB4-8367-FE654I2AEE58

Case 23-24481-K12 7881A Doc 1571 Filed 02/27/24 Entered 02/27/24 08:32:36 Desc
Memorandum of Points and Authorities in Support of the 14.15 Page 1298 of 1376

## Exhibit A

### Identification of Franchisee

| | | |
|---|---|---|
| 1. | Name of Franchisee: | Newport Ventures, LLC |
| 2. | Notice Address of Franchisee: | 1500 E. Bethany Home Road<br>Suite 250<br>Phoenix, AZ 85014<br>E-Mail: ernieabarro@gmail.com &<br>karyana@newportdel.com<br>Fax Number: (949) 534-7000 |
| 3. | Location of Restaurant: | 7506 Parkway Drive<br>Lonetree, CO 80124 |
| 4. | Protected Area: | A circular area within a one-mile radius<br>from the front door of the Restaurant, subject to Section<br>1.2. of the Franchise Agreement. |
| 5. | Original Date of Opening: | November 20, 2003 |
| 6. | Renewal Date: | November 20, 2023 |
| 7. | Expiration Date: | November 19, 2043 |

Exhibit A

DocuSign Envelope ID: 5A534594-E471-4E84-8367-FF654124FE58

Case 24-10571 Doc 1287 Filed 02/27/25 Entered 02/27/25 08:32:36 Desc
Memorandum of Points and Authorities In Support of the Pag Page 1299 of 1376

## **Exhibit B**

## **Deleted As Not Applicable**

## Exhibit C

### Authorization Agreement for Prearranged Payments
### (Direct Debits)

The undersigned depositor ("Depositor") hereby authorizes Del Taco LLC ("Del Taco") to initiate debit entries and/or credit correction entries to the Depositor's checking and/or savings account(s) indicated below and the depository ("Depository") to debit such account pursuant to Del Taco's instructions.

Wells Fargo Bank

Denver, Colorado

Depository         Branch

2043 S Colorado Blvd.
Denver, Co 8022

Street Address, City, State, Zip Code

10200076

3510253861

Bank Transit/ABA Number      Account Number

This authority is to remain in full force and effect until Depository has received joint written notification from Del Taco and Depositor of the Depositor's termination of such authority in such time and in such manner as to afford Depository a reasonable opportunity to act on it. Notwithstanding the foregoing, Depository shall provide Del Taco and Depositor with 30 days' prior written notice of the termination of this authority. If an erroneous debit entry is initiated to Depositor's account, Depositor shall have the right to have the amount of such entry credited to such account by Depository, if within 15 calendar days following the date on which Depository sent to Depositor a statement of account or a written notice pertaining to such entry or 45 days after posting, whichever occurs first, Depositor shall have sent to Depository a written notice identifying such entry, stating that such entry was in error and requesting Depository to credit the amount thereof to such account. These rights are in addition to any rights Depositor may have under federal and state banking laws.

DocuSigned by:

48F3F4B6234A40F...

Depositor

By: _____

Title: _____

5/21/2024

Date: _____

Exhibit C

**Exhibit D**

**Statement of Ownership Interests**

The following is a list of all of Franchisee's owners, the percentage of their ownership interest and a description of the nature of their ownership interest:

| Individual/Entity Name | Percentage of Ownership/Nature of Interest* |
| --- | --- |
| Techno Industries Inc | 25% |
| Katayoun Aryana | 75% |

\* Must equal 100%.

DocuSign Envelope ID: 5A534594-E37A-4584-8367-FF654124FF58

Memorandum of Points and Authorities In Support of Page 1302 of 1376

## Exhibit E

### Guarantee, Indemnification, and Acknowledgment

As an inducement to Del Taco, LLC ("Del Taco" or "Franchisor") to execute the Del Taco Franchise Agreement between Del Taco and Ernesto Abarro & Katayoun Aryana, individually ("Franchisee"), dated ___May 22___, 2024 (the "Agreement"), the undersigned jointly and severally, hereby unconditionally guarantee to Del Taco and its successors and assigns that all of Franchisee's monetary and other obligations under the Agreement will be punctually paid and performed.

Upon demand by Del Taco, the undersigned each hereby jointly and severally agree to immediately make each payment required of Franchisee under the Agreement and waive any right to require Del Taco to: (a) proceed against Franchisee for any payment required under the Agreement; (b) proceed against or exhaust any security from Franchisee; (c) pursue or exhaust any remedy, including any legal or equitable relief, against Franchisee; or (d) give notice of demand for payment by Franchisee. Without affecting the obligations of the undersigned under this Guarantee, Del Taco may, without notice to the undersigned, extend, modify, or release any indebtedness or obligation of Franchisee, or settle, adjust, or compromise any claims against Franchisee, and the undersigned each hereby jointly and severally waive notice of same and agree to remain and be bound by any and all such amendments and changes to the Agreement.

The undersigned each hereby jointly and severally agree to defend, indemnify and hold Del Taco harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein.

The undersigned each hereby jointly and severally acknowledge and expressly agree to be individually bound by all of the covenants contained in Sections 8, 9, and 10 of the Agreement, and acknowledge and agree that this Guarantee does not grant the undersigned any right to use the "Del Taco" Marks or System licensed to Franchisee under the Agreement.

This Guarantee shall terminate upon the termination or expiration of the Agreement, except that all obligations and liabilities of the undersigned which arose from events which occurred on or before the effective date of such termination shall remain in full force and effect until satisfied or discharged by the undersigned, and all covenants which by their terms continue in force after the expiration or termination of the Agreement shall remain in force according to their terms. Upon the death of an individual guarantor, the estate of such guarantor shall be bound by this Guarantee, but only for defaults and obligations hereunder existing at the time of death; and the obligations of the other guarantors will continue in full force and effect.

If Del Taco is required to enforce this Guarantee in a judicial or arbitration proceeding, and prevails in such proceeding, Del Taco shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys', attorneys' assistants', arbitrators', and expert witness fees, costs, and expenses, costs of investigation and proof of facts, court costs, other litigation expenses, travel and living expenses, and interest, whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding. If Del Taco is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee, the undersigned shall reimburse Del Taco for any of the above-listed costs and expenses Del Taco incurs.

Subject to the obligations and provisions below, each of the undersigned agrees that all actions arising under this Guarantee or the Agreement, or otherwise as a result of the relationship between Del Taco and the undersigned, shall be governed by the provisions of Section 17 of the Agreement, and must be commenced in the state or federal court of general jurisdiction in California and each of the undersigned irrevocably submits to the jurisdiction of those courts and waives any objection he or she might have to either the jurisdiction of or venue in those courts. Nonetheless, each of the undersigned agrees that Del Taco may enforce this Guarantee and any orders and awards in the courts of the state or states in which he or she is domiciled.

Unless specifically stated otherwise, the terms used in this Guarantee shall have the same meaning as in the Agreement, and shall be interpreted and construed in accordance with Section 17 of the Agreement. This Guarantee shall be interpreted and construed under the laws of the State of California. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

IN WITNESS WHEREOF, each of the undersigned has signed this Guarantee as of the date of the Agreement.

GUARANTOR(S):

(Seal)    Signed: _____
48F3F4B6234A40F
(In his individual capacity)

Ernesto Abarro
120 S. Lovekin Blvd.
Blythe, CA 92225

(Seal)    Signed: _____
C809831805CD4F3
(In his individual capacity)

Katayoun Aryana
1500 E. Bethany Home Road
Suite 250
Phoenix, AZ 85014

Exhibit E-2

DocuSign Envelope ID: 5A534594-F577-4F81-8367-FF654124FF58

**Exhibit F**

**Non-Disclosure and Non-Competition Agreement**

      **THIS NON-DISCLOSURE AND NON-COMPETITION AGREEMENT** ("**Agreement**") is made this <u> 22 </u> day of <u>  May  </u>, 2024, by and between Newport Ventures, LLC (the "Franchisee"), and Ernesto Abarro & Katayoun Aryanna, who is an owner, manager, supervisor, member, partner, or a person in a managerial position with, Franchisee (the "Obligee").

**BACKGROUND**:

      A.      Del Taco, as the result of the expenditure of significant time, skill, effort and money, has developed a distinctive and proprietary system (the "**Del Taco System**" or "**System**") for establishing and operating restaurant businesses, which specialize in the sale of Mexican-American foods such as tacos and burritos, along with burgers, shakes and desserts, French fries, breakfast items, soft drinks, and such additional or alternate menu and other items as Del Taco may designate from time to time for on-premises and off-premises consumption ("**Menu Items**");

      B.      Del Taco and Franchisee have executed a Franchise Agreement ("Franchise Agreement") granting Franchisee the right to operate one (1) Del Taco restaurant (the "Restaurant") and to produce and distribute products and services approved by Del Taco and use the Proprietary Marks in connection therewith under the terms and conditions of the Franchise Agreement;

      C.      The Member, by virtue of his or her position with Franchisee, will gain access to certain of Del Taco's Confidential Information, as defined herein, and must therefore be bound by the same confidentiality and non-competition agreement that Franchisee is bound by.

      IN CONSIDERATION of these premises, the conditions stated herein, and for other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree as follows:

      1.      <u>Confidential Information</u>.  Obligee shall not, during the term of the Franchise Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, persons, partnership, entity, association, or corporation any confidential information, trade secrets, knowledge, or know how concerning the methods of operation of the Restaurant which may be communicated to Obligee or of which Obligee may be apprised by virtue of Franchisee's operation under the terms of this Agreement. Any and all information, knowledge, know how, and techniques which Del Taco designates as confidential shall be deemed confidential for purposes of this Agreement, except information which Obligee can demonstrate came to its attention prior to disclosure thereof by Del Taco; or which, at or after the time of disclosure by Del Taco to Franchisee, had become or later becomes a part of the public domain, through publication or communication by others. Notwithstanding any other provision of this Agreement, there may be certain, limited circumstances where applicable law allows for the disclosure of certain trade secrets, as specified in the Manuals.

      2.      <u>Covenants Not to Compete</u>.

      (a)      Obligee specifically acknowledges that, pursuant to the Franchise Agreement, and by virtue of its position with Franchisee, Obligee will receive valuable specialized training and confidential information, including information regarding the operational, sales, promotional, and marketing methods and techniques of Del Taco and the System.

DocuSign Envelope ID: 5A534594-E377-45B1-8367-FF654195FF58

      (b)    Obligee covenants and agrees that during the term of Obligee's employment with, or ownership interest in, Franchisee, and except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity:

      (i)    Divert or attempt to divert any business or customer of the Restaurant or of any Restaurant using the System to any competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with Del Taco's Proprietary Marks and the System; or

      (ii)    Own, maintain, operate, engage in, be employed by, or have any interest in any business that it offers one or more Mexican or similar style menu items, and is operated in a quick service, fast food, or fast casual format ("**Competitive Business**").

      (c)    Obligee covenants and agrees that during the Post-Term Period (defined below), except as otherwise approved in writing by Del Taco, Obligee shall not, either directly or indirectly, for itself, or through, on behalf of, or in conjunction with any person, persons, partnership, corporation, or entity, own, maintain, operate, engage in, or have any interest in any Competitive Business which is, or is intended to be, located: (a) within the Protected Area of the Restaurant or (b) within two (2) miles of any other Del Taco restaurant owned and/or operated or then under construction by Del Taco or any other franchisee or licensee of Del Taco as of the time that the obligations under this Section commence.

      (d)    As used in this Agreement, the term "Post-Term Period" shall mean a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Section 12.3 of the Franchise Agreement with respect to Obligee; and/or (b) termination of Obligee's employment with, and/or ownership interest in, Franchisee.

    3.    <u>Injunctive Relief.</u> Obligee acknowledges that any failure to comply with the requirements of this Agreement will cause Del Taco irreparable injury, and Obligee agrees to pay all court costs and reasonable attorney's fees incurred by Del Taco in obtaining specific performance of, or an injunction against violation of, the requirements of this Agreement.

    4.    <u>Severability.</u> All agreements and covenants contained herein are severable. If any of them, or any part or parts of them, shall be held invalid by any court of competent jurisdiction for any reason, then the Obligee agrees that the court shall have the authority to reform and modify that provision in order that the restriction shall be the maximum necessary to protect Del Taco's and/or Franchisee's legitimate business needs as permitted by applicable law and public policy. In so doing, the Obligee agrees that the court shall impose the provision with retroactive effect as close as possible to the provision held to be invalid.

    5.    <u>Delay.</u> No delay or failure by Del Taco or the Franchisee to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right provided herein, and no waiver of any violation of any terms and provisions of this Agreement shall be construed as a waiver of any succeeding violation of the same or any other provision of this Agreement.

    6.    <u>Jurisdiction, Venue and Choice of Law.</u> This agreement shall be interpreted and construed in accordance with Section 17 of the Franchise Agreement. In the event of any conflict of law, the laws of the State of California shall prevail (without regard to, and without giving effect to, the application of California conflict of law rules).

7. <u>Third-Party Beneficiary.</u> Obligee hereby acknowledges and agrees that Del Taco is an intended third-party beneficiary of this Agreement with the right to enforce it, independently or jointly with Franchisee.

**IN WITNESS WHEREOF**, the Franchisee and the Obligee attest that each has read and understands the terms of this Agreement, and voluntarily signed this Agreement on this __22__ day of __May__ _____, 2024.

FRANCHISEE:

**NEWPORT VENTURES, LLC**

By: _____
Ernesto Abarro

By: _____
Katayoun Aryana

OBLIGEE:

**ERNESTO ABARRO**

By: _____

**KATAYOUN ARYANA**

By: _____

## Exhibit G

## ADDENDUM TO LEASE

This Addendum to Lease ("Addendum") is dated _____ and is entered into by and between _____ ("Landlord") and _____ ("Tenant").

WHEREAS Landlord and Tenant have entered into a Lease dated _____ (the "Lease"), for Tenant's operation of a Del Taco Restaurant ("Restaurant") at _____.

WHEREAS Tenant has requested and Landlord has agreed to incorporate certain provisions into the Lease required by Tenant's franchisor, Del Taco LLC, a California limited liability company ("Franchisor").

NOW, THEREFORE, notwithstanding anything to the contrary contained in the Lease, for valuable consideration, the Landlord and Tenant agree as follows:

1.   In the event of Tenant's default under the Lease for which Landlord is obligated to give Tenant written notice, at the same time that Landlord sends notice to Tenant, Landlord shall send notice to Franchisor at the following address:

> Del Taco LLC
> 25521 Commercentre Drive
> Suite 150
> Lake Forest, California 92630
> Attn: Jack Tang, General Counsel

2.   In the event of Tenant's default under the Lease, and within thirty (30) days of its receipt of written notice thereof, Franchisor shall have the right, but not the obligation, to cure Tenant's default, to assume Tenant's position under the Lease, to take over the operation of the Restaurant, and/or to assign its rights under the Lease to an approved franchisee of Franchisor in which event Franchisor will be relieved from any further liability.

3.   The use of the real property shall be restricted to a Del Taco Restaurant, during the term of the Franchise Agreement.

4.   Landlord consents to Tenant's use in the Restaurant and on the premises of the signage, interior and exterior design, including graphics, logos and all other decorative features as may be required by Franchisor (collectively the "Proprietary Marks"), provided that said Proprietary Marks meet all current governmental agency requirements.

5.   All furniture, fixtures and equipment installed by Tenant in the Demised Premises shall at all times be and remain personal property, regardless of the method in which the same is affixed to the Demised Premises, and shall remain the personal property of Tenant and/or the equipment-lessor or conditional landlord of such furniture, fixtures and equipment, as the case may be. Landlord specifically agrees that Landlord's rights and the rights of any holder of any present or future encumbrance on the Demised Premises, if any, in any such furniture, fixtures and equipment shall at all times be subject and subordinate to the rights of Tenant and any equipment-lessor or equipment-landlord of such furniture, fixtures, and equipment, or other person or entity who acquires a security interest in the same as a result of a financial transaction with Tenant. Landlord shall, upon request of Tenant, promptly furnish a Landlord's Waiver and/or Mortgagee's Waiver or similar document as may be reasonably required by an equipment-landlord and approved by Franchisor, equipment-lessor or other person or entity in connection with Tenant's acquisition or financing respecting such personal property, equipment, furniture and fixtures.

DocuSign Envelope ID: 6A534594-F577-45B1-8367-FF654134FE58

6.      Tenant shall have the unrestricted right to assign the Lease to Franchisor or its designee during the term of the Lease.

7.      Upon the expiration of every ten (10) year period following the opening of the Restaurant for business, Tenant shall have the right, subject to Landlord's prior written consent not to be unreasonably withheld, to remodel the Restaurant to bring the Restaurant up to the then current standards of Franchisor as required under the Franchise Agreement, provided that said remodeling meets all current governmental agency requirements.

8.      Within thirty (30) days of expiration or early termination of the Lease, should the Tenant fail to do so, Franchisor shall have the right but not the obligation to enter upon the premises and make such changes to the Restaurant building as are necessary to protect its Proprietary Marks, including, if determined necessary by Franchisor, the right to remodel the Restaurant building to such an extent that it is no longer confusingly similar in color or design to any then-existing Del Taco restaurant.

9.      Landlord, its affiliates, its successors or assigns agree, during the term of this Lease and any extension thereof, to hold any land now or hereafter owned or controlled by Landlord within a radius of one (1) mile of the Demised Premises subject to the following restrictions for the benefit of Tenant:  No part of such land shall be sold, leased or used for a Mexican quick service restaurant which competes with Tenant including, but not limited to, Taco Bell, Green Burrito, El Pollo Loco, etc.  Such restrictions shall be included in and recorded with the Memorandum of Lease.

10.    The term of the lease will provide for a minimum term of 20 years with four options to renew for an additional five (5) years each.

11.    The Lease is contingent upon Franchisor's written approval of the site.

12.    Landlord consents to the operation of the Restaurant on a 24-hour basis.

The provisions of this Addendum shall not be modified or terminated without the prior written consent of Franchisor.

[Signature Page Follows]

DocuSign Envelope ID: 5A534594-F477-4EB4-8367-FF654124FF53

IN WITNESS THEREOF, Landlord and Tenant have executed this Addendum.

**Landlord**                                          **Tenant**

By:_____                By:_____

Its:_____                Its:_____

Date:_____              Date:_____

**DocuSign**

| Certificate Of Completion | | |
|---|---|---|

Envelope Id: EAE34E94F1714FB483675F654131FE63 — Status: Completed
Subject: Complete with DocuSign: Store - FA Renewal Addendum.pdf, Store 738 - Hardware and Software Lice...
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 99 | Signatures: 27 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Jack Tang |
| AutoNav: Enabled | | 25521 Commercentre drive Suite 200 |
| EnvelopeId Stamping: Enabled | | Lake Forest, CA  92630 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | mhernandez@deltaco.com |
| | | IP Address: 209.234.159.82 |

### Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Jack Tang | Location: DocuSign |
| 5/15/2024 11:03:35 AM | mhernandez@deltaco.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>eabarro@newportdel.com<br>Security Level: Email, Account Authentication (None) | *Signature*<br>4BF3F4B6234A40F...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 107.115.41.127 | Sent: 5/15/2024 11:31:46 AM<br>Resent: 5/17/2024 11:37:42 AM<br>Resent: 5/20/2024 3:41:51 PM<br>Viewed: 5/21/2024 9:46:28 AM<br>Signed: 5/21/2024 4:01:19 PM |
| Electronic Record and Signature Disclosure:<br>Accepted: 5/15/2024 12:12:42 PM<br>ID: 4ba46647-baa6-4041-be08-ec491dba5f2b | | |
| Katayoun Aryana<br>karyana@newportdel.com<br>Security Level: Email, Account Authentication (None) | *Signature*<br>C809831905CD4F3...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 12.75.117.78<br>Signed using mobile | Sent: 5/15/2024 11:31:47 AM<br>Resent: 5/21/2024 4:02:16 PM<br>Viewed: 5/21/2024 4:02:37 PM<br>Signed: 5/21/2024 4:02:56 PM |
| Electronic Record and Signature Disclosure:<br>Accepted: 5/15/2024 12:04:35 PM<br>ID: 9b6cbae2-686a-4771-b69f-6f4677b747d6 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Signature*<br>AD28CBFCF34346A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 5/15/2024 11:31:47 AM<br>Resent: 5/21/2024 4:04:00 PM<br>Viewed: 5/22/2024 9:50:19 AM<br>Signed: 5/22/2024 9:50:39 AM |
| Electronic Record and Signature Disclosure:<br>Accepted: 5/22/2024 9:50:19 AM<br>ID: e69efba3-5d53-49e8-a9ae-eb42512299d4 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 5/15/2024 11:31:47 AM |
| Envelope Updated | Security Checked | 5/17/2024 11:35:50 AM |
| Envelope Updated | Security Checked | 5/17/2024 11:35:50 AM |
| Certified Delivered | Security Checked | 5/22/2024 9:50:19 AM |
| Signing Complete | Security Checked | 5/22/2024 9:50:39 AM |
| Completed | Security Checked | 5/22/2024 9:50:39 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

# ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit S

## FIRST AMENDMENT TO FRANCHISE AGREEMENT

Del Taco LLC ("Del Taco") and Newport Ventures, LLC (the "Franchisee") enter into this First Amendment to Franchise Agreement (this "Amendment") as of October 4, 2023 (the "Effective Date").

WITNESSETH:

Whereas, Del Taco and the Franchisee have entered into the Franchise Agreements set forth on the attached Exhibit A for the operation of Del Taco restaurants (the "Units"); and

Whereas, Del Taco and the Franchisee wish to modify and/or add certain provisions to the Franchise Agreements, as set forth below:

1.      Assignment, Condition and Limitations.  The Franchise Agreements provide that upon the assignment of each of the Franchise Agreements to an assignee, a transfer fee of $5,000 shall be due to Del Taco upon the transfer of the Franchise Agreements and Units.

2.      Del Taco and Franchisee have agreed to defer the payment of the total transfer fees of $90,000 ("Transfer Fee") to 90 days following the date of the transfer of the Units.  The payment of the Transfer Fee shall be in accordance with the Promissory Note and Guaranty and Assumption of Obligations attached as Exhibit B of this Amendment.

3.      Other Terms.  Except as modified by this Amendment, all of the terms of the Franchise Agreement shall remain in full force and effect.

4.      Release.  The Franchisee, on behalf of themselves and their heirs, successors and assigns, hereby release and discharge any and all liabilities, obligations or claims, whether known or unknown, vested or contingent, including without limitation, any claimed violation or breach of the Franchise Agreement or Federal or state laws, including franchise investment laws, against Del Taco, and its parents and affiliates, and their respective subsidiaries, officers, directors, limited liability company managers, employees, agents subsidiaries or affiliates, and any and all of their respective representatives.  The Franchisees realize the facts as presently known or understood to exist with respect to any known or unknown claims the Franchisees may have against the above may, in fact, be either incorrect or incomplete, or both.  Notwithstanding such possibility, the Franchisees freely enter into this Agreement and assume all risks of any such possibility and waive any rights whatsoever to attack the validity and finality of this Agreement even if the present knowledge and understanding of the facts on the part of the Franchisees is in any way incorrect.  The Franchisees expressly waive any and all rights and benefits against Del Taco conferred upon them by the provisions of Section 1542 of the California Civil Code.  Section 1542 of the California Civil Code reads as follows:

**"A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."**

**[SIGNATURE PAGE FOLLOWS]**

Executed and delivered as of the day and year first set forth above.

**FRANCHISOR:**                     **DEL TACO LLC**

By: _Jack Tang_ _____
         Jack Tang
         Vice President & General Counsel

**FRANCHISEE**:                     **NEWPORT VENTURES, LLC**

By: _____
         Katayoun Aryana
         Member

By: Techno Industries Inc
Its President & CEO
         _Ernesto Abarro_ _____
         Ernesto Abarro

Date: _10/4/2023_ _____

DocuSign Envelope ID: 84325278-758F-4808-B2CC-5CE7841AB6ABB

Case 23-12386-KBO Doc 1071 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities Page 1344 of 1415   Page 1318 of 1376

**EXHIBIT A**

| Units | Licensed Restaurant Location |
|:-----:|:----------------------------:|
| 738 | 7506 Parkway Drive<br>Lonetree, CO 80124 |
| 748 | 1645 Space Center Drive<br>Colorado Springs, CO 80915 |
| 778 | 24023 East Prospect Avenue<br>Aurora, CO 80016 |
| 787 | 50 West Belleview Avenue<br>Englewood, CO 80110 |
| 793 | 5240 South Wadsworth Blvd<br>Lakewood, CO 80123 |
| 863 | 570 East Bromley Lane<br>Brighton, CO 80601 |
| 864 | 14400 East Colfax Avenue<br>Aurora, CO 80011 |
| 1001 | 11053 I-25 Frontage Road<br>Firestone, CO 80504 |
| 1002 | 3465 North Salida Street<br>Aurora, CO 80011 |
| 1025 | 8100 East 49th Ave Pkwy<br>Denver, CO 80239 |
| 1034 | 2913 23rd Ave.<br>Greeley, CO 80631 |
| 1043 | 11155 East Arapahoe Place<br>Centennial, CO 80015 |
| 1047 | 18260 East 104th Ave.<br>Commerce City, CO 80022 |
| 1073 | 4310 N. Academy Blvd.<br>Colorado Springs, CO 80918 |
| 1086 | 11147 Pikes Peak Drive<br>Parker, CO 80138 |
| 1109 | 43 Union Boulevard<br>Lakewood, CO 80228 |

DocuSign Envelope ID: 8432F378-7E8D-4B99-B9CC-5CE794AB6ABB

| | |
|---|---|
| 1117 | 8020 N. Academy Blvd<br>Colorado Springs, CO 80920 |
| 1237 | 6383 Promenade Parkway<br>Castle Rock, CO 80108 |

DocuSign Envelope ID: 84325278-758B-4838-B9CC-5CE7941AB6ABB

**EXHIBIT B**

## DocuSign

## Certificate Of Completion

Envelope Id: B132E2787F8B40D8B9CC5CF794AD6ABB                    Status: Completed
Subject: Complete with DocuSign: Note Guaranty - Aryana and Abarro1 (2023-10-02) clean.docx, Note Guaran...
Source Envelope:
Document Pages: 22                          Signatures: 14                     Envelope Originator:
Certificate Pages: 5                        Initials: 0                        Jack Tang
AutoNav: Enabled                                                               25521 Commercentre drive Suite 200
EnvelopeId Stamping: Enabled                                                   Lake Forest, CA  92630
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                             mhernandez@deltaco.com
                                                                              IP Address: 209.234.159.82

## Record Tracking

Status: Original                            Holder: Jack Tang                 Location: DocuSign
          10/4/2023 8:37:10 AM                        mhernandez@deltaco.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro<br>ernieabarro@gmail.com<br>Security Level: Email, Account Authentication (None) | *Ernesto Abarro*<br>33C61360BA31471...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 50.225.0.130 | Sent: 10/4/2023 8:51:47 AM<br>Viewed: 10/4/2023 8:57:14 AM<br>Signed: 10/4/2023 8:58:28 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 10/4/2023 8:57:14 AM<br>ID: 3ccbc32d-1e7b-4ccd-84ae-0d0e5620a004 | | |
| Jack Tang<br>jtang@deltaco.com<br>General Counsel<br>Del Taco LLC<br>Security Level: Email, Account Authentication (None) | *Jack Tang*<br>AD28CBFCF34346A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 209.234.159.82 | Sent: 10/4/2023 8:51:49 AM<br>Resent: 10/4/2023 9:07:33 AM<br>Viewed: 10/4/2023 9:42:12 AM<br>Signed: 10/4/2023 9:42:44 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 10/4/2023 9:42:12 AM<br>ID: df2f93b2-e377-4a02-a1fe-d2994a12b2ee | | |
| Katayoun Aryana<br>kathy.aryana@gmail.com<br>Security Level: Email, Account Authentication (None) | C53A0C79087246F...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 108.147.94.107<br>Signed using mobile | Sent: 10/4/2023 8:51:48 AM<br>Viewed: 10/4/2023 8:56:02 AM<br>Signed: 10/4/2023 8:56:38 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 10/4/2023 8:56:02 AM<br>ID: b5d18fa6-c292-4921-b305-3e21414214f0 | | |
| Shahvand Aryana<br>aryana613@gmail.com<br>Security Level: Email, Account Authentication (None) | EB006A9F72BA4D8...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 104.28.50.165<br>Signed using mobile | Sent: 10/4/2023 8:51:49 AM<br>Viewed: 10/4/2023 8:54:50 AM<br>Signed: 10/4/2023 8:55:32 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 10/4/2023 8:54:50 AM<br>ID: 6f16f902-6516-49ed-b787-d609a241ea38 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 10/4/2023 8:51:49 AM |
| Certified Delivered | Security Checked | 10/4/2023 8:54:50 AM |
| Signing Complete | Security Checked | 10/4/2023 8:55:32 AM |
| Completed | Security Checked | 10/4/2023 9:42:44 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

| Electronic Record and Signature Disclosure | | |
|---|---|---|

Electronic Record and Signature Disclosure created on: 1/19/2021 12:45:45 PM
Parties agreed to: Ernesto Ocana, Jack Tang, Patrick Conner

Case 8:24-bk-12771-TA    Doc 1071    Filed 02/27/25    Entered 02/27/25 16:32:36    Desc
Memorandum of Points and Authorities    Page 1349 of 1415    Page 1323 of 1376

# ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

Exhibit T

$125,000.00
Effective Date: October 4, 2023
Lake Forest, CA

## PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned, NEWPORT VENTURES, LLC , a South Dakota limited liability company ("Borrower"), promises to pay without notice or demand, to DEL TACO LLC, a California limited liability company, or order ("Lender"), at 25521 Commercentre Drive, Suite 200, Lake Forest, CA 92630, or to Lender at such other place as Lender may from time to time designate in writing to Borrower, the principal sum of One Hundred Twenty-Five Thousand Dollars ($125,000.00). Borrower acknowledges that this Note is being executed and delivered for business purposes.

On or before October 4, 2024, Borrower shall pay all outstanding principal to Lender ("Due Date").

Borrower reserves the right at any time to prepay all or a portion of the amount due under this Promissory Note (the "Note") without penalty.

In the event the payment hereunder is not paid on the Due Date, Lender's actual damages would be impracticable or extremely difficult to determine and the following is a reasonable estimate of Lender's actual damages under such circumstances. In the event of a default in payment hereunder:

(i)     Borrower agrees to pay to Lender, without notice or demand, as liquidated damages, five percent (5%) of the total amount of the payment due hereunder, which is not paid by the Due Date, and

(ii)    In addition to any other remedies available to Lender at law or in equity, and to the maximum extent permitted by law, if this Note shall not be paid in full on or before the Due Date, any amounts remaining outstanding shall thereafter accrue interest at a default rate of 10% until paid in full.

Each payment hereunder shall be applied in the following order (a) to liquidated damages due to the date such payment is received, (b) to accrued but unpaid interest as of the date such payment is received, and (c) the balance to be applied to principal.

All amounts to be paid hereon shall be made without deduction, set off or counterclaim.

It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with applicable law governing the maximum rate or amount of interest payable on or in connection with this Note. If the applicable law is ever judicially interpreted so as to render usurious any amount called for under this Note or contracted for, charged, taken, reserved or received with respect to this Note, or if acceleration of the maturity of this Note or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by law, then it is Borrower's and Lender's express intent that all excess amounts theretofore collected by Lender be credited on the principal balance of this Note (or, if this Note has been or would thereby be paid in full, refunded to Borrower), and the provisions of this Note immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new document, so as to comply with applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder and thereunder.

DocuSign Envelope ID: 8432537B-7F8B-48B9-B2CC-5CE794AB6ABB

Any right to accelerate maturity of this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Lender does not intend to collect any unearned interest in the event of acceleration.  All sums paid or agreed to be paid to Lender for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of such indebtedness until payment in full so that the rate or amount of interest on account of such indebtedness does not exceed the applicable usury ceiling.

This Note shall be personally guaranteed by Shahvand Aryana, Katayoun Aryana and Ernesto Abarro pursuant to a written guaranty in a form approved by Lender, in its sole discretion.

Notwithstanding any other provision contained herein, in the event of a sale, assignment or other transfer by the undersigned, with or without the consent of Lender, and whether voluntary, involuntary or by operation of law, of those certain Franchise Agreements between or among the parties hereto and pertaining to the Del Taco restaurants referenced above , or if Borrower fails to pay any sum due under this Note, or fails to perform any of the terms, covenants or conditions of this Note, or otherwise defaults in the performance of its obligations hereunder, under the  Franchise Agreements, then, in addition to any other rights and remedies available to Lender, Lender may declare  the entire unpaid principal balance of this Note, with all interest thereon, together with all other indebtedness owing from the undersigned to Lender represented or arising from any agreement or account between Lender and Borrower, to be immediately due and payable, without notice or demand.

The failure of Lender to exercise any option or any right to which Lender may be entitled shall not constitute a waiver of the right to exercise the option or any right in the event of any subsequent default.

If any action or proceeding arising out of this Note shall be commenced by either Lender or Borrower against the other, the prevailing party shall be entitled to recover from the losing party such amount as the court may adjudge to be reasonable costs and attorneys' fees for the services rendered to the party finally prevailing in such action or proceeding.

Notices from Lender to Borrower shall be deemed given if addressed to Borrower at 1500 E. Bethany Home Road, Suite 250, Phoenix, AZ 85014 (or such other address as Borrower may designate in writing to Lender), and deposited in the United States Mails postage prepaid and certified.  Lender or any holder hereof may rely on the foregoing address, as the same may be changed pursuant to the foregoing, as being the address of the undersigned last known to the holder thereof.  The date that any notice is so deposited in the United States Mails shall be deemed to be the date that notice is given.

This Note is to be construed and enforced according to and governed by, the laws of the State of California.

This Note may not be changed or terminated orally, but only by an agreement in writing properly signed by the parties against whom such change or termination is sought.

DocuSign Envelope ID: 84325379-758D-48D9-B9CC-5CE794AB6ABB

Case 23-24841-JKS Doc 1607-1 Filed 02/27/24 Entered 02/27/24 08:52:36 Desc
Memorandum of Points and Authorities In Support of Page 1329 of 1376

BORROWER:

NEWPORT VENTURE, LLC, a
South Dakota limited liability company

By: _Ernesto Ibarro_____
DocuSigned by:
33C61360BA31471...

Its: _10/4/2023_____

DocuSign Envelope ID: 84325278-7E8B-48D8-B9CC-5CF794AB6ABB

**DocuSign**

## Certificate Of Completion

Envelope Id: B132E2787F8B40D8B9CC5CF794AD6ABB      Status: Completed

Subject: Complete with DocuSign: Note Guaranty - Aryana and Abarro1 (2023-10-02) clean.docx, Note Guaran...

Source Envelope:

| | | |
|---|---|---|
| Document Pages: 22 | Signatures: 14 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Jack Tang |
| AutoNav: Enabled | | 25521 Commercentre drive Suite 200 |
| EnvelopeId Stamping: Enabled | | Lake Forest, CA  92630 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | mhernandez@deltaco.com |
| | | IP Address: 209.234.159.82 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Jack Tang | Location: DocuSign |
|     10/4/2023 8:37:10 AM |     mhernandez@deltaco.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Ernesto Abarro | *Ernesto Abarro* | Sent: 10/4/2023 8:51:47 AM |
| ernieabarro@gmail.com | ─33C61360BA31471─ | Viewed: 10/4/2023 8:57:14 AM |
| Security Level: Email, Account Authentication (None) | | Signed: 10/4/2023 8:58:28 AM |
| | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 50.225.0.130 | |
| **Electronic Record and Signature Disclosure:** | | |
|     Accepted: 10/4/2023 8:57:14 AM | | |
|     ID: 3ccbc32d-1e7b-4ccd-84ae-0d0e5620a004 | | |
| Jack Tang | *Jack Tang* | Sent: 10/4/2023 8:51:49 AM |
| jtang@deltaco.com | ─AD28CBFCF34348A─ | Resent: 10/4/2023 9:07:33 AM |
| General Counsel | | Viewed: 10/4/2023 9:42:12 AM |
| Del Taco LLC | | Signed: 10/4/2023 9:42:44 AM |
| Security Level: Email, Account Authentication (None) | Signature Adoption: Pre-selected Style | |
| | Using IP Address: 209.234.159.82 | |
| **Electronic Record and Signature Disclosure:** | | |
|     Accepted: 10/4/2023 9:42:12 AM | | |
|     ID: df2f93b2-e377-4a02-a1fe-d2994a12b2ee | | |
| Katayoun Aryana | | Sent: 10/4/2023 8:51:48 AM |
| kathy.aryana@gmail.com | ─C53A0C79087246F─ | Viewed: 10/4/2023 8:56:02 AM |
| Security Level: Email, Account Authentication (None) | | Signed: 10/4/2023 8:56:38 AM |
| | Signature Adoption: Drawn on Device | |
| | Using IP Address: 108.147.94.107 | |
| | Signed using mobile | |
| **Electronic Record and Signature Disclosure:** | | |
|     Accepted: 10/4/2023 8:56:02 AM | | |
|     ID: b5d18fa6-c292-4921-b305-3e21414214f0 | | |
| Shahvand Aryana | | Sent: 10/4/2023 8:51:49 AM |
| aryana613@gmail.com | ─EB006A9F72BA4D8─ | Viewed: 10/4/2023 8:54:50 AM |
| Security Level: Email, Account Authentication (None) | | Signed: 10/4/2023 8:55:32 AM |
| | Signature Adoption: Drawn on Device | |
| | Using IP Address: 104.28.50.165 | |
| | Signed using mobile | |
| **Electronic Record and Signature Disclosure:** | | |
|     Accepted: 10/4/2023 8:54:50 AM | | |
|     ID: 6f16f902-6516-49ed-b787-d609a241ea38 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 10/4/2023 8:51:49 AM |
| Certified Delivered | Security Checked | 10/4/2023 8:54:50 AM |
| Signing Complete | Security Checked | 10/4/2023 8:55:32 AM |
| Completed | Security Checked | 10/4/2023 9:42:44 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Del Taco LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Del Taco LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: mhernandez@deltaco.com

**To advise Del Taco LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at mhernandez@deltaco.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Del Taco LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to mhernandez@deltaco.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Del Taco LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to mhernandez@deltaco.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Del Taco LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Del Taco LLC during the course of your relationship with Del Taco LLC.

# Exhibit U



Del Taco LLC
25521 Commercentre Drive,
Suite 150 Lake Forest, CA 92630

October 21, 2024

**VIA CERTIFIED MAIL AND EMAIL**

Newport Ventures, LLC
Kathy Aryana
14507 W. Christy Drive
Surprise, AZ 85379\
karyana@newportdel.com

Ernie Abarro
25995 Camino Largo
Mission Viejo, CA 92692
ernieabarro@gmail.com

## NOTICE OF TERMINATION AND GRANT OF CONDITIONAL TEMPORARY LICENSE

*Re:    Del Taco Franchise Agreements identified on Exhibit A ("Franchise Agreements") by and between Del Taco LLC ("Del Taco") and Newport Ventures, LLC ("Franchisee")*

Dear Ms. Aryana and Mr. Abarro:

Under the Franchisee Agreements, Del Taco granted Franchisee the right, and Franchisee undertook the obligation, to develop and operate franchised Del Taco restaurants ("Restaurants") located at the restaurant locations identified on Exhibit A. Del Taco and Franchisee are also parties to a Promissory Note dated October 4, 2023 ("Promissory Note"), pursuant to which Franchisee agreed to pay Del Taco the amount of $125,000 by October 4, 2024. By Notice of Default dated October 14, 2024, Del Taco notified Franchisee that Franchisee was in default of the Franchise Agreements (Paragraph 13.2.18) for, among other things, failure to make payments to Del Taco when due, by not paying any amounts due to Del Taco under the Promissory Note. Del Taco further notified Franchisee that Franchisee would have until October 17, 2024 to cure the default by paying Del Taco the full amount of $125,000 due under the Promissory Note. Franchisee has failed to pay this amount to Del Taco as of the date of this Notice. **Accordingly, the Franchise Agreements are hereby terminated as of the date of this Notice of Termination (the "Termination Date").**

For the parties to assess the next steps regarding the Franchised Restaurants, and possibly to permit an orderly turnover of those Restaurants and the assets of those Restaurants to Del Taco or a third party, Del Taco grants Franchisee a conditional temporary license to continue operating the Franchised Restaurants ("Temporary License"), on the following terms ("Temporary License Terms"):

Newport Ventures, LLC
October 21, 2024
Attn: Kathy Aryana and Ernie Abarro
Page 2

1.      The term of the Temporary License begins on the day after the Termination Date and expires on December 20, 2024 ("Term").  Del Taco reserves the right to earlier terminate the Temporary License, for any reason with or without cause, by providing Franchisee written notice at any point during the Term.  Del Taco also reserves the right to unilaterally extend the Term upon written notice to Franchisee.  Any extension of the Term will be subject to the additional terms and conditions specified by Del Taco.  Franchisee has no right to unilaterally extend or renew the Term.

2.      During the Term, Franchisee shall comply with all terms set forth in the terminated Franchise Agreements as modified by these Temporary License Terms.  Specifically, Franchisee will continue to be responsible for, among other things, all amounts that are or would (but for the termination) become owed to Del Taco and its affiliates under the terms of the terminated Franchise Agreements (including, without limitation, royalty and advertising fees).  In addition, Franchisee must operate the Franchised Restaurants in compliance with Del Taco's standards of operation, maintain the assets in the usual and ordinary course of business, maintain all required insurance, and maintain the premises of the Franchised Restaurants in accordance with Del Taco's standards.

3.      During the Term, to the extent that an approved third party is identified by Del Taco, Franchisee must work with and assist Del Taco in good faith to facilitate turnover of the Franchised Restaurants to that third party, including negotiations with all lienholders on the assets of the Franchised Restaurants, transition of employees and staff, provision of information regarding vendors and outstanding amounts owed to those vendors, and execution of any documentation necessary to transfer accounts to that third party, among other things.

4.      If the Term expires or is terminated, Franchisee must undertake all post-termination actions required by the terminated Franchise Agreements, including immediately paying Del Taco and its affiliates all amounts due pursuant to the terminated Franchise Agreements and all other agreements between any Franchisee and Del Taco (including leases); promptly returning to Del Taco the Manuals and any other confidential or proprietary information; and complying with the post-termination noncompetition and confidentiality covenants.  The time frames for compliance with and enforcement of the post-termination rights and obligations of the parties under the terminated Franchise Agreements (such as the post-termination noncompetition covenants) will not begin to run until the Term of the Temporary License expires or has been terminated.

5.      Del Taco's grant of the Temporary License does not constitute a waiver of any claims Del Taco may have against Franchisee, its owners or guarantors, nor shall it be deemed a waiver of Del Taco's right to demand exact compliance with any of the terms of the terminated Franchise Agreements (including the guarantees) or any other agreements (including any leases for the Franchised Restaurants), nor a waiver of Del Taco's rights to enforce its rights relative to termination as stated in Franchise Agreements. Neither the termination of the Franchise Agreements nor the grant of the Temporary License relieves Franchisee, or their owners or guarantors, from, or waives any liabilities or obligations under, those Agreements, except as may be otherwise specified in those Agreements.

6.      Franchisee acknowledges that Del Taco validly terminated the Franchise Agreements.

By continuing to operate after the Termination Date, Franchisee acknowledges their

Newport Ventures, LLC
October 21, 2024
Attn: Kathy Aryana and Ernie Abarro
Page 3

agreement to the terms noted above.

Finally, pursuant to various guarantees, the Guarantors agreed to guarantee and be bound by Franchisee's obligations under the Franchise Agreements. By copy of this Notice of Termination, Del Taco is providing notice to each guarantor and reminding the guarantors that they are jointly and severally responsible for all amounts that Franchisee owes to Del Taco.

This letter does not waive any rights that Del Taco may have under the Franchise Agreements or applicable law. Please contact me if you have any questions.

Sincerely,

Jack Tang
General Counsel

cc:    Steven Kries
       Mark Bixler
       Guarantors

Newport Ventures, LLC
October 21, 2024
Attn: Kathy Aryana and Ernie Abarro
Page 4

## EXHIBIT A

| Unit Number | Restaurant Location | Franchise Agreement Date |
|---|---|---|
| 738 | 7506 Parkway Drive Lonetree, CO 80124 | November 20, 2023 |
| 748 | 1645 Space Center Drive Colorado Springs, CO 80915 | October 4, 2023 |
| 778 | 24023 East Prospect Avenue Aurora, CO 80016 | October 4, 2023 |
| 787 | 50 West Belleview Avenue Englewood, CO 80110 | October 4, 2023 |
| 793 | 5240 South Wadsworth Blvd. Lakewood, CO 80123 | October 4, 2023 |
| 863 | 570 East Bromley Lane Brighton, CO 80601 | October 4, 2023 |
| 864 | 14400 East Colfax Avenue Aurora, CO 80011 | October 4, 2023 |
| 1001 | 11053 I-25 Frontage Road Firestone, CO 80504 | October 4, 2023 |
| 1002 | 3465 North Salida Street Aurora, CO 80011 | October 4, 2023 |
| 1025 | 8100 Northfield Blvd. Denver, CO 80239 | October 4, 2023 |
| 1034 | 2913 23rd Avenue Greeley, CO 80631 | October 4, 2023 |
| 1043 | 11155 East Arapahoe Road Centennial, CO 80015 | October 4, 2023 |
| 1047 | 18260 East 104th Avenue Commerce City, CO 80022 | October 4, 2023 |
| 1073 | 4310 N. Academy Blvd. Colorado Springs, CO 80918 | October 4, 2023 |
| 1086 | 11147 Pikes Peak Drive Parker, CO 80138 | October 4, 2023 |
| 1109 | 43 Union Blvd. Lakewood, CO 80228 | October 4, 2023 |
| 1117 | 8020 N. Academy Blvd. Colorado Springs, CO 80920 | October 4, 2023 |
| 1237 | 6383 Promenade Parkway Castle Rock, CO 80108 | October 4, 2023 |

# Exhibit V



Del Taco LLC
25521 Commercentre Drive, Suite 150
Lake Forest, CA 92630

October 2, 2024

Via Certified Mail and Email to:
Newport Ventures, LLC
Kathy Aryana
14507 W. Christy Drive
Surprise, AZ 85379

Ernie Abarro
25995 Camino Largo
Mission Viejo, CA 92692

Re: **Notice of Default and Demand for Verification of Payments to Third Parties**

Ms. Aryana and Mr. Abarro:

This letter constitutes written notice to you that you are in default of the following provision of the Del Taco Franchise Agreements entered into by and between you and Del Taco LLC ("Del Taco") as listed on Exhibit A:

Section 13.2.19 of the Franchise Agreements provides that "the Franchisee shall be deemed to be in default…If Franchisee fails to submit to Del Taco any financial or other information required under this Agreement." Section 7.3 requires "Franchisee to submit to Del Taco a copy of their Profit and Loss Statement for each restaurant…on a quarterly basis as requested by Del Taco."

Del Taco has requested quarterly Profit and Loss Statements for your restaurants but you have failed to provide the requested information.

In order to cure the defaults under each Franchise Agreement, you must provide the Profit and Loss Statements to Del Taco within five (5) business days from the date of this default notice.

The defaults listed in this letter may not represent all defaults by you under each Franchise Agreement. By not listing other defaults that may exist, Del Taco is not waiving them.

In addition, Del Taco is in receipt of correspondence dated September 24, 2024 from Shahvand Aryana, responding to the Company's letter of the same date to you, and in which Mr. Aryana claims all sales taxes, property taxes and 3rd party obligations are paid current or are subject to legitimate dispute as to the balance due. However, Del Taco subsequently received correspondence dated October 1, 2024, from Auxilior Capital Partners, Inc ("ACP") to Newport Ventures, LLC ("Newport Ventures") indicating that Newport Ventures continues

to be in default of its obligations to ACP and requesting written and documented evidence satisfactory to ACP that, among other things, all of Newport Ventures' taxes, assessments, governmental charges and levies are paid current.

Pursuant to Sections 7.3 and 7.4 of the Franchise Agreements, Del Taco demands that you provide verification to Del Taco that all outstanding bills for sales taxes, property taxes and 3rd party obligations have been satisfied.  Please provide to Del Taco copies of the original bills or invoices for all sales taxes, property taxes and for each 3rd party liability received by Newport Ventures in the last twelve (12) months along with documented proof that those amounts have been paid, such as copies of checks or copies of wire transfer confirmations. Please also provide to Del Taco information about each disputed claim and the nature of the dispute for the amounts owed.  Please provide this information to Del Taco by October 14, 2024.

Nothing in this letter shall be deemed a waiver by Del Taco of any its legal rights or remedies under the Franchise Agreements.

Sincerely,

Jack Tang
General Counsel

cc:  Steven Kries

## EXHIBIT A

| Unit Number | Restaurant Location | Franchise Agreement Date |
|---|---|---|
| 738 | 7506 Parkway Drive Lonetree, CO 80124 | November 20, 2023 |
| 748 | 1645 Space Center Drive Colorado Springs, CO 80915 | October 4, 2023 |
| 778 | 24023 East Prospect Avenue Aurora, CO 80016 | October 4, 2023 |
| 787 | 50 West Belleview Avenue Englewood, CO 80110 | October 4, 2023 |
| 793 | 5240 South Wadsworth Blvd. Lakewood, CO 80123 | October 4, 2023 |
| 863 | 570 East Bromley Lane Brighton, CO 80601 | October 4, 2023 |
| 864 | 14400 East Colfax Avenue Aurora, CO 80011 | October 4, 2023 |
| 1001 | 11053 I-25 Frontage Road Firestone, CO 80504 | October 4, 2023 |
| 1002 | 3465 North Salida Street Aurora, CO 80011 | October 4, 2023 |
| 1025 | 8100 Northfield Blvd. Denver, CO 80239 | October 4, 2023 |
| 1034 | 2913 23rd Avenue Greeley, CO 80631 | October 4, 2023 |
| 1043 | 11155 East Arapahoe Road Centennial, CO 80015 | October 4, 2023 |
| 1047 | 18260 East 104th Avenue Commerce City, CO 80022 | October 4, 2023 |
| 1073 | 4310 N. Academy Blvd. Colorado Springs, CO 80918 | October 4, 2023 |
| 1086 | 11147 Pikes Peak Drive Parker, CO 80138 | October 4, 2023 |
| 1109 | 43 Union Blvd. Lakewood, CO 80228 | October 4, 2023 |
| 1117 | 8020 N. Academy Blvd. Colorado Springs, CO 80920 | October 4, 2023 |
| 1237 | 6383 Promenade Parkway Castle Rock, CO 80108 | October 4, 2023 |

# Exhibit W



Del Taco
LLC 25521 Commercentre Drive,
Suite 150
Lake Forest, CA 92630

October 14, 2024

Via Certified Mail and Email to:
Newport Ventures, LLC
Kathy Aryana
14507 W. Christy Drive
Surprise, AZ 85379

Ernie Abarro
25995 Camino Largo
Mission Viejo, CA 92692

Re: **Notice of Defaults**

Ms. Aryana and Mr. Abarro:

This letter constitutes written notice to you that you are in default of the Del Taco Franchise Agreements entered into by and between you and Del Taco LLC ("Del Taco") for the Restaurants listed on Exhibit A:

Del Taco and Newport Ventures, LLC ("Newport Ventures") are parties to that certain Promissory Note dated October 4, 2023 (enclosed), pursuant to which Newport Ventures agreed to pay to Del Taco One Hundred and Twenty-Five Thousand Dollars ($125,000) by October 4, 2024. As of the date of this letter, Newport Ventures has not paid any amounts due to Del Taco under the Promissory Note.

Paragraph 13.2.18 of the Franchise Agreements provides that "the Franchisee shall be deemed to be in default…If Franchisee fails to make any payments when due to Del Taco."

**In order to cure this default, the Franchisee must pay $125,000 to Del Taco on or before Thursday, October 17, 2024.**

Paragraph 5.4.5 of the Franchise Agreements require the Franchisee to "at all times maintain at least one certified general manager in the Restaurant and shall have a combination of five additional staff comprised of shift managers and an assistant general manager trained and certified by Del Taco for the restaurant." As of the date of this letter the Franchisee does not maintain a certified general manager or maintain the required number of certified assistant general managers or certified shift managers in the restaurants identified on Exhibit B of this letter. The names highlighted in green have been certified by Del Taco.

Newport Ventures, LLC
October 14, 2024
Page 2

In order to cure these defaults under the Franchise Agreements, you must take the following actions:

**Enroll a sufficient number of candidates approved by Del Taco to begin training to satisfy the requirements of the Franchise Agreements by Wednesday, November 13, 2024.**

Paragraph 5.12.4 requires Franchisee "to purchase and install, at Franchisee's expense…equipment…as Del Taco shall specify; and to refrain from installing or permitting to be installed on or about the Restaurant premises, without Del Taco's prior written consent, any…equipment…or other items not previously approved as meeting Del Taco's standards and specifications.

Newport Ventures has installed unapproved Kratos clamshell grills in each of its Restaurants (see enclosed photo). The clamshell grill that has been approved by Del Taco is manufactured by Proluxe.

**In order to cure these defaults, Newport Ventures must purchase and install Proluxe clamshell grills in its Restaurants by Wednesday, November 13. 2024.**

If any of the defaults identified in this letter are not cured within the timeframes provided, Newport Ventures shall be subject to termination of its Franchise Agreements immediately upon written notice delivered by Del Taco.

The defaults listed in this letter may not represent all defaults by you under each Franchise Agreement. By not listing other defaults that may exist, Del Taco is not waiving them. Nothing in this letter shall be deemed a waiver by Del Taco of any its legal rights or remedies under the Franchise Agreements.

Sincerely,

Jack Tang
General Counsel

cc: Steven Kries

Newport Ventures, LLC
October 14, 2024
Page 3

## EXHIBIT A

| Unit Number | Restaurant Location | Franchise Agreement Date |
|---|---|---|
| 738 | 7506 Parkway Drive Lonetree, CO 80124 | November 20, 2023 |
| 748 | 1645 Space Center Drive Colorado Springs, CO 80915 | October 4, 2023 |
| 778 | 24023 East Prospect Avenue Aurora, CO 80016 | October 4, 2023 |
| 787 | 50 West Belleview Avenue Englewood, CO 80110 | October 4, 2023 |
| 793 | 5240 South Wadsworth Blvd. Lakewood, CO 80123 | October 4, 2023 |
| 863 | 570 East Bromley Lane Brighton, CO 80601 | October 4, 2023 |
| 864 | 14400 East Colfax Avenue Aurora, CO 80011 | October 4, 2023 |
| 1001 | 11053 I-25 Frontage Road Firestone, CO 80504 | October 4, 2023 |
| 1002 | 3465 North Salida Street Aurora, CO 80011 | October 4, 2023 |
| 1025 | 8100 Northfield Blvd. Denver, CO 80239 | October 4, 2023 |
| 1034 | 2913 23rd Avenue Greeley, CO 80631 | October 4, 2023 |
| 1043 | 11155 East Arapahoe Road Centennial, CO 80015 | October 4, 2023 |
| 1047 | 18260 East 104th Avenue Commerce City, CO 80022 | October 4, 2023 |
| 1073 | 4310 N. Academy Blvd. Colorado Springs, CO 80918 | October 4, 2023 |
| 1086 | 11147 Pikes Peak Drive Parker, CO 80138 | October 4, 2023 |
| 1109 | 43 Union Blvd. Lakewood, CO 80228 | October 4, 2023 |
| 1117 | 8020 N. Academy Blvd. Colorado Springs, CO 80920 | October 4, 2023 |
| 1237 | 6383 Promenade Parkway Castle Rock, CO 80108 | October 4, 2023 |

# Exhibit X

Mr. Harris

Working for Newport Ventures Del Taco in Colorado.  We
have people coming in every day to say, we owe them
money.  We call our boss and told, don't concern yourself.

We took a $2.00 pay loss when this company bought all
these stores.

When we throw expired food away we get in trouble and we
are told to use it before you throw in the trash.  Inspectors
came in and we got into trouble for using expired food.  We
told them the owners told us don't and to use.  People got
fired.

This company that bought all these stores is terrible and we
are all looking for new jobs.

We get yelled at all the time and feel it is not safe to work
here.

Can you please help us?

From

A lot of people at a lot of stores.



El Paso County Public Health

1675 W. Garden of the Gods Rd. Suite 2044
Colorado Springs, CO 80907-9444

| Time In: | 10:45 AM |
|---|---|
| Time Out: | 12:30 PM |

## RETAIL FOOD ESTABLISHMENT INSPECTION REPORT

| FACILITY NAME: Del Taco 1117 | OWNER: Newport Ventures LLC |
|---|---|

| ADDRESS: 8020 N Academy Blvd  Colorado Springs CO 80920 | |
|---|---|

| DATE: 03/08/2024 | INSPECTION TYPE: Routine |
|---|---|

### FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS

Risk factors are important practices or procedures identified as the most prevalent contributing factors of foodborne illness or injury. Public health interventions are control measures to prevent foodborne illness or injury.

Compliance status to be designated as IN, OUT, NA, NO for each numbered item

IN= in compliance    OUT= not in compliance    NO= not observed    NA= not applicable  COS=Corrected on Site    R=Repeat violation

| | Compliance Status | | COS | R |
|---|---|---|---|---|
| **Supervision** | | | | |
| 1 | IN | Person in charge present, demonstrates knowledge, and performs duties | | |
| 2 | IN | Certified Food Protection Manager | | |
| **Employee Health** | | | | |
| 3 | IN | Management, food employee and conditional employee; knowledge, responsibilities and reporting | | |
| 4 | IN | Proper use of restriction and exclusion | | |
| 5 | IN | Procedures for responding to vomiting and diarrheal events | | |
| **Good Hygienic Practices** | | | | |
| 6 | IN | Proper eating, tasting, drinking, or tobacco use | | |
| 7 | IN | No discharge from eyes, nose, and mouth | | |
| **Preventing Contamination by Hands** | | | | |
| 8 | OUT | Hands clean & properly washed | ✗ | |
| 9 | IN | No bare hand contact with RFE food or a pre-approved alternative procedure properly allowed | | |
| 10 | OUT | Adequate handwashing sinks properly supplied and accessible | ✗ | |
| **Approved Source** | | | | |
| 11 | IN | Food obtained from approved source | | |
| 12 | N/O | Food received at proper temperature | | |
| 13 | IN | Food in good condition, safe, & unadulterated | | |
| 14 | N/A | Required records available, shellstock tags, parasite destruction | | |
| **Protection from Contamination** | | | | |
| 15 | IN | Food separated and protected | | |
| 16 | IN | Food contact surfaces; cleaned & sanitized | | |
| 17 | IN | Proper disposition of returned, previously served, reconditioned & unsafe food | | |
| **Time/Temperature Control for Safety** | | | | |
| 18 | IN | Proper cooking time & Temperatures | | |
| 19 | N/O | Proper reheating procedures for hot holding | | |
| 20 | N/A | Proper cooling time and temperature | | |
| 21 | IN | Proper hot holding temperatures | | |
| 22 | IN | Proper cold holding temperatures | | |
| 23 | IN | Proper date marking and disposition | | |
| 24 | N/A | Time as a Public Health Control; procedures & records | | |
| **Consumer Advisory** | | | | |
| 25 | N/A | Consumer advisory provided for raw/undercooked food | | |
| **Highly Susceptible Populations** | | | | |
| 26 | N/A | Pasteurized foods used; prohibited foods not offered | | |
| **Food/Color Additives and Toxic Substances** | | | | |
| 27 | N/A | Food Additives: approved & Properly used | | |
| 28 | IN | Toxic substances properly identified, stored & used | | |
| **Conformance with Approved Procedures** | | | | |
| 29 | N/A | Compliance with variance/ specialized process/ HACCP | | |

Facility Name: Del Taco 1117

## GOOD RETAIL PRACTICES

Good Retail Practices are preventative measures to control the addition of pathogens, chemicals, and physical objects in foods.

"OUT" marked in box if numbered item is **not** in compliance                    COS= Corrected on Site   R= Repeat Violation

| Compliance Status | | | COS | R |
|---|---|---|---|---|
| **Safe Food and Water** | | | | |
| 30 | | Pasteurized eggs used where required | | |
| 31 | IN | Water and ice from approved source | | |
| 32 | | Variance obtained for specialized processing methods | | |
| **Food Temperature Control** | | | | |
| 33 | IN | Proper cooling methods used; adequate equipment for temperature control | | |
| 34 | | Plant food properly cooked for hot holding | | |
| 35 | | Approved thawing methods used | | |
| 36 | IN | Thermometer provided & accurate | | |
| **Food Identification** | | | | |
| 37 | IN | Food properly labeled; original container | | |
| **Prevention of Food Contamination** | | | | |
| 38 | IN | Insects, rodents, & animals not present | | |
| 39 | IN | Contamination prevented during food preparation, storage & display | | |
| 40 | IN | Personal cleanliness | | |
| 41 | IN | Wiping Cloths; properly used & stored | | |
| 42 | IN | Washing fruits & vegetables | | |
| **Proper Use of Utensils** | | | | |
| 43 | IN | In-use utensils: properly stored | | |
| 44 | IN | Utensils, equipment & linens: properly stored, dried, & handled | | |
| 45 | IN | Single-use/single-service articles: properly stored & used | | |
| 46 | IN | Gloves used properly | | |
| **Utensils, Equipment and Vending** | | | | |
| 47 | IN | Food & non-food contact surfaces cleanable, properly designed, constructed, & used | | |
| 48 | IN | Warewashing facilities: installed, maintained, & used; test strips | | |
| 49 | IN | Non-food contact surfaces clean | | |
| **Physical Facilities** | | | | |
| 50 | IN | Hot & cold water available; adequate pressure | | |
| 51 | OUT | Plumbing installed; proper backflow devices | | |
| 52 | OUT | Sewage & waste water properly disposed | | |
| 53 | IN | Toilet facilities; properly constructed, supplied, & cleaned | | |
| 54 | IN | Garbage & refuse properly disposed; facilities maintained | | |
| 55 | OUT | Physical facilities installed, maintained, & clean | | |
| 56 | IN | Adequate ventilation & lighting; designated areas used | | |
| **Regulatory Action** | | | | |
| Notification of Potential Fines and Closure | | Notice of Immediate Closure | Imminent Health Hazard Closure | |
| **On-Site Actions** | | | | |
| Voluntary Condemnation | | Compliance Agreement | Embargo Notice | |
| **Resolution** | | | | |
| Reinstatement of License | | Violation Correction Sheet ✕ | Embargo Release | |

Inspection Result: Pass                    Re-Inspection Required: NO

Person In Charge:                                        Environmental Health Specialist:

Name: Yenifer Marban                                     Name: Teisha Guerrero

Title: General Manager                                    Title: Environmental Health Specialist

Page 2

Facility Name: Del Taco 1117

| Observed Violations *(See additional pages if necessary)* |
| --- |

8. Hands clean and properly washed
This is a Priority item
 2-301.14 - When to Wash (P)
Observation: Hands shall be washed when engaging in other activities that contaminate the hands.
Observed employee push down trash and don gloves with no hand wash. Person in charge provided
education on when to wash hands.  (Corrected on Site)

10.  Adequate handwashing sinks properly supplied and accessible
This is a Priority Foundation item
 5-205.11 - Using a Handwashing Sink- Operation and Maintenance (Pf)
Observation: A hand washing sink may not be used for purposes other than hand washing. Observed
hand sink with ice dumped inside. Education provided. Hand sink will only be used for hand washing.
(Corrected on Site)

51.  Plumbing installed; proper backflow devices
This is a Priority item
 5-202.14 - Backflow Prevention, Design Standard (P)
Observation: A backflow or back siphonage prevention device installed on a water supply system shall
meet American Society of Sanitary Engineering (A.S.S.E.) standards for construction, installation,
maintenance, inspection, and testing for that specific application and type of device. Faucet on mop sink
lacks atmospheric vacuum breaker. Education provided. Correction shall be made by 4/5/2024.Correct by
04/05/2024

52.  Sewage and waste water properly disposed
This is a Priority item
 5-402.11 - Backflow Prevention - Direct Connection Prohibition (P)
Observation: A direct connection may not exist between the sewage system and a drain originating from
equipment in which food, portable equipment, or utensils are placed. Observed the 3-compartment sink to
be directly drained. Education provided. Correction shall be made by 4/5/2024.Correct by 04/05/2024

55.  Physical facilities installed, maintained, and clean
This is a Core item
 6-501.11 - Repairing - Premises, Structures, Attachments, and Fixtures - Methods
Observation: Physical facilities shall be maintained in good repair. Observed leak from roof by the food line
and another in the mop area. Per person in charge that area of the line is not used for food preparation.
Even though the leak is not over food it is splashing on the counter which could contaminate the food that
is near in the well. The leak near the mop area has damaged some of the wall above. Education provided.
Correction shall be made by 3/12/2024.Correct by 03/12/2024

Facility Name: Del Taco 1117

---

General Comments

## GENERAL COMMENTS

Correction for the roof leaks shall be made by 3/12/2024.
Correction for the 3-compartment sink and the atmospheric vacuum breaker shall be made by 4/5/2024.
Please send corrections to inspector via email or text.

Facility Name: Del Taco 1117

---

| General Comments |
| --- |

### FOOD TEMPERATURES

| Food Item | Food State | Temperature |
| --- | --- | --- |
| Chicken | Cook Temperature | 187F |
| Rice in hot holding cabinet | Hot Holding | 156F |
| Beans on line | Hot Holding | 141F |
| Diced tomatoes on line | Cold Holding | 40F |
| Sour Cream in walk in | Cold Holding | 39F |

### VOLUNTARY CONDEMNATION

| Disposed Items | Disposal Method | Value | Comments |
| --- | --- | --- | --- |



El Paso County Public Health

1675 W. Garden of the Gods Rd. Suite 2044
Colorado Springs, CO 80907-9444

| Time In: | 08:00 AM |
| Time Out: | 10:30 AM |

## RETAIL FOOD ESTABLISHMENT INSPECTION REPORT

| FACILITY NAME: DEL TACO | OWNER: Colorado Del LLC |
|---|---|

| ADDRESS: 1645 Space Center Dr Colorado Springs CO 80915 | |

| DATE: 08/10/2023 | INSPECTION TYPE: Re-Inspection |

### FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS

Risk factors are important practices or procedures identified as the most prevalent contributing factors of foodborne illness or injury. Public health interventions are control measures to prevent foodborne illness or injury.

Compliance status to be designated as IN, OUT, NA, NO for each numbered item

IN= in compliance    OUT= not in compliance    NO= not observed    NA= not applicable    COS=Corrected on Site    R=Repeat violation

| | Compliance Status | | COS | R |
|---|---|---|---|---|
| **Supervision** | | | | |
| 1 | IN | Person in charge present, demonstrates knowledge, and performs duties | | |
| 2 | IN | Certified Food Protection Manager | | |
| **Employee Health** | | | | |
| 3 | IN | Management, food employee and conditional employee; knowledge, responsibilities and reporting | | |
| 4 | IN | Proper use of restriction and exclusion | | |
| 5 | IN | Procedures for responding to vomiting and diarrheal events | | |
| **Good Hygienic Practices** | | | | |
| 6 | IN | Proper eating, tasting, drinking, or tobacco use | | |
| 7 | IN | No discharge from eyes, nose, and mouth | | |
| **Preventing Contamination by Hands** | | | | |
| 8 | IN | Hands clean & properly washed | | |
| 9 | IN | No bare hand contact with RFE food or a pre-approved alternative procedure properly allowed | | |
| 10 | OUT | Adequate handwashing sinks properly supplied and accessible | | ✕ |
| **Approved Source** | | | | |
| 11 | IN | Food obtained from approved source | | |
| 12 | N/O | Food received at proper temperature | | |
| 13 | IN | Food in good condition, safe, & unadulterated | | |
| 14 | N/A | Required records available, shellstock tags, parasite destruction | | |
| **Protection from Contamination** | | | | |
| 15 | IN | Food separated and protected | | |
| 16 | OUT | Food contact surfaces; cleaned & sanitized | | |
| 17 | IN | Proper disposition of returned, previously served, reconditioned & unsafe food | | |
| **Time/Temperature Control for Safety** | | | | |
| 18 | IN | Proper cooking time & Temperatures | | |
| 19 | N/O | Proper reheating procedures for hot holding | | |
| 20 | N/O | Proper cooling time and temperature | | |
| 21 | IN | Proper hot holding temperatures | | |
| 22 | IN | Proper cold holding temperatures | | |
| 23 | IN | Proper date marking and disposition | | |
| 24 | N/A | Time as a Public Health Control; procedures & records | | |
| **Consumer Advisory** | | | | |
| 25 | N/A | Consumer advisory provided for raw/undercooked food | | |
| **Highly Susceptible Populations** | | | | |
| 26 | N/A | Pasteurized foods used; prohibited foods not offered | | |
| **Food/Color Additives and Toxic Substances** | | | | |
| 27 | N/A | Food Additives: approved & Properly used | | |
| 28 | IN | Toxic substances properly identified, stored & used | | |
| **Conformance with Approved Procedures** | | | | |
| 29 | N/A | Compliance with variance/ specialized process/ HACCP | | |

Facility Name: DEL TACO

| GOOD RETAIL PRACTICES | | | |
|---|---|---|---|
| Good Retail Practices are preventative measures to control the addition of pathogens, chemicals, and physical objects in foods. | | | |
| "OUT" marked in box if numbered item is **not** in compliance | | COS= Corrected on Site | R= Repeat Violation |
| **Compliance Status** | | **COS** | **R** |
| **Safe Food and Water** | | | |
| 30 | | Pasteurized eggs used where required | | |
| 31 | | Water and ice from approved source | | |
| 32 | | Variance obtained for specialized processing methods | | |
| **Food Temperature Control** | | | |
| 33 | | Proper cooling methods used; adequate equipment for temperature control | | |
| 34 | | Plant food properly cooked for hot holding | | |
| 35 | | Approved thawing methods used | | |
| 36 | | Thermometer provided & accurate | | |
| **Food Identification** | | | |
| 37 | | Food properly labeled: original container | | |
| **Prevention of Food Contamination** | | | |
| 38 | | Insects, rodents, & animals not present | | |
| 39 | OUT | Contamination prevented during food preparation, storage & display | | |
| 40 | | Personal cleanliness | | |
| 41 | | Wiping Cloths: properly used & stored | | |
| 42 | | Washing fruits & vegetables | | |
| **Proper Use of Utensils** | | | |
| 43 | | In-use utensils: properly stored | | |
| 44 | | Utensils, equipment & linens: properly stored, dried, & handled | | |
| 45 | | Single-use/single-service articles: properly stored & used | | |
| 46 | | Gloves used properly | | |
| **Utensils, Equipment and Vending** | | | |
| 47 | OUT | Food & non-food contact surfaces cleanable, properly designed, constructed, & used | | X |
| 48 | | Warewashing facilities: installed, maintained, & used; test strips | | |
| 49 | | Non-food contact surfaces clean | | |
| **Physical Facilities** | | | |
| 50 | | Hot & cold water available; adequate pressure | | |
| 51 | OUT | Plumbing installed; proper backflow devices | | |
| 52 | | Sewage & waste water properly disposed | | |
| 53 | | Toilet facilities; properly constructed, supplied, & cleaned | | |
| 54 | | Garbage & refuse properly disposed; facilities maintained | | |
| 55 | | Physical facilities installed, maintained, & clean | | |
| 56 | | Adequate ventilation & lighting; designated areas used | | |
| **Regulatory Action** | | | |
| Notification of Potential Fines and Closure | Notice of Immediate Closure | Imminent Health Hazard Closure | |
| **On-Site Actions** | | | |
| Voluntary Condemnation | Compliance Agreement | Embargo Notice | |
| **Resolution** | | | |
| Reinstatement of License | Violation Correction Sheet   X | Embargo Release | |

Inspection Result: Pass                    Re-Inspection Required: NO

Person In Charge:                                          Environmental Health Specialist:

Name: Rosa Ward                                          Name: Danielle Hannaly-Gentle

Title: General Manager                                   Title: Lead Environmental Health Specialist

Facility Name: DEL TACO

---

**Observed Violations** *(See additional pages if necessary)*

10.  Adequate handwashing sinks properly supplied and accessible
This is a Priority Foundation item
 5-202.12 (A) - Handwashing Sink, Installation- Minimum Temperature (Pf)
Observation: A handwashing sink shall be equipped to provide hot water at a temperature of at least 100°F
through a mixing valve or combination faucet. Hot water at hand sink near drive thru window does not
reach 100°F. Education was provided.Correct by 08/17/2023   (Repeat)

16.  Food contact surfaces; cleaned and sanitized
This is a Priority item
 4-501.114 - Warewashing Equipment, Chemical Sanitization- Temperature, pH, Concentration, and
Hardness (P)

This is a Core item
 4-602.11 (E) - Non-TCS Foods - Cleaning Frequency
Observation: Quaternary ammoinum sanitizer at 3-compartment sink shall be used at a specified
concentration listed on manufacturer's label. Final rinse at 3-compartment sink measured < 150 ppm
quaternary ammonium. Per manufacturer's direction, it shall measure 150-400 ppm quaternary
ammonium. Education was provided.

Surfaces of utensils and equipment contacting food that is not time/temperature for safety food shall be
cleaned In equipment such as ice bins and beverage dispensing nozzles and enclosed components of
equipment such as ice makers, cooking oil storage tanks and distribution lines, beverage and syrup
dispensing lines or tubes, coffee bean grinders, and water vending equipment at a frequency specified by
the manufacturer, or absent manufacturer specifications, at a frequency necessary to preclude
accumulation of soil or mold.Correct by 08/17/2023

39.  Contamination prevented during food preparation, storage, and display
This is a Core item
 3-305.11 - Food Storage - Preventing Contamination from the Premise
Observation: Food shall be protected from contamination by storing the food in a clean, dry location;
where it is not exposed to splash, dust, or other contamination; and at least 6 inches above the floor.
Walk-in freezer was dripping from fan casing piping on boxed food. Education was provided.

47.  Food and non-food contact surfaces cleanable, properly designed, constructed, and used
This is a Core item
 4-501.11 - Good Repair and Proper Adjustment - Equipment
Observation: Equipment shall be maintained in a state of repair and condition that meets the requirements
of the Code. Prep line cooler (top portion) is not adjusted properly to cold hold TCS foods at or below 41°F,
ice is used to cold hold TCS foods. Correct by 08/17/2023   (Repeat)

51.  Plumbing installed; proper backflow devices
This is a Priority item
 5-203.14 - Backflow Prevention Device, When Required (P)
Observation: A plumbing system shall be installed to preclude backflow of a solid, liquid, or gas
contaminant into the water supply system at each point of use at the food establishment, including on a
hose bibb if a hose is attached or on a hose bibb if a hose is not attached and backflow prevention is
required by law. A shut-off valve was present downstream from backflow device. A hose with a nozzle,
stored below flood rim level, was attached and the hot water was turned on. Education was
provided.Correct by 08/17/2023

Facility Name: DEL TACO

---

General Comments

## GENERAL COMMENTS

Please provide proof of correction for violations #10, #16, #47 and #51 by August 17, 2023.

.

Facility Name: DEL TACO

General Comments

## FOOD TEMPERATURES

| Food Item | Food State | Temperature |
|---|---|---|
| Hamburger Patty | Cook Temperature | 162F |
| Taco meat/Walk-in cooler | Cold Holding | 40F |
| Taco meat/Steam table | Hot Holding | 151F |

## VOLUNTARY CONDEMNATION

| Disposed Items | Disposal Method | Value | Comments |
|---|---|---|---|

## DOUGLAS COUNTY
HEALTH DEPARTMENT COLORADO

| Time In: | 11:00 AM |
| Time Out: | 12:15 PM |

## FOOD ESTABLISHMENT INSPECTION REPORT

| Facility Name: Del Taco 738 | Owner: Newport Ventures, LLC dba Del Taco 738 |
|---|---|

| Address: 7506 Parkway Dr Lone Tree CO 80124-2500 | |

| Date: 05/07/2024 | Inspection Type: Routine |

### FOODBORNE ILLNESS RISK FACTORS AND PUBLIC HEALTH INTERVENTIONS

Risk factors are important practices or procedures identified as the most prevalent contributing factors of foodborne illness or injury. Public health interventions are control measures to prevent foodborne illness or injury. *Required field.
Compliance status to be designated as IN, OUT, NA, NO for each numbered item.

IN = in compliance   OUT = not in compliance   NO = not observed   NA = not applicable   COS = corrected on site   R = repeat violation

| No. | Status | Category | COS | R |
|---|---|---|---|---|
| **Supervision** | | | | |
| 1* | IN | Person in charge present, demonstrates knowledge, and performs duties | | |
| 2* | IN | Certified Food Protection Manager | | |
| **Employee Health** | | | | |
| 3* | IN | Management, food employee and conditional employee; knowledge, responsibilities, and reporting | | |
| 4* | IN | Proper use of restriction and exclusion | | |
| 5* | IN | Procedures for responding to vomiting and diarrheal events | | |
| **Good Hygienic Practices** | | | | |
| 6* | IN | Proper eating, tasting, drinking, or tobacco use | | |
| 7* | IN | No discharge from eyes, nose, and mouth | | |
| **Preventing Contamination by Hands** | | | | |
| 8* | IN | Hands clean and properly washed | | |
| 9* | IN | No bare hand contact with ready-to-eat food or a pre-approved alternative procedure allowed | | |
| 10* | OUT | Adequate handwashing sinks properly supplied and accessible | ✕ | |
| **Approved Source** | | | | |
| 11* | IN | Food obtained from approved source | | |
| 12* | N/O | Food received at proper temperature | | |
| 13* | OUT | Food in good condition, safe, and unadulterated | ✕ | |
| 14* | N/A | Required records available: molluscan shellfish identification, parasite destruction | | |
| **Protection from Contamination** | | | | |
| 15* | IN | Food separated and protected | | |
| 16* | IN | Food contact surfaces; cleaned and sanitized | | |
| 17* | IN | Proper disposition of returned, previously served, reconditioned, and unsafe food | | |
| **Time/Temperature Control for Safety** | | | | |
| 18* | IN | Proper cooking time and temperatures | | |
| 19* | N/O | Proper reheating procedures for hot holding | | |
| 20* | N/O | Proper cooling time and temperatures | | |
| 21* | IN | Proper hot holding temperatures | | |
| 22* | OUT | Proper cold holding temperatures | ✕ | |
| 23* | IN | Proper date marking and disposition | | |
| 24* | N/A | Time as a Public Health Control; procedures and records | | |
| **Consumer Advisory** | | | | |
| 25* | N/A | Consumer advisory provided for raw/undercooked food | | |
| **Highly Susceptible Populations** | | | | |
| 26* | N/A | Pasteurized foods used; prohibited foods not offered | | |
| **Food/Color Additives and Toxic Substances** | | | | |
| 27* | N/A | Food additives: approved and properly used | | |
| 28* | IN | Toxic substances properly identified, stored, and used | | |
| **Conformance with Approved Procedures** | | | | |
| 29* | N/A | Compliance with variance/specialized process/HACCP | | |

Facility Name: Del Taco 738

| | GOOD RETAIL PRACTICES | | | |
|---|---|---|---|---|
|  | Good Retail Practices are preventative measures to control the addition of pathogens, chemicals, and physical objects in foods. "OUT" marked in box if numbered item is **not** in compliance. *Required          COS = corrected on site    R = repeat violation |
| No. | Status | Compliance Check | COS | R |
|  | **Safe Food and Water** |
| 30 | IN | Pasteurized eggs used where required | | |
| 31 | IN | Water and ice from approved source | | |
| 32* | N/A | Variance obtained for specialized processing methods | | |
|  | **Food Temperature Control** |
| 33 | IN | Proper cooling methods used; adequate equipment for temperature control | | |
| 34* | IN | Plant food properly cooked for hot holding | | |
| 35* | IN | Approved thawing methods used | | |
| 36 | IN | Thermometer provided and accurate | | |
|  | **Food Identification** |
| 37 | IN | Food properly labeled; original container | | |
|  | **Prevention of Food Contamination** |
| 38 | IN | Insects, rodents, and animals not present | | |
| 39 | IN | Contamination prevented during food preparation, storage and display | | |
| 40 | IN | Personal cleanliness | | |
| 41 | IN | Wiping cloths, properly used and stored | | |
| 42 | IN | Washing fruits and vegetables | | |
|  | **Proper Use of Utensils** |
| 43 | IN | In-use utensils: properly stored | | |
| 44 | IN | Utensils, equipment and linens: properly stored, dried, and handled | | |
| 45 | IN | Single-use/single-service articles: properly stored and used | | |
| 46 | IN | Gloves used properly | | |
|  | **Utensils, Equipment, and Vending** |
| 47 | IN | Food and non-food contact surfaces cleanable, properly designed, constructed, and used | | |
| 48 | IN | Warewashing facilities: installed, maintained, and used; test strips | | |
| 49 | IN | Non-food contact surfaces clean | | |
|  | **Physical Facilities** |
| 50 | IN | Hot and cold water available; adequate pressure | | |
| 51 | IN | Plumbing installed; proper backflow devices | | |
| 52 | IN | Sewage and waste water properly disposed | | |
| 53 | IN | Toilet facilities; properly constructed, supplied, and cleaned | | |
| 54 | IN | Garbage and refuse properly disposed; facilities maintained | | |
| 55 | IN | Physical facilities installed, maintained, and cleaned | | |
| 56 | IN | Adequate ventilation and lighting; designated areas used | | |

Inspection Result: Pass

PASS: 0-49 points
RE-INSPECTION REQUIRED: 50-109 points
CLOSED: 110+ points

https://inspections.myhealthdepartment.com/dchd

Facility Name: Del Taco 738

---

**OBSERVATIONS:**

**10. Adequate handwashing sinks properly supplied and accessible:**
**Observation:** A hand sink near the cook line was being blocked with
a pitcher of water.

A hand sink near the three compartment sink was being used as a dump sink.
Corrective action: Educated the person in charge to only use hand sinks for hand
washing. **(Corrected on Site)**
**This is a Priority Foundation item** 5-205.11 - Using a Handwashing
Sink-Operation and Maintenance (Pf)

**13. Food in good condition, safe, and unadulterated:**
**Observation:** One dented can of shake syrup was being stored
amongst wholesome cans in the dry storage area.
Corrective action: the person in charge discarded the can. **(Corrected on
Site)**
**This is a Priority Foundation item** 3-202.15 - Package Integrity (Pf)

**22. Proper cold holding temperatures:**
**Observation:** Tomatoes (51°F), Lettuce (50°F) and pico de gallo (47°F)
on the preparation line were not being cold held properly at 41°F or lower.
Corrective action: The person in charge discarded the above items.
**(Corrected on Site)**
**This is a Priority item** 3-501.16 (A)(2) - TCS Food, Cold Holding (P)

**General Comments:**

A joint training inspection was conducted by BE and JV



Document must be filed electronically.
Paper documents are not accepted.
Fees & forms are subject to change.
For more information or to print copies
of filed documents, visit www.sos.state.co.us.

Colorado Secretary of State
Date and Time: 06/07/2014 09:22 PM
ID Number: 20141355851

Document number: 20141355851
Amount Paid: $20.00

ABOVE SPACE FOR OFFICE USE ONLY

## Statement of Trade Name of a Reporting Entity
filed pursuant to §7-71-103 and §7-71-107 of the Colorado Revised Statutes (C.R.S)

1. For the reporting entity delivering this statement, its ID number, true name, form of entity and the
jurisdiction under the law of which it is formed are

    ID Number
    **20131006171**
    *(Colorado Secretary of State ID number)*

    True name
    **Law Office of Adam L Weitzel, P.C.**

    Form of entity
    **Corporation**

    Jurisdiction
    **Colorado**

2. The trade name under which such entity transacts business or conducts activities or contemplates
transacting business or conducting activities in this state is

    **Business Law Group**

3. A brief description of the kind of business transacted or activities conducted or contemplated to be
transacted or conducted in this state under such trade name is

    **Legal Services**

4. *(If the following statement applies, adopt the statement by marking the box and include an attachment.)*
    ☐ This document contains additional information as provided by law.

5. *(Caution: Leave blank if the document does not have a delayed effective date. Stating a delayed effective date has
significant legal consequences. Read instructions before entering a date.)*

    *(If the following statement applies, adopt the statement by entering a date and, if applicable, time using the required format.)*
    The delayed effective date and, if applicable, time of this document are _____.
    *(mm/dd/yyyy hour:minute am/pm)*

Notice:
Causing this document to be delivered to the Secretary of State for filing shall constitute the affirmation or
acknowledgment of each individual causing such delivery, under penalties of perjury, that such document is
such individual's act and deed, or that such individual in good faith believes such document is the act and deed
of the person on whose behalf such individual is causing such document to be delivered for filing, taken in
conformity with the requirements of part 3 of article 90 of title 7, C.R.S. and, if applicable, the constituent
documents and the organic statutes, and that such individual in good faith believes the facts stated in such
document are true and such document complies with the requirements of that Part, the constituent documents,
and the organic statutes.

This perjury notice applies to each individual who causes this document to be delivered to the Secretary of
State, whether or not such individual is identified in this document as one who has caused it to be delivered.

6. The true name and mailing address of the individual causing this document to be delivered for filing are

| Weitzel | Adam | L | |
|---|---|---|---|
| *(Last)* | *(First)* | *(Middle)* | *(Suffix)* |

411 S. Cascade Ave.
*(Street number and name or Post Office Box information)*

Suite 100

| Colorado Springs | CO | 80903 |
|---|---|---|
| *(City)* | *(State)* | *(Postal/Zip Code)* |

United States

| *(Province – if applicable)* | *(Country – if not US)* |
|---|---|

*(If the following statement applies, adopt the statement by marking the box and include an attachment.)*

☐ This document contains the true name and mailing address of one or more additional individuals causing the document to be delivered for filing.

Disclaimer:
This form/cover sheet, and any related instructions, are not intended to provide legal, business or tax advice, and are furnished without representation or warranty. While this form/cover sheet is believed to satisfy minimum legal requirements as of its revision date, compliance with applicable law, as the same may be amended from time to time, remains the responsibility of the user of this form/cover sheet. Questions should be addressed to the user's legal, business or tax advisor(s).



Document must be filed electronically.
Paper documents are not accepted.
Fees & forms are subject to change.
For more information or to print copies
of filed documents, visit www.coloradosos.gov.

Colorado Secretary of State
Date and Time: 07/12/2023 12:10 PM
ID Number: 20231726368

Document number: 20231726368
Amount Paid: $100.00

ABOVE SPACE FOR OFFICE USE ONLY

## Statement of Foreign Entity Authority
filed pursuant to § 7-90-803 of the Colorado Revised Statutes (C.R.S.)

1. The entity ID number, the entity name, and the true name, if different, are

Entity ID number     20231726368
*(Colorado Secretary of State ID number)*

Entity name     Newport Ventures, Ltd

True name     Newport Ventures, LLC
(if different from the entity name)

2. The form of entity and the jurisdiction under the law of which the entity is formed are

Form of entity     Foreign Limited Liability Company

Jurisdiction     South Dakota

3. The principal office address of the entity's principal office is

Street address     90 S Cascade Ave.
*(Street number and name)*

Suite 400

Colorado Springs     CO     80903
*(City)*     *(State)*     *(ZIP/Postal Code)*

United States
*(Province – if applicable)*     *(Country)*

Mailing address
(**leave blank if same as street address**)
*(Street number and name or Post Office Box information)*

*(City)*     *(State)*     *(ZIP/Postal Code)*

*(Province – if applicable)*     *(Country)*

4. The registered agent name and registered agent address of the entity's registered agent are

Name
(if an individual)
*(Last)*     *(First)*     *(Middle)*     *(Suffix)*

or

(if an entity)     Business Law Group

*(Caution: Do not provide both an individual and an entity name.)*

<u>Street</u> address

90 S Cascade Ave.
_____
*(Street number and name)*

Suite 400
_____

Colorado Springs _____ CO _____ 80903 _____
*(City)* *(State)* *(ZIP Code)*

<u>Mailing</u> address
**(leave blank** if same as street address)

_____
*(Street number and name or Post Office Box information)*

_____

_____ CO _____ _____ .
*(City)* *(State)* *(ZIP Code)*

*(The following statement is adopted by marking the box.)*

☒ The person appointed as registered agent above has consented to being so appointed.

5. The date the entity commenced or expects to commence transacting business or conducting activities in
   Colorado is 07/12/2023 _____.
   *(mm/dd/yyyy)*

6. *(If applicable, adopt the following statement by marking the box and include an attachment.)*
   ☐ This document contains additional information as provided by law.

7. *(Caution:* <u>Leave blank</u> *if the document does not have a delayed effective date. Stating a delayed effective date has
   significant legal consequences. Read instructions before entering a date.)*

   *(If the following statement applies, adopt the statement by entering a date and, if applicable, time using the required format.)*
   The delayed effective date and, if applicable, time of this document is/are _____.
   *(mm/dd/yyyy hour:minute am/pm)*

**Notice:**

Causing this document to be delivered to the Secretary of State for filing shall constitute the affirmation or
acknowledgment of each individual causing such delivery, under penalties of perjury, that the document is the
individual's act and deed, or that the individual in good faith believes the document is the act and deed of the
person on whose behalf the individual is causing the document to be delivered for filing, taken in conformity
with the requirements of part 3 of article 90 of title 7, C.R.S., the constituent documents, and the organic
statutes, and that the individual in good faith believes the facts stated in the document are true and the
document complies with the requirements of that Part, the constituent documents, and the organic statutes.

This perjury notice applies to each individual who causes this document to be delivered to the Secretary of
State, whether or not such individual is named in the document as one who has caused it to be delivered.

8. The true name and mailing address of the individual causing the document to be delivered for filing are

Weitzel _____ Adam _____ L _____ _____
*(Last)* *(First)* *(Middle)* *(Suffix)*

90 S Cascade Ave
_____
*(Street number and name or Post Office Box information)*

Suite 400
_____

Colorado Springs _____ CO _____ 80903 _____
*(City)* *(State)* *(ZIP/Postal Code)*

_____ United States .
*(Province – if applicable)* *(Country)*

*(If the following statement applies, adopt the statement by marking the box and include an attachment.)*
☐ This document contains the true name and mailing address of one or more additional individuals
causing the document to be delivered for filing.

# State of South Dakota
## Office of the Secretary of State

## Certificate of Reinstatement

### Domestic Limited Liability Company

**I, Steve Barnett**, Secretary of State of the State of South Dakota, hereby certify that the Application for Reinstatement for

### Newport Ventures, LLC

BUSINESS ID# DL178490

with an effective date of: March 31, 2022, duly signed and verified, pursuant to the provisions of the South Dakota Limited Liability Company Act, has been received in this office and is found to conform to law.

**ACCORDINGLY,** and by virtue of the authority vested in me by law, I hereby issue this Certificate of Reinstatement and attach hereto a duplicate of the Application for Reinstatement.



**IN TESTIMONY WHEREOF,** I have hereunto set my hand and caused to be affixed the Great Seal of the State of South Dakota, in Pierre, the Capital City, this day, March 31, 2022.

*Steve Barnett*

**Steve Barnett**
**Secretary of State**

03/31/2022 1:50 PM





2412625

# APPLICATION FOR REINSTATEMENT

Secretary of State
500 E. Capitol Ave
Pierre, SD 57501-5070
(605) 773-4845

### FOLLOWING ADMINISTRATIVE
### DISSOLUTION/REVOCATION
SDCL 47-1A-1421, 1422; 47-34A-811; 47-24-14

**Please Type or Print Clearly in Ink**
**Please submit one Original**
**Make payable to the SECRETARY OF STATE**

| Filing Fee: $150 |
|---|
| **Total Fee: $150** |

1. The Name and Business ID of the entity is:

Newport Ventures, LLC                                    DL178490
Name(Note: This must be the exact entity name as registered.)          Business ID

2. The effective date of its administrative dissolution:   07/16/2021

3. State that the ground or grounds for dissolution either did not exist, or have been eliminated by filing
all required reports and paying all fees and penalties.
☑ Has/have been eliminated.

4. The entities name satisfies the requirements of the South Dakota Codified Law:
☑ Yes   - or -  ☐ No

5. **Attached** hereto is a **certificate** from the **South Dakota Department of Revenue** reciting that any and all taxes
owed by the entity have been paid.  Nonprofits are exempt from this requirement.

Please submit this application for reinstatement together in the same envelope with everything necessary for
reinstatement, including all past due annual reports and additional filing fees.

6. **Attached** hereto, or filed previously, are **ALL** documents, fees, and penalties required for reinstatement:

☑ Annual Reports   ☑ Registered Agent and Registered Office Information
☑ Filing Fees
☑ Penalties

If an LLC, the application must be signed by a member if the company is a member-managed company or by a
manager if it's a manager managed company or in accordance with SDCL 47-34A-205.

If a corporation, the application may be signed by any authorized officer of the corporation.

No person may execute this report knowing it is false in any material respect. Any violation may be subject to a civil
and/or criminal penalty (SDCL 22-39-36).

3/25/22                                      _____
Signature Date                               Signature of an authorized person

Member                                       Sebastian Aryana
Signer's Title                               Printed Name



South Dakota Department of Revenue

445 E Capitol Ave

Pierre, SD 57501

### Tax Clearance Request Form

Form: 2026

## Reason for Request:

(●)   **Secretary of State's Office** - Businesses which have been dissolved must submit a tax clearance certificate from the Department of Revenue before the Application for Reinstatement can be processed.

( )   **Other:**_____

## Company Information:

Owner, Partner, LLC, or Corporation Name: Newport Ventures, LLC          FEIN ███████

Address: 401 E 8th #214-1619          City: Sioux Falls          State: SD   Zip: 57103

Contact Person:_____   Email:_____   Business Phone:_____

Do you conduct business or provide a service in the state of South Dakota  ( ) Yes   (●) No

Explain the service or product you provide in South Dakota:_____
None
_____
_____

South Dakota Tax License No: _____   Business Industry Type: Investments outside of SD

Is the entity aware of any outstanding tax issues: no_____

Signature: *D'Arcy DeLoach*          Date: 02/11/2022

## DOR Office Use Only:

The request for a tax clearance certificate has been:

( )   Denied          Reason: _____

(●)   Approved          This is to certify that as of the date noted, the above mentioned entity does not owe taxes to the South Dakota Department of Revenue. This certification extends only to the taxes administered and collected by the South Dakota Department of Revenue. This is not to be construed as a waiver to collect taxes found to be due as a result of an audit, the correction of incorrect returns filed by the corporation ,or the failure of the corporation to file required returns.

DOR Employee Name: Valerie Wernsmann

Signature: *Valerie Wernsmann*          Date: 02/11/2022




532261726

B0303-1364 03/04/2024 7:09PM Rec'd by SD SOS

# ANNUAL REPORT

**Domestic Limited Liability Company**
SDCL 47-34A-211; 59-11-24, 24.1

Secretary of State
500 E. Capitol Ave
Pierre, SD 57501-5070
(605) 773-4845

**2024**
FILING YEAR

Please Type or Print Clearly in Ink
Please submit one Original
Make payable to the SECRETARY OF STATE

| | |
|---|---|
| **Filing Fee: $50** | |
| **SOC (Agent) Fee: $10** | |
| **Total Fee: $60** | |

1. Business ID and Name:

   **DL178490**
   BUSINESS ID

   **Newport Ventures, LLC**
   BUSINESS NAME

2. The jurisdiction under whose law it is formed **South Dakota**

3. The address of the principal executive office (business address):

   Actual Street Address
   **3213 W MAIN ST #389**
   **RAPID CITY, SD 57702**

   Mailing Address
   **3213 W MAIN ST #389**
   **RAPID CITY, SD 57702**

4. The South Dakota Registered Agent's Name:

   South Dakota law permits the registered agent to be either (a) a noncommercial registered agent, or (b) a commercial registered agent.

   **New Agent**
   (b) The South Dakota Commercial Registered Agent's name & CRA#

   CRA: **DAKOTA AGENT SERVICES, LLC (2053866)**

   Actual Street Address in this State
   **3213 W MAIN ST # 389**
   **STE 214-1619**
   **RAPID CITY, SD 57702**

   Mailing Address in this State

   **Old Agent**
   (b) The South Dakota Commercial Registered Agent's name & CRA#

   CRA: **PACIFIC REGISTERED AGENTS, INC. (0000037)**

   Actual Street Address in this State
   **401 E 8TH ST**
   **STE 214-1619**
   **SIOUX FALLS, SD 57103-7049**

   Mailing Address in this State

5. If the LLC is manager-managed, list the names and addresses of its Managers. SDCL 59-11-24. If the LLC is member-managed, this section may be left blank.

6. 43-2A-1. "Agricultural land" defined.

   For purposes of this chapter, the term "agricultural land" means land capable of use in the production of agricultural crops, timber, livestock or livestock products, poultry or poultry products, milk or dairy products, or fruit and other horticultural products but does not include any royalty interest, any oil, gas, or other mineral interest, or any lease, right-of-way, option, or easement relating thereto, or any land zoned by a local governmental unit for a use other than and nonconforming with agricultural use

   Does the entity own any Agricultural land? (Required)

   No



B0303-1365  03/04/2024  7:09PM  Rec'd by SD SOS

If the answer is yes, please answer below

"Foreign Beneficial Owner" Foreign government, a government, or the state-controlled enterprise of a government, other than the United States, its states, or its territories. A natural person who is not a United States Citizen.  An entity registered outside the United States or its territories.

Does the entity have any foreign beneficial owners/interests?

    N/A

7.  Beneficial Owners (optional): A beneficial owner is a person who has or in some manner controls an equity security. Please consult an attorney for legal advice if you have any questions concerning this entry. Any question under this heading is considered a request for legal advice and the secretary of state's office is, by statute, not permitted, to provide legal advice.

No person may execute this report knowing it is false in any material respect.  Any violation may be subject to a criminal penalty (SDCL 22-39-36).

03/04/2024
_____

Dated

_____

Email (Optional)

*D DeLoach*
_____

Signature of an Authorized Person

D DeLoach
_____

Printed Name



# OFFICE OF THE SECRETARY OF STATE

## STEVEN J. BARNETT, SECRETARY OF STATE

### JASON LUTZ, DEPUTY SECRETARY OF STATE

Newport Ventures, LLC
401 E 8TH ST STE 214-1619
SIOUX FALLS, SD  57103

March 31, 2022

## Filing Acknowledgment

Please review the filing information below and notify our office immediately of any discrepancies.

**Business ID :**   **DL178490**
Status:                Good Standing
Filing Type:         Limited Liability Company - Domestic
Amendment Type: Application for Reinstatement
Filed Date:          03/31/2022 1:16 PM

*Steve Barnett*

Steve Barnett
Secretary of State
State of South Dakota

| Field Name | Changed From | Changed To |
|---|---|---|
| Inactive Date | 07/16/2021 | No Value |
| Filing Status | Dissolved (Administrative) | Good Standing |

SOUTH DAKOTA STATE CAPITOL  •  500 E. CAPITOL AVE.  •  PIERRE, SD 57501
www.sdsos.gov  •  Phone 605 773 4845  •  Fax 605 773 4550
corpinfo@state.sd.us




531501234

# ANNUAL REPORT

**Domestic Limited Liability Company**
SDCL 47-34A-211; 59-11-24, 24.1

Secretary of State
500 E. Capitol Ave
Pierre, SD 57501-5070
(605) 773-4845

**2022**
FILING YEAR

**Please Type or Print Clearly in Ink**
**Please submit one Original**
**Make payable to the SECRETARY OF STATE**

| | |
|---|---|
| **Filing Fee: $50** | |
| **Late Fee: $50** | |
| **Total Fee: $100** | |

1. Business ID and Name:

   **DL178490**
   BUSINESS ID

   **Newport Ventures, LLC**
   BUSINESS NAME

2. The jurisdiction under whose law it is formed  **South Dakota**

3. The address of the principal executive office (business address):

   Actual Street Address

   **401 E 8TH ST STE 214-1619**
   **SIOUX FALLS, SD  57103**

   Mailing Address

   **401 E 8TH ST STE 214-1619**
   **SIOUX FALLS, SD  57103**

4. The South Dakota Registered Agent's Name:

   South Dakota law permits the registered agent to be either (a) a noncommercial registered agent, or (b) a commercial registered agent.

   (b) The South Dakota Commercial Registered Agent's name & CRA#

   CRA:  **DAKOTA AGENT SERVICES, LLC (0000037)**

   Actual Street Address in this State

   **401 E 8TH ST**
   **STE 214-1619**
   **SIOUX FALLS, SD  57103-7049**

   Mailing Address in this State

5. If the LLC is manager-managed, list the names and addresses of its Managers.  SDCL 59-11-24.  If the LLC is member-managed, this section may be left blank.

6. Beneficial Owners (optional): A beneficial owner is a person who has or in some manner controls an equity security. Please consult an attorney for legal advice if you have any questions concerning this entry. Any question under this heading is considered a request for legal advice and the secretary of state's office is, by statute, not permitted, to provide legal advice.

No person may execute this report knowing it is false in any material respect.  Any violation may be subject to a criminal penalty (SDCL 22-39-36).

B0224-9869 06/22/2022 4:34PM Rec'd by SD SOS



06/22/2022

_____

Dated

_____

Email (Optional)

*D DeLoach*

_____

Signature of an Authorized Person

D DeLoach

_____

Printed Name

B0224-9870 06/22/2022 4:34PM Rec'd by SD SOS



# State of California
## Secretary of State

**STATEMENT OF INFORMATION**
(Limited Liability Company)

**Filing Fee $20.00. If amendment, see instructions.**

**IMPORTANT — READ INSTRUCTIONS BEFORE COMPLETING THIS FORM**

**FILED**
in the office of the Secretary of State
of the State of California

AUG 2 8 2008

1. **LIMITED LIABILITY COMPANY NAME** (Please do not alter if name is preprinted.)

ARYANA MANAGEMENT GROUP, LLC

*This Space For Filing Use Only*

**DUE DATE:**

**FILE NUMBER AND STATE OR PLACE OF ORGANIZATION**

| 2. SECRETARY OF STATE FILE NUMBER | 3 STATE OR PLACE OF ORGANIZATION |
|---|---|
| 200627510110 | CALIFORNIA |

**COMPLETE ADDRESSES FOR THE FOLLOWING** (Do not abbreviate the name of the city. Items 4 and 5 cannot be P.O. Boxes.)

| 4 STREET ADDRESS OF PRINCIPAL EXECUTIVE OFFICE | CITY AND STATE | | ZIP CODE |
|---|---|---|---|
| 5 EAST CITRUS AVENUE, SUITE 207 | REDLANDS, CA | | 92373 |

| 5. CALIFORNIA OFFICE WHERE RECORDS ARE MAINTAINED (**DOMESTIC ONLY**) | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 5 EAST CITRUS AVENUE, SUITE 207 | REDLANDS | CA | 92373 |

**NAME AND COMPLETE ADDRESS OF THE CHIEF EXECUTIVE OFFICER, IF ANY**

| 6 NAME | | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| SHAHVAND ARYANA | 5 EAST CITRUS AVE, SUITE 207 | REDLANDS, CA | 92373 |

**NAME AND COMPLETE ADDRESS OF ANY MANAGER OR MANAGERS, OR IF NONE HAVE BEEN APPOINTED OR ELECTED, PROVIDE THE NAME AND ADDRESS OF EACH MEMBER** (Attach additional pages, if necessary.)

| 7 NAME | ADDRESS | CITY AND STATE | ZIP CODE |
|---|---|---|---|
| SHAHVAND ARYANA | 5 EAST CITRUS AVE, SUITE 207 | REDLANDS, CA | 92373 |
| 8 NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| | | | |
| 9 NAME | ADDRESS | CITY AND STATE | ZIP CODE |
| | | | |

**AGENT FOR SERVICE OF PROCESS** (If the agent is an individual, the agent must reside in California and Item 11 must be completed with a California address. If the agent is a corporation, the agent must have on file with the California Secretary of State a certificate pursuant to Corporations Code section 1505 and Item 11 must be left blank.)

| 10. NAME OF AGENT FOR SERVICE OF PROCESS |
|---|
| ERIC KLEIN |

| 11 ADDRESS OF AGENT FOR SERVICE OF PROCESS IN CALIFORNIA, IF AN INDIVIDUAL | CITY | STATE | ZIP CODE |
|---|---|---|---|
| 5 EAST CITRUS AVE, SUITE 207 | REDLANDS | CA | 92373 |

**TYPE OF BUSINESS**

| 12. DESCRIBE THE TYPE OF BUSINESS OF THE LIMITED LIABILITY COMPANY |
|---|
| DEVELOPER |

13 THE INFORMATION CONTAINED HEREIN IS TRUE AND CORRECT

| SHAHVAND ARYANA | | CEO | 8/28/08 |
|---|---|---|---|
| TYPE OR PRINT NAME OF PERSON COMPLETING THE FORM | SIGNATURE | TITLE | DATE |

LLC-12 (REV 03/2007)                                                                    APPROVED BY SECRETARY OF STATE

1    Monique D. Jewett-Brewster, State Bar No. 217792
     mjb@lathropgpm.com
2    LATHROP GPM LLP
     70 South First Street
3    San Jose, CA 95113
     mailing address:
4    P.O. Box 1469
     San Jose, CA 95109-1469
5    Telephone: 408.286.9800
     Facsimile: 408.998.4790
6
     Benjamin C. Struby, MO State Bar No. 56711
7    benjamin.struby@lathropgpm.com
     LATHROP GPM LLP
8    2345 Grand Blvd., Suite 2200
     Kansas City, MO 64108-2618
9    Telephone: 816.292.2000
     (admitted pro hac vice)
10

11
     Attorneys for Del Taco LLC, a California limited
12   liability company

13

14                UNITED STATES BANKRUPTCY COURT

15             FOR THE CENTRAL DISTRICT OF CALIFORNIA

16                        SANTA ANA DIVISION

17

18   In Re:                              Case No. 8:24-bk-12738-TA

19   Newport Ventures,                   Chapter 11

20              Debtor.                  **DECLARATION OF JACK TANG IN**
                                         **SUPPORT OF DEL TACO'S MOTION**
21                                       **FOR RELIEF FROM THE**
                                         **AUTOMATIC STAY**
22
                                         Date:
23                                       Time:
                                         Place:
24                                       Judge:    Hon. Theodor Albert

25

26        I, Jack Tang, declare as follows:

27        1.    I am the Vice President and General Counsel of Del Taco LLC, which is the

28   Franchisor for the Debtor Franchised Restaurants. I am the signatory on behalf of Del Taco LLC

1   on the Franchise Agreements (as defined below) with the Debtors. As part of my responsibilities,

2   I have become familiar with the Franchise Agreements and the termination of the Franchise

3   Agreements with the Debtor. Except as to those matters stated upon information and belief, I have

4   personal knowledge of the matters set forth in this declaration based upon my personal review of

5   Newport Ventures business records.  If called upon to do so, I could and would competently

6   testify thereto.

7        2.     I make this declaration in support of Del Taco's Motion for Relief from the

8   Automatic Stay ("Motion") relating to the terminated Franchise Agreements and Conditional

9   Temporary License.

10        3.     Del Taco LLC ("Del Taco") is a nationally recognized chain of restaurants and Del

11   Taco's brand and image are key to the overall value and success of the Del Taco franchise

12   system.

13        4.     Del Taco offers qualified, independent businesspersons the opportunity to operate

14   Del Taco franchised businesses ("**Del Taco Restaurants**" or "**Franchised Restaurants**") in

15   specific geographic areas. Del Taco Restaurants offer quick service, fast casual dining to the

16   general public serving Del Taco food and beverage products through a uniform menu featuring

17   primarily Mexican-American foods like tacos and burritos, along with burgers, shakes, French

18   fries, breakfast items, soft drinks, and similar food and beverage items.

19        5.     Del Taco's brand and image are based principally on the use of certain trademarks

20   (the "**Proprietary Marks")** and proprietary system for establishing and operating restaurant

21   businesses **(the "System")** that Del Taco owns and licenses to authorized franchisees.

22        6.     Del Taco spends substantial sums for advertising and promotion of the Proprietary

23   Marks, which are widely recognized and contain a substantial amount of goodwill and consumer

24   association.

25        7.     On September 29, 2023, Newport Ventures, LLC (the "**Debtor**" or "**Franchisee**")

26   entered into a franchise agreement with Del Taco for operation of one (1) Del Taco Restaurant

27   located in Colorado (the "**First Franchise Agreement**").  On September 29, 2023, the Debtor

28   and Del Taco entered into an additional seventeen (17) franchise agreements (the "**Second**

Docusign Envelope ID: 8A9522B9-3B67-44E3-A14C-CB2C7728523B

Docusign Envelope ID: 08952989-3D67-4A53-A1AC-CB2C7728523B

Case 8:24-bk-12738-TA    Doc 1672    Filed 02/27/25    Entered 02/27/25 08:32:36    Desc
Declaration Main Document    Page 1405 of 1415    Page 3 of 5

1  **Franchise Agreements**") for operation of seventeen (17) Del Taco Restaurants located in

2  Colorado.  The First Franchise Agreement and the Second Franchise Agreements were amended

3  by the parties pursuant to an October 4, 2023 First Amended Franchise Agreement (together with

4  the First Franchise Agreement and the Second Franchise Agreements, the "**Franchise**

5  **Agreements**").  On May 22, 2024, the Debtor entered into a Franchise Renewal Agreement for

6  Store Number 738. The Franchise Agreements contain all of the same terms, with different

7  attachments identifying the specific location of each franchise and the expiration date of each

8  particular franchise agreement.   Attached as **Exhibits A – S** are copies of the Franchise

9  Agreements, which are incorporated by this reference.

10       8.     On October 4, 2023, in conjunction with the Franchise Agreements, the Debtor

11 executed a promissory note in favor of Del Taco in the amount of $125,000 (the "**Promissory**

12 **Note**"). The Promissory Note was personally guaranteed by Shahvand Aryana, Katayoun Aryana

13 and Ernesto Abarro. Attached as **Exhibit T**, is a copy of the Promissory Note, which is

14 incorporated by this reference.  The due date of the Promissory Note was October 4, 2024.

15       9.     The Franchise Agreements were terminated pre-petition pursuant to Del Taco's

16 Notice of Termination and Grant of Conditional Temporary License provided to the Debtors on

17 October 21, 2024 (the "**Termination Notice**").  Attached as **Exhibit U** is a copy of the

18 Termination Notice, which is incorporated by this reference.

19       10.    The Franchise Agreements afford Del Taco with near absolute discretion to act in

20 a unilateral manner to ensure the Proprietary Marks, System and brand image remain intact.

21       11.    In the event of Default, the Franchise Agreements offer Del Taco discretion to

22 terminate the Franchise Agreements.

23       12.    In the event of termination of the Franchise Agreements, Del Taco is afforded

24 important rights wherein Del Taco can step into the shoes of the Debtors on the leases and

25 purchase the Debtor's equipment, furnishings, supplies, and other products.

26       13.    On October 2, 2024, Del Taco provided written notice of Debtor's Default and

27 Demand for Verification of Payments to Third Parties ("**First Default Letter**") (See **Exhibit V**).

28 The Debtor failed to cure the defaults outlined in the First Default Letter.

Docusign Envelope ID: 08958089-3567-4453-91AC-CB2C7728523B

Case 8:24-bk-12738-TA   Doc 1672   Filed 02/27/25   Entered 02/27/25 08:52:36   Desc
Declaration Main Document   Page 1406 of 1415   Page 4 of 5

14.     On October 14, 2024, Del Taco provided written notice of Debtor's Defaults under the Franchise Agreement. ("**Second Default Letter**") (See **Exhibit W**). The Debtor failed to cure the defaults outlined in the Second Default Letter.

15.     On October 21, 2024 Del Taco delivered the Termination Notice, which granted a conditional temporary license to the Debtor that is set to expire on December 20, 2024. (See **Exhibit U**).

16.     The Termination Notice referenced the Second Default Letter, specifically the Debtor's default of the Franchise Agreements (Paragraph 13.2.18) for, among other things, failure to make payments to Del Taco when due, by not paying any amounts due to Del Taco under the Promissory Note. The Debtor failed to pay the full amount of $125,000 due under the Promissory Note by October 17, 2024 to Del Taco. Accordingly, the Franchise Agreements were thereby terminated as of the date of the Termination Notice, having a termination date of October 21, 2024 ("Termination Date").

17.     For the parties to assess the next steps regarding the Franchised Restaurants, and to permit an orderly turnover of those Del Taco Restaurants and the assets of those Franchised Restaurants to Del Taco or a third party, Del Taco granted the Debtor a conditional temporary license to continue operating the Del Taco Restaurants (the "**Conditional Temporary License**"), on specified terms ("**Temporary License Terms**"). (See **Exhibit U**).

18.     Pursuant to various guarantees, the Guarantors of the Debtor agreed to guarantee and be bound by Franchisee's obligations under the Franchise Agreements.

19.     The administrative requirements of a franchisee are provided in detail in the franchise agreements. Every franchisee is aware of these requirements prior to agreement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on December __, 2024, at Fountain Valley, California.

/s/ Jack Tang
Jack Tang

DocuSigned by:
Jack Tang
AD28CBFCF34346A...

Docusign Envelope ID: 8A952089-8D67-44E2-A1AC-CB2C7738523B

1

2

3    <u>COUNSEL DECLARATION OF ORAL VERIFICATION</u>

    In compliance with LBR 9011-1(b)(4)(B)(i), I declare, under penalties of perjury under

4    the laws of the United States, that I have obtained oral verification from declarant Jack Tang that

5    they intended to sign this document electronically.

6

                                      /s/ Benjamin C. Struby

7

                                      Benjamin C. Struby

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

8:24-BK-12738-TA

DECLARATION OF JACK TANG IN SUPPORT OF DEL TACO'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Exhibit B

1  Monique D. Jewett-Brewster, State Bar No. 217792
   mjb@lathropgpm.com
2  LATHROP GPM LLP
   70 South First Street
3  San Jose, CA 95113
   mailing address:
4  P.O. Box 1469
   San Jose, CA 95109-1469
5  Telephone: 408.286.9800
   Facsimile: 408.998.4790
6
   Benjamin C. Struby, MO State Bar No. 56711
7  benjamin.struby@lathropgpm.com
   LATHROP GPM LLP
8  2345 Grand Blvd., Suite 2200
   Kansas City, MO 64108-2618
9  Telephone: 816.292.2000
   (admitted pro hac vice)
10
   Attorneys for Del Taco LLC, a California limited
11 liability company

12

13                UNITED STATES BANKRUPTCY COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15                     SANTA ANA DIVISION

16

17 In re:                                    Case No. 8:24-bk-12738-TA
                                             Chapter 11
18 Newport Ventures LLC

19                                           **DECLARATION OF JACK TANG IN
                                             SUPPORT OF APPLICATION FOR
20                                           ORDER SHORTENING TIME FOR
                                             EMERGENCY HEARING ON
21                                           RENEWED MOTION FOR RELIEF
                                             FROM THE AUTOMATIC STAY**
22

23                                           Date: TBD
                                             Time: __:__ .m.
24                                           Place: Via ZoomGov Video and Audio
                                             Judge: Hon. Theodor Albert
25

26

27

28

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

1    I, Jack Tang, declare as follows:

2    1.    I am the Vice President and General Counsel of Del Taco LLC ("**Del Taco**").

3    2.    I have previously executed a declaration in Support of Del Taco's Motion for

4    Relief from the Automatic Stay [ECF. 160-2] filed in this proceeding, and I affirm the statements

5    made therein.

6    3.    I have reviewed the statements made in Del Taco's Application for Order

7    Shortening Time for Emergency Hearing on a Renewed Motion for Relief from the Automatic

8    Stay.  Such statements are true and correct to the best of my knowledge, information, and belief.

12    I declare under penalty of perjury under the laws of the United States that the foregoing is

13    true and correct and that this declaration was executed on February 27, 2025, at Fountain Valley,

14    California.

_____
Jack Tang

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

8:24-bk-12738-TA
DECLARATION OF JACK TANG IN SUPPORT OF APPLICATION FOR ORDER SHORTENING TIME FOR EMERGENCY HEARING ON
RENEWED MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Exhibit C

1  Monique D. Jewett-Brewster, State Bar No. 217792
   mjb@lathropgpm.com
2  LATHROP GPM LLP
   70 South First Street
3  San Jose, CA 95113
   mailing address:
4  P.O. Box 1469
   San Jose, CA 95109-1469
5  Telephone: 408.286.9800
   Facsimile: 408.998.4790
6
   Benjamin C. Struby, MO State Bar No. 56711
7  benjamin.struby@lathropgpm.com
   LATHROP GPM LLP
8  2345 Grand Blvd., Suite 2200
   Kansas City, MO 64108-2618
9  Telephone: 816.292.2000
   (admitted pro hac vice)
10
   Attorneys for Del Taco LLC, a California limited
11 liability company

12

13                  UNITED STATES BANKRUPTCY COURT

14                  CENTRAL DISTRICT OF CALIFORNIA

15                        SANTA ANA DIVISION

16

17 | In re:                              | Case No. 8:24-bk-12738-TA
   |                                     | Chapter 11
18 | Newport Ventures LLC                |
   |                                     |
19 |                                     | **DECLARATION OF BENJAMIN
   |                                     | STRUBY IN SUPPORT OF
20 |                                     | APPLICATION FOR ORDER
   |                                     | SHORTENING TIME FOR
21 |                                     | EMERGENCY HEARING ON
   |                                     | RENEWED MOTION FOR RELIEF
22 |                                     | FROM THE AUTOMATIC STAY**

23 |                                     |
   |                                     | Date: TBD
24 |                                     | Time: __:__ _.m.
   |                                     | Place: Via ZoomGov Video and Audio
25 |                                     | Judge: Hon. Theodor Albert

26

27

28

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

                                        - 1 -                        8:24-bk-12738-TA
DECLARATION OF BENJAMIN STRUBY IN SUPPORT OF APPLICATION FOR ORDER SHORTENING TIME FOR EMERGENCY
HEARING ON RENEWED MOTION FOR RELIEF FROM THE AUTOMATIC STAY

I, Benjamin Struby, declare as follows:

1.      I am an attorney and partner with the firm Lathrop GPM LLP, counsel for Del Taco LLC ("**Del Taco**") in this proceeding.

2.      The statements made in Del Taco's Application for Order Shortening Time for Emergency Hearing on a Renewed Motion for Relief from the Automatic Stay are true and correct to the best of my knowledge, information, and belief.

3.      On February 27, 2025 at 1:01 a.m. PST, the Allen Song, the court appointed Chief Restructuring Officer, informed Del Taco via email that he was closing the Restaurants effective that day:

**Struby, Benjamin C.**

| | |
|---|---|
| **From:** | Allen Soong <asoong@paladinmgmt.com> |
| **Sent:** | Thursday, February 27, 2025 3:01 AM |
| **To:** | Jack Tang; Mark Bixler; bdrewitz@deltaco.com; Won Kwak |
| **Cc:** | Struby, Benjamin C.; mark.lichtenstein@akerman.com; Parham, David (Ptnr-Dal) |
| **Subject:** | Newport Ventures: cessation of operations |
| **Importance:** | High |

**CAUTION:** This email asoong@paladinmgmt.com <asoong@paladinmgmt.com> originated from outside of the organization. Do not click links, open attachments or reply, unless you recognize the sender's email address and know the content is safe.

I regret to report that we received word late Wednesday from the lender that they will not fund the company any further. As such, without any financial support available to the company, I am left with no choice but to cease operations immediately. The stores will not be opened to the public on Thursday and the crew will report to their normal shifts to assist with preparing the stores for indefinite closure, after which all crew positions will be eliminated. Managers, District Managers, and the Director of Operations will be paid through Sunday to finish the closure, after which all management positions will be eliminated as well. The entire team will receive their normal payroll checks on Friday as usual, with final wages to follow sometime next week.

Further updates to come during the day Thursday.

Allen Soong
Paladin
310.720.1326 mobile
asoong@paladinmgmt.com

4.      On February 27, 2025,  the CRO and/or the Debtor caused the following communication to be distributed to employees at the Restaurants, advising them that their position are eliminated as of the end of the work day on February 27, 2025:

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

- 2 -                                                                    8:24-bk-12738-TA
DECLARATION OF JACK TANG IN SUPPORT OF APPLICATION FOR ORDER SHORTENING TIME FOR EMERGENCY HEARING ON RENEWED MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**Newport Ventures, LLC**

February 27, 2025

Dear Team Member,

It is with our deepest regret that we must inform you that the Company's continued financial challenges have forced us to make the difficult decision to close the stores immediately. Your position will be eliminated at the end of the workday on February 27, 2025. Please report to your normal shift unless otherwise instructed by your manager.

We are deeply sorry for any hardship this decision may cause you. You will receive your normal paycheck on Friday and a second check with your final wages within the next several days. We ask that you return any Company property (particularly keys) to your manager.

For your convenience, please browse to https://cdle.colorado.gov/unemployment for information on unemployment benefits that may be available to you.

Thank you for your contributions to the Newport Ventures Del Taco team.

Sincerely,

Newport Ventures, LLC

5.      On February 27, 2025, the following notice was to be posted at the eighteen (18) restaurants (the "**Restaurants**") at issue in this case:

February 27, 2025

Dear Valued Customers:

This location is closed until further notice.

Thank you for your patronage. We look forward to serving you again soon.

6.      On February 26, 2025, the CRO instructed employees to disposed of food at the Restaurants.  Furthermore, the food vendor for the Restaurants has informed counsel for Del Taco that is was ceasing deliveries.

LATHROP GPM LLP
ATTORNEYS AT LAW
SAN JOSE • REDWOOD CITY

- 3 -                                                          8:24-bk-12738-TA
DECLARATION OF JACK TANG IN SUPPORT OF APPLICATION FOR ORDER SHORTENING TIME FOR EMERGENCY HEARING ON RENEWED MOTION FOR RELIEF FROM THE AUTOMATIC STAY

1        I declare under penalty of perjury under the laws of the United States that the foregoing is

2  true and correct and that this declaration was executed on February 27, 2025, at Kansas City,

3  Jackson County, Missouri.

 

 

                                       Benjamin C. Struby

- 4 -                                8:24-bk-12738-TA

DECLARATION OF JACK TANG IN SUPPORT OF APPLICATION FOR ORDER SHORTENING TIME FOR EMERGENCY HEARING ON RENEWED MOTION FOR RELIEF FROM THE AUTOMATIC STAY